HAROLD P. SMITH, ESQ. (SBN: 126985)
psmith@dhillonsmith.com
KRISTA L. SHOQUIST, ESQ. (SBN: 264600)
kshoquist@dhillonsmith.com
DHILLON & SMITH LLP
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff
Harmeet K. Dhillon

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMEET K. DHILLON,<br><br>                    Plaintiff,<br><br>          v.<br><br>DOE 1, *et al.*,<br><br>                    Defendants. | Case No. 13-cv-01465 SI<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S ADMINISTRATIVE MOTIONS  FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE**<br><br>**Hearing Date:** November 7, 2013<br>**Hearing Time**: 10:00a.m. |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

III. PLAINTIFF'S COUNSEL MAY PROPERLY ISSUE A SUBPOENA ON BEHALF OF
     FOREIGN DISTRICTS ............................................................................................... 5

IV. UNDER THE APPLICABLE LEGAL STANDARDS, THE NEED FOR DISCLOSURE
     OUTWEIGHS DOE 1'S FIRST AMENDMENT INTERESTS ........................................ 7

   A.  The Applicable Legal Standards ......................................................................... 8

   B.  Plaintiff Satisfies the 5-Part *Arista/Sony* Test, Warranting Disclosure of Movants'
   Identities ................................................................................................................ 10

   C.  Plaintiff Satisfies the 2-Part *Highfields* Test, Warranting Disclosure of Doe 1's
   Identity ................................................................................................................... 13

   V.  THE *CAHILL* SUMMARY JUDGMENT STANDARD IS INAPPLICABLE TO THIS
       MOTION TO QUASH ............................................................................................. 15

       VI. THE AFFIRMATIVE DEFENSE OF FAIR USE IS NOT APPROPRIATELY
           CONSIDERED IN DETERMINING THE EXISTENCE OF A PRIMA FACIE CASE
           OF COPYRIGHT INFRINGEMENT ..................................................................... 17

VII. THE FAIR USE FACTORS WEIGH IN FAVOR OF GRANTING THE MOTIONS . 19

   A.  Purpose and Character of the Use ..................................................................... 19

   B.  The Nature of the Copyrighted Work ................................................................. 21

   C.  The Amount and Substantiality of the Portion Used in Relation to the
   Copyrighted Work as a Whole ................................................................................ 22

   D.  The Effect of the Use Upon the Potential Market for or Value of the Copyrighted
   Work ....................................................................................................................... 22

---

Reply ISO Administrative Motions                     **DHILLON & SMITH LLP**

VIII.    CONCLUSION................................................................................................ 24

Reply ISO Administrative Motions          **DHILLON & SMITH LLP**

## TABLE OF AUTHORITIES

**Cases**

*America Online, Inc. v. Anonymous Publicly Traded Co.*, 261 Va. 350, 542 S.E.2d 377 (2001)9, 10, 13

*Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011) .......................... 8, 10, 17, 18

*Arista Recrods, LLC v. Doe 3*, 604 F.3d 110 (2010).............................................passim

*Art of Living Found v. Does 1-10*, 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) .............. 15, 22

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994) ..................................... 20, 23, 24

*Columbia Ins.Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) .................... 8, 9, 16

*Doe I v. Individuals*, 561 F.Supp.2d 249 (D.Conn.2008).......................................... 10

*Doe v. Cahill*, 884 A.2d 451 (Del. 2005) ................................................................ 17, 18

*Donahoo v. Ohio Dept. of Youth Services*, 211 F.R.D. 303 (N.D. Ohio, 2002) ........................... 6

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997)
    ......................................................................................................... 20, 27

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 723 F.3d 1067, 1074 (9th Cir. 2013)........... 20, 22

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985).... 19, 21, 23, 26

*Highfields Capital Mgmt., LP v. Doe*, 385 F.Supp.2d 969 (N.D.Cal.2005)............................. 10

*In re Subpoena Duces Tecum to America Online, Inc.*, No. 40570, 2000 WL 1210372
    (Va.Cir.Ct. Jan. 31, 2000).......................................................................... 9

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ..................................... 27

*Kupritz v. Savannah College of Art & Design*, 155 FRD 84, 87 (ED PA 1994) ......................... 6

*Lassa v. Rongstad*, 294 Wis. 2d 187 (2006) ............................................................. 18

*Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010)............................... 20

*Lefkoe v. Jos A. Bank Clothiers, Inc.*, 577 F.3d 240, 248-49 (4th Cir. 2009)................................ 8

*Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir.1992) ................................. 26

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012).................. 21, 23, 24, 25

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) ....................... 20, 22

---

Reply ISO Administrative Motions                                    **DHILLON & SMITH LLP**

*Recording Indus. Ass'n of America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) .................................................................................................................. 14

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, 2009 WL 2157573, at *5 (N.D. Cal. 2009) . 25

*Signature Mgmt. Team, LLC v. Automatic, Inc.*, ___F.Supp.2d___, 85 Fed. R. Serv. 3d 823, 2013 WL 1739480 (N.D. Cal. 2013) ...................................................................... 14, 21

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984) .......................... 23

*Sony Music Entertainment Inc. v. Does 1-40*, 326 F.Supp.2d 556 (S.D.N.Y. 2004) ........ passim

*Todd v. Lamarque*, 2008 WL 2095513 (NDCA 2008) ................................................................ 6

*Verizon Internet Services, Inc.*, 257 F.Supp.2d 244, 260-61, 267-68 (D.C. Cir. 2003) ............ 13

*Wall Data Inc. v. Los Angeles County Sheriff's Dept.*, 447 F.3d 769, 778 (9th Cir. 2006) ......... 24

**Statutes**

17 U.S.C. §107 ..................................................................................................................... passim

9 Moore's Federal Practice § 45.03[3], p. 45-22 (3d ed.2000) ................................................. 6

F.R.C.P. 45(a)(3) ....................................................................................................................... 7

Fed. R. Civ. P. 45(a)(2) ........................................................................................................ 5, 6

# I.    INTRODUCTION

Plaintiff Harmeet K. Dhillon ("Ms. Dhillon" or "Plaintiff") submits this Reply brief in support of her Administrative Motions for Leave to Take Limited Discovery Prior to a Rule 26(f) Conference (Docs. 20 and 24, collectively, "Motions"), in which Plaintiff requested leave to serve Rule 45 subpoenas on third parties Michael Schroeder and Google, Inc. This Reply responds to the opposition ("Opposition") to the Motions filed by Defendant Doe 1 and third party Michael Schroeder ("Movants").[1]

