HAROLD P. SMITH, ESQ. (SBN: 126985)
psmith@dhillonsmith.com
KRISTA L. SHOQUIST, ESQ. (SBN: 264600)
kshoquist@dhillonsmith.com
DHILLON & SMITH LLP
177 Post Street, Suite 700
San Francisco, California 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593

Attorneys for Plaintiff
Harmeet K. Dhillon

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMEET K. DHILLON,<br><br>Plaintiff,<br><br>v.<br><br>DOE 1, *et al*.,<br><br>Defendants. | Case No. CV 13-7003-JFW (MANx)<br><br>**OPPOSITION TO MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**<br><br>(Action pending in the Northern District of California: Case No. 13-cv-01465-JCS)<br><br>**Hearing Date:** November 5, 2013<br>**Hearing Time**: 10:00a.m. |

Opposition to Motion to Quash      DHILLON & SMITH LLP

-i-

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND ..............................................................................2

III. DOE 1'S FAILURE TO MEET AND CONFER BARS THIS MOTION TO QUASH ..................................................................................................................4

IV. UNDER THE APPLICABLE LEGAL STANDARD, THE NEED FOR DISCLOSURE OUTWEIGHS DOE 1'S FIRST AMENDMENT INTERESTS .....6

A.  The Applicable Legal Standards ...................................................................7

B.  Plaintiff Satisfies the 5-Part *Arista/Sony* Test, Warranting Disclosure of Doe 1's Identity ...............................................................................................9

C.  Plaintiff Satisfies the 2-Part *Highfields* Test, Warranting Disclosure of Doe 1's Identity ...............................................................................................12

V.  THE *CAHILL* SUMMARY JUDGMENT STANDARD IS INAPPLICABLE TO THIS MOTION TO QUASH ........................................................................14

VI. THE AFFIRMATIVE DEFENSE OF FAIR USE IS NOT APPROPRIATELY CONSIDERED IN MAKING A PRIMA FACIE CASE OF COPYRIGHT INFRINGEMENT...............................................................................................16

VII.THE FAIR USE FACTORS WEIGH IN FAVOR OF DENYING THE MOTION TO QUASH ........................................................................................19

A.  Purpose and Character of the Use ...............................................................19

B.  The Nature of the Copyrighted Work..........................................................22

C.  The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole .........................................................................23

D.  The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work.............................................................................................23

Opposition to Motion to Quash                              DHILLON & SMITH LLP

-ii-

Case 3:13-cv-01465-SI Document 40-2 Filed 10/18/13 Page 3 of 29

VIII. CONCLUSION .......................................................................................24

Opposition to Motion to Quash                                    DHILLON & SMITH LLP

# TABLE OF AUTHORITIES

**Cases**

*America Online, Inc. v. Anonymous Publicly Traded Co.,* 261 Va. 350, 542 S.E.2d 377 (2001) ................................................................................. 6, 8, 11

*Anonymous Online Speakers,* 661 F.3d 1168, 1173 (9th Cir. 2011) ................ passim

*Arista Recrods, LLC v. Doe 3*, 604 F.3d 110 (2010) ...................................... passim

*Art of Living Found v. Does 1-10,* 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) ................................................................................. 13, 18

*Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir.1996) ...................................................14

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994) ................. 17, 19, 20

*Columbia Ins.Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) ................................................................................. 6, 7, 11, 13

*Doe I v. Individuals,* 561 F.Supp.2d 249 (D.Conn.2008) .........................................8

*Doe v. Cahill,* 884 A.2d 451 (Del. 2005) ......................................................... 14, 15

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997) ................................................................................. 17, 23

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 723 F.3d 1067, 1074 (9th Cir. 2013) ................................................................................. 17, 19

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985) ................................................................................. 17, 18, 19, 22

*Highfields Capital Mgmt., LP v. Doe,* 385 F.Supp.2d 969 (N.D.Cal.2005) ..............8

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ...............................23

*Lassa v. Rongstad,* 294 Wis. 2d 187 (2006) .........................................................15

*Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) ....................17

*Lefkoe v. Jos A. Bank Clothiers, Inc.,* 577 F.3d 240, 248-49 (4th Cir. 2009) ............7

Los Angeles News Serv. v. Tullo, 973 F.2d 791, 794 (9th Cir.1992) ....................22

*Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ..... 17, 20, 21

Opposition to Motion to Quash                      **DHILLON & SMITH LLP**

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) .... 17, 19

*Recording Indus. Ass'n of America, Inc. v. Verizon Internet Services, Inc.,* 351 F.3d 1229 (D.C. Cir. 2003) ...................................................................................11

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman,* 2009 WL 2157573 (N.D. Cal. 2009)......................................................................................................21

*Signature Mgmt. Team, LLC v. Automatic, Inc.*, ___F.Supp.2d___, 85 Fed. R. Serv. 3d 823, 2013 WL 1739480 (N.D. Cal. 2013)................................................. 12, 18

*Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984)........19

*Sony Music Entertainment Inc. v. Does 1-40,* 326 F.Supp.2d 556 (S.D.N.Y. 2004) ................................................................................... passim

*U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ............14

*Verizon Internet Services, Inc.,* 257 F.Supp.2d 244, 260-61, 267-68 (D.C. Cir. 2003) ...................................................................................................11

*Wall Data Inc. v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 778 (9th Cir. 2006)...........................................................................................................20

**Statutes**

17 U.S.C. §107 ................................................................................ 17, 19, 22, 23

Rule 45 ...........................................................................................................3

## I. INTRODUCTION

Plaintiff Harmeet K. Dhillon ("Ms. Dhillon" or "Plaintiff") submits this Opposition to Doe 1's Motion to Quash Subpoena Issued in Central District of California to New Dream Network, LLC ("Motion" or "Motion to Quash").

