Rick A. Cigel, Esq. (SBN 105424)
Lori N. Schroeder, Esq. (SBN 149926)
THE CIGEL LAW GROUP, P.C.
10866 Wilshire Blvd., Suite 400
Los Angeles, California 90024
Tel: (424) 901-8513
Fax: (424) 901-8514

Attorneys for Defendant Doe 1
And Third-Party Michael J. Schroeder

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMEET K. DHILLON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DOE 1, an unknown individual, and DOES 2 through 10,<br><br>Defendants. | Case No. 13-cv-01465 SI<br><br>SUR-REPLY BRIEF OF DEFENDANT DOE 1 AND THIRD-PARTY MICHAEL J. SCHROEDER IN OPPOSITION TO PLAINTIFF'S ADMINISTRATIVE MOTIONS FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE<br><br>[Concurrently filed with Declaration of Lori N. Schroeder] |

**TABLE OF CONTENTS**

I.  INTRODUCTION AND FACTUAL CORRECTIONS. ............................................................. 1

II. DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S PURPORTED NEED FOR DISCLOSURE. ............................................................................................................ 2

III. THIS COURT SHOULD CONSIDER THE "FAIR USE" DOCTRINE IN DETERMINING WHETHER TO QUASH PLAINTIFF'S SUBPOENA ............................................................ 4

IV. THE "FAIR USE" FACTORS WEIGH IN FAVOR OF QUASHING PLAINTIFF'S SUBPOENA ............................................................................................................................. 5

    A. PURPOSE AND CHARACTER OF THE USE ................................................................ 6

    B. NATURE OF THE COPYRIGHTED WORK .................................................................. 8

V.  THE NINTH CIRCUIT HAS ADOPTED THE HIGHEST BURDEN OF PROOF WHEN POLITICAL SPEECH IS AT STAKE. ..................................................................................... 9

VI. CONCLUSION ....................................................................................................................... 10

**TABLE OF AUTHORITIES**

Cases

Arista Records LLC v. Doe, 604 F.3d 110 (2d Cir.2010) ................................................................. 5

Art of Living Foundation v. Does 1 – 10, 2011 WL 5444622 (N.D. Cal. 2011) ........................ passim

Calkins v. Playboy Enterprises Intern., Inc., 561 F.Supp.2d 1136 (E.D. Cal. 2008) .......................... 7

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994). ........................................................... 6, 8

Chula Vista Citizens for Jobs & Fair Competition v. Norris,
  875 F. Supp. 2d 1128 (S.D. Cal. 2012) ........................................................................................ 10

Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646 (9th Cir.1980) ............................................ 2

Doe v. Cahill, 884 A.2d 451 (Del. 2005) .................................................................................... 3, 10

Elvis Presley Enters. v. Passport Video, 349 F.3d 622 (9th Cir. 2003) ............................................. 5

Haberman v. Hustler Magazine, Inc., 626 F. Supp. 201 (D. Mass. 1986) .......................................... 8

Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539 (1985) ............................................ 4

Highfields Capital Management, L.P v. Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005) .................... 2, 5

In re Anonymous Online Speakers, 661 F.3d 1168 (9th Cir. 2011) ......................................... 3, 9, 10

Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir.2003) ................................................................ 6, 7

Leibovitz v. Paramount Pictures Corp., 137 F.3d 109 (2d Cir.1998) ................................................. 6

Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003) ................................... 6

Meyer v. Grant, 486 U.S. 414 (1988) ................................................................................................. 9

Nunez v. Caribbean Intern. News Corp., 235 F.3d 18 (1st Cir.2000) ........................................ 6, 7, 8

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) ................................................ 6

Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010) ................................................................... 3

SaleHoo Grp., Ltd. v. ABC Co., 722 F. Supp. 2d 1210 (W.D. Wash. 2010) ...................................... 2

Sedgwick Claims Management Services, Inc. v. Delsman,
  2009 WL 2157573 (N.D. Cal. 2009), aff'd, 422 Fed.Appx. 651(9th Cir. 2011). ............................ 6

SaleHoo Grp., Ltd. v. ABC Co., 722 F. Supp. 2d 1210, 1216-17 (W.D. Wash. 2010) ....................... 2

Selzer v. Green Day, Inc., 725 F.3d 1170, 1175 (9th Cir. 2013) .......................................................... 4

SI03, Inc. v. Bodybuilding.com, LLC, 441 F. App'x 431 (9th Cir. 2011) ......................................... 10

Signature Mgmt. Team, LLC v. Automatic, Inc., ___F. Supp. 2d ___,
  2013 WL 1739480 at *9 (N.D. Cal. 2013) ................................................................................... 3

Sony Music Entertainment, Inc. v. Does 1 – 40, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004). ........ 5, 9


Statutes

17 U.S.C. § 107…………………………………………………………………………………..4


Secondary Sources

N. Snow, "Judge Playing Jury: Constitutional Conflicts In Deciding Fair Use

On Summary Judgment," 44 U.C. Davis L. Rev. 483, 489 (2010) ...................................................... 4

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND FACTUAL CORRECTIONS.

In order to seek $250 in alleged copyright damages, Plaintiff has filed at least a half dozen motions or ex parte applications, two lengthy oppositions, and has sought to issue at least three subpoenas throughout California to find out who is behind the mungergames.net political internet blog. It is difficult to know what else Plaintiff may have done to that end, since Plaintiff only recently began providing notice to anyone about any of her numerous court filings.

There is no dispute that this motion to quash implicates serious Constitutional rights that cannot be invaded lightly. Nonetheless, Plaintiff sought to slip these subpoenas through the court system unnoticed by styling her court papers as "Ex Parte Applications" or "Administrative Motions" and thus avoid notice requirements. Doe 1 and Mr. Schroeder only learned of the motions by chance, and specifically had to contact this Court to determine their status and request an opportunity to oppose them. Decl. of Lori N. Schroeder at ¶¶ 11 – 14, and Exh. "A".

There is nothing routine or "administrative" about seeking to invade a party's First Amendment rights, and Plaintiff cannot make the requisite showing under any standard of proof. That is because Doe 1's "use" of Plaintiff's out-of-date publicity headshot for purposes of political criticism and commentary is Fair Use. Plaintiff argues that this Court cannot consider Fair Use at this juncture, but Plaintiff is wrong.

In addition, even if this Court were to find that Plaintiff had made a sufficient showing of copyright infringement – which Doe 1 adamantly asserts she did not and cannot do – this Court would still have to balance the competing harms. This Court should find that the potential harm to Doe 1 in unmasking his[1] identity is far greater than any harm Plaintiff could possibly establish if her subpoenas were disallowed.

---

[1] Though this brief uses a singular, male pronoun for Doe 1, no information is connoted by use of such pronoun.

- 1 -
SUR-REPLY OF DOE 1 AND THIRD PARTY MICHAEL J. SCHROEDER TO PLAINTIFF'S ADMINISTRATIVE MOTIONS FOR LEAVE TO TAKE LIMITED DISCOVERY, Case No. 13-cv-01465 SI

Doe 1's counsel has already informed Plaintiff's attorney that he will accept service on Doe 1's behalf, so this $250 lawsuit can proceed fully even with Doe 1's anonymity intact. Counsel's acceptance of service completely eliminates any of Plaintiff's claimed need for the subpoenas.

## II.   DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S PURPORTED NEED FOR DISCLOSURE

As thoroughly discussed in Doe 1's opening brief, regardless which standard of proof this Court employs, it must balance the potential harm to the defendant against the plaintiff's supposed need for disclosure of his identity. See, SaleHoo Grp., Ltd. v. ABC Co., 722 F. Supp. 2d 1210, 1216-17 (W.D. Wash. 2010); Highfields Capital Mgmt., L.P v. Doe, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) (court should "assess and compare the magnitude of the harms that would be caused to the competing interests by a ruling in favor of plaintiff and by a ruling in favor of defendant.")

Plaintiff argues that Doe 1 has not provided any proof of the potential harm he would suffer. First, case law states that irreparable harm to Doe 1 is presumed as a matter of law. Second, it is logically impossible for Doe 1 to provide "proof" of events that have not yet occurred.[2]

The presumption of irreparable harm was stressed in Art of Living Foundation v. Does 1 – 10, 2011 WL 5444622 (N.D. Cal. 2011). The court found that harm to defendant caused by disclosure was presumed as a matter of law. Relying on binding Ninth Circuit precedents, the Art of Living court stated, "[T]o the extent that [defendant's] anonymity facilitates free speech, the disclosure of his identity is itself irreparable harm." Art of Living, supra, 2011 WL 5444622 at *9

---

[2] Plaintiff also argues that Mr. Schroeder is required to show some type of independent harm to himself, or alternatively that the emails sought from him are privileged. This is a red herring, as the proposed subpoena to Mr. Schroeder also seeks to unmask the identity of Doe 1 and/or mungergames.net. (Doc. 20, Exh. 2) Thus, the same potential harm is at issue. Further, the grossly overbroad proposed subpoena demands that Mr. Schroeder surrender six months of his own personal emails, despite the fact he is not a party in this case and is an attorney. Dart Indus. Co. v. Westwood Chem. Co., 649 F.2d 646, 649 (9th Cir.1980) ("the word 'non-party' serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery").

1  (emphasis added), *quoting* Perry v. Schwarzenegger, 591 F.3d 1147, 1158 (9th Cir. 2010) ("One injury to Proponents' First Amendment rights is the disclosure itself. Regardless of whether they prevail at trial, this injury will not be remediable on appeal."). See also, In re Anonymous Online Speakers, 661 F.3d 1168, 1173 (9th Cir. 2011).

The Art of Living court went on to note that defendant had "submitted a declaration expressing his concern that the adherents of [Plaintiff] would harass or retaliate against him or his family if his identity would be disclosed. (citation) Although the court did not find [defendant's] evidence particularly reliable, it found the reasonable inference self-evident that unveiling [defendant's] identity would subject him to harm and chill others from engaging in protected speech." Signature Mgmt. Team, LLC v. Automatic, Inc., ___F. Supp. 2d ___, 2013 WL 1739480 at *9 (N.D. Cal. 2013) (emphasis added), citing Art of Living.

As noted in Doe v. Cahill, 884 A.2d 451 (Del. 2005), a plaintiff could bring a non-meritorious action against an anonymous defendant, knowing they will lose, but still be successful in their main goal: unmasking their critic's identity. "After obtaining the identity of an anonymous critic through the compulsory discovery process, a . . . plaintiff who either loses on the merits or fails to pursue a lawsuit is still free to engage in extra-judicial self-help remedies; more bluntly, the plaintiff can simply seek revenge or retribution." Id. at 457 (emphasis added). That is one of the primary reasons the Cahill court adopted a "summary judgment" standard of proof for political speech, rather than the lower good faith standard. Id.

By contrast, there is no compelling need for the disclosure of Doe 1's identity at this time. Plaintiff claims she cannot go forward with this lawsuit unless she determines Doe 1's identity. However, with the announcement that counsel for Doe 1 will accept service on behalf of Doe 1, there is no longer any requirement for Plaintiff to learn Doe 1's identity in order to serve Plaintiff's Complaint. The Art of Living court, as summarized in Signature Mgmt. Team, supra, 2013 WL 1739480 at *9, found that anonymity should be protected though the lawsuit is proceeding:

> The court found no similar harm to the [plaintiff] should [defendant] remain anonymous, noting that [defendant] had been engaged in the litigation and responsive to discovery

requests. Art of Living at *10. The court noted that [defendant's] identity may later need to be revealed to facilitate a deposition or to enforce any judgment obtained against him. Id. Even so, the court quashed the subpoena seeking [defendant's] identity and stayed further discovery on that subject. Id.

Doe 1 has immediate plans to move forward with a summary judgment motion and request for all attorneys' fees, or alternatively a motion to dismiss and/or for Rule 11 sanctions in this case. The Ninth Circuit has very recently stated that where "no material, historical facts are at issue and the parties dispute only the ultimate conclusions to be drawn from those facts . . . [a court can] conclude as matter of law that the challenged use [does or] does not qualify as a fair use of the copyrighted work." Selzer v. Green Day, Inc., 725 F.3d 1170, 1175 (9th Cir. 2013), *quoting*, Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 564.  See generally, N. Snow, "Judge Playing Jury: Constitutional Conflicts In Deciding Fair Use On Summary Judgment," 44 U.C. Davis L. Rev. 483, 489 (2010) ("Today disputes over fair use are nearly always decided at summary judgment.")

As a matter of law, then, this Court can look at the uncontroverted evidence of what was posted on the mungergames.net website, evaluate the four Fair Use factors, and reach a legal conclusion.  Doe 1 is confident that the factors tip overwhelmingly in favor of a finding of Fair Use, which will end this case as a matter of law prior to the need for any depositions.

III.   THIS COURT SHOULD CONSIDER THE "FAIR USE" DOCTRINE IN DETERMINING WHETHER TO QUASH PLAINTIFF'S SUBPOENA

The fair use doctrine is at the very heart of this matter, because there can be no copyright infringement if the use is fair.  Selzer, supra, 725 F.3d at1175 ("17 U.S.C. § 107 establishes that fair use of a copyrighted work is not an infringement of copyright").  Perhaps recognizing the overwhelming strength of Doe 1's Fair Use argument, Plaintiff tries to sweep it under the rug.

Plaintiff asserts that numerous courts, including the U.S. Supreme Court, have held that this court cannot consider the Fair Use doctrine in determining this motion to quash.  This assertion is simply wrong.  In addition to defying logic, the cases Plaintiff cites at page 18 actually stand for the exact opposite proposition.

In Art of Living, supra, the court applied the two-part test set forth in Highfields, supra, 385

1  F. Supp. 2d at 971 (granting anonymous internet speaker's motion to quash subpoena to isp).  At the
2  first step, the plaintiff must produce competent evidence supporting a finding of each fact that is
3  essential to a given cause of action.  Secondly, the court must compare the magnitude of the harms
4  that would be caused to the competing interests by a ruling in favor of the plaintiff and a ruling in
5  favor of the defendant. <u>Signature Mgmt. Team</u>, <u>supra</u>, 2013 WL 1739480 at *9 (emphasis added),
6  citing, <u>Art of Living</u>, <u>supra</u>, 2011 WL 5444622 at *7.

7  The <u>Art of Living</u> court carefully balanced the competing harms and, <u>on that basis alone</u>,
8  quashed the subpoena seeking the identity of an anonymous blogger. Therefore, the court had no
9  reason to address the first factor, which would have implicated the Fair Use defense.  Far from
10 stating that a court should not consider Fair Use on a motion to quash, the <u>Art of living</u> court stated:

> It is worth noting, however, that because fair use is generally considered an affirmative defense, a defendant's conduct may be constitutionally protected even where a plaintiff establishes a prima facie case of copyright infringement. *See, e.g.*, <u>Elvis Presley Enters. v. Passport Video</u>, 349 F.3d 622, 626 (9th Cir. 2003) (Finding that although the plaintiff had shown ownership and copying, the district court did not abuse its discretion in finding fair use). <u>As the fair use doctrine enshrines an important first amendment protection, a court determining whether to unmask an anonymous defendant might consider fair use arguments raised in a motion to quash even where the applicable standard requires only a prima facie showing of the plaintiff's claim</u>.  *See*, <u>Arista Records LLC v. Doe</u>, 604 F.3d 110 (2d Cir.2010) (applying the <u>Sony Music</u> factors and rejecting defendants' vague allegations that their unauthorized downloading of plaintiffs' musical recordings 'may' be protected by fair use).

<u>Art of Living</u>, <u>supra</u>, 2011 WL 5444622 at *8, n.6 (emphasis added).

This plain language is indisputable.  Citing to both Ninth Circuit and Second Circuit precedent, the <u>Art of Living</u> court clearly stated that a court should consider the Fair Use affirmative defense when determining whether a plaintiff has met its burden of proof on a motion to quash.

IV.  <u>THE "FAIR USE" FACTORS WEIGH IN FAVOR OF QUASHING PLAINTIFF'S SUBPOENA</u>

The doctrine of Fair Use is discussed at length in Doe 1 and Schroeder's Opposition. Although Plaintiff does not dispute what the four factors are, she disputes essentially all of Doe 1's and Schroeder's conclusions.  Perhaps hoping this Court would adopt her ill-reasoned arguments to

- 5 -
SUR-REPLY OF DOE 1 AND THIRD PARTY MICHAEL J. SCHROEDER TO PLAINTIFF'S ADMINISTRATIVE MOTIONS FOR LEAVE TO TAKE LIMITED DISCOVERY, Case No. 13-cv-01465 SI

ignore Fair Use at this juncture, Plaintiff makes quick work of analyzing the four factors and does not address most of the cases cited in the Opposition. For purposes of this limited sur-reply brief, Doe 1 and Schroeder will readdress only the first two factors.

A.  PURPOSE AND CHARACTER OF THE USE

As discussed in Doe 1's opening brief, whether a work is "transformative" is of utmost importance, and "[t]he more transformative the new work, the less important the other factors, including commercialism, become." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994). The Opposition cites numerous cases establishing that publication of a photograph for purposes of criticizing the photograph's subject matter is transformative, and thus Fair Use.

Plaintiff argues that the use of her headshot is not "transformative" because Doe 1 did not alter the photo, and thus did not add any new expression, meaning or message. That argument was soundly put to rest in the Sedgwick case, which states:

> The question of fair use does not turn simply on whether the photographs themselves were unaltered. Rather, as the relevant jurisprudence makes clear, the salient inquiry is whether the use of the photos, *in the specific context used,* was transformative. See Perfect 10, Inc., 508 F.3d at 1164 ("a search engine puts images *'in a different context'* so that they are 'transformed into a new creation.' ") (emphasis added). In that regard, the Ninth Circuit has consistently held that "making an exact copy of a work may be transformative so long as the copy serves a different function than the original work[.]" Id. (image originally used for entertainment or aesthetic purposes was transformed where defendant used the same image to facilitate use of an internet browser to locate information on the web); Kelly v. Arriba Soft Corp., 336 F.3d 811, 816 (9th Cir.2003) ( "exact replication" of protected images was fair use where used in a different context from the original); Mattel, 353 F.3d at 802 (photographs of Barbie dolls "in various absurd and often sexualized positions" parodied "Barbie's influence on gender roles and the position of women in society" and hence was transformative); see also Nunez v. Caribbean Intern. News Corp., 235 F.3d 18, 22 (1st Cir.2000) (holding that use of unaltered pictures in conjunction with editorial commentary gave them "new meaning" sufficient to transform the works into a "newsworthy" use); Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 115 n. 3 (2d Cir.1998) (application of the fair use doctrine is particularly apropos where the use of the work disparages the original).

Sedgwick Claims Management Services, Inc. v. Delsman, 2009 WL 2157573 (N.D. Cal. 2009) (emphasis added), aff'd, 422 Fed.Appx. 651 (9th Cir. 2011).

Cases consistently hold that criticizing, debating or commenting on the subject of an

- 6 -
SUR-REPLY OF DOE 1 AND THIRD PARTY MICHAEL J. SCHROEDER TO PLAINTIFF'S ADMINISTRATIVE
MOTIONS FOR LEAVE TO TAKE LIMITED DISCOVERY, Case No. 13-cv-01465 SI

unaltered photograph is transformative.  It is difficult to argue with that premise, as the Fair Use statute itself states that reproduction "for purposes such as criticism, comment, [or] news reporting" is not an infringement of copyright.  17 U.S.C. § 107.  In addition to the numerous cases already cited in Doe 1's opening brief (see pages 17 – 19), further research has revealed the following additional cases.

In <u>Calkins v. Playboy Enterprises Intern., Inc.</u>, 561 F.Supp.2d 1136, 1141 (E.D. Cal. 2008), the court addressed whether republication of a centerfold model's photograph was transformative when used in an article about the model.  The court stated:

> In this regard, the Court finds PEI's use of the Photograph to be transformative because although PEI made a replica of the Photograph, <u>the reproduced image was much smaller and served an entirely different function than the original image</u>. Mother Lode originally created the Photograph for the limited purpose of being used as a gift by Shannon's family and friends [ ] while PEI used the Photograph, in conjunction with other photographs of Shannon and a handwritten biography, for the purpose of personalizing Shannon by providing insight into her life, including how she grew up and what her interests are. [ ] Thus, <u>because PEI used the Photograph in a new context to serve a different function</u> (inform and entertain Playboy readers) than the original function (gifts for family and friends), <u>PEI's use did not supersede the function of the original Photograph, and therefore PEI's use is transformative</u>. *See* <u>Kelly,</u> 336 F.3d at 818-19; *see also*, <u>Nunez v. Caribbean Int'l News Corp.</u>, 235 F.3d 18, 22-23 (1st Cir.2000) (republication of photographs taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain). (emphasis added)

In the <u>Nunez</u> case, plaintiff photographer had taken photos of "Joyce Giraud (Miss Puerto Rico Universe 1997) for use in Giraud's modeling portfolio. Núñez then distributed the photographs to various members of the Puerto Rico modeling community in accordance with normal practice." <u>Id.</u>, 235 F.3d at 21.  A local television station reproduced the photographs for purposes of debate and commentary on whether the photos "were appropriate for a Miss Puerto Rico Universe, based on the fact that Giraud was naked or nearly naked in at least one of the photos." <u>Id.</u>  A magazine then republished the photos in articles about the controversy.

Nunez sued for copyright infringement, and the court found Fair Use and dismissed the complaint with prejudice.  The court stated, "[W]hat is important here is that <u>plaintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper; the former use, not</u>

the latter, motivated the creation of the work. Thus, by using the photographs in conjunction with editorial commentary, El Vocero did not merely "supersede[ ] the objects of the original creation[s]," but instead used the works for "a further purpose," giving them a new "meaning, or message." Id. at 23, *citing*, Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994).

In summary, Doe 1 indisputably placed Plaintiff's publicity headshot in a different context and used it for a different purpose than originally intended. Plaintiff says she commissioned the headshot for publicity; Doe 1 posted the headshot for purposes of criticism and commentary. Overwhelming authority holds this is transformative, which weighs heavily in favor of Fair Use.

B.     NATURE OF THE COPYRIGHTED WORK

Plaintiff argues that her headshot photo is "creative" because the photographer made certain creative choices such as urging her to smile, lighting and location. However, as in the Nunez case, where pictures were taken for a modeling portfolio, this does not warrant a finding of "creative". The Nunez court stated:

> The district court suggested, and we agree, that Núñez's pictures could be categorized as either factual or creative: certainly, photography is an art form that requires a significant amount of skill; however, the photographs were not artistic representations designed primarily to express Núñez's ideas, emotions, or feelings, but instead a publicity attempt to highlight Giraud's abilities as a potential model. *Cf.* Haberman v. Hustler Magazine, Inc., 626 F. Supp. 201, 211 (D. Mass. 1986) (reproduction of surrealistic art in magazine, where creativity counted against fair use finding).

Nunez, supra, 235 F.3d at 23 (emphasis added).

Likewise, in the present case, Plaintiff's headshot was not meant to express her photographer's ideas, emotions or feelings, but instead as publicity for Plaintiff as a political candidate. Complaint at ¶ 11.  There is nothing in Plaintiff's Complaint or any declaration that states that the photographer took Plaintiff's photo for purposes of creating an original artistic work. Thus, this factor also weighs in favor of finding Fair Use.

Also relevant to this factor is Plaintiff's own statement that Doe 1 "cut-and-pasted the Headshot Photograph 'from a previous [Dhillon] political campaign' website". (Reply Brief at p. 3).  Thus, Plaintiff admits she has previously published her headshot, which is a fact that also

weighs in favor of a finding of Fair Use. Harper & Row, supra, 471 U.S. at 555.[3]

In summary, considering the above case law in combination with the discussion of all Fair Use factors in the Opposition brief, this Court should find that the four factors overwhelmingly support a finding of Fair Use. Thus, under any standard, Plaintiff cannot meet her burden of proof of success on the merits sufficient to vanquish Doe 1's First Amendment rights.

V. THE NINTH CIRCUIT HAS ADOPTED THE HIGHEST BURDEN OF PROOF WHEN POLITICAL SPEECH IS AT STAKE

Perhaps the most complicated issue this Court needs to address is what standard of proof is required of Plaintiff before this Court can invade Doe 1's First Amendment rights. Plaintiff argues for a standard of proof from the Arista Records case, apparently because it is the only circuit court case addressing this issue in the copyright context. However, the Ninth Circuit has plainly stated that it is the type of speech that should be the determinative factor, and not the cause of action alleged. Art of Living, supra, 2011 WL 5444622 at *5.

As stated in Anonymous Online Speakers, supra, 661 F.3d at 1177, "the nature of the speech should be a driving force in choosing a standard by which to balance the rights of anonymous speakers in discovery disputes." The court noted that the speech at issue in Anonymous Online Speakers was purely commercial speech, and thus "should be afforded less protection than political, religious, or literary speech." Id. Similarly, the Sony Music case (which formed the basis of the Arista Records decision) stated that illegal downloading of music "qualifie[d] as speech, but only to a degree" and thus deserved only protection that "is limited, and subject to other considerations." Sony Music Ent., Inc. v. Does 1 – 40, 326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004).

By contrast, political speech is at the heart of the First Amendment and deserving of the highest protections. Anonymous Online Speakers, supra, 661 F.3d at 1173 citing, Meyer v. Grant, 486 U.S. 414, 422, 425 (1988). The Court stressed that the First Amendment protection of "core political speech" is "at its zenith". It is simply inappropriate to equate illegal music downloading

---

[3] Plaintiff's claim that she "carefully restricted" any prior publication is belied by a simple internet search, which reveals hundreds of Plaintiff's publicity photos. Schroeder Decl. at ¶ 15, Exh. "B".

- 9 -

SUR-REPLY OF DOE 1 AND THIRD PARTY MICHAEL J. SCHROEDER TO PLAINTIFF'S ADMINISTRATIVE MOTIONS FOR LEAVE TO TAKE LIMITED DISCOVERY, Case No. 13-cv-01465 SI

1  with robust political debate.  See, Chula Vista Citizens for Jobs & Fair Competition v. Norris, 875
2  F. Supp. 2d 1128, 1140-41 (S.D. Cal. 2012) (the degree of scrutiny varies depending on the
3  circumstances and the type of speech at issue).

4       This Court should apply the Cahill summary judgment standard to a case involving political
5  speech, such as the present case.  See, Doe v. Cahill, 884 A.2d 451 (Del.2005).  This assertion is
6  based on the Ninth Circuit's recent statement in the Anonymous Online Speakers case.  Plaintiff
7  argues that Anonymous Online Speakers "did no more than refrain from overturning the District
8  Court's application of the Cahill standard".  (Reply at p. 16)  However, it is difficult to argue with
9  the following direct quotation from the Anonymous Online Speakers opinion: "Because *Cahill*
10 involved political speech, that court's imposition of a heightened standard is understandable." Id. at
11 1177.  See also, SI03, Inc., supra, 441 F. App'x at 432 (9th Cir. 2011).

12      Doe 1's full analysis of the proper standard to apply is contained in the previous brief at
13 pages 8 through 15.  The analysis is complicated, and Plaintiff is free to disagree with Doe 1's
14 conclusion.  However, to accuse Doe 1 of "a blatant mischaracterization of the law" (Reply brief at
15 15) is unwarranted and hypocritical.

16 VI.    CONCLUSION

17      For all the foregoing reasons, Doe 1 and Schroeder respectfully request this Court to deny
18 both Administrative Motions.

19 Dated:  October 25, 2013               THE CIGEL LAW GROUP, P.C.

22                                        By:_____/s/_____
                                           Rick A. Cigel, Attorneys for
23                                         DOE 1 and THIRD PARTY
                                           MICHAEL J. SCHROEDER

- 10 -
SUR-REPLY OF DOE 1 AND THIRD PARTY MICHAEL J. SCHROEDER TO PLAINTIFF'S ADMINISTRATIVE
MOTIONS FOR LEAVE TO TAKE LIMITED DISCOVERY, Case No. 13-cv-01465 SI

# PROOF OF SERVICE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA

CASE NAME:  **HARMEET K. DHILLON v. DOE 1**
CASE NO.    **C 13-1465 SI**

The undersigned declares: I am a resident of the United States and am employed in the City and County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite 400, Los Angeles, California 90024.

On October 25, 2013, I served the following documents:

1. **SUR-REPLY BRIEF OF DEFENDANT DOE 1 AND THIRD-PARTY MICHAEL J. SCHROEDER IN OPPOSITION TO PLAINTIFF'S ADMINISTRATIVE MOTIONS FOR LEAVE TO TAKE LIMITED DISCOVERY PRIOR TO A RULE 26(f) CONFERENCE**

2. **DECLARATION OF LORI N. SCHROEDER**

By serving in the manner described below to the interested parties herein and addressed to:

| | |
|---|---|
| Harold P. Smith | Joel Voelzke |
| Krista L. Shoquist | Intellectual Property Law Office of Joel Voelzke |
| Dhillon & Smith, LLP | 24772 W. Saddle Peak Road |
| 177 Post Street, Suite 700 | Malibu, CA 90265-3042 |
| San Francisco, CA 94108 | |
| | *Attorney for New Dream Network* |
| *Attorneys for Dhillon* | |

[x] **ELECTRONIC MAILING:** I emailed copies of all documents to the above party(s) at their respective email addresses as shown above.

[ ] **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

[x] **(FEDERAL):** I declare that I am employed by the office of a member of the bar of this court at whose direction the service was made.

Executed on October 25, 2013 at Los Angeles, California.

                                   /s/
                                   Lori N. Schroeder