1  Rick A. Cigel, Esq. (SBN 105424)
2  THE CIGEL LAW GROUP, P.C.
   10866 Wilshire Blvd., Suite 400
3  Los Angeles, California 90024
   Tel:  (424) 901-8513
4  Fax:  (424) 901-8514

5  Attorneys for Defendant
   DOE 1

6

7

8              UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  HARMEET K. DHILLON, an individual,        Case No. 13-cv-01465 SI

12                    Plaintiff,
                                              DECLARATION OF RICK A. CIGEL IN
13         vs.                                SUPPORT OF DEFENDANT DOE 1'S MOTION
                                              FOR JUDGMENT ON THE PLEADINGS
14  DOE 1, an unknown individual, and DOES 2  PURSUANT TO FRCP 12(C) OR FOR
    through 10,                               SUMMARY JUDGMENT
15
                      Defendants.             Date:  February 28, 2014
16                                            Time: 9:00 a.m.
                                              Courtroom 10, 19th Floor
17                                            Hon. Susan Illston

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF RICK A. CIGEL

I, Rick A. Cigel, declare and state as follows:

1.     I am an attorney at law duly licensed to practice before all the courts in the State of California.  I have personal knowledge of the matters set forth below, and if called upon to do so, I could and would testify competently thereto.

2.     I am the principal at The Cigel Law Group, P.C., counsel for Defendant Doe 1. Doe 1 is an unnamed defendant and files this motion under his or her fictitious name in order to preserve anonymity.  No reference to Doe 1 in this declaration or in the opposition brief is meant to convey any information about the gender of Doe 1 or the number of individuals involved.

3.     The Munger Games is a wholly noncommercial blog that posts articles and commentary about California politics on its website at www.mungergames.net.  Its articles and commentary are not only viewed directly by internet viewers, but are either reposted or commented on by multiple other websites that deal exclusively with politics and current events that affect California.

4.     The Munger Games website has absolutely no commercial elements.  It does not sell anything.  It does not charge anything to view any part of the site.  The website does not request payment or contributions for anything, and has no functionality that permits payment of money.

5.     The principal focus of articles published on The Munger Games is Charles Munger, Jr.  The website also publishes articles on other individuals and subjects relating to California politics.

6.     The website www.votesmart.org contains reports on politician's campaign finances.  On September 20, 2013, I conducted a search of campaign finances for plaintiff Harmeet K. Dhillon ("Dhillon").  Attached hereto as Exhibit "A" is a true and correct copy of the results of that search.  As shown on the second page, her top contributor was Charles Thomas Munger, Jr., who donated $7,500.00.

7.      Attached hereto as Exhibit "B" is a true and correct copy of the inaugural article written about Charles Munger, Jr. on "The Munger Games".  The article explains the purpose of the website as follows:

"Welcome to The Munger Games, the purpose of which is to inform, educat[e] and entertain on the subject of the one-man maelstrom of money intent on re-making California Republicanism in his bow-tied image.

Munger burst into California Republican politics a few short years ago, and has left a trail of political debris in his wake:

-Prop. 14, which created the top-two primary system that pits Republicans against Republicans in the general election.

-Prop. 20, which gave us the Citizens Redistricting Commission that was expertly gamed by the Democrats to the detriment of Republicans.

-A divisive effort to reduce the CRP platform to mush.

-Enormous expenditures to defeat the already dwindling number of GOP Assembly incumbents.

That's just the top-line scan of the damage Munger has and will inflict.  There are weirder tales still to tell.

Who is Charles Munger, Jr.? What makes him tick? What has he done? What will he do?"

8.      The Munger Games website has a graphic above every article that will not print through a normal computer print command.   The graphic says "THE MUNGER GAMES" in large and bold type, and has the motto "WASTING HIS PATRIMONY" in quotation marks immediately below.  To the left of the text is an image of a bow tie made out of a hundred dollar bill, which is a satirical reference to the fact that Munger frequently wears bow ties.  In order to show the graphic, a "screen shot" of the website was printed and is attached hereto as Exhibit "C".

9.      Attached hereto as Exhibit "D" is a true and correct copy of the February 12, 2013 blog post from The Munger Games, containing the article entitled "Meet Harmeet".   On the website, the article has the same logo shown in Exhibit "C".   The original posting of the article contained the headshot photograph of Dhillon directly below the headline "Meet Harmeet".   The photograph has been removed.   In place of the photograph, the article now has the words "Harmeet Dhillon" and "*Harmeet Dhillon*".

10.      In the "Meet Harmeet" article, the anonymous author addresses in detail the social and political positions that Dhillon supported through her ACLU membership.   The article goes on to observe that Munger was supporting Dhillon as "a leader and spokesperson for the California Republican Party" and stressed that Dhillon's liberal values were not consistent with the values of the Republican Party.   As the author wrote:

> "These are the values to which Harmeet Dhillon pledged her commitment in 2002.   And this is the individual Charles Munger, Jr. wants to elect as a leader and spokesperson for the California Republican Party.
>
> The question California Republican activists, leaders and elected officials need to ask themselves is whether these are the values of Republican Party?   How much will we compromise ourselves by following the prescriptions of Dr. Munger in the vain hope of 'broadening our appeal?'"

11.      Attached hereto as Exhibit "E" is a true and correct copy of the subpoena dated April 11, 2013, issued from the Northern District of California and served on New Dream Network, LLC, the webhost of The Munger Games.

12.      Dhillon filed and lost an administrative motion to compel compliance with that subpoena.   This Court denied the motion because it had no jurisdiction to enforce a subpoena directed against a company outside the Northern District.   In response to the Court's ruling, Dhillon had a subpoena issued on July 22, 2013 in the Central District of California to New Dream Network, LLC.   The subpoena attached the Amended Order Granting Plaintiff's *Ex Parte* Application for Leave to Take Limited Discovery Prior To A Rule 26(f) Conference from the

Northern District of California dated April 9, 2013 (Doc. 8).  A true and correct copy of the subpoena is attached hereto as Exhibit "F".

13.     On behalf of Doe 1, I filed a motion in the Central District of California to quash the subpoena issued to New Dream Network, LLC.   Dhillon filed an opposition brief claiming that she had "specifically limited" the information she was seeking so that she could "serve process on Defendants."  In response to that brief, I filed a Reply Brief in support of Doe 1's motion.  Attached hereto as Exhibit "G" is a true and correct copy of the brief.  On page 3, lines 15 through 19, I offered to accept service of the summons and complaint on behalf of Doe 1.  I was very surprised that Dhillon's counsel did not quickly accept that offer.  Until this Court entered its November 4, 2013 order instructing Doe 1's counsel to accept service (Dkt. 42), no one from Dhillon's firm contacted me at all to discuss my offer or to formalize the service of the summons and complaint.   Once the Court made its order, I was contacted by Dhillon's counsel and immediately agreed to accept service.   Dhillon's counsel agreed to withdraw the subpoena in light of the Court's order.

14.     Attached hereto as Exhibit "H" is a true and correct copy of the first page of the results of web search on the website www.bing.com/images.  I conducted this web search on January 14, 2014 and entered the search terms "Harmeet Dhillon photos."

15.     Attached hereto as Exhibit "I" are true and correct copies of pages from Dhillon's law firm website, available at www.dhillonsmith.com/harmeet-dhillon.  I obtained these images from the firm's website on January 14, 2014.  The pages consist of the following:

1)  a three-page resume of Dhillon, which stresses that her litigation practice in New York, London and the San Francisco Bay Area has had a "particular emphasis" on issues such as "intellectual property (including trademark litigation and internet torts)" and "First Amendment litigation (including defamation, trade libel, right of publicity, and anti-SLAPP motions."   In the "Areas of Expertise" section, she lists "Intellectual Property (Tradmark, Copyright and Trade Secrets)" and "First Amendment (Right of Publicity, Slander, Defamation, Trade Libel, and anti-SLAPP).   Dhillon was a law clerk for the

United States Court of Appeals for the Fourth Circuit and for the Constitutional Torts Section of the United States Department of Justice, Civil Division;

2)  a one-page discussion of the "Intellectual Property Registration, Licensing and Litigation" practice area of her firm.  This discussion touts their great experience in copyright matters; and

3) a one-page discussion of the "Defamation/Free Speech" practice area of her firm.  In that discussion, Dhillon's firm boasts that they are "zealous free speech advocates."  As her firm brags, "Dhillon & Smith's attorneys have defended the Constitutional right to free speech for decades.  We have represented clients-including volunteer organizations-besieged by meritless attempts by public and private individuals and entities to quell their speech.  In 2010 our firm won a landmark anti-SLAPP ("strategic lawsuit against public participation") on behalf of the elected leadership of a 1 million member plus political party unit."

16.    I am a 1982 graduate of the Northwestern University School of Law.  My billing rate for this matter is $625 per hour.  That rate is competitive with other Los Angeles litigation attorneys with my background and experience.    I had my two senior associates, Lori Schroeder and Michael Kadish, assist me on this case.  Ms. Schroeder is a 1990 graduate of UCLA School of Law and Mr. Kadish is a 1992 graduate of the Southwestern University School of Law.  The billing rate for Ms. Schroeder and Mr. Kadish on this matter is $550 per hour.

17.    I have reviewed my firm's billing records for this matter.  The billing records include all time spent on the investigation and research of all the issues, the motion and pleading work in the Northern District, and the motion and pleading work in the Central District of California.  Through December 2013, I spent a total of 80.20 hours on the case, for a total of $50,125.00.  Ms. Schroeder spent a total of 133.40 hours and Mr. Kadish spent 9.4 hours, for a combined total of $78,540.00.

18.     Therefore, through December 2014, my firm has spent a total of $128,665.00 in attorney's fees on this matter.  I will supplement this number to include the time spent since December 2014.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on January 14, 2014 at Los Angeles, California.

_____/s/_____

Rick A. Cigel

# EXHIBITS

Exhibit "A"

# Project Vote Smart (http://votesmart.org/)

**Return to search results (/search?q=harmeet dhillon)**

## Harmeet K. Dhillon

### Harmeet Dhillon's Campaign Finances



**(//votesmart.org/canphoto/104348_lg.jpg)**

**Full Name:** Harmeet K. Dhillon

**Gender:**    Female

**Birth Date:** 10/06/1968

**Birth Place:** Punjab, India

**See Full Biographical and Contact Information (/candidate/biography/104348/harmeet-dhillon)**

### Summary

| | |
|---|---|
| In-State | $31,708.00 |
| Out-Of-State | $11,151.00 |
| Unknown State | $1,067.00 |
| Party Committee | $0.00 |
| Leadership Committee | $0.00 |
| Personal Funds | $4,571.00 |
| Individual Contributions | $33,403.00 |
| Unitemized | $577.00 |
| Public Funding | $0.00 |
| Non-Contribution | $390.00 |
| Institutions and Companies | $4,986.00 |
| Total Contributions | 87 |
| **Total** | **$43,926.00** |

Cycle: 2012

**Data provided by FollowTheMoney.org (http://www.followthemoney.org/database/StateGlance**

**Exhibit A- Page 1**

/candidate.phtml?c=147478)

| Top Sectors | | Top Industries | |
|---|---|---|---|
| Uncoded | $22,304.00 | Uncoded | $22,304.00 |
| Government Agencies/Education/Other | $7,500.00 | Education | $7,500.00 |
| Lawyers & Lobbyists | $4,701.00 | Lawyers & Lobbyists | $4,701.00 |
| Candidate Contributions | $4,571.00 | Candidate Self-finance | $4,571.00 |
| Finance, Insurance & Real Estate | $2,500.00 | Insurance | $1,250.00 |
| Ideology/Single Issue | $1,184.00 | Real Estate | $1,250.00 |
| Unitemized Contributions | $577.00 | Conservative Policy Organization | $1,184.00 |
| Non-Contributions | $390.00 | Unitemized Contributions | $577.00 |
| Communications & Electronics | $200.00 | Non-Contribution | $390.00 |
| | | Computer Equipment & Services | $200.00 |

**Top Contributors**

| | |
|---|---|
| MUNGER JR, CHARLES THOMAS | $7,500.00 |
| DHILLON, HARMEET | $4,571.00 |
| DHILLON, PARMINDER | $3,900.00 |
| PETER, LAURA | $2,500.00 |
| SINGH, TEJINDER | $2,000.00 |
| THANGARAJ, PREETHA | $1,250.00 |
| AHLUWALIA, SATWANT | $1,000.00 |
| INVENTUS LAW INC | $1,000.00 |
| MOORE, CHARLES | $1,000.00 |
| DANG, KULMEET SINGH | $1,000.00 |
| LINCOLN CLUB OF NORTHERN CALIFORNIA | $1,000.00 |
| IRON SYSTEMS INC | $1,000.00 |
| SHERGILL LAW FIRM | $501.00 |
| LAW OFFICES OF BHALLA & CHO LLC | $500.00 |
| TOBIASON, JENNIFER | $500.00 |
| SHOQUIST, DEBORA | $500.00 |
| SINGH, MEETPAUL | $500.00 |
| BOWEN, WILLIAM | $500.00 |
| HUGHES, CHRISTINE | $500.00 |
| TEREE, DANIEL | $500.00 |
| SALUJA MEDICAL ASSOC PA | $500.00 |
| TOGNAZZINI, DONN | $500.00 |
| ABDULMASSIH, TONY | $500.00 |

One Common Ground, Philipsburg, MT 59858

Hotline:

888-Vote-Smart (888-868-3762)

All content © 1992 - 2013 Project Vote Smart **unless otherwise attributed** (/copyright) - **Privacy Policy** (/about/privacy) - Legislative demographic data provided by **Aristotle International, Inc.** (http://www.aristotle.com/) **Mobile Version (?flavour=mobile&utm_source=votesmart& utm_medium=mobile-link&utm_campaign=flavourswitch)**

| | |
|---|---|
| DHILLON, HARPAL | $500.00 |
| BHASIN, MANMEET | $300.00 |
| GHARAKHANIAN, ANDRE | $300.00 |
| BHALLA, AMARDEEP | $250.00 |
| ROSSETTI, LISA | $250.00 |
| BHATT, MANOJ | $250.00 |
| GAUBA, POOJA | $250.00 |
| BUHLER, LUIS PALTENGHE | $250.00 |
| MUNOZ, CALISE | $250.00 |
| BALI, TANUJA | $250.00 |
| SANDHU, SAWTANTER | $250.00 |
| ADVANI, MUKESH | $250.00 |
| SINGH, HARJINDER | $250.00 |
| BAJWA, PRABHJOT | $250.00 |
| DHILLON, SADEV | $250.00 |
| SHARMA, DEVENDRA | $250.00 |
| CABERWAL, DALJIT S | $250.00 |
| MUNDY, DARSHAN S | $250.00 |
| SAWHNEY, GURJIT | $200.00 |
| REKHI, KANWAL | $200.00 |
| GOEL, RASMI | $200.00 |
| WHALEY, SHANE | $200.00 |
| CAGNON, CHARLES | $200.00 |
| BHASIN, BALJEET | $200.00 |
| CALIFORNIA TRAILBLAZERS | $184.00 |
| BEDI, SUNDEEP | $150.00 |
| OHARA, RITA | $150.00 |
| DHILLON, MANPREET | $150.00 |
| STORELLA, JOHN | $150.00 |
| AASRA SOLUTIONS & TECHNOLOGIES | $101.00 |
| MALHI, MEETA | $101.00 |
| MEGHANI, MIHIR | $101.00 |
| GURCHARAN, KANWAL | $101.00 |
| DHILLON, RENNU | $100.00 |
| MALLEY, GREGORY | $100.00 |
| WALHA, GURMUKH | $100.00 |
| GULERIA, SHER SINGH | $100.00 |
| MOYER, THOMAS | $100.00 |

**Exhibit A- Page 3**

| | |
|---|---|
| WILDER, DEBORAH | $100.00 |
| KAUR, RAJVINDER | $100.00 |
| PATEL, USH | $100.00 |
| STEVES APPLIANCE REPAIR | $100.00 |
| KRVARIC, TONY | $100.00 |
| FOWLER, PETER | $100.00 |
| VUKSICH, ALEXANDRA | $100.00 |
| JUDGE, VERINDER | $100.00 |
| BEDI, HARMOHAN | $100.00 |
| KIACHKO, DAVID | $100.00 |
| POOLE, EDWARD G | $100.00 |
| BHUTANI, KAWALJIT | $100.00 |
| WAVERLY HEMATOLOGY ONCOLOGY | $100.00 |
| SINGH, DARSHAN | $100.00 |
| ANTHOOR, SWAPNA | $100.00 |
| CHADHA, HARPREET | $100.00 |
| NASKAR, ALOKA | $100.00 |
| SINGH, NAGINDER | $100.00 |
| BEDHI, HARMOHAN | $100.00 |
| KHOSA, GURJANT | $100.00 |

**Exhibit A- Page 4**

9/20/2013 10:10 AM

Exhibit "B"

# **Welcome To The Munger Games!**



*Charles Munger, Jr.*

How much damage can one man do to a political party?

In the case of Charles Munger, Jr. and the California Republican Party, the answer is: a lot.

Welcome to The Munger Games, the purpose of which is to inform, education and entertain on the subject of the one-man maelstrom of money intent on re-making California Republicanism in his bow-tied image.

Munger burst into California Republican politics a few short years ago, and the has left a trail of political debris in his wake:

- Prop. 14, which created the top-two primary system that pits Republicans against Republicans in the general election.

- Prop. 20, which gave us the Citizens Redistricting Commission that was expertly gamed by the Democrats to the detriment of Republicans.

- A divisive effort to reduce the CRP platform to mush.

- Enormous expenditures to defeat the already dwindling number of GOP Assembly incumbents.

That's just the top-line scan of the damage Munger has and will inflict. There are weirder tales still to tell.

Who is Charles Munger, Jr.? What makes him tick? What has he done? What will he do?

**Share this:**

**Exhibit B - Page 1**

This entry was posted in California Republican Party, Charles Munger, Intra-party mayhem, Redistricting, Top-Two Primary on January 30, 2013 [http://www.mungergames.net/?p=7] .

Exhibit "C"

HOME



# THE MUNGER GAMES

## *"WASTING HIS PATRIMONY"*

## Welcome To The Munger Games!

Leave a reply



*Charles Munger, Jr.*

How much damage can one man do to a political party?

In the case of Charles Munger, Jr. and the California Republican Party, the answer is: a lot.

Welcome to The Munger Games, the purpose of which is to inform, education and entertain on the subject of the one-man maelstrom of money intent on re-making California Republicanism in his bow-tied image.

Munger burst into California Republican politics a few short years ago, and the has left a trail of political debris in his wake:

- Prop. 14, which created the top-two primary system that pits Republicans against Republicans in the general election.

- Prop. 20, which gave us the Citizens Redistricting Commission that was expertly gamed by the Democrats to the detriment of Republicans.

- A divisive effort to reduce the CRP platform to mush.

- Enormous expenditures to defeat the already dwindling number of GOP Assembly incumbents.

That's just the top-line scan of the damage Munger has and will inflict. There are weirder tales still to tell.

### RECENT POSTS

CRA President John Briscoe Misses The Point While Emulating Left-Wing Tactics

From Our Readers: "Munger Envisions A World Where People Do Not Run As Republicans"

From Our Readers: "This Lawsuit Appears Aimed At Suppressing The Political Speech of the Authors"

Harmeet Dhillon: Use Her Photo, Get Sued. Bring Sword To Movies, She'll Be Your Lawyer

Harmeet's Free-Speech Hypocrisy

### RECENT COMMENTS

Bob Richmond on CRA President John Briscoe Misses The Point While Emulating Left-Wing Tactics

From Our Readers: "Munger Envisions A World Where People Do Not Run As Republicans" | The Munger Games on Munger's 2013 Contributions to County GOPs Pass the $1 Million Mark

From Our Readers: "This Lawsuit Appears Aimed At Suppressing The Political Speech of the Authors" | The Munger Games on Munger Proxy/Attorney & CRP Vice Chair Harmeet Dhillon Sues the Munger Games

**Exhibit C Page 1**

Exhibit "D"

# Meet Harmeet

Harmeet Dhillon

*Harmeet Dhillon*

We have asked the question, "Who is Charles Munger, Jr.?"

Although we haven't finished answering it, we also need to ask ourselves, "What does he want?"

To begin with, he wants to control and re-shape the California Republican Party, and the way he is going about it right now is by supporting Harmeet Dhillon for CRP Vice Chairman. Dhillon is the chair of the San Francisco Republican Party.

It will take more than one blog post to paint a complete picture of Harmeet Dhillon, but we can start with her deep, active involvement with the American Civil Liberties Union.

Yes, that ACLU.

In late 2002, Dhillon was running for the Board of Directors of the ACLU of Northern California. Here is her candidate statement, as it appeared in the November-December 2002 edition of *"ACLU News"*:

*"I am deeply honored to have been nominated as a candidate for the Board of Directors. I am an attorney in Palo Alto, where I practice complex commercial litigation. Both my career as a lawyer and my former career as a journalist have impressed upon me the crucial importance of the First Amendment to our democracy. Throughout my legal career I have performed pro bono legal services for victims of human rights and civil rights violations, domestic abuse and employment Discrimination, and have been recognized for my work on behalf of the Lawyers' Committee for Human Rights and the Network for Women's Services. I am committed to the values championed by the ACLU-NC."*

The same newsletter gives some alarming examples of the ACLU values to which Dhillon vows she is committed. The italicized sections are taken directly from the ACU newsletter.

**Removing "Under God" from the Pledge of Allegiance**
*In striking down the McCarthy-era law that rewrote the Pledge of Allegiance to insert the words "under God," Newdow v. United States Congress, the Ninth Circuit breathed life into the Pledge's stirring ideal of a country "with liberty and justice for all." The decision secured liberty for children of*

**Exhibit D - Page 1**

9/20/2013 10:18 AM

*minority faiths who have quietly been denied religious freedom for nearly 50 years, when pressured in public school to pledge allegiance to a God they do not worship.*

**Opposition to Anti-Pornography Filters on Public Library Computers**

*"As the Children's Internet Protection Act (CIPA) went into effect this September, activists and students around the nation criticized the new law as "closing the door to knowledge." CIPA requires public schools and libraries to block Internet access to materials deemed "harmful to minors" in order to receive certain federal funds.*

*"A fundamental goal of the Internet is to open the door to knowledge, but internet blocking software slams this door," ACLU-NC staff attorney Ann Brick told reporters.*

**Support of Drivers Licenses For Illegal Immigrants…Without Criminal Background Checks)**

*In an election year, Gov. Davis needs the support of immigrant communities. Nevertheless, the Governor vetoed AB 60 (Cedillo-D), a crucial bill that would have allowed immigrants in the process of applying for legal status to receive a driver's license. A companion bill SB 804 (Polanco-D), which included provisions requiring that applicants give a digital thumbprint, undergo a criminal background check, and submit proof of employment in California, was also returned unsigned.*

*The ACLU and immigrants' rights groups strongly opposed the background check provisions demanded by Gov. Davis and included in SB804, because they are unrelated to a person's ability to drive, do not address public safety concerns, and discriminate against immigrants.*

**Educating School Children on LGBT Issues**

*Focusing on schools, [Matt] Coles [director of the national ACLU Lesbian & Gay Rights and AIDS Project] explained, is important for two reasons: LGBT students are extremely vulnerable, and we can achieve great progress by educating youth about LGBT rights. He explained that school officials know they cannot discriminate openly against lesbian and gay student groups, so they are now setting up bureaucratic obstacles to the recognition of such clubs. The Projects are actively helping courageous students across the country deal with these obstacles.*

**Redefining Family**

*In the past, Coles said, opponents of gay and lesbian equality have used the issue of "family" to attack gay people. More recently, however, public opinion is changing. That change is due in part to the ACLU's public education campaign based on a Florida case in which the Projects are representing two gay foster parents fighting to keep their family of seven intact in spite of efforts by the state to get a heterosexual family to adopt the children. In part because the case involves HIV-positive children and attracted the celebrity support of Rosie O'Donnell, it has dramatically changed Americans' perceptions of lesbian and gay men and their families.*

**Exhibit D – Page 2**

*The Project's work, like the ACLU's efforts in general, is grounded in the belief that government must follow the rule of law, said Coles. He expressed dismay about how the federal government is flouting the rule of law, whether in its pursuit of the "war on terrorism," military action in Iraq, or the denial of lesbian and gay equality.*

"Under God" in the Pledge of Allegiance oppresses children? Giving drivers licenses to people here illegal without even a background check to exclude criminal aliens? Opposing anti-porn filters in libraries? Injecting LGBT advocacy groups' talking points into public schools?

And believe it or not, there's more. We'll bring that to you tomorrow.

These are the values to which Harmeet Dhillon pledged her commitment in 2002. And this is the individual Charles Munger, Jr. wants to elect as a leader and spokesperson for the California Republican Party.

The question California Republican activists, leaders and elected officials need to ask themselves is whether these are the values of Republican Party?  How much will we compromise ourselves by following the prescriptions of Dr. Munger in the vain hope of "broadening our appeal"?

**Share this:**

This entry was posted in California Republican Party, Charles Munger, Harmeet Dhillon, Principles on February 12, 2013 [http://www.mungergames.net/?p=41] .

## 2 thoughts on "Meet Harmeet"

Pingback: Meet Harmeet, Part 2 | The Munger Games

Pingback: Munger Proxy/Attorney Harmeet Dhillon Sues the Munger Games | The Munger Games

**Exhibit D - Page 3**

Exhibit "E"

4/11/13 ∂SP⊢

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of California

| | | |
|---|---|---|
| Harmeet K. Dhillon | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   13-cv-01465-JCS |
| DOE 1, an unknown individual, et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| _Defendant_ | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: New Dream Network, LLC, dba DreamHost, c/o CT Corporation System (CO168406), 818 West Seventh Street, Los Angeles, CA 90017

☑ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: Documents sufficient to identify the account information for the domain name "Mungergames.net," hosted by DreamHost, including the names, addresses, telephone numbers, and e-mail addresses of the owner(s) of the domain name "Mungergames.net." You are to comply with this subpoena pursuant to the terms set forth in the Amended Order attached hereto as Attachment A.

| Place: Dhillon & Smith LLP | Date and Time: |
|---|---|
| 177 Post Street, Suite 700 San Francisco, CA 94108 | 06/21/2013 10:00 am |

☐ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:   04/11/2013

_CLERK OF COURT_

OR

_____          _____
_Signature of Clerk or Deputy Clerk_          _Attorney's signature_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_   Plaintiff Harmeet K. Dhillon _____ , who issues or requests this subpoena, are:

Harold P. Smith, Krista L. Shoquist, DHILLON & SMITH LLP, 177 Post Street, Suite 700, San Francisco, CA 94108, email: kshoquist@dhillonsmith.com; Tel: 415-433-1700.

Exhibit E - Page 1

# Attachment A

1  HAROLD P. SMITH, ESQ. (SBN: 126985)
   psmith@dhillonsmith.com
2  KRISTA L. SHOQUIST, ESQ. (SBN: 264600)
3  kshoquist@dhillonsmith.com
   DHILLON & SMITH LLP
4  177 Post Street, Suite 700
5  San Francisco, California 94108
   Telephone: (415) 433-1700
6  Facsimile: (415) 520-6593
7

8  Attorneys for Plaintiff
9  Harmeet K. Dhillon

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12                  San Francisco Division

13

14  HARMEET K. DHILLON,                   Case No. 13-01465-JCS

15           Plaintiff,                   AMENDED[1] [PROPOSED] ORDER
                                          GRANTING PLAINTIFF'S *EX*
16                                        *PARTE* APPLICATION FOR LEAVE
17           v.                           TO TAKE LIMITED DISCOVERY
                                          PRIOR TO A RULE 26(f)
18  DOE 1, an unknown individual, et al., CONFERENCE
19
20           Defendants.
21

22  [1] Plaintiff's *Ex Parte* Application For Leave to Take Limited Discovery Prior to a Rule
23  26(f) Conference, filed April 2, 2013 (Doc. 2), sought leave to serve a subpoena on "New
24  Dream Network, LLC, on behalf of DreamHost." However, the original [Proposed]
    Order submitted with that *ex parte* application (Doc. 2-1), and the subsequent Order
25  filed on April 3, 2013 (Doc. 6), contained a typographical error with respect to the name
26  of the subpoenaed entity, listing it as "DreamHost Network, LLC, on behalf of
    DreamHost." Plaintiff thus respectfully requests that the Court remedy this error by
27  granting this Amended [Proposed] Order, which is identical in substance to the Court's
28  Order of April 3rd, other than with respect to the name of the entity to be subpoenaed.

Amended [Proposed] Order            1            DHILLON & SMITH LLP

1      The Court, having reviewed Plaintiff's *Ex Parte* Application for Leave to Take

2  Limited Discovery Prior to a Rule 26 Conference and the supporting documents

3  submitted therewith, and good cause appearing therefore, hereby grants Plaintiff's *Ex*

4  *Parte* Application and orders as follows:

5      1.    IT IS HEREBY ORDERED that Plaintiff is allowed to serve immediate

6  discovery on New Dream Network, LLC, on behalf of DreamHost, in order to obtain

7  the identity of the Doe Defendants listed in Plaintiff's Complaint by serving a Rule 45

8  subpoena that seeks information sufficient to identify each such Defendant, including

9  the account information for the domain name "Mungergames.net," hosted by

10  DreamHost, and the name, addresses, telephone numbers, and email addresses of each

11  such Defendant.

12

13      2.    IT IS FUTHER ORDERED that Plaintiff's counsel shall issue subpoena(s)

14  in substantially the same form as the example attached as Exhibit 1 to Plaintiff's *Ex Parte*

15  Application for Leave to Take Limited Discovery Prior to a Rule 26 Conference, with

16  each subpoena including a copy of this Order.

17      3.    IT IS FURTHER ORDERED that New Dream Network, LLC, will have 30

18  days from the date of service upon it to serve each entity or person whose information

19  is sought with a copy of the subpoena and a copy of this Order. New Dream Network,

20  LLC may serve the entities and persons using any reasonable means, including written

21  notice sent to the entity's or person's last known address, transmitted either by first-

22  class mail or overnight service.

23      4.    IT IS FURTHER ORDERED that each entity and person and New Dream

24  Network, LLC, will have 30 days from the date of service upon him, her, or it to file any

25  motions in this court contesting the subpoena (including a motion to quash or modify

26  the subpoena). If that 30-day period lapses without the entity contesting the subpoena,

27

28

Amended [Proposed] Order        2.        DHILLON & SMITH LLP

1  New Dream Network, LLC, shall have 10 days to produce to Plaintiff the information
2  responsive to the subpoena with respect to that entity.

3       5.    IT IS FURTHER ORDERED that, because no appearance by a person at a
4  deposition is required by the subpoena, instead only production of documents, records
5  and the like is required, the witness and mileage fees required by Rule 45(b)(1) of the
6  Federal Rules of Civil Procedure do not apply and no such fees need be tendered.

7       6.    IT IS FURTHER ORDERED that New Dream Network, LLC, shall not
8  assess any charge to the Plaintiff in advance of providing the information requested in
9  the subpoena, and that if New Dream Network, LLC, elects to charge for the costs of
10  production, it shall provide a billing summary and cost reports that serve as a basis for
11  such billing summary and any costs claimed by such recipient.
12

13       7.    IT IS FURTHER ORDERED that New Dream Network, LLC, shall
14  preserve all subpoenaed information pending its delivering such information to
15  Plaintiff or the final resolution of a timely filed and granted motion to quash the
16  subpoena with respect to such information.

17       8.    IT IS FURTHER ORDERED that any information disclosed to Plaintiff in
18  response to a subpoena may be used by Plaintiff solely for the purpose of protecting its
19  rights under the Copyright Act, 17 U.S.C. § 101 et seq, and may not be disclosed to
20  anyone other than the parties in this action and their counsel of record pending further
21  order of this Court.

22       IT IS SO ORDERED.

23

24       Date: 4/9_____, 2013

25

26                                    Honorable Judge of the
27                                    United States District Court,
28                                    Northern District of California

---

Amended [Proposed] Order                3                DHILLON & SMITH LLP

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 13-cv-01465-JCS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____           _____
                                              *Server's signature*

                                              _____
                                              *Printed name and title*

                                              _____
                                              *Server's address*

Additional information regarding attempted service, etc:

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*

**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

**(i)** At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

**(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

**(A)** *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

**(i)** fails to allow a reasonable time to comply;

**(ii)** requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

**(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

**(iv)** subjects a person to undue burden.

**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

**(i)** disclosing a trade secret or other confidential research, development, or commercial information;

**(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

**(iii)** a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

**(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

**(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*

**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

**(i)** expressly make the claim; and

**(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e)** Contempt. The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Exhibit "F"

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
#### Central District of California

| | | |
|---|---|---|
| Harmeet K. Dhillon | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 13-cv-01465-JCS |
| DOE 1, an unknown individual, et al. | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | Northern District of California    ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: New Dream Network, LLC, dba DreamHost, c/o CT Corporation System (CO168406), 818 West Seventh Street, Los Angeles, CA 90017

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: Documents sufficient to identify the account information for the domain name "Mungergames.net," hosted by DreamHost, including the names, addresses, telephone numbers, and e-mail addresses of the owner(s) of hte domain name "Mungergames.net." You are to comply with this subpoena pursuant to the terms set forth in the Amended Order attached hereto as Attachment A.

| Place: American Messenger Services, Inc.<br>205 South Broadway #925<br>Los Angeles, CA 90012 | Date and Time:<br><br>10/03/2013 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date: _____07/22/2013_____

                    *CLERK OF COURT*
                                                    OR
        _____              _____
        *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Plaintiff Harmeet K. Dhillon
_____ , who issues or requests this subpoena, are:

Harold P. Smith; Krista L. Shoquist, Dhillon & Smith LLP, 177 Post Street, Suite 700, San Francisco, CA 94108; email kshoquist@dhillonsmith.com; Tel: 415-433-1700.

# Attachment A

Case3:13-cv-01465-JCS   Document8   Filed04/09/13   Page1 of 3

1   HAROLD P. SMITH, ESQ. (SBN: 126985)
    psmith@dhillonsmith.com
2   KRISTA L. SHOQUIST, ESQ. (SBN: 264600)
3   kshoquist@dhillonsmith.com
    DHILLON & SMITH LLP
4   177 Post Street, Suite 700
5   San Francisco, California 94108
    Telephone: (415) 433-1700
6   Facsimile: (415) 520-6593
7
8   Attorneys for Plaintiff
    Harmeet K. Dhillon
9

10              UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12
13                 San Francisco Division

14   HARMEET K. DHILLON,              Case No. 13-01465-JCS
15
16             Plaintiff,            AMENDED[1] [PROPOSED] ORDER
                                     GRANTING PLAINTIFF'S *EX*
17        v.                         *PARTE* APPLICATION FOR LEAVE
                                     TO TAKE LIMITED DISCOVERY
18   DOE 1, an unknown individual, et al.,   PRIOR TO A RULE 26(f)
19                                   CONFERENCE
20             Defendants.
21

22   [1] Plaintiff's *Ex Parte* Application For Leave to Take Limited Discovery Prior to a Rule
23   26(f) Conference, filed April 2, 2013 (Doc. 2), sought leave to serve a subpoena on "New
24   Dream Network, LLC, on behalf of DreamHost." However, the original [Proposed]
     Order submitted with that *ex parte* application (Doc. 2-1), and the subsequent Order
25   filed on April 3, 2013 (Doc. 6), contained a typographical error with respect to the name
26   of the subpoenaed entity, listing it as "**DreamHost** Network, LLC, on behalf of
     DreamHost." Plaintiff thus respectfully requests that the Court remedy this error by
27   granting this Amended [Proposed] Order, which is identical in substance to the Court's
28   Order of April 3rd, other than with respect to the name of the entity to be subpoenaed.

Amended [Proposed] Order            1          DHILLON & SMITH LLP

The Court, having reviewed Plaintiff's *Ex Parte* Application for Leave to Take Limited Discovery Prior to a Rule 26 Conference and the supporting documents submitted therewith, and good cause appearing therefore, hereby grants Plaintiff's *Ex Parte* Application and orders as follows:

1.     **IT IS HEREBY ORDERED** that Plaintiff is allowed to serve immediate discovery on New Dream Network, LLC, on behalf of DreamHost, in order to obtain the identity of the Doe Defendants listed in Plaintiff's Complaint by serving a Rule 45 subpoena that seeks information sufficient to identify each such Defendant, including the account information for the domain name "Mungergames.net," hosted by DreamHost, and the name, addresses, telephone numbers, and email addresses of each such Defendant.

2.     **IT IS FUTHER ORDERED** that Plaintiff's counsel shall issue subpoena(s) in substantially the same form as the example attached as Exhibit 1 to Plaintiff's *Ex Parte* Application for Leave to Take Limited Discovery Prior to a Rule 26 Conference, with each subpoena including a copy of this Order.

3.     **IT IS FURTHER ORDERED** that New Dream Network, LLC, will have 30 days from the date of service upon it to serve each entity or person whose information is sought with a copy of the subpoena and a copy of this Order. New Dream Network, LLC may serve the entities and persons using any reasonable means, including written notice sent to the entity's or person's last known address, transmitted either by first-class mail or overnight service.

4.     **IT IS FURTHER ORDERED** that each entity and person and New Dream Network, LLC, will have 30 days from the date of service upon him, her, or it to file any motions in this court contesting the subpoena (including a motion to quash or modify the subpoena). If that 30-day period lapses without the entity contesting the subpoena,

---

**Amended [Proposed] Order**          2          **DHILLON & SMITH LLP**

1  New Dream Network, LLC, shall have 10 days to produce to Plaintiff the information

2  responsive to the subpoena with respect to that entity.

3      5.      IT IS FURTHER ORDERED that, because no appearance by a person at a

4  deposition is required by the subpoena, instead only production of documents, records

5  and the like is required, the witness and mileage fees required by Rule 45(b)(1) of the

6  Federal Rules of Civil Procedure do not apply and no such fees need be tendered.

7      6.      IT IS FURTHER ORDERED that New Dream Network, LLC, shall not

8  assess any charge to the Plaintiff in advance of providing the information requested in

9  the subpoena, and that if New Dream Network, LLC, elects to charge for the costs of

10 production, it shall provide a billing summary and cost reports that serve as a basis for

11 such billing summary and any costs claimed by such recipient.

12

13     7.      IT IS FURTHER ORDERED that New Dream Network, LLC, shall

14 preserve all subpoenaed information pending its delivering such information to

15 Plaintiff or the final resolution of a timely filed and granted motion to quash the

16 subpoena with respect to such information.

17     8.      IT IS FURTHER ORDERED that any information disclosed to Plaintiff in

18 response to a subpoena may be used by Plaintiff solely for the purpose of protecting its

19 rights under the Copyright Act, 17 U.S.C. § 101 et seq, and may not be disclosed to

20 anyone other than the parties in this action and their counsel of record pending further

21 order of this Court.

22     IT IS SO ORDERED.

23

24     Date: 4/9              , 2013

25                                   Judge Joseph C. Spero

26                              Honorable Judge of the

27                              United States District Court,

                               Northern District of California

28

---

**Amended [Proposed] Order**          3          **DHILLON & SMITH LLP**

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 13-cv-01465-JCS

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), and (e) (Effective 12/1/07)

**(c) Protecting a Person Subject to a Subpoena.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*

(A) *When Required.* On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) *When Permitted.* To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(e) Contempt.** The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

Exhibit "G"

1  Rick A. Cigel, Esq. (SBN 105424)
   THE CIGEL LAW GROUP, P.C.
2  10866 Wilshire Blvd., Suite 400
   Los Angeles, California 90024
3  Tel: (424) 901-8513
4  Fax:  (424) 901-8514

5  Attorneys for Defendant
6  DOE 1

7              UNITED STATES DISTRICT COURT

8          FOR THE CENTRAL DISTRICT OF CALIFORNIA

9

10 HARMEET K. DHILLON, an          Case No. CV 13-7003-JFW (MANx)
11 individual,

12                                 REPLY BRIEF IN SUPPORT OF
                  Plaintiff,       MOTION BY DEFENDANT DOE 1 TO
13       vs.                       QUASH SUBPOENA ISSUED IN
                                   CENTRAL DISTRICT OF CALIFORNIA
14 DOE 1, an unknown individual, and  TO NEW DREAM NETWORK, LLC
   DOES 2 through 10,
15                                 [Concurrently filed with Declaration of
                  Defendants.     Rick A. Cigel]
16
                                   (Action pending in the Northern District of
17                                 California: Case No.13-cv-01465-JCS)

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................... 1

II.  DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S PURPORTED NEED FOR DISCLOSURE................................................... 2

III. THIS COURT SHOULD CONSIDER THE "FAIR USE" DOCTRINE IN DETERMINING WHETHER TO QUASH PLAINTIFF'S SUBPOENA .......... 4

IV. THE "FAIR USE" FACTORS WEIGH IN FAVOR OF QUASHING PLAINTIFF'S SUBPOENA.......................................................................... 6

  A. PURPOSE AND CHARACTER OF THE USE.......................................... 6

  B. NATURE OF THE COPYRIGHTED WORK........................................... 10

  C. AMOUNT AND SUBSTANTIALITY OF PORTION USED ................... 10

  D. EFFECT OF THE USE UPON THE POTENTIAL MARKET FOR OR VALUE OF THE COPYRIGHTED WORK............................................. 10

V.  THE NINTH CIRCUIT HAS ADOPTED THE HIGHEST BURDEN OF PROOF WHEN POLITICAL SPEECH IS AT STAKE .............................................. 11

VI. THE MEET AND CONFER REQUIREMENTS HAVE BEEN MET ….….......14

VII. CONCLUSION ...................................................................... 15

# TABLE OF AUTHORITIES

Cases

Arista Records LLC v. Doe, 604 F.3d 110 (2d Cir.2010) ............................................. 6

Art of Living Foundation v. Does 1 – 10,
    2011 WL 5444622 (N.D. Cal. 2011) ................................................................. passim

Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605 (2d Cir.2006) .......... 9

Calkins v. Playboy Enterprises Intern., Inc.,
    561 F. Supp. 2d 1136 (E.D. Cal. 2008) ....................................................................... 8

Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994). ...................................... 6, 9

Chula Vista Citizens for Jobs & Fair Competition v. Norris,
    875 F. Supp. 2d 1128 (S.D. Cal. 2012) ..................................................................... 12

Dash v. Mayweather, ___ F.3d ___,
    2013 WL 5365967 at *12 (4th Cir. 2013)...............................................................11

Dendrite Intern., Inc. v. Doe No. 3, 342 N.J.Super. 134,
    775 A.2d 756 (N.J. Super. 2001) ............................................................................... 13

Doe v. Cahill, 884 A.2d 451 (Del.2005).......................................................................... 13

Elvis Presley Enters. v. Passport Video, 349 F.3d 622 (9th Cir. 2003) ......................... 5

Haberman v. Hustler Magazine, Inc., 626 F. Supp. 201 (D. Mass. 1986) ................... 10

Highfields Capital Management, L.P v. Doe,
    385 F. Supp. 2d 969 (N.D. Cal. 2005).............................................................. 2, 5, 12

In re Anonymous Online Speakers, 661 F.3d 1168 (9th Cir. 2011).................... 3, 12, 13

Kelly v. Arriba Soft Corp., 336 F.3d 811 (9th Cir.2003) ..................................... 7, 8, 10

L.A. News Serv. v. Reuters Television Int'l, 149 F.3d 987 (9th Cir. 1998) .................. 9

Leibovitz v. Paramount Pictures Corp., 137 F.3d 109 (2d Cir.1998) ............................ 7

Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003).............. 7

Meyer v. Grant, 486 U.S. 414, 422, 425 (1988)............................................................ 12

Nunez v. Caribbean Intern. News Corp., 235 F.3d 18 (1st Cir.2000)................. 7, 8, 10

*Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146 (9th Cir. 2007) ........................... 7

*Perry v. Schwarzenegger,* 591 F.3d 1147 (9th Cir. 2010) ................................................. 2

*Sedgwick Claims Management Services, Inc. v. Delsman,*

    2009 WL 2157573 (N.D. Cal. 2009), aff'd, 422 Fed.Appx. 651(9th Cir. 2011)........ 7

*SaleHoo Grp., Ltd. v. ABC Co.,* 722 F. Supp. 2d 1210 (W.D. Wash. 2010)................ 2

*Selzer v. Green Day, Inc.,* 725 F.3d 1170 (9th Cir. 2013)................................................ 4

*SI03, Inc. v. Bodybuilding.com, LLC,* 441 F. App'x 431 (9th Cir. 2011) ............ 12, 13

*Signature Mgmt. Team, LLC v. Automatic, Inc.,* ___ F. Supp. 2d ___,

    2013 WL 1739480 at *9 (N.D. Cal. 2013) ............................................................. 3, 5

*Sony Music Entertainment, Inc. v. Does 1 – 40,*

    326 F. Supp. 2d 556 (S.D.N.Y. 2004). ..................................................................... 12

*Wade Williams Distribution, Inc. v. American Broadcasting Co., Inc.,*

    2005 WL 774275 (S.D.N.Y 2005)............................................................................... 9


Statutes

17 U.S.C. § 107 ................................................................................................................. 5

Fed. R. Civ. P. 45 ........................................................................................................... 15

Secondary Sources

N. Snow, "Judge Playing Jury: Constitutional Conflicts In Deciding Fair Use On

    Summary Judgment," 44 U.C. Davis L. Rev. 483, 489 (2010) ................................. 4

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

There is no dispute that this motion to quash implicates serious Constitutional rights that cannot be invaded lightly.    The U.S. Supreme Court has held unequivocally that anonymous internet speech is protected by the First Amendment, and that political speech is at the core of First Amendment protections.

Ninth Circuit precedent requires Plaintiff to present a valid copyright claim sufficient to withstand a summary judgment motion before she can invade Doe 1's Constitutional rights.  Plaintiff asserts the standard is lower, and only requires a prima facie evidentiary showing.  No matter what standard this Court employs, however, Plaintiff cannot meet it.

That is because Doe 1's alleged "use" of Plaintiff's publicity headshot for purposes of political commentary is Fair Use.  Under all discovered cases, using a photo for purposes of criticism and commentary is "transformative" and thus Fair Use.  Plaintiff argues that this Court cannot consider Fair Use at this juncture, but Plaintiff is wrong.  The cases Plaintiff cites for this proposition actually stand for the opposite, and clearly state that a court absolutely should evaluate Fair Use when considering a motion to quash a subpoena seeking an anonymous speaker's identity.

In addition, even if this Court were to find that Plaintiff had made a sufficient showing of copyright infringement – which Doe 1 adamantly asserts she did not and cannot do – this Court would still have to balance the competing harms.  Case law provides that disclosure of an anonymous political speaker's identity can wreak havoc on the speaker's life, inviting retaliation and ostracism, and also have a substantial chilling effect on future political debate.   This is precisely what the First Amendment was designed to protect against.  It is especially important to protect anonymity in this case because mungergames.net risks harsh retaliation by Charles Munger, Jr., the multi-millionaire subject of criticism on the website.