In their Opposition, Movants do not contest that they have made unauthorized use of materials owned and copyrighted by Plaintiff. Nor do they claim that the First Amendment constitutes a license for copyright infringement. In an attempt to overcome these dispositive hurdles, which hamstring their Opposition, Movants intentionally misstate the applicable legal standards, invoke red herrings,[2] and rely on baseless speculation in an effort to confuse the issues and bias this Court. Movants' strategy is to forsake legal argument in favor of spinning an alternative legal universe in which the infringement of copyrighted material is "fair" and the enforcement of one's intellectual property rights is somehow sinister. In reality, the Opposition is merely a smokescreen for Movants' true purpose –to secure their ability continually to

[1] Although the Opposition is filed on behalf of Doe 1 and Mr. Schroeder, it purports to speak on behalf of "anyone else connected with the Munger Games" (Opp., 8:14-15; 11:1-2), including any "author of any posts on The Munger Games." Opp., 10:19-20. However, Plaintiff does not concede that Doe 1 or Schroeder have standing to speak for anyone but themselves or himself. Thus, for the purposes of this Reply, "Movants" will refer to Defendant Doe 1 and Mr. Schroeder, only.

[2] For instance, Defendants' seven-page "introduction and factual background" consists of discussions and opinions about Charles Munger, Jr. – a non-party who is not involved in this case in any legally-relevant way – as well as Defendants' musings on Plaintiff's motivations and relationships with third parties. Most of the exhibits attached to the Declaration of Rick A. Cigel are utterly irrelevant to any aspect of the Opposition. *See, e.g.,* Exhibit C, listing a campaign contribution made by Mr. Munger to Plaintiff's 2012 Senate campaign.

Reply ISO Administrative Motions                          **DHILLON & SMITH LLP**

violate Plaintiff's copyrights while hiding behind an illusory shield of purported First Amendment rights.

As Movants cannot deny that unauthorized use was made of copyrighted work owned by Plaintiff, Movants' joint legal argument exclusively relies on the concept of fair use – an affirmative defense to copyright infringement – to avoid issuance of the subpoena. However, as a matter of law, affirmative defenses *need not be disproven* when considering whether to grant leave to take early discovery, or even at the motion to quash stage; rather Plaintiff must only make a prima facie case of actionable harm and show that the balance of harms weighs in Plaintiff's favor. Indeed, as held in an analogous case correctly described by Movants as "the only federal circuit court that has addressed this issue in the copyright context," a fair use defense *cannot be used* to shield a defendant from a subpoena ordering disclosure of defendant's identity. *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2nd Cir. 2010).

Plaintiff is entitled to disclosure of Doe 1's identity to protect her valid statutory rights, and has made appropriate use of the procedures available to her. Movants' bluster about Plaintiff's allegedly "improper" purpose is not only irrelevant to the analysis before this Court – it is untrue. Plaintiff seeks no more information than is necessary to identify the Doe Defendants and facilitate service of process, and this Court has previously acknowledged that the categories of information sought by Plaintiff's proposed subpoena to Google are not improper or overbroad. *See* Doc. 28 (Order granting leave to serve proposed subpoena on Google). Nor is Plaintiff's proposed subpoena to Mr. Schroeder overbroad, although should the Court find otherwise, Plaintiff is willing to tailor the subpoena as necessary.

As discussed below, Plaintiff amply makes the showing necessary to warrant granting the Motions. Moreover, even if this Court were to set aside well-settled law and nonetheless prematurely consider a fair use analysis, the balance of factors weighs

---

Reply ISO Administrative Motions

**DHILLON & SMITH LLP**

against a finding of fair use in this case. For the reasons set forth below, the Motions must be granted.

## II.       FACTUAL AND PROCEDURAL BACKGROUND

As described in the Motions, this lawsuit concerns Movants' unauthorized use of a Headshot Photograph owned and used by Ms. Dhillon for the purpose of identifying herself in connection with her political activities and professional marketing efforts. *See* Declaration of Harmeet K. Dhillon In Support of Administrative Motions ("Dhillon Decl.," Doc. 24-1), ¶¶2-5. Movants concede that in February 2013, they cut-and-pasted the Headshot Photograph "from a previous [Dhillon] political campaign" website into an article entitled "Meet Harmeet," posted on the website www.mungergames.net ("Munger Games"). *See* Declaration of Rick A. Cigel (Doc. 30-2), Ex. H (Motion to Quash) pp. 9-10. The caption below the Headshot Photograph stated "Harmeet Dhillon," and the article identified Ms. Dhillon as the chair of the San Francisco Republican Party and then-candidate for CRP Vice Chairman. Dhillon Decl., ¶¶2-5; *see* also Declaration of Krista L. Shoquist In Support of Reply ("Shoquist Decl."), ¶2, Ex. A ("Meet Harmeet" article).

On April 2, 2013, Plaintiff filed this copyright infringement action against anonymous Doe Defendants. Concurrently with the Complaint, Plaintiff filed an Ex Parte Application for Leave to Take Limited Discovery Prior to a Rule 26(f) Conference ("Ex Parte Application," Doc. 2), on the grounds that the identities of the Doe Defendants could not be ascertained without resort to third party sources of information, including New Dream Network, LLC ("NDN"), the web hosting provider that hosts the Munger Games website. This Court granted the Ex Parte Application (Doc. 6), and Plaintiff's counsel subsequently issued a subpoena to NDN.[3] On

---

[3] Plaintiff's counsel originally served a subpoena to NDN dated April 11, 2013, which included a typographical error to the extent that the subpoena issued out of the

Reply ISO Administrative Motions                    **DHILLON & SMITH LLP**

-3-

September 20, 2013, "Defendant Doe 1," acting through the same counsel as Movants in this action, filed a Motion to Quash the subpoena to NDN. Shoquist Decl., ¶4. Plaintiff has opposed that motion; and the hearing is set for November 5, 2013. *Id.*, Ex. B (Plaintiffs' Opposition to Motion to Quash).

In August 2013, Plaintiff filed two Administrative Motions[4] for leave to serve subpoenas on Google, Inc. ("Google") and Mr. Schroeder, respectively, based on information Plaintiff had discovered suggesting that those two sources were highly likely to possess information that would enable Plaintiff to ascertain the identities of the Doe Defendants. *See* Docs. 20, 24. Exhibit 1 to both Motions was a subpoena to Google issuing from the Eastern District of California (where Google is located) and ordering production within that District, and Exhibit 2 to the first Motion was a subpoena to Mr. Schroeder issuing from the Central District of California (where Mr. Schroeder resides) and ordering production within that District. *Id.* On September 25, 2013, this Court granted Plaintiff leave to serve on Google "a subpoena in substantially the same form as the example attached to Exhibit 1 of Plaintiff's Administrative Motion" (Doc. 28), which Plaintiff did. Shoquist Decl., ¶6, Ex. C.

The Court's September 25th Order denied Plaintiff leave to serve a subpoena on Mr. Schroeder on the sole ground that "the subpoena would be served outside the Northern District of California *and would direct Schroeder to produce documents in San Francisco,*" in violation of Fed. R. Civ. P. 45(a)(2). *See* Doc. 28, 4:20-24. On September 27, Plaintiff's counsel filed a letter to the Court requesting reconsideration of this ruling in

---

Northern District of California. Shoquist Decl., ¶3. Plaintiff's counsel served a substantively identical subpoena on NDN dated July 22, 2013, which properly issued out of and required production of documents in the Central District of California, where NDN is located. *Id.*

[4] These requests were filed as Administrative Motions, rather than Ex Parte Applications, upon the advice of the clerk of Court. Shoquist Decl., ¶5.

light of the fact that the proposed subpoena to Schroeder was properly to be issued out of the same District in which production was sought – the Central District of California, where Mr. Schroeder resides. Doc. 29.

On October 1, 2013, Movants filed an Opposition to the Administrative Motions.[5] The next day, this Court filed an Order requiring Plaintiff to rescind the subpoena to Google, in light of the Court's apparent "mistake[ ]" in previously granting leave to serve a subpoena that issued out of a foreign District Court, and Plaintiff's counsel has complied with that Order. Shoquist Decl., ¶7. The October 2nd Order also repeated the Court's rationale for denying Plaintiff leave to serve the proposed subpoena on Mr. Schroeder. Doc. 31. Further, the Order expressly invited the parties to "address the propriety of the Google subpoena in further briefing" (Doc. 31, FN2), which Plaintiff does in the following section.

### III. PLAINTIFF'S COUNSEL MAY PROPERLY ISSUE A SUBPOENA ON BEHALF OF FOREIGN DISTRICTS

The Federal Rules of Civil Procedure and well-established case law make clear that an attorney "may issue and sign a subpoena as an officer of a court for a district

---

[5] The Motions were not served on Doe 1 because his/her identity is unknown. Mr. Schroeder complains that Plaintiff "had no right to fail to give notice of these motions to Schroeder." Opp. 8:9. However, Mr. Schroeder cites to no authority requiring either an ex parte application or an administrative motion to be served on a non-party. In any event, Movants have not been prejudiced by not learning of the administrative motion sooner – for one thing, their Opposition is currently being considered by this Court. Moreover, even had Movants been unable to challenge the requested discovery by opposing the Motions themselves, Movants indisputably would have had the right to bring the identical arguments in a Motion to Quash, as they are currently doing in the Central District of California with respect to the subpoena to NDN. *See, e.g.*, Doc. 24-2 (Proposed Order drafted by Plaintiff, stating that "each entity and person whose information is sought" by the subpoenas must be served with a copy of the subpoena and order and would have 30 days from service to file the requisite motions to contest the subpoena, including a motion to quash or modify).

---

Reply ISO Administrative Motions        **DHILLON & SMITH LLP**

where a deposition is to be taken or production is to be made, if the attorney is authorized to practice in the court where the action is pending." F.R.C.P. 45(a)(3)(b); *see also Kupritz v. Savannah College of Art & Design,* 155 FRD 84, 87 (ED PA 1994); *Todd v. Lamarque,* 2008 WL 2095513 (NDCA 2008); *Donahoo v. Ohio Dept. of Youth Services,* 211 F.R.D. 303 (N.D. Ohio, 2002) (Plaintiff's counsel, as a duly licensed attorney in the Northern District of Ohio, could issue subpoenas on behalf of the Southern District of Ohio, where the depositions pertained to a case in the Northern District and were set to occur in the Southern District); 9 Moore's Federal Practice § 45.03[3], p. 45-22 (3d ed.2000). The 1991 Advisory Committee Notes to F.R.C.P. 45(a)(3), clarifying a revision to the rules, state:

> "Paragraph (a)(3) authorizes attorneys *in distant districts* to serve as officers authorized to issue commands in the name of the court. Any attorney permitted to represent a client in a federal court, even one admitted *pro hac vice*, has the same authority as a clerk to issue a subpoena *from any federal court for the district in which the subpoena is served and enforced.* In authorizing attorneys to issue subpoenas from distant courts, the amended rule effectively authorizes service of a subpoena anywhere in the United States by an attorney representing any party. This change is intended to ease the administrative burdens of inter-district law practice. The former rule resulted in delay and expense caused by the need to secure forms from clerks' offices some distance from the place at which the action proceeds."

1991 Advisory Committee Notes to F.R.C.P. 45(a)(3) (emphasis added).

The subpoenas Plaintiff seeks to serve on Mr. Schroeder and Google, respectively, are properly issued under Rule 45(a)(3), as enacted. The proposed subpoena to Google is issued from the Eastern District of California, seeks production of documents within that District, and would be served on Google's registered agent within that District. *See* Doc. 24, Ex. 1; Doc. 20, Ex. 1. The proposed subpoena to Mr. Schroeder is issued from the Central District of California, seeks production of

---

Reply ISO Administrative Motions                                   DHILLON & SMITH LLP

documents within that District, and would be served on Mr. Schroeder within that District. *See* Doc. 20, Ex. 2.[6] As attorneys authorized to practice in this federal Court, where the action is pending, Plaintiff's attorneys can properly issue subpoenas on behalf of any foreign district, including the Eastern and Central Districts of California. F.R.C.P. 45(a)(3)(b).

## IV. UNDER THE APPLICABLE LEGAL STANDARDS, THE NEED FOR DISCLOSURE OUTWEIGHS DOE 1'S FIRST AMENDMENT INTERESTS

While the First Amendment offers certain protections for anonymous speech, the case law Movants cite in their Opposition makes abundantly clear that these protections are not boundless. "Anonymous speech, like speech from identifiable sources, does not have absolute protection. The First Amendment, for example, does not protect copyright infringement [and]…[p]arties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music Entertainment Inc. v. Does 1-40,* 326 F.Supp.2d 556, 562-63 (S.D.N.Y. 2004)(*"Sony"*); *see also Arista Records, LLC v. Doe 3,* 604 F.3d 110, 118 (2nd Cir. 2010) (*"Arista"*) ("[t]he First Amendment does not…provide a license for copyright infringement"); *In re Anonymous Online Speakers,* 661 F.3d 1168, 1173 (9th Cir. 2011)(*"Anonymous Online Speakers"*); *Columbia Ins. Co. v. Seescandy.com,* 185 F.R.D. 573, 577 (N.D. Cal. 1999) (*"Columbia"*). Moreover, "the degree of scrutiny varies depending on the circumstances and the type of speech at issue," and "commercial speech enjoys only limited First Amendment protection." *Anonymous Online Speakers, supra,* 661 F.3d at 1173; *see also Lefkoe v. Jos A. Bank Clothiers, Inc.,* 577 F.3d 240, 248-49 (4th Cir. 2009).

---

[6] The Court's Orders of both September 25th and October 3rd inaccurately state that the proposed subpoena to Schroeder "would direct Schroeder to produce documents in San Francisco." Doc. 28, 4:20-24; Doc. 31, 2:16-17. In fact, the proposed subpoena states that it would direct production "[within the Central District of California]." Doc. 20, Ex. 2.

As discussed in the Motions, the problem of the unknown defendant infringing copyrights through anonymous speech has worsened with the growth of the Internet. *See, e.g., Columbia, supra,* 185 F.R.D. at 577. "Those who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights." *In re Subpoena Duces Tecum to America Online, Inc.,* No. 40570, 2000 WL 1210372 (Va.Cir.Ct. Jan. 31, 2000) (reversed on other grounds, *America Online, Inc. v. Anonymous Publicly Traded Co.,* 261 Va. 350, 542 S.E.2d 377 (2001) ("*America Online*").

## A. The Applicable Legal Standards

The Opposition discusses several standards that federal courts throughout the nation have used when balancing the need for discovery with First Amendment protections in the context of anonymous speech posted online. The lowest bar that courts have used is the motion to dismiss or "legitimate, good faith basis" standard. *See, e.g., Columbia, supra,* 185 F.R.D. 573 (allowing discovery as to the identity of an anonymous website domain owner alleged to have infringed plaintiff's trademarks)[7]; *America Online, supra,* 2000 WL 1210372 . Use of this test has resulted in a court order to a non-party ISP to provide information concerning the identity of a subscriber when the pleadings or evidence show that the requesting party has a legitimate, good faith basis to contend that it may be the victim of actionable conduct and the subpoenaed identity information is centrally needed to advance that claim. *See America Online,*

---

[7] As discussed in the Motions, the standard set forth in *Columbia* further requires a plaintiff to a) identify a Doe defendant with sufficient specificity that the court can determine that the defendant is a real person who can be sued in federal court; b) recount the steps taken to locate and identify the defendant; and c) prove that the discovery is likely to lead to identifying information that will permit service of process. *Columbia, supra,* 185 F.R.D. at 578-80. Movants do not contest that Plaintiff has made these showings.

---

Reply ISO Administrative Motions                    **DHILLON & SMITH LLP**

1    *supra,* 2000 WL 1210372 *at* \*8.

2    Other courts have used a slightly higher standard and "have required plaintiffs

3    to make at least a prima facie showing of the claim for which the plaintiff seeks the

4    disclosure of the anonymous speaker's identity." *Anonymous Online Speakers, supra,* 661

5    F.3d at 1175, *citing Doe I v. Individuals,* 561 F.Supp.2d 249 (D.Conn.2008); *Highfields*

6    *Capital Mgmt., LP v. Doe,* 385 F.Supp.2d 969 (N.D.Cal.2005) ("*Highfields*").  In *Highfields,*

7    the Court set forth an analysis that 1) considers whether the party seeking discovery

8    has shown a real evidentiary basis for believing that speaker has engaged in wrongful

9    conduct that has caused real harm to plaintiff's interests, and 2) compares the

10   magnitude of harms that would be caused to the competing interests by disclosure of

11   the information. *Highfields, supra,* 385 F. Supp. 2d at 970. *See also Sony, supra,* 326

12   F.Supp.2d 556, 564-65 (S.D.N.Y.2004).

13   The facts in the present case mirror those presented in the Second Circuit case of

14   *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2010) ("*Arista*"). As Movants correctly state,

15   *Arista* is the only federal circuit court that has addressed the issue of balancing the

16   need for discovery with First Amendment rights in the copyright context. Opp., 14:17-

17   18. The *Arista* court adopted a five-part test first established in *Sony* to evaluate

18   motions to quash subpoenas seeking to identify alleged copyright infringers. This 5-

19   part test is intended to resolve the tension between First Amendment rights and the

20   rights afforded to valid copyright holders. The test states the five elements as:

21       1)  a concrete showing of a prima facie claim of actionable harm;

22       2)  specificity of the discovery request;

23       3)  the absence of alternative means to obtain the subpoenaed information;

24       4)  a central need for the subpoenaed information to advance the claim; and

25       5)  the party's expectation of privacy.

26   *See Arista, supra,* 604 F.2d at 119; *Sony, supra,* 326 F.Supp. at 564-65.

---

Reply ISO Administrative Motions                              **DHILLON & SMITH LLP**

After applying this 5-part test, both the *Arista* and *Sony* courts denied motions to quash subpoenas served on ISPs for disclosure of identities of party Internet users. *See Sony, supra,* 326 F.Supp at 567 (finding that each factor weighed in favor of allowing discovery and holding that "defendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial system to pursue what appear to be meritorious copyright infringement claims"); *Arista, supra,* 604 F.2d (holding that defendant's First Amendment right to anonymity did not warrant quashing of recording companies' subpoena).

### B. Plaintiff Satisfies the 5-Part *Arista/Sony* Test, Warranting Disclosure of Movants' Identities

The *Arista/Sony* factors support disclosure of Movants' identities in this case. First, Plaintiff has made a concrete showing – which Movants *do not contest* – that 1) Plaintiff owns the copyright to the Headshot Photograph and 2) that Movants have copied the Headshot Photograph without Plaintiff's authorization and have used it in the "Meet Harmeet" article. *See* Opp. 1:14 (acknowledging Plaintiff's copyright registration); Opp. 3:19 (acknowledging use of Headshot Photograph); Dhillon Decl. ¶¶4-5.  This showing constitutes a prima facie claim of copyright infringement. *See Sony, supra,* 325 F.Supp. at 567 (claim of copyright infringement consists of two elements"(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original").[8]

Second, Plaintiff's discovery requests – the proposed subpoenas to Google and Mr. Schroeder – are "sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *Sony, supra,*

---

[8] As discussed below, the *affirmative defense* of fair use is not considered in the context of a prima facie case, and even if it were, it does not warrant denying the Motions in this case.

Reply ISO Administrative Motions                    **D**HILLON & **S**MITH LLP

325 F.Supp. at 566. Plaintiff has established – and Movants do not contest – that Google and Mr. Schroeder are sources that are highly likely to possess information that will enable Plaintiff to ascertain the identities of the Doe Defendants who are responsible for illegally posting the Headshot Photograph on Munger Games. *See* Doc. 20, pp. 2-4; Doc. 24, pp. 3-4. The proposed discovery specifically seeks information sufficient to identify the Doe Defendants, including by their name(s), address(es), phone number(s) and email address(es). *Id.* Such information is specifically limited to the data that is necessary to, and will, enable Plaintiff to serve process on Doe Defendants, as this Court has already determined with respect to the Google subpoena. *See* Doc. 28 (Order granting Plaintiff leave to serve proposed subpoena on Google). Nor is Plaintiff's proposed subpoena to Mr. Schroeder overbroad; although should the Court find otherwise, Plaintiff is willing to tailor the subpoena as necessary.

Third, Plaintiff has established that she lacks other means to obtain the subpoenaed information by specifying in her Motions the prior steps she has taken to locate the Doe Defendants. *See* Doc. 20, pp. 6-7; Doc. 24, pp. 6-7; Doc. 24-1; Doc. 22.

Fourth, Plaintiff has demonstrated that the subpoenaed information is centrally needed for her to advance her copyright infringement claims. Ascertaining the identities and contact information of the Doe Defendants is critical to Plaintiff's claim, for without this information, she will be unable to serve process. *See, e.g., Sony, supra,* 325 F.Supp. at 566; *America Online, supra,* 2000 WL 1210372, at *8.

Finally, Plaintiff is entitled to discovery in light of Movants' minimal expectation of privacy. As set forth in the Motions, Google customers such as Doe 1 are expressly put on notice that a valid subpoena for their Gmail address could compel Google to disclose information about them and their account. *See* Doc. 20, p.10; Doc. 24, p.10; *Sony, supra,* 325 F.Supp. at 566; *In re Verizon Internet Services, Inc.,* 257 F.Supp.2d 244, 260-61, 267-68 (D.C. Cir. 2003) *rev'd on other grounds, Recording Indus. Ass'n of*

---

Reply ISO Administrative Motions                    **DHILLON & SMITH LLP**

*America, Inc. v. Verizon Internet Services, Inc.*, 351 F.3d 1229 (D.C. Cir. 2003) (holding that "Verizon's customers should have little expectation of privacy (or anonymity) in infringing copyrights" because they are "put on clear notice that they cannot use Verizon's service or network to infringe copyrights"). Moreover, there is no expectation of privacy for copyright infringement. *See, e.g., Signature Mgmt. Team, LLC v. Automatic, Inc.*, ___F.Supp.2d___, 85 Fed. R. Serv. 3d 823, 2013 WL 1739480 (N.D. Cal. Apr. 22, 2013).

Mr. Schroeder also has a minimal expectation of privacy in the requested discovery. The Opposition does not identify Schroeder as a Munger Games owner or blog author, or as an individual who is otherwise "connected with" the Munger Games; therefore, any First Amendment/ free speech concerns raised in the Opposition are inapplicable to him. Rather, the Opposition asserts that Schroeder's "privacy rights and the attorney-client privilege" are affected because the discovery sought "may include Schroeder's personal and law-related emails." Opp., 8:1-8. The Opposition identifies no legitimate basis for why production of "personal" emails would violate his privacy rights – indeed, thousands of such emails are daily produced by litigants around the country. Nor does Mr. Schroeder allege that Doe 1 or "anyone else connected with the Munger Games" is a client of his law practice. Further, even were this the case, it would not warrant denying the requested discovery, but at most, tailoring the subpoenas to avoid commanding production of attorney-client privileged information – something that Plaintiff may do, once Mr. Schroeder has articulated the basis for claiming the privilege. Without any declaration from Mr. Schroeder concerning his relationships – as an attorney, or otherwise – with the Doe Defendants in this case, his claims are inchoate.

In sum, as the facts of this case are analogous to *Sony* and *Arista* – the only federal cases directly addressing the issue of balancing the need for discovery with

First Amendment rights in the copyright context – this Court must reach the same conclusion as those courts did and rule that "defendants' First Amendment rights must give way to plaintiffs' right to use the judicial process to pursue a meritorious copyright infringement claim." *Sony, supra,* 326 F.Supp.2d at 567.

### C. Plaintiff Satisfies the 2-Part *Highfields* Test, Warranting Disclosure of Doe 1's Identity

The result is the same even if the Court applies the 2-part *Highfields* test. As discussed above, Plaintiff has adduced competent evidence supporting a prima facie case of copyright infringement, which Movants have not contested. Second, the magnitude of harm to Plaintiff that would result from denying the subpoena greatly outweighs any reasonable measure of possible harm to Movants – Plaintiff would be wholly deprived of pursuing damages and injunctive relief in connection with the violation of her copyrighted material. Movants cite the case *Art of Living Found v. Does 1-10,* 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) in support of their contention that the harm to an anonymous defendant outweighs that of a wronged plaintiff. However, in *Art of Living,* the objecting Doe defendant was already participating in the lawsuit through use of a pseudonym; the court found that plaintiff could acquire the information it sought from other sources; and plaintiff failed to show why the discovery requested was necessary at that time. 2011 WL 544622 *10. Indeed, the *Art of Living* court explicitly noted that "[i]n this sense, the instant case differs significantly from those in which discovery as to an anonymous defendant's identity was necessary *in order to effect services of process.*" *Id.* (emphasis added); *citing Columbia, supra,* 185 F.R.D. 575; *Sony Music,* 326 F.Supp.3d 556.[9]

---

[9] The court went on to state that "[i]n fact, this case appears to be unique among the relevant body of case law in that [defendant] has not only appeared through counsel and filed numerous dispositive motions, but also propounded and responded to interrogatories and requests for production. [Defendant's] engagement in the litigation,

The potential harm to Plaintiff outweighs the purported harm to Movants. With respect to Mr. Schroeder, the Opposition does not identify any harm that he would suffer should the requested subpoena issue, other than by potentially revealing attorney-client privileged information (but without articulating the basis for the privilege). As noted above, Schroeder wholly fails to allege that any of the Doe Defendants whose identifying information is sought are, in fact, his clients; moreover, a subpoena can be tailored to avoid production of truly privileged information.

With respect to Doe 1, it is alleged that a breach of his anonymity would, by itself, outweigh the harm to Plaintiff in denying leave to serve the subpoena on Google. Other than a loss of anonymity, Doe 1 does not allege any specific harm that might befall him through disclosure of his identity. In a related setting, the State of California has already considered and dismissed the potential risk faced by disclosing the identity of paid political bloggers by requiring those bloggers and others who are paid to post political messages online to comply with disclosure rules under Fair Political Practice Commission regulations. *See, e.g.*, Shoquist Decl., Ex. D. Thus, to the extent that Doe 1 is paid to post content on the Munger Games website (a fact that has yet to be established), denying this Motion to Quash would result in no harm to him whatsoever.

Plaintiff satisfies all possible standards applicable to the issues presented by this case. As discussed below, Movants' invocation of the *Cahill* summary judgment standard is misleading, as that standard is wholly inapplicable here.

albeit under a pseudonym, diminishes Plaintiff's need to obtain his true name at this time." 2011 WL 544622 *10.

Reply ISO Administrative Motions                    Dhillon & Smith LLP

**V.  THE *CAHILL* SUMMARY JUDGMENT STANDARD IS INAPPLICABLE TO THIS MOTION TO QUASH**

Movants argue that rather than applying the *Arista/Sony* 5-part or the *Highfields* 2-part test to Plaintiff's copyright infringement claim, this court should apply the summary judgment standard set forth in *Doe v. Cahill,* 884 A.2d 451 (Del. 2005). Movants attempt to buttress this conclusion by erroneously asserting that the Ninth Circuit "essentially adopted" the *Cahill* holding in the case of *Anonymous Online Speaker*. Opp., 13:2. At best, this argument is highly misleading; at worst, it is a blatant mischaracterization of the law.

In *Cahill,* the Delaware Supreme Court was confronted with the question of what procedure to follow when addressing allegedly defamatory statements made by defendants about a public figure. The *Cahill* court acknowledged that there was an "entire spectrum of 'standards' that could be required," but decided to apply a summary judgment standard in the *specific context* of "a defamation plaintiff seeking redress for reputational harm to obtain relief."[10] Moreover, the *Cahill* court's decision to use a summary judgment standard rather than a motion to dismiss standard was based in part on the Delaware notice pleading standard, which the court found to be problematically low, stating that "even silly or trivial libel claims can easily survive a motion to dismiss [under Delaware law]…" *Id.* at 458. As this case does not address a Delaware defamation claim – or any reputational tort claim – *Cahill* is utterly inapplicable. *See also Lassa v. Rongstad,* 294 Wis. 2d 187 (2006) (finding that the concerns expressed in *Cahill* were addressed by a motion to dismiss standard where Wisconsin – unlike Delaware – required particularity in the pleading of defamation claims).

---

[10] Indeed, the *Cahill* court carefully tailored its summary judgment standard to a defamation claim by, for example, carving out an exception that a public figure defamation plaintiff need not produce evidence of the actual malice element of a defamation claim. *Cahill, supra,* 844 A.2d at 457; 463-64.

1    Movants' assertion that the Ninth Circuit in *Anonymous Online Speakers*

2  "essentially adopted" the *Cahill* standard is also false. In *Anonymous Online Speakers,* the

3  court did no more than refrain from overturning the District Court's application of the

4  *Cahill* standard (which, in any event, resulted in disclosure of the identity of three of

5  five non-party anonymous speakers), in light of the highly deferential "clear error"

6  standard applicable for review of a lower court decision.[11] *See Anonymous Online*

7  *Speakers,* 661 F.3d 1168. Further, *Anonymous Online Speakers* is highly distinguishable

8  from the present case because it concerned the alleged First Amendment rights of *non-*

9  *party speakers*, rather than of defendants. *Id.* The anonymity of a non-party speaker is not

10  an absolute bar to recovery. By contrast, a lawsuit is utterly barred if the defendant is

11  allowed to remain anonymous. Accordingly, the bar to disclosure of the identity of non-

12  party speakers reasonably should be higher than the bar applied to the disclosure of the

13  identity of a party who is the defendant in a lawsuit, as here.

14    Movants strenuously attempt to conflate a Delaware State court decision

15  addressing a defamation claim with a Ninth Circuit case evaluating commercial speech

16  by a non-party to provide a basis for the otherwise unsupported assertion that a

17  summary judgment standard should be used in this case. Contrary to Movants' claims,

18  the Ninth Circuit has never established the appropriate standard to apply to the facts

19  present in this case. However, the *Arista* and *Sony* cases are directly on-point and result

20  in the 5-part test discussed above. As Plaintiff easily passes that test – as well as the

21  *Columbia* test addressed in the Motions and the 2-part *Highfields* test – the Motions must

22  be granted.

23

24  [11] The *Anonymous Online Speakers* court noted that in the context of the facts before the

25  lower court, "*Cahill's* bar extends too far," but that application of *Cahill* was not so
   egregious as to leave the court with "a definite and firm conviction that a mistake has

26  been committed," as required to overturn a lower court opinion. *Id.* at 1177 (internal
   citations omitted).

Reply ISO Administrative Motions                    **DHILLON & SMITH LLP**

**VI.   THE AFFIRMATIVE DEFENSE OF FAIR USE IS NOT APPROPRIATELY CONSIDERED IN DETERMINING THE EXISTENCE OF A PRIMA FACIE CASE OF COPYRIGHT INFRINGEMENT**

Movants' main argument – that Plaintiff must disprove the affirmative defense of fair use in order to make a prima facie claim of copyright infringement – has been considered and rejected in federal courts around the nation, including by the United States Supreme Court. Rather, it is well-established that the evaluation of the affirmative defense of fair use is highly fact-specific and must be evaluated on a case by case basis at a later stage in the proceedings. *See, e.g.*, *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985) ("*Harper & Row*") ("[t]he drafters [of 17 U.S.C. §107, defining fair use] resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as *an affirmative defense requiring a case-by-case analysis*") (emphasis added); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994).

For instance, in *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010), the 11th Circuit noted that "[d]efendant-appellees assert that fair use is merely a denial of copyright infringement rather than an affirmative defense that admits the allegations of the complaint but provides another reason why the plaintiff may not recover. Defendant-appellees rely on the language of the statute itself for the proposition that the fair use of a copyrighted work 'is not an infringement of copyright.'" 601 F.3d at 1239. Citing to *Harper & Row,* the *Latimer* court rejected defendant-appellees' position and concluded that "binding Supreme Court authority requires us to treat fair us as an affirmative defense." *Id.* The Ninth Circuit has similarly confirmed that "fair use is an affirmative defense." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007); *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 723 F.3d 1067, 1074 (9th Cir. 2013); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("*Monge*").

---

Reply ISO Administrative Motions                                   **DHILLON & SMITH LLP**

Courts have consistently refused to consider the affirmative defense of fair use when evaluating whether to permit discovery of the identity of anonymous defendants. In *Arista,* the court was faced with an analogous set of facts, where an anonymous defendant accused of copyright infringement argued that fair use provided grounds to quash a subpoena to disclose the defendant's identity. *Arista, supra,* 604 F3d at 123-124. Citing *Harper & Row,* the *Arista* court recognized that "'[f]air use' is an equitable doctrine, the applicability of which presents mixed questions of law and fact," and that "'[f]air use presupposes good faith and fair dealing,' and one pertinent consideration is 'whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'" *Id.* at 124, *citing Harper & Row, supra,* 471 U.S. at 560. The *Arista* court found the fair use defense to be "[in]sufficient to warrant quashing plaintiff's subpoena" because the asserted purpose of the use by defendant "raises questions of credibility and plausibility that cannot be resolved while Doe 3 avoids suit by hiding behind a shield of anonymity." *Arista, supra,* 604 F.3d at 124.

California district courts have adopted the Second Circuit's approach in disregarding fair use claims raised as a defense to infringement in a motion to quash subpoena. For example, in *Signature Mgmt. Team, LLC, supra, v. Automatic, Inc.,* ___F.Supp.2d___, 85 Fed. R. Serv. 3d 823, 2013 WL 1739480 (N.D. Cal. Apr. 22, 2013), the court refused to evaluate fair use in determining that plaintiff had made a prima facie showing of copyright infringement sufficient to deny a motion to quash a subpoena, stating that "[d]uring any copyright action, [defendant] will be able to raise his fair use defense." *Id.* at *12. In *Art of Living,* the court similarly refused to engage in a fair use analysis in deciding whether to quash the subpoena seeking the identity of the defendant. *Art of Living, supra,* 2011 WL 5444622 *9 ("the Court need not determine at this stage if [defendant's] conduct is protected by fair use"). Accordingly, fair use is not properly considered in evaluating the instant Motions.

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## VII.   THE FAIR USE FACTORS WEIGH IN FAVOR OF GRANTING THE MOTIONS

In the event that this Court decides to entertain the affirmative defense of fair use at this stage, despite the extensive and dispositive authority discussed above, the Motions must nonetheless be granted because Movants are unable to prove that the conceded infringement of Plaintiff's copyright constitutes "fair use."  In determining whether the use made of a work constitutes fair use, the court considers: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. §107. Movants bear the burden of proving that the use of Plaintiff's Headshot Photograph was "fair use." *See, e.g., Perfect 10, supra,* 508 F.3d at1158; *Fox Broad, supra,* 723 F.3d at 1074; *Monge, supra,* 688 F.3d at 1170.

### A.  Purpose and Character of the Use

The first fair use factor includes an inquiry into whether the use was for profit, and whether and to what extent the new work is transformative.  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994) ("*Campbell*"). If a defendant's use of the copyrighted item is commercial in nature, that fact weighs against a finding of fair use.  *Harper & Row, supra,* 471 U.S. at 562.  As the Supreme Court has noted, "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright."  *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984) (internal citations omitted).

Movants claim that their unauthorized use of Plaintiff's photograph was not commercial because it was posted to a "free internet blog."  Opp., 20:24-26.  This claim is utterly devoid of any supporting evidence and is insufficient to meet Movants'

---

burden of proof. Moreover, simply claiming that a blog does not charge a fee to viewers does not establish that Movants, as author(s) and/or publisher(s) of the Meet Harmeet article, did not derive a commercial benefit therefrom – indeed, the State of California has recognized that campaign committees frequently pay authors to post political messages on blogs and now requires reporting of such payments. *See, e.g.*, Shoquist Decl., Ex. D. As in *Arista,* the asserted non-commercial purpose of the use by Movants "raises questions of credibility and plausibility that cannot be resolved while Doe [1] avoids suit by hiding behind a shield of anonymity." *Arista, supra,* 604 F.3d at 124. As Movants fail to meet their affirmative burden of showing that the use was non-commercial, this failure weighs against a finding of fair use.

A further consideration is whether Movants' unauthorized use of the Headshot Photograph was "transformative." A secondary use of a copyrighted work is transformative when the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell, supra,* 510 U.S. at 579. The Ninth Circuit has cautioned that "an infringer's separate purpose, by itself, does not necessarily create new aesthetics or a new work that alters the first work with new expression, meaning or message," and has held that "wholesale copying sprinkled with written commentary…[is] at best minimally transformative." *Monge, supra,* 688 F.3d at 1176 (internal citations omitted). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 778 (9th Cir. 2006).

As Plaintiff has established, she created and uses the Headshot Photograph for the purpose of identifying herself as "Harmeet Dhillon" in connection with political activities and professional marketing efforts. Dhillon Reply Decl., ¶¶2-3. This is the

*exact same use* that Munger Games made of the Headshot Photograph – indeed, the Opposition states that "the purpose of The Munger Games' use of the photograph was to allow readers to identify Dhillon, the subject of the political blog article." Opp., 22:9-12.

As Movants apparently concede, they did not make a single alteration to the Headshot Photograph. *See, e.g.*, Opp., 22:10-12. This falls short of the clear requirement that Movants "add something new" or alter the primary use with a "new expression, meaning or message." In this way, this case is highly distinguishable from *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman,* 2009 WL 2157573, at *5 (N.D. Cal. 2009), a case cited by Doe 1, where images originally used for promotional reasons were superimposed on postcards that mimicked "WANTED" posters, and were given captions in large fonts stating "WANTED FOR HUMAN RIGHTS VIOLATIONS," with accompanying text urging the public to report plaintiffs' misdeeds to public agencies. Here, Movants' "expression, meaning or message" in placing the photograph alongside the "Meet Harmeet" article did not deviate in any way from Plaintiff's original use, and the fact that Defendants' wholesale copying of the Headshot Photograph is sprinkled with some critique of Plaintiff does not alter this conclusion. *See, e.g., Monge, supra,* 688 F.3d at 1176.

As Movants have clearly failed to meet their burden of showing that their use of the Headshot Photograph was transformative or that they derived no commercial benefit from the posting of the "Meet Harmeet" article, the first factor weighs strongly against a finding of fair use.

### B. The Nature of the Copyrighted Work.

The second fair use factor is the nature of the copyrighted work. 17 U.S.C. §107(2). Under this second factor, courts evaluate whether the work is (1) creative; and (2) unpublished. *Harper & Ro, supra*, 471 U.S. at 563-64. "Courts have recognized

Reply ISO Administrative Motions                    DHILLON & SMITH LLP

repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work."  *Los Angeles News Serv. v. Tullo,* 973 F.2d 791, 794 (9th Cir.1992).

The Headshot Photograph is a result of the type of creative decisions that courts have found to weigh against a finding of fair use. The author of the work – photographer Colin Hussey – used care and technique in selecting and employing creative elements that would result in a Headshot Photograph that achieved the type of message Plaintiff was striving for, including the proper venue and background; the time of day chosen to achieve the best lighting; Plaintiff's body and head placement; and the framing of the shot. *See* Shoquist Decl., Ex. E (Declaration of Colin Hussey). Mr. Hussey also creatively edited and retouched the Headshot Photograph to achieve the desired result. *Id.*. These creative elements weigh against a finding of fair use.

### C.  The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole

The third fair use factor considers the amount and substantiality of the portion used by Movants in relation to the copyrighted work as a whole.  17 U.S.C. §107(3). To the extent that Movants used "only as much of the photo as was necessary" (Opp., 22:10-12), this factor is neutral and does not weigh towards a finding of fair use.

### D.  The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work.

The fourth factor that courts look to is the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. §107(4).  The Ninth Circuit has stated that the relevant question is "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on

the potential market for the original." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). The Ninth Circuit has held that a defendant's failure to adduce evidence beyond merely "confining [himself] to uncontroverted submissions that there was no likely effect on the market for the original" disentitled the defendant from successfully asserting a fair use defense. *Dr. Seuss, supra,* 109 F.3d at 1403.

Movants cite no evidence in support of their baseless assertion that "there simply is no market" for the Headshot Photograph. Opp. 22:17-18. Instead, Movants resort to the baseless and generalized statement that "[b]y its nature, a publicity photo is distributed free and in mass for purposes of generating media attention and notoriety." Opp., 22:22-23. Not only is this bald assertion insufficient to meet the burden of proving this fourth factor, it is a falsehood. In fact, Plaintiff has never "freely" distributed the Headshot Photograph to the general public "in mass." Plaintiff has instead carefully restricted the individuals and entities to whom she has granted authorization to use her copyrighted work. If the type of conduct exhibited by Movants is allowed to continue, the market for photographs of Plaintiff will be adversely affected because entities or individuals that wish to use copyrighted photographs of Plaintiff will not feel restrained from doing so, even without Plaintiff's authorization. *See* Dhillon Decl., ¶11. Logic dictates this result and Movants cite no authority to the contrary, as is their burden when stating a fair use defense.

Movants clearly fail to meet their burden of proof with regard to the first, second and fourth factors of the fair use defense, nor does the third factor weigh in favor of a finding of fair use. It is telling that Movants conclude their fair use argument by stating that the "photograph has been removed from the article on mungergames.net." Opp., 22: 23-25. The Headshot Photograph was removed by NDN from the "Meet Harmeet" article *at Plaintiff's demand* months before she filed this copyright infringement action. *See* Shoquist Decl., Ex. F. Moreover, the removal of the photograph is irrelevant, as the

1  harm to Plaintiff's intellectual property has already taken place.  Limiting the damage

2  of a wrong does not excuse the initial harm, and it certainly does not provide the basis

3  for an affirmative defense, the consideration of which is, in any event, is not appropriate

4  in deciding a motion to quash.

5                                    **VIII.   CONCLUSION**

6          For the foregoing reasons, Plaintiff respectfully requests that this Court grant

7  the Administrative Motions and enter Orders granting Plaintiff leave to serve Rule 45

8  subpoenas on Google, Inc. and Mr. Schroeder, in substantially the same form as the

9  proposed subpoenas attached to the Administrative Motions as Exhibits 1 and 2.

10

11  Date: October 18, 2013                      DHILLON & SMITH LLP

12

13                                  By:

14                                       __/s/ Krista L. Shoquist_____

15                                       HAROLD P. SMITH

16                                       KRISTA L. DHILLON

17                                       Attorneys for Plaintiff Harmeet K. Dhillon

---