In his Motion to Quash, Doe 1 does not contest that he has made unauthorized use of materials owned and copyrighted by Plaintiff. Nor does Doe 1 claim that the First Amendment constitutes a license for copyright infringement. In an attempt to overcome these dispositive hurdles, which hamstring his Motion to Quash, Doe 1 intentionally misstates the applicable legal standards, invokes red herrings,[1] and relies on baseless speculation in an effort to confuse the issues and bias this Court. Doe 1's strategy is to forsake legal argument in favor of spinning an alternative legal universe in which the infringement of copyrighted material is "fair" and the enforcement of one's intellectual property rights is somehow "sinister." In reality, Doe 1's Motion to Quash is merely a smokescreen for his true purpose –to secure his ability continually to violate Plaintiff's copyrights while hiding behind an illusory shield of purported First Amendment rights.

As Doe 1 cannot deny that he made unauthorized use of copyrighted work owned by Plaintiff, Doe 1's legal argument exclusively relies on the concept of fair use – an affirmative defense to copyright infringement – to avoid issuance of the subpoena. However, as a matter of law, affirmative defenses *need not be disproven* at the motion to quash stage; rather Plaintiff must only make a prima facie case of actionable harm and show that the balance of harms weighs in Plaintiff's favor. Indeed, as held in an analogous case correctly described by Doe

---

[1] For instance, Exhibit C to the Declaration of Rick A. Cigel, listing a campaign contribution made by Charles Thomas Munger, Jr., to Plaintiff's 2012 Senate campaign, is utterly irrelevant to any aspect of the motion to quash.

Opposition to Motion to Quash                               DHILLON & SMITH LLP

1 as "the only federal circuit court that has addressed this issue in the copyright context," *Arista Recrods, LLC v. Doe 3*, 604 F.3d 110 (2010), a fair use defense cannot be used to shield a defendant from a subpoena ordering disclosure of Defendant's identity.

As discussed below, Plaintiff amply makes the showing necessary to deny the Motion to Quash. Moreover, even if this Court were to set aside well-settled law and nonetheless prematurely consider a fair use analysis prior to defendants being joined in this case, the balance of factors weighs against a finding of fair use in this case. For the reasons set forth below, the Motion to Quash must be denied.

## II.    FACTUAL BACKGROUND

The facts relevant to the Motion to Quash are simple and straightforward. Plaintiff Harmeet K. Dhillon is an attorney practicing in San Francisco and an active participant in political matters in the State of California. Declaration of Harmeet K. Dhillon In Support of Opposition to Motion to Quash ("Dhillon Decl."), ¶¶1, 3. The work at issue in this case is a headshot photograph of Ms. Dhillon taken by a paid campaign photographer in 2008 in connection with her candidacy for Member of the State Assembly, District 13 (the "Headshot Photo"). *Id.*, ¶2. The Headshot Photograph and the copyright therein are solely owned by Ms. Dhillon, and have been since they came into existence. *Id.*, ¶4. The Headshot Photograph is registered with the U.S. Copyright Office. *Id.*

Beginning in 2008, Ms. Dhillon used the Headshot Photograph for the purpose of identifying herself in connection with her political activities and professional marketing efforts. Dhillon Decl., ¶3. Since that time, Ms. Dhillon has given authorization to a handful of select individuals and entities to use the Headshot Photograph, upon their request. *Id.*

On February 12, 2013, without Ms. Dhillon's authorization or a valid

Opposition to Motion to Quash                                    DHILLON & SMITH LLP

license, Doe 1 anonymously published on the website www.mungergames.net ("Munger Games") an article entitled "Meet Harmeet," which featured the Headshot Photograph at the top of the article. Dhillon Decl., ¶¶5-6, Ex. A. The caption below the Headshot Photograph stated "Harmeet Dhillon," and the photograph was not altered in any way. *Id.* The "Meet Harmeet" article identified Ms. Dhillon as the chair of the San Francisco Republican Party and then-candidate for CRP Vice Chairman. *Id.*

On April 2, 2013, Plaintiff filed a complaint for statutory copyright infringement against anonymous Doe defendants in the United States District Court, Northern District of California, Case No. 13-1465 ("Northern District Action"). Plaintiff also filed an Ex Parte Application for Leave to Take Limited Discovery Prior to a Rule 26(f) Conference (the "Ex Parte Application"), on the grounds that the Defendants' identities could not be ascertained without resort to third party sources of information, including New Dream Network, LLC ("NDN"), the web hosting provider that hosts the Munger Games website.[2] *See* Declaration of Krista L. Shoquist In Support of Opposition to Motion to Quash ("Shoquist Decl."), ¶2, Ex. A. The Northern District court granted the Ex Parte Application. *Id.,* ¶3. On July 22, 2013, Plaintiff served on NDN the Rule 45 subpoena that is the subject of the Motion to Quash.[3] *Id.,* Ex. B.

---

[2] NDN's d/b/a/ is DreamHost, which will also be referred to in this brief.

[3] In August 2013, Plaintiff filed in the Northern District Action administrative motions for leave to take limited discovery on third parties Google, Inc. and Michael Schroeder, which also seek information sufficient to identify the Doe defendants in this case. On October 1, 2013, Mr. Schroeder and defendant "Doe 1" filed a combined Opposition to these administrative motions, on the same grounds as those asserted in this Motion to Quash – indeed, the vast majority of the legal argument section appears to have been cut-and-pasted from the instant Motion to Quash. Hearing on the administrative motions has been set for November 7, 2013.

Opposition to Motion to Quash                    **Dhillon & Smith llp**

-3-

### III. DOE 1'S FAILURE TO MEET AND CONFER BARS THIS MOTION TO QUASH

As Doe 1 concedes, this Court requires counsel for the moving party to engage in detailed, substantive meet and confer efforts prior to filing a motion. Local Rule 7-3 states in relevant part that "…except in connection with discovery motions (which are governed by L.R. 37-1 through 37-4)…counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, *preferably in person,* the substance of the contemplated motion and any potential resolution…the conference shall take place at least ten (10) days prior to the filing of the motion." LR 7-3 (emphasis in original). Local Rule 37-1, governing discovery motions, requires an even more detailed meet and confer process[4]; moreover, where counsel are unable to settle their differences, Local Rule 37-2 requires the moving party to file with the notice of motion a written stipulation containing all issues in dispute as well as points and authorities. L.R. 37-2. Sanctions may be imposed for the failure to satisfy these meet and confer requirements. L.R. 37-4.

Counsel for Doe 1 has failed to meet and confer under either standard. As

---

[4] Local Rule 37-1 states in relevant part: "Prior to the filing of any motion relating to discovery pursuant to F.R.Civ.P. 26-37, counsel for the parties shall confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible. *It shall be the responsibility of counsel for the moving party to arrange for this conference*…if both counsel are not located within the same county of the Central District, *the conference may take place telephonically*…counsel for the opposing party shall confer with counsel for the moving party within ten (10) days after the moving party serves a letter requesting such conference. *The moving party's letter shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/ request), and specify the terms of the discovery order to be sought."* L.R. 37-1 (emphasis added).

---

Opposition to Motion to Quash                                    DHILLON & SMITH LLP

the Motion concedes, counsel for Doe 1 *never* reached out to Plaintiff's counsel to discuss the July 22nd subpoena*; rather,* NDN's counsel sent a letter to Plaintiff's counsel on July 18, in connection with a then-pending motion in the Northern District action to compel compliance with a subpoena Plaintiff had issued to NDN on April 11, 2013, and stating simply that "counsel for the ostensible DOE defendant contacted me and advised me that he intends to file a motion to quash the subpoena within the next approximately ten (10) days. I suggest that we 'stand down' for now while DOE prepares and files that motion." Shoquist Decl. ¶4, Ex. C. This letter did not identify counsel for "DOE" or discuss the alleged motion to quash in *any detail,* let alone in the type of extensive detail required by the Local Rules. *Id.* Plaintiff's counsel responded to this letter the next day, stating that Plaintiff was "happy to discuss a reasonable resolution of this case with the appropriate DOE defendant(s) or their counsel, should you wish to put us in touch with them." *Id.,* ¶5, Ex. D. No response was given by either counsel for NDN or counsel for the ostensible DOE. *Id.*

Three days later, on July 22nd, Plaintiff served a new subpoena on NDN[5]. Shoquist Decl., ¶3, Ex. B. Plaintiff received no communication concerning this subpoena, either by phone, email, fax or in person, from either counsel for NDN or Rick Cigel, counsel for Doe 1, from July 22 until after the Motion to Quash was filed on September 20, 2013.[6] *Id.,* ¶6.

---

[5] The July 22nd subpoena was substantively identical to the April 11th subpoena, but corrected a typographical error concerning the district court from which the subpoena was issued.

[6] Plaintiff's counsel first received notice of the Motion to Quash on September 25, 2013, by email from CM/ECF and by receiving the Motion to Quash papers in the mail. Shoquist Decl., ¶7. Although Mr. Cigel had contacted Plaintiff's counsel concerning a separate matter (Mr. Cigel's representation of Michael J. Schroeder, another individual Plaintiff seeks to subpoena, in connection with the Northern

Opposition to Motion to Quash                                **DHILLON & SMITH LLP**

Clearly, Doe 1 has failed to meet and confer "thoroughly" and in person (as required by L.R. 7-3, governing non-discovery motions) or telephonically and in substantive detail concerning all issues in dispute and by phone (as required by L.R. 37-1) in connection with this Motion to Quash, and the Motion must be denied on that threshold ground alone.

## IV. UNDER THE APPLICABLE LEGAL STANDARD, THE NEED FOR DISCLOSURE OUTWEIGHS DOE 1'S FIRST AMENDMENT INTERESTS

While the First Amendment offers certain protections for anonymous speech, the case law cited in the Motion to Quash makes abundantly clear that these protections are not boundless. "Anonymous speech, like speech from identifiable sources, does not have absolute protection. The First Amendment, for example, does not protect copyright infringement [and]…[p]arties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music Entertainment Inc. v. Does 1-40,* 326 F.Supp.2d 556, 562-63 (S.D.N.Y. 2004)(*"Sony"*); *see also Arista Records, LLC v. Doe 3,* 604 F.3d 110, 118 (2nd Cir. 2010) ("*Arista*") ("[t]he First Amendment does not…provide a license for copyright infringement"); *In re Anonymous Online Speakers,* 661 F.3d 1168, 1173 (9th Cir. 2011)(*"Anonymous Online Speakers"*); *Columbia Ins.Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999) (*"Columbia"*); *In re Subpoena Duces Tecum to America Online, Inc.,* No. 40570, 2000 WL 1210372 (Va.Cir.Ct. Jan. 31, 2000) (reversed on other grounds, *America Online, Inc. v. Anonymous Publicly Traded Co.,* 261 Va. 350, 542 S.E.2d 377 (2001) ("*America Online"*) (holding that "[t]hose who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate

District Action) four days after filing the Motion to Quash, Mr. Cigel made no mention of this Motion at that time. *Id.* ¶8.

Opposition to Motion to Quash                                              DHILLON & SMITH LLP

-6-

redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights").

"The right to speak, whether anonymously or otherwise, is not unlimited… and the degree of scrutiny varies depending on the circumstances and the type of speech at issue." *Anonymous Online Speakers, supra,* 661 F.3d at 1173. For instance, "commercial speech enjoys only limited First Amendment protection." *Id.; see also Lefkoe v. Jos A. Bank Clothiers, Inc.,* 577 F.3d 240, 248-49 (4th Cir. 2009). In specific, the problem of the unknown defendant infringing copyrights has worsened with the growth of the Internet. As discussed in *Columbia ,*

> "With the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information. Parties who have been injured by these acts are likely to find themselves chasing the tortfeasor from Internet Service Provider (ISP) to ISP, with little or no hope of actually discovering the identity of the tortfeasor. In such cases the traditional reluctance for permitting filings against John Doe defendants or fictitious names and the traditional enforcement of strict compliance with service requirements should be tempered by the need to provide injured parties with an forum [sic] in which they may seek redress for grievances."

*Columbia, supra,* 185 F.R.D. at 577.

## A. The Applicable Legal Standards

Federal courts throughout the nation have discussed which standards to employ when balancing the need for discovery with First Amendment protections in the context of anonymous speech posted online. The lowest bar that courts have used is the motion to dismiss or "legitimate, good faith basis" standard. *See, e.g., Anonymous Online Speakers, supra,* 661 F.3d 1168*; Columbia, supra,* 185 F.R.D.

Opposition to Motion to Quash                    DHILLON & SMITH LLP

-7-

573 (allowing discovery as to the identity of an anonymous website domain owner alleged to have infringed plaintiff's trademarks); *America Online, supra,* 2000 WL 1210372 . This test requires a court to order a non-party ISP to provide information concerning the identity of a subscriber when the pleadings or evidence show that the requesting party has a legitimate, good faith basis to contend that it may be the victim of actionable conduct and the subpoenaed identity information is centrally needed to advance that claim. *See America Online, supra,* 2000 WL 1210372 *at* *8.

Other courts have used a slightly higher standard and "have required plaintiffs to make at least a prima facie showing of the claim for which the plaintiff seeks the disclosure of the anonymous speaker's identity." *Anonymous Online Speakers, supra,* 661 F.3d at 1175, *citing Doe I v. Individuals,* 561 F.Supp.2d 249 (D.Conn.2008); *Highfields Capital Mgmt., LP v. Doe,* 385 F.Supp.2d 969 (N.D.Cal.2005) ("*Highfields*"). For example, in *Highfields*, the Court set forth an analysis that 1) considers whether the party seeking discovery has shown a real evidentiary basis for believing that speaker has engaged in wrongful conduct that has caused real harm to plaintiff's interests, and 2) compares the magnitude of harms that would be caused to the competing interests by disclosure of the information. *Highfields, supra,* 385 F. Supp. 2d at 970. *See also Sony, supra,* 326 F.Supp.2d 556, 564-65 (S.D.N.Y.2004).

The facts in the present case mirror those presented in the Second Circuit case of *Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2010) ("*Arista*"). As Doe 1 concedes, *Arista* is the only federal circuit court that has addressed the issue of balancing the need for discovery with First Amendment rights in the copyright context. Motion 12:23-27. The *Arista* court adopted a five-part test fist established in *Sony* to evaluate motions to quash subpoenas seeking to identify alleged

---

Opposition to Motion to Quash                                    DHILLON & SMITH LLP

-8-

copyright infringers. This 5-part test is intended to resolve the tension between First Amendment rights and the rights afforded to valid copyright holders. The test states the five elements as:

    1) a concrete showing of a prima facie claim of actionable harm;

    2) specificity of the discovery request;

    3) the absence of alternative means to obtain the subpoenaed information;

    4) a central need for the subpoenaed information to advance the claim; and

    5) the party's expectation of privacy.

*See Arista, supra,* 604 F.2d at 119; *Sony, supra,* 326 F.Supp. at 564-65.

After applying this 5-part test, both the *Arista* and *Sony* courts denied motions to quash subpoenas served on ISPs for disclosure of identities of party Internet users. *See Sony, supra,* 326 F.Supp at 567 (finding that each factor weighed in favor of allowing discovery and holding that "defendants' First Amendment right to remain anonymous must give way to plaintiffs' right to use the judicial system to pursue what appear to be meritorious copyright infringement claims"); *Arista, supra,* 604 F.2d (holding that defendant's First Amendment right to anonymity did not warrant quashing of recording companies' subpoena).

### B. Plaintiff Satisfies the 5-Part *Arista/Sony* Test, Warranting Disclosure of Doe 1's Identity

The *Arista/Sony* factors support disclosure of Defendants' identities in this case. First, Plaintiff has made a concrete showing – which Doe 1 *does not contest* – that 1) Plaintiff owns the copyright to the Headshot Photograph and 2) that Doe 1 has copied the Headshot Photograph without Plaintiff's authorization and has used it in the "Meet Harmeet" article. *See* Motion, 2:6-15 (acknowledging use of Headshot Photograph and Plaintiff's copyright registration); Dhillon Decl. ¶4.

---

Opposition to Motion to Quash        **Dhillon & Smith llp**

This showing constitutes a prima facie claim of copyright infringement. *See Sony, supra,* 325 F.Supp. at 567 (claim of copyright infringement consists of two elements"(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original").[7]

Second, Plaintiff's discovery request – the subpoena to NDN – is "sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *Sony, supra,* 325 F.Supp. at 566. Plaintiff has established – and Doe 1 does not contest – that NDN is the web host for the domain name Mungergames.net, and that NDN has in its possession the true names and identities of the owner(s) of Mungergames.net. The subpoena at issue specifically seeks information sufficient to identify those owners, including their names, addresses, telephone numbers, and e-mail addresses. *See* Shoquist Decl., Ex. B. Such information is specifically limited to the data that is necessary to, and will, enable Plaintiff to serve process on Defendants.

Third, Plaintiff has established that she lacks other means to obtain the subpoenaed information by specifying in her Ex Parte Application the steps she has taken to locate the Doe defendants. *See* Shoquist Decl., Ex. A. Specifically, Plaintiff took the following steps: 1) upon learning of the "Meet Harmeet" article on the MungerGames website, Ms. Dhillon conducted Internet research revealing that the domain name Mungergames.net is hosted by DreamHost, owned by NDN; 2) Ms. Dhillon contacted DreamHost by email to demand disclosure of the

---

[7] As discussed below, the *affirmative defense* of fair use is not considered in the context of a prima facie case, and even if it were, it does not warrant granting the Motion to Quash.

Opposition to Motion to Quash                    DHILLON & SMITH LLP

-10-

identity(ies) of the owners of the Mungergames.net domain name; 3) Ms. Dhillon submitted a formal notification of claimed infringement pursuant to the Digital Millennium Copyright Act. Dhillon Decl., ¶¶7-8. Despite these efforts, DreamHost and NDN refused to disclose the identities of the Doe Defendants without a subpoena. *Id.,* ¶10. Plaintiff has "exhausted traditional avenues for identifying Defendants pre-service" and is entitled to discovery pursuant to the subpoena. *Columbia Ins. Co., supra,* 185 F.R.D. at 578.

Fourth, Plaintiff has demonstrated that the subpoenaed information is centrally needed for her to advance her copyright infringement claims. Ascertaining the identities and contact information of the Doe defendants is critical to Plaintiff's claim, for without this information, she will be unable to serve process.[8] *See, e.g., Sony, supra,* 325 F.Supp. at 566; *America Online, supra,* 2000 WL 1210372, at *8.

Finally, Plaintiff is entitled to discovery in light of defendant's minimal expectation of privacy. *See, e.g., Sony, supra,* 325 F.Supp. at 566; *In re Verizon Internet Services, Inc.,* 257 F.Supp.2d 244, 260-61, 267-68 (D.C. Cir. 2003) *rev'd on other grounds, Recording Indus. Ass'n of America, Inc. v. Verizon Internet Services, Inc.,* 351 F.3d 1229 (D.C. Cir. 2003) (holding that "Verizon's customers should have little expectation of privacy (or anonymity) in infringing copyrights" because they are "put on clear notice that they cannot use Verizon's service or network to infringe copyrights"). DreamHost's Terms of Service, to which its subscribers must commit, requires its subscribers to "warrant[ ] that it has the right to use the trademarks and copyrights applicable to all content and/or

---

[8] Plaintiff has also requested subpoenas to Mr. Schroeder and Google, Inc. for similar identifying information, but as stated above, "Doe 1" and Mr. Schroder have opposed this request in the Northern District Action on the same grounds as addressed in the Motion to Quash.

Opposition to Motion to Quash                    DHILLON & SMITH LLP

-11-

products being made available through the customer's account." *See* http://dreamhost.com/terms-of-service/. [9] DreamHost's Privacy Policy explicitly warns that "identifying information will be provided to law enforcement and officials of the court including attorneys as situations require." *See* http://dreamhost.com/privacy-policy/.  The Privacy Policy also notes that "the contact information that [customers] provide to us is used to register your domain name and is, by the very nature of the domain registration system, available for public viewing in many places on the Internet via the use of the 'whois' tool." *See id*. Indeed, Plaintiff was able to identify NDN as the hosting provider to which defendants were subscribed using the Whois tool, a publicly available database. Dhillon Decl., ¶7. Moreover, there is no expectation of privacy for copyright infringement. *See, e.g., Signature Mgmt. Team, LLC v. Automatic, Inc.*, ___F.Supp.2d___, 85 Fed. R. Serv. 3d 823, 2013 WL 1739480 (N.D. Cal. 2013).

In sum, as the facts of this case are analogous to *Sony* and *Arista* – the only federal cases directly addressing the issue of balancing the need for discovery with First Amendment rights in the copyright context – this Court must reach the same conclusion as those courts did and rule that "defendants' First Amendment rights must give way to plaintiffs' right to use the judicial process to pursue a meritorious copyright infringement claim." *Sony, supra,* 326 F.Supp.2d at 567.

### C. Plaintiff Satisfies the 2-Part *Highfields* Test, Warranting Disclosure of Doe 1's Identity

The result is the same even if the Court applies the 2-part *Highfields* test.

---

[9]Further, DreamHost's "Acceptable Use Policy" specifically prohibits "[t]ransmission of any material in violation of any Country, Federal, State or local regulation," including "housing any copyrighted information (to which the customer does not hold the copyright or an appropriate license) on DreamHost Web Hosting's Server." *See*  http://dreamhost.com/acceptable-use-policy/.

As discussed above, Plaintiff has adduced competent evidence supporting a prima facie case of copyright infringement, which Doe 1 has not contested. Second, the magnitude of harm to Plaintiff that would result from denying the subpoena greatly outweighs any reasonable measure of possible harm to Doe 1 – Plaintiff would be wholly deprived of pursuing damages and injunctive relief in connection with the violation of her copyrighted material. Doe 1 cites the case *Art of Living Found v. Does 1-10,* 2011 WL 5444622 (N.D. Cal. Nov. 9, 2011) in support of his contention that the harm to an anonymous defendant outweighs that of a wronged plaintiff. However, in *Art of Living,* the objecting Doe defendant was already participating in the lawsuit through use of a pseudonym; the court found that plaintiff could acquire the information it sought from other sources; and plaintiff failed to show why the discovery requested was necessary at that time. 2011 WL 544622 *10. Indeed, the *Art of Living* court explicitly noted that "[i]n this sense, the instant case differs significantly from those in which discovery as to an anonymous defendant's identity was necessary *in order to effect services of process." Id.* (emphasis added); *citing Columbia, supra,* 185 F.R.D. 575; *Sony Music,* 326 F.Supp.3d 556.[10]

The potential harm to Plaintiff outweighs Doe 1's purported harm, which is grossly overstated in the Motion to Quash. Specifically, Doe 1 asserts that if his identity was revealed he "would then be subjected to financial and political retaliation for [his] articles." Motion, 1:8-9. Doe 1 provides absolutely no

---

[10] The court went on to state that "[i]n fact, this case appears to be unique among the relevant body of case law in that [defendant] has not only appeared through counsel and filed numerous dispositive motions, but also propounded and responded to interrogatories and requests for production. [Defendant's] engagement in the litigation, albeit under a pseudonym, diminishes Plaintiff's need to obtain his true name at this time." 2011 WL 544622 *10.

Opposition to Motion to Quash                    DHILLON & SMITH LLP

-13-

competent evidence[11] in support of this claim and fails to explain how Plaintiff or third parties would "retaliate" against him (other than by pursing a valid copyright infringement action). Moreover, the State of California has already considered and dismissed the potential risk faced by disclosing the identity of paid political bloggers by requiring those bloggers and others who are paid to post political messages online to comply with disclosure rules under Fair Political Practice Commission regulations. *See, e.g.,* Shoquist Decl., Ex. E. Thus, to the extent that Doe 1 is paid to post content on the Munger Games website, his identity is already required to be disclosed, and denying this Motion to Quash would result in no harm whatsoever.

Plaintiff satisfies all possible standards applicable to the issues presented by this case. As discussed below, Doe 1's invocation of the *Cahill* summary judgment standard is misleading, as that standard is wholly inapplicable here.

## V. THE *CAHILL* SUMMARY JUDGMENT STANDARD IS INAPPLICABLE TO THIS MOTION TO QUASH

Doe 1 argues that rather than applying the *Arista/Sony* 5-part or the *Highfields* 2-part test to Plaintiff's copyright infringement claim, this court should apply the summary judgment standard set forth in *Doe v. Cahill,* 884 A.2d 451 (Del. 2005). Doe 1 attempts to buttress this conclusion by erroneously asserting that the Ninth Circuit "essentially adopted" the *Cahill* holding in the case of *Anonymous Online Speaker*. Motion, 11:3. At best, this argument is highly misleading; at worst, it is a blatant mischaracterization of the law.

---

[11] As Doe 1 has failed to submit any competent evidence in his moving papers, he is precluded from doing so on reply. *See, e.g., U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers"); *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir.1996).

Opposition to Motion to Quash                                      DHILLON & SMITH LLP

-14-

In *Cahill,* the Delaware Supreme Court was confronted with the question of what procedure to follow when addressing allegedly defamatory statements made by defendants about a public figure. The *Cahill* court acknowledged that there was an "entire spectrum of 'standards' that could be required," but decided to apply a summary judgment standard in the *specific context* of "a defamation plaintiff seeking redress for reputational harm to obtain relief."[12] Moreover, the *Cahill* court's decision to use a summary judgment standard rather than a motion to dismiss standard was based in part on the Delaware notice pleading standard, which the court found to be problematically low, stating that "even silly or trivial libel claims can easily survive a motion to dismiss [under Delaware law]…" *Id.* at 458. As this case does not address a Delaware defamation claim – or any reputational tort claim – *Cahill* is utterly inapplicable. *See also Lassa v. Rongstad,* 294 Wis. 2d 187 (2006) (finding that the concerns expressed in *Cahill* were addressed by a motion to dismiss standard where Wisconsin – unlike Delaware – required particularity in the pleading of defamation claims).

Doe 1's assertion that the Ninth Circuit in *Anonymous Online Speakers* "essentially adopted" the *Cahill* standard is also false. In *Anonymous Online Speakers,* the court did no more than refrain from overturning the District Court's application of the *Cahill* standard (which, in any event, resulted in disclosure of the identity of three of five non-party anonymous speakers), in light of the highly deferential "clear error" standard applicable for review of a lower court decision.[13]

---

[12] Indeed, the *Cahill* court carefully tailored its summary judgment standard to a defamation claim by, for example, carving out an exception that a public figure defamation plaintiff need not produce evidence of the actual malice element of a defamation claim. *Cahill, supra,* 844 A.2d at 457; 463-64.

[13] Indeed, the *Anonymous Online Speakers* court noted that in the context of the facts before the lower court, "*Cahill's* bar extends too far," but that application of *Cahill* was not so egregious as to leave the court with "a definite and firm

Opposition to Motion to Quash                    **DHILLON & SMITH LLP**

*See Anonymous Online Speakers,* 661 F.3d 1168. Further, *Anonymous Online Speakers* is highly distinguishable from the present case because it concerned the alleged First Amendment rights of *non-party speakers*, rather than of defendants. *Id.* The anonymity of a non-party speaker is not an absolute bar to recovery. By contrast, a lawsuit is utterly barred if the defendant is allowed to remain anonymous. Accordingly, the bar to disclosure of the identity of non-party speakers reasonably should be higher than the bar applied to the disclosure of the identity of a party who is the defendant in a lawsuit, as here.

Doe 1 strenuously attempts to conflate a Delaware State court decision addressing a defamation claim with a Ninth Circuit case evaluating commercial speech by a non-party to provide a basis for the otherwise unsupported assertion that a summary judgment standard should be used in this case. Contrary to Defendant's claims, the Ninth Circuit has never established the appropriate standard to apply to the facts present in this case. However, the *Arista* and *Sony* cases are directly on-point and result in the 5-part test discussed above. As Plaintiff easily passes that test (as well as the 2-part *Highfields* test), the Motion to Quash must be denied.

## VI. THE AFFIRMATIVE DEFENSE OF FAIR USE IS NOT APPROPRIATELY CONSIDERED IN MAKING A PRIMA FACIE CASE OF COPYRIGHT INFRINGEMENT

Doe 1's argument – that Plaintiff must disprove the affirmative defense of fair use in order to make a prima facie claim of copyright infringement – has been considered and rejected in federal courts around the nation, including by the United States Supreme Court. Rather, it is well-established that the evaluation of the affirmative defense of fair use is highly fact-specific and must be evaluated on a

conviction that a mistake has been committed," as required to overturn a lower court opinion. *Id.* at 1177 (internal citations omitted).

Opposition to Motion to Quash                                    DHILLON & SMITH LLP

-16-

case by case basis. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985) ("*Harper & Row*") ("[t]he drafters [of 17 U.S.C. §107, defining fair use] resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as *an affirmative defense requiring a case-by-case analysis*") (emphasis added)*; Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994).

For instance, in *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010), the 11th Circuit noted that "[d]efendant-appellees assert that fair use is merely a denial of copyright infringement rather than an affirmative defense that admits the allegations of the complaint but provides another reason why the plaintiff may not recover. Defendant-appellees rely on the language of the statute itself for the proposition that the fair use of a copyrighted work 'is not an infringement of copyright.'" 601 F.3d at 1239. Citing to *Harper & Row,* the *Latimer* court rejected defendant-appellees' position and concluded that "binding Supreme Court authority requires us to treat fair us as an affirmative defense." *Id.* The Ninth Circuit has similarly confirmed that "fair use is an affirmative defense." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007); *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 723 F.3d 1067, 1074 (9th Cir. 2013); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012) ("*Monge*").

Courts have consistently refused to consider the affirmative defense of fair use when evaluating whether to quash a subpoena. In *Arista,* the court was faced with an analogous set of facts, where an anonymous defendant accused of copyright infringement argued that fair use provided grounds to quash a subpoena to disclose the defendant's identity. *Arista, supra,* 604 F3d at 123-124.

Opposition to Motion to Quash — **DHILLON & SMITH LLP**

-17-

Citing *Harper & Row,* the *Arista* court recognized that "'[f]air use' is an equitable doctrine, the applicability of which presents mixed questions of law and fact," and that "'[f]air use presupposes good faith and fair dealing,' and one pertinent consideration is 'whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'" *Id.* at 124, *citing Harper & Row, supra,* 471 U.S. at 560. The *Arista* court found the fair use defense to be "[in]sufficient to warrant quashing plaintiff's subpoena" because the asserted purpose of the use by defendant "raises questions of credibility and plausibility that cannot be resolved while Doe 3 avoids suit by hiding behind a shield of anonymity." *Arista, supra,* 604 F.3d at 124.

California district courts have adopted the Second Circuit's approach in disregarding fair use claims raised as a defense to infringement in a motion to quash subpoena. For example, in *Signature Mgmt. Team, LLC v. Automatic, Inc.*, ___F.Supp.2d___, 85 Fed. R. Serv. 3d 823, 2013 WL 1739480 (N.D. Cal. 2013), the court refused to evaluate fair use in determining that plaintiff had made a prima facie showing of copyright infringement sufficient to deny a motion to quash a subpoena, stating that "[d]uring any copyright action, [defendant] will be able to raise his fair use defense." *Id.* at *12. In *Art of Living*, the court similarly refused to engage in a fair use analysis in deciding whether to quash the subpoena seeking the identity of the defendant. *Art of Living, supra,* 2011 WL 5444622 *9 ("the Court need not determine at this stage if [defendant's] conduct is protected by fair use"). Accordingly, fair use is not properly considered in evaluating the instant Motion.

Opposition to Motion to Quash                    **DHILLON & SMITH LLP**

## VII. THE FAIR USE FACTORS WEIGH IN FAVOR OF DENYING THE MOTION TO QUASH

In the event this Court decides to entertain the affirmative defense of fair use at this stage, despite the extensive and dispositive authority discussed above, the Motion to Quash must nonetheless be denied because Doe 1 is unable to prove that his conceded infringement of Plaintiff's copyright constitutes "fair use." In determining whether the use made of a work constitutes fair use, the court considers: (1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) The nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) The effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107. Doe 1 bears the burden of proving that his use of Plaintiff's Headshot Photograph was "fair use." *See, e.g., Perfect 10, supra,* 508 F.3d at 1158; *Fox Broad, supra,* 723 F.3d at 1074; *Monge, supra,* 688 F.3d at 1170.

### A. Purpose and Character of the Use

The first fair use factor includes an inquiry into whether the use was for profit, and whether and to what extent the new work is transformative. *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994) ("*Campbell*"). If a defendant's use of the copyrighted item is commercial in nature, that fact weighs against a finding of fair use. *Harper & Row, supra,* 471 U.S. at 562. As the Supreme Court has noted, "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright." *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984) (internal citations omitted).

---

Opposition to Motion to Quash                                DHILLON & SMITH LLP

Doe 1 claims that his unauthorized use of Plaintiff's photograph was not commercial because it was posted to a "free internet blog." Motion, 19:24-26. This claim is utterly devoid of any supporting evidence and is insufficient to meet Doe 1's burden of proof. Moreover, simply claiming that a blog does not charge a fee to viewers does not establish that Doe 1, as author and/or publisher of the Meet Harmeet article, did not derive a commercial benefit therefrom – indeed, the State of California has recognized that campaign committees frequently pay authors to post political messages on blogs and now requires reporting of such payments. *See, e.g.,* Shoquist Decl., Ex. E. As in *Arista,* the asserted non-commercial purpose of the use by Doe 1 "raises questions of credibility and plausibility that cannot be resolved while Doe [1] avoids suit by hiding behind a shield of anonymity." *Arista, supra,* 604 F.3d at 124. As Doe 1 fails to meet his affirmative burden of showing that the use was non-commercial, this weighs against a finding of fair use.

A further consideration is whether Doe 1's unauthorized use of the Headshot Photograph was "transformative." A secondary use of a copyrighted work is transformative when the new work "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell, supra,* 510 U.S. at 579. The Ninth Circuit has cautioned that "an infringer's separate purpose, by itself, does not necessarily create new aesthetics or a new work that alters the first work with new expression, meaning or message," and has held that "wholesale copying sprinkled with written commentary…[is] at best minimally transformative." *Monge, supra,* 688 F.3d at 1176 (internal citations omitted). "A use is considered transformative only where a defendant changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 778 (9th Cir. 2006).

Opposition to Motion to Quash                                    DHILLON & SMITH LLP

-20-

As Plaintiff has established, she created and uses the Headshot Photograph for the purpose of identifying herself as "Harmeet Dhillon" in connection with political activities and professional marketing efforts. Dhillon Decl., ¶¶2-3. This is the *exact same use* that Munger Games made of the Headshot Photograph – indeed, the Motion to Quash states that "the purpose of mungergames.net's use of the photograph was to allow readers of mungergames.net to identify Ms. Dhillon, the subject of the political blog entry." Motion, 21:12-14. As Doe 1 apparently concedes, he did not make a single alteration to the Headshot Photograph. This falls short of the clear requirement that Doe 1's use "add something new" or alter the primary use with a "new expression, meaning or message." In this way, this case is highly distinguishable from *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman,* 2009 WL 2157573, at \*5 (N.D. Cal. 2009), a case cited by Doe 1, where images originally used for promotional reasons were superimposed on postcards that mimicked "WANTED" posters, and were given captions in large fonts stating "WANTED FOR HUMAN RIGHTS VIOLATIONS," with accompanying text urging the public to report plaintiffs' misdeeds to public agencies. Here, Doe 1's "expression, meaning or message" in placing the photograph alongside the "Meet Harmeet" article did not deviate in any way from Plaintiff's original use, and the fact that Doe 1's wholesale copying of the Headshot Photograph is sprinkled with some critique of Plaintiff does not alter this conclusion. *See, e.g., Monge, supra,* 688 F.3d at 1176.

As Doe 1 has clearly failed to meet his burden of showing that his use of the Headshot Photograph was transformative or that he and others derive no commercial benefit from the posting of the "Meet Harmeet" article, the first factor weighs strongly against a finding of fair use.

---

## B. The Nature of the Copyrighted Work.

The second fair use factor is the nature of the copyrighted work. 17 U.S.C. §107(2). Under this second factor, courts evaluate whether the work is (1) creative; and (2) unpublished. *Harper & Ro, supra*, 471 U.S. at 563-64. "Courts have recognized repeatedly that the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and have carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work." *Los Angeles News Serv. v. Tullo,* 973 F.2d 791, 794 (9th Cir.1992).

The Headshot Photograph is a result of the type of creative decisions that courts have found to weigh against a finding of fair use. The author of the work – photographer Colin Hussey – used care and technique in selecting and employing creative elements that would result in a Headshot Photograph that achieved the type of message Plaintiff was striving for, including the proper venue and background; the time of day chosen to achieve the best lighting; Plaintiff's body and head placement; and the framing of the shot. *See* Declaration of Colin Hussey In Support of Opposition to Motion to Quash, ¶¶4-10. Mr. Hussey also creatively edited and retouched the Headshot Photograph to achieve the desired result. *Id.*, ¶11. These creative elements weigh against a finding of fair use. In addition, until Doe 1's illegal conduct, all publication of the work was made only at the express authorization of Plaintiff. Dhillon Decl., ¶3. Doe 1's intentional misconduct has deprived Plaintiff of control over the publication of her copyrighted work, and this consideration should also weigh against a finding of fair use.

---

Opposition to Motion to Quash                                    DHILLON & SMITH LLP

## C. The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole

The third fair use factor considers the amount and substantiality of the portion used by the defendant in relation to the copyrighted work as a whole. 17 U.S.C. §107(3). To the extent that Doe 1 used "only as much of the photo as was necessary" (Motion, 21:15), this factor is neutral and does not weigh towards a finding of fair use.

## D. The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work.

The fourth factor that courts look to is the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. §107(4). The Ninth Circuit has stated that the relevant question is "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). The Ninth Circuit has held that a defendant's failure to adduce evidence beyond merely "confining [himself] to uncontroverted submissions that there was no likely effect on the market for the original" disentitled the defendant from successfully asserting a fair use defense. *Dr. Seuss, supra,* 109 F.3d at 1403.

Doe 1 cites no evidence in support of his baseless assertion that "there simply is no market for Dhillon's widely-used publicity headshot photograph." Motion, 21:21-23. Instead, Doe 1 resorts to the baseless and generalized statement that "[b]y its nature, a publicity photo is distributed free and in mass for purposes of generating media attention and notoriety." Motion, 21: 27-22:1. Not only is this bald assertion insufficient to meet the burden of proving this fourth factor, it is a falsehood. In fact, Plaintiff has never "freely" distributed the Headshot Photograph to the general public "in mass." Plaintiff has instead carefully

Opposition to Motion to Quash        DHILLON & SMITH LLP

-23-

restricted the individuals and entities to whom she has granted authorization to use her copyrighted work. Dhillon Decl., ¶3. If the type of conduct exhibited by Doe 1 is allowed to continue, the market for photographs of Plaintiff will be adversely affected because entities or individuals that wish to use copyrighted photographs of Plaintiff will not feel restrained from doing so, even without Plaintiff's authorization.

Doe 1 clearly fails to meet his burden of proof with regard to the first, second and fourth factors of the fair use defense, nor does the third factor weigh in favor of a finding of fair use. It is telling that Doe 1 concludes his fair use argument by stating that the "photograph has been removed from the article on mungergames.net." Motion, 22:1-2. The Headshot Photograph was removed from the "Meet Harmeet" article at Plaintiff's demand. Dhillon Decl., ¶9. Moreover, the removal of the photograph is irrelevant, as the harm to Plaintiff's intellectual property has already taken place. Limiting the damage of a wrong does not excuse the initial harm, and it certainly does not provide the basis for an affirmative defense, the consideration of which is, in any event, is not appropriate in deciding a motion to quash.

## VIII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny the Motion to Quash the subpoena dated July 22, 2013, and order prompt production pursuant to that subpoena.

Date: October 14, 2013           DHILLON & SMITH LLP

By:

      /s/ Krista L. Shoquist _____
HAROLD P. SMITH
KRISTA L. DHILLON
Attorneys for Plaintiff Harmeet K. Dhillon

Opposition to Motion to Quash            DHILLON & SMITH LLP