1       By contrast, Plaintiff will suffer no conceivable harm if this Court quashes the

2   subpoena at issue.  Counsel for Doe 1 will accept service on behalf of Doe 1 so that

3   Plaintiff can proceed with her action.  Doe 1 also anticipates moving swiftly toward

4   summary judgment on the issue of Fair Use, or alternatively a motion to dismiss.

5   There are no disputed material facts regarding what use was made of Plaintiff's out-

6   of-date stock publicity headshot, and the court in the Northern District of California

7   (where the action is pending) can determine Fair Use as a matter of law based on its

8   own review of the article that was posted on the mungergames.net website.

9   II.   DOE 1'S FIRST AMENDMENT RIGHTS OUTWEIGH DHILLON'S

10       PURPORTED NEED FOR DISCLOSURE

11       As thoroughly discussed in Doe 1's opening brief, regardless of what standard

12   of proof this Court employs, it must balance the potential harm to the defendant

13   against the plaintiff's need for disclosure of his identity.  See, SaleHoo Grp., Ltd. v.

14   ABC Co., 722 F. Supp. 2d 1210, 1216-17 (W.D. Wash. 2010); Highfields Capital

15   Mgmt., L.P v. Doe, 385 F. Supp. 2d 969, 975 (N.D. Cal. 2005) (court should "assess

16   and compare the magnitude of the harms that would be caused to the competing

17   interests by a ruling in favor of plaintiff and by a ruling in favor of defendant.")

18       Plaintiff argues that Doe 1 has not provided any proof of the potential harm he[1]

19   would suffer.  First, the courts do not require such proof, and second, it is logically

20   impossible for Doe 1 to provide "proof" of events that have not yet occurred.

21       The court in Art of Living Foundation v. Does 1 – 10, 2011 WL 5444622 (N.D.

22   Cal. 2011) addressed this issue and found that the declarations submitted by

23   defendant were of little value.  Instead, the harm to defendant caused by disclosure

24   was presumed as a matter of law.  Relying heavily on the binding Ninth Circuit

25   precedents of Perry v. Schwarzenegger, 591 F.3d 1147 (9th Cir. 2010) and In re

26

27   _____

    [1] No information is connoted by either the gender of pronouns, or the use of singular

28   pronouns.

1    <u>Anonymous Online Speakers</u>, 661 F.3d 1168, 1173 (9th Cir. 2011), the <u>Art of Living</u>

2    court stated, "[T]o the extent that [defendant's] anonymity facilitates free speech, the

3    disclosure of his identity is itself irreparable harm." <u>Art of Living</u>, <u>supra</u>, 2011 WL

4    5444622 at *9, *quoting* <u>Perry</u>, <u>supra</u>, 591 F.3d at 1158 ("One injury to Proponents'

5    First Amendment rights is the disclosure itself. Regardless of whether they prevail at

6    trial, this injury will not be remediable on appeal.").

7         The <u>Art of Living</u> court went on to note that defendant had "submitted a

8    declaration expressing his concern that the adherents of [Plaintiff] would harass or

9    retaliate against him or his family if his identity would be disclosed. (citation)

10   Although the court did not find [defendant's] evidence particularly reliable, it <u>found</u>

11   <u>the reasonable inference self-evident that unveiling [defendant's] identity would</u>

12   <u>subject him to harm and chill others from engaging in protected speech.</u>" <u>Signature</u>

13   <u>Mgmt. Team, LLC v. Automatic, Inc.</u>, ___ F. Supp. 2d ___, 2013 WL 1739480 at *9

14   (N.D. Cal. 2013) (emphasis added), citing <u>Art of Living</u>.

15        By contrast, there is no compelling need for the disclosure of Doe 1's identity

16   at this time.  Plaintiff claims she cannot go forward with this lawsuit unless she

17   determines Doe 1's identity.  However, counsel for Doe 1 hereby represents that he

18   will accept service on behalf of Doe 1.  Thus, there is no longer any requirement for

19   disclosure in order to serve Plaintiff's Complaint. In the <u>Art of Living</u> case, as

20   summarized in <u>Signature Mgmt. Team</u>, <u>supra</u>, 2013 WL 1739480 at *9.

21        The court found no similar harm to the [plaintiff] should [defendant] remain

22        anonymous, noting that [defendant] had been engaged in the litigation and

23        responsive to discovery requests. <u>Art of Living</u> at *10. The court noted that

24        [defendant's] identity may later need to be revealed to facilitate a deposition

25        or to enforce any judgment obtained against him. <u>Id.</u> Even so, the court

26        quashed the subpoena seeking [defendant's] identity and stayed further

27        discovery on that subject. <u>Id.</u>

28        Plaintiff will no doubt argue she still needs Doe 1's identity to conduct

1   discovery or potentially take a deposition of Doe 1 for her $250 copyright
2   infringement claim. However, based on the Fair Use doctrine, Doe 1 has immediate
3   plans to move forward with a summary judgment motion and request for all
4   attorneys' fees, or alternatively a motion to dismiss and/or for rule 11 sanctions. This
5   is highly appropriate in a case like this, since there is no dispute about what was
6   posted by Doe 1 on the mungergames.net political internet blog, nor about when it
7   was posted. The blog article at issue is attached as Exhibit "D" to the September 20,
8   2013 Declaration of Rick A. Cigel Declaration filed in conjunction with Doe 1's
9   opening brief (the "Opening Cigel Decl."), and Plaintiff has not disputed it is a true
10  and correct copy of the article.

11          The Ninth Circuit has very recently stated that where, as here, "no material,
12  historical facts are at issue and the parties dispute only the ultimate conclusions to be
13  drawn from those facts . . . [a court can] conclude as matter of law that the challenged
14  use [does or] does not qualify as a fair use of the copyrighted work." Selzer v. Green
15  Day, Inc., 725 F.3d 1170, 1175 (9th Cir. 2013), *quoting*, Harper & Row Publishers,
16  Inc. v. Nation Enters., 471 U.S. 539, 564. See generally, N. Snow, "Judge Playing
17  Jury: Constitutional Conflicts In Deciding Fair Use On Summary Judgment," 44 U.C.
18  Davis L. Rev. 483, 489 (2010) ("Today disputes over fair use are nearly always
19  decided at summary judgment.")

20          As a matter of law, then, the court in Northern California (where this action is
21  pending) can look at the uncontroverted evidence, evaluate the four Fair Use factors,
22  and reach a legal conclusion. Doe 1 is confident that the factors tip overwhelmingly
23  in favor of a finding of Fair Use, and this will end the case as a matter of law prior to
24  the need for any depositions.

25  III.   THIS COURT SHOULD CONSIDER THE "FAIR USE" DOCTRINE IN
26         DETERMINING WHETHER TO QUASH PLAINTIFF'S SUBPOENA

27          The fair use doctrine is at the very heart of this matter, since there can be no
28  copyright infringement if the use is fair. Selzer, supra, 725 F.3d at1175 ("17 U.S.C. §

1   107 establishes that fair use of a copyrighted work is not an infringement of

2   copyright"). Perhaps recognizing the overwhelming strength of Doe 1's Fair Use

3   argument, plaintiff tries to sweep it under the rug.

4        Plaintiff asserts that numerous courts, including the U.S. Supreme Court, have

5   held that this court cannot consider the Fair Use doctrine in determining this motion

6   to quash. This assertion is simply wrong. In addition to defying logic, the cases

7   Plaintiff cites at page 17 actually stand for the exact opposite proposition.

8        In Art of Living, supra, the court applied the two-part test set forth in

9   Highfields, supra, 385 F. Supp. 2d at 971 (granting anonymous speaker's motion to

10  quash subpoena to ISP). At the first step, the plaintiff must produce competent

11  evidence supporting a finding of each fact that is essential to a given cause of action.

12  Secondly, the court must compare the magnitude of the harms that would be caused

13  to the competing interests by a ruling in favor of the plaintiff and a ruling in favor of

14  the defendant. Signature Mgmt. Team, supra, 2013 WL 1739480 at *9 (emphasis

15  added), citing, Art of Living, supra at *7.   The Art of Living court carefully

16  balanced the competing harms and, on that basis alone, quashed the subpoena seeking

17  the identity of an anonymous blogger. Therefore, the court had no reason to address

18  the first factor, which would have implicated the fair use defense. Far from stating

19  that a court should not consider fair use on a motion to quash, the Art of Living court

20  stated the following:

21        It is worth noting, however, that because fair use is generally considered an

22        affirmative defense, a defendant's conduct may be constitutionally protected

23        even where a plaintiff establishes a prima facie case of copyright

24        infringement. *See, e.g.*, Elvis Presley Enters. v. Passport Video, 349 F.3d

25        622, 626 (9th Cir. 2003) (Finding that although the plaintiff had shown

26        ownership and copying, the district court did not abuse its discretion in

27        finding fair use). As the fair use doctrine enshrines an important first

28        amendment protection, a court determining whether to unmask an anonymous

1  defendant might consider fair use arguments raised in a motion to quash even

2  where the applicable standard requires only a prima facie showing of the

3  plaintiff's claim.  *See*, Arista Records LLC v. Doe, 604 F.3d 110 (2d

4  Cir.2010) (applying the Sony Music factors and rejecting defendants' vague

5  allegations that their unauthorized downloading of plaintiffs' musical

6  recordings 'may' be protected by fair use).

7  Art of Living, supra, 2011 WL 5444622 at *8, n.6 (emphasis added).

8       This plain language is indisputable.  Citing to both Ninth Circuit and Second

9  Circuit precedent, the Art of Living court clearly stated that a court should consider

10 the Fair Use defense when determining whether a Plaintiff has met its burden of proof

11 on a motion to quash.

12 IV.   THE  "FAIR  USE"  FACTORS  WEIGH  IN  FAVOR  OF  QUASHING

13       PLAINTIFF'S SUBPOENA

14       The doctrine of Fair Use is discussed at length in Doe 1's opening brief.

15 Although Plaintiff does not dispute what the four factors are, she disputes essentially

16 all of Doe 1's conclusions. Perhaps hoping this Court would adopt her ill-reasoned

17 arguments to ignore Fair Use at this juncture, Plaintiff makes quick work of analyzing

18 the four factors and does not address most of the cases cited by Doe 1.

19       A.    PURPOSE AND CHARACTER OF THE USE

20       As discussed in Doe 1's opening brief, whether a work is "transformative" is of

21 utmost importance, and "[t]he more transformative the new work, the less important

22 the other factors, including commercialism, become."   Campbell v. Acuff-Rose

23 Music, Inc., 510 U.S. 569, 579 (1994).  In the opening brief, Doe 1 cites numerous

24 cases establishing that the publication of a photograph for purposes of criticizing the

25 subject matter of the photograph is transformative, and thus Fair Use.

26       Plaintiff argues that the use of her headshot is not "transformative", claiming it

27 does not alter the original photo, and does not add any new expression, meaning or

28 message.  This is simply not the case.  That argument was soundly put to rest in the

1  Sedgwick case, which states:

2  > The question of fair use does not turn simply on whether the photographs

3  > themselves were unaltered. Rather, as the relevant jurisprudence makes clear,

4  > the salient inquiry is whether the use of the photos, *in the specific context*

5  > *used,* was transformative. See Perfect 10, Inc., 508 F.3d at 1164 ("a search

6  > engine puts images *'in a different context'* so that they are 'transformed into a

7  > new creation.' ") (emphasis added). In that regard, the Ninth Circuit has

8  > consistently held that "making an exact copy of a work may be transformative

9  > so long as the copy serves a different function than the original work[.]" Id.

10 > (image originally used for entertainment or aesthetic purposes was

11 > transformed where defendant used the same image to facilitate use of an

12 > internet browser to locate information on the web); Kelly v. Arriba Soft Corp.,

13 > 336 F.3d 811, 816 (9th Cir.2003) ( "exact replication" of protected images

14 > was fair use where used in a different context from the original); Mattel, 353

15 > F.3d at 802 (photographs of Barbie dolls "in various absurd and often

16 > sexualized positions" parodied "Barbie's influence on gender roles and the

17 > position of women in society" and hence was transformative); see also Nunez

18 > v. Caribbean Intern. News Corp., 235 F.3d 18, 22 (1st Cir.2000) (holding that

19 > use of unaltered pictures in conjunction with editorial commentary gave them

20 > "new meaning" sufficient to transform the works into a "newsworthy" use);

21 > Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 115 n. 3 (2d Cir.1998)

22 > (application of the fair use doctrine is particularly apropos where the use of

23 > the work disparages the original).

24 Sedgwick Claims Management Services, Inc. v. Delsman, 2009 WL 2157573 (N.D.

25 Cal. 2009) (emphasis added), aff'd, 422 Fed.Appx. 651(9th Cir. 2011).

26      Cases consistently hold that criticizing, debating or commenting on the subject

27 of an unaltered photograph is transformative.  It is difficult to argue with that premise,

28 since the Fair Use statute itself states that reproduction "for purposes such as

criticism, comment, [or] news reporting" is not an infringement of copyright.   17 U.S.C. § 107.   In addition to the numerous cases already cited in Doe 1's opening brief (see pages 17 – 19), further research has revealed the following additional cases.

In <u>Calkins v. Playboy Enterprises Intern., Inc.</u>, 561 F.Supp.2d 1136, 1141 (E.D. Cal. 2008), the court addressed whether republication of a centerfold model's photograph was transformative when used in an article about the model.   The court stated:

> In this regard, the Court finds PEI's use of the Photograph to be transformative because although PEI made a replica of the Photograph, <u>the reproduced image was much smaller and served an entirely different function than the original image.</u> Mother Lode originally created the Photograph for the limited purpose of being used as a gift by Shannon's family and friends [ ] while PEI used the Photograph, in conjunction with other photographs of Shannon and a handwritten biography, for the purpose of personalizing Shannon by providing insight into her life, including how she grew up and what her interests are. [ ] Thus, <u>because PEI used the Photograph in a new context to serve a different function</u> (inform and entertain Playboy readers) than the original function (gifts for family and friends), <u>PEI's use did not supersede the function of the original Photograph, and therefore PEI's use is transformative.</u> *See* <u>Kelly,</u> 336 F.3d at 818-19; <u>see also,</u> <u>Nunez v. Caribbean Int'l News Corp.,</u> 235 F.3d 18, 22-23 (1st Cir.2000) (republication of photographs taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain). (emphasis added)

In the <u>Nunez</u> case, plaintiff photographer had taken photos of "Joyce Giraud (Miss Puerto Rico Universe 1997) for use in Giraud's modeling portfolio. Núñez then distributed the photographs to various members of the Puerto Rico modeling community in accordance with normal practice."   <u>Id.,</u> 235 F.3d at 21.   A local television station reproduced the photographs for purposes of debate and commentary

1   on whether the photos "were appropriate for a Miss Puerto Rico Universe, based on
2   the fact that Giraud was naked or nearly naked in at least one of the photos." Id. A
3   magazine then republished the photos in articles about the controversy.

4   Nunez sued for copyright infringement, and the court found Fair Use and
5   dismissed the complaint with prejudice. The court stated, "[W]hat is important here
6   is that plaintiffs' photographs were originally intended to appear in modeling
7   portfolios, not in the newspaper; the former use, not the latter, motivated the creation
8   of the work. Thus, by using the photographs in conjunction with editorial
9   commentary, El Vocero did not merely "supersede[ ] the objects of the original
10  creation[s]," but instead used the works for "a further purpose," giving them a new
11  "meaning, or message." Id. at 23, citing, Campbell v. Acuff-Rose Music, Inc., 510
12  U.S. 569, 579 (1994).

13  See also, Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 609
14  (2d Cir.2006) (concluding that the use of Grateful Dead concert posters to comment
15  on and commemorate the performances they were designed to promote was
16  transformative); Wade Williams Distribution, Inc. v. American Broadcasting Co.,
17  Inc., 2005 WL 774275 (S.D.N.Y 2005) ("The films were not used for their intended
18  entertainment purposes, but were critiqued, along with other films, as examples of
19  how films portray aliens with human characteristics."); L.A. News Serv. v. Reuters
20  Television Int'l, 149 F.3d 987, 993 (9th Cir. 1998) (a mere rebroadcast of video
21  footage was not in itself transformative because it did not "explain the footage, edit
22  the content of the footage, or include editorial comment.").

23  In summary, Doe 1 indisputably placed Plaintiff's publicity headshot in a
24  different context and used it for a different purpose than originally intended. Plaintiff
25  says she commissioned the headshot for publicity; Doe 1 posted the headshot for
26  purposes of criticism and commentary. Both statutory and case law consistently hold
27  that this is a transformative use, weighing heavily in favor of a Fair Use finding.

28

### B.    NATURE OF THE COPYRIGHTED WORK

Plaintiff argues that her headshot photo is "creative" because the photographer made certain creative choices such as urging her to smile, lighting and location. However, as in the <u>Nunez</u> case, in which pictures were taken for a modeling portfolio, this does not warrant a finding of "creative".  The <u>Nunez</u> court stated:

> The district court suggested, and we agree, that Núñez's pictures could be
> categorized as either factual or creative: certainly, photography is an art form
> that requires a significant amount of skill; <u>however, the photographs were not
> artistic representations designed primarily to express Núñez's ideas, emotions,
> or feelings, but instead a publicity attempt to highlight Giraud's abilities as a
> potential model.</u> <i>Cf.</i> <u>Haberman v. Hustler Magazine, Inc.</u>, 626 F. Supp. 201,
> 211 (D. Mass. 1986) (reproduction of surrealistic art in magazine, where
> creativity counted against fair use finding).

<u>Nunez</u>, <u>supra</u>, 235 F.3d at 23 (emphasis added).

Likewise, in the present case, Plaintiff's headshot was not meant to express her photographer's ideas, emotions or feelings, but instead as publicity for Plaintiff as a political candidate. Complaint at ¶ 11.  There is nothing in Plaintiff's Complaint or any declaration that states Mr. Hussey took Plaintiff's photo for purposes of creating an original artistic work.  Thus, this factor also weighs in favor of finding Fair Use.

### C.    AMOUNT AND SUBSTANTIALITY OF PORTION USED

Plaintiff argues that this factor is neutral without citing a single authority.  On the contrary, this factor weighs in favor of a Fair Use finding.  It is simply not possible to publish only a portion of Plaintiff's publicity headshot without destroying the purpose for which it was published.  <u>Kelly v. Arriba Soft Corp.</u>, 336 F. 3d 811, 821 (9th Cir. 2003).

### D.    EFFECT OF THE USE UPON THE POTENTIAL MARKET FOR OR VALUE OF THE COPYRIGHTED WORK

Plaintiff argues that Doe 1 has not presented any evidence to prove that its use

of Plaintiff's headshot had no effect on the market. However, Plaintiff has not identified any market in either her Complaint or in any of the three declarations filed with her Opposition. There is not a single allegation that she has ever sold her out-of-date campaign publicity headshot to anyone, or that she has ever earned any income from the sale of this old campaign publicity headshot, or even that anyone has ever expressed interest in purchasing her campaign publicity headshot.

In this context, it is difficult to imagine what "market" Plaintiff claims Doe 1 has the burden of proving is unaffected. Further, despite Plaintiff's claims that she has "carefully restricted" her authorization to use her headshot, this is belied by a simple internet search. On the website www.bing.com/images, a search for "Harmeet Dhillon photo" reveals over 1300 hits. The first page alone reveals approximately 20 photos that appear to be publicity photos, including the headshot at issue in this case. The bing.com website printout is attached as Exhibit "F" to the Declaration of Rick A. Cigel filed in support of this Reply Brief (hereafter the "Cigel Decl.").

Cases addressing the issue of damages in copyright have held that mere speculation about what someone might be willing to pay is insufficient to withstand summary judgment. See, e.g. Dash v. Mayweather, ____ F.3d ____, 2013 WL 5365967 at *12 (4th Cir. 2013) (expert's professional valuation of damages was too speculative as a matter of law, without evidence of a fair market value, including evidence of a prior sale, income or licensing fees for the copyrighted work).

Thus, without any evidence or even an allegation that Plaintiff has suffered any actual damage, this factor also weighs in favor of a finding of Fair Use.

V.   THE NINTH CIRCUIT HAS ADOPTED THE HIGHEST BURDEN OF PROOF WHEN POLITICAL SPEECH IS AT STAKE

Perhaps the most complicated issue this Court needs to address is what standard of proof is required of Plaintiff before this Court can invade Doe 1's First Amendment rights. Plaintiff argues for a standard of proof from the Arista Records case, apparently because it is the only circuit court case addressing this issue in the

1  copyright context.  However, the Ninth Circuit has plainly stated that it is the type of

2  speech that should be the determinative factor, and not the cause of action alleged.

3  Art of Living, supra, 2011 WL 5444622 at *5.

4        As stated in Anonymous Online Speakers, supra, 661 F.3d at 1177, "the nature

5  of the speech should be a driving force in choosing a standard by which to balance the

6  rights of anonymous speakers in discovery disputes."  The court noted that the speech

7  at issue in Anonymous Online Speakers was purely commercial speech, and thus

8  "should be afforded less protection than political, religious, or literary speech."  Id.

9  Similarly, the Sony Music court stated that illegal downloading of music "qualifie[d]

10  as speech, but only to a degree" and thus deserved only protection that "is limited,

11  and subject to other considerations."  Sony Music Entertainment, Inc. v. Does 1 – 40,

12  326 F. Supp. 2d 556, 564 (S.D.N.Y. 2004).

13        By contrast, political speech is at the heart of the First Amendment and

14  deserving of the highest protections.  Anonymous Online Speakers, 661 F.3d at 1173

15  citing,  Meyer v. Grant, 486 U.S. 414, 422, 425 (1988).  The Court stressed that the

16  First Amendment protection of "core political speech" is "at its zenith".  It is simply

17  inappropriate to equate illegal music downloading with robust political debate.

18        Thus, all discovered cases involving political speech have applied a standard of

19  proof greater than a mere prima facie showing.  As detailed in Doe 1's opening brief,

20  the standard ranges from being able to survive a motion to dismiss, to being able to

21  survive a motion for summary judgment.  See, e.g., Highfields, supra, (applying a

22  two-part test requiring "competent evidence" of each essential fact); Chula Vista

23  Citizens for Jobs & Fair Competition v. Norris, 875 F. Supp. 2d 1128, 1140-41 (S.D.

24  Cal. 2012) (the degree of scrutiny varies depending on the circumstances and the type

25  of speech at issue); SI03, Inc. v. Bodybuilding.com, LLC, 441 F. App'x 431, 432 (9th

26  Cir. 2011) (requiring in camera disclosure of speaker's identity to determine if they

27  were political speakers or commercial competitors, in order to apply the correct

28  standard of proof); Dendrite Intern., Inc. v. Doe No. 3, 342 N.J.Super. 134, 775 A.2d

1    756 (N.J. Super. 2001) (preventing disclosure of the identity of an individual alleged

2    to have posted defamatory statements against a public corporation on an internet

3    message board); John Doe No. 1 v. Cahill, 884 A.2d 451 (Del. 2005) (preventing

4    disclosure of the identity of an individual who posted allegedly defamatory

5    statements against a political candidate on the internet).

6         Doe 1 asserts that this Court should apply the Cahill summary judgment

7    standard to a case involving political speech, such as the present case.  See, Doe v.

8    Cahill, 884 A.2d 451 (Del.2005).  This assertion is based on the Ninth Circuit's recent

9    nod of approval to that standard in the Anonymous Online Speakers case.

10        Despite Plaintiff's own highly questionable version of case law, Plaintiff

11   accuses counsel for Doe 1 of a "blatant mischaracterization of the law" regarding the

12   Anonymous Online Speakers case.  (Opposition at p. 4, l. 22).  Plaintiff argues that

13   Anonymous Online Speakers "did no more than refrain from overturning the District

14   Court's application of the Cahill standard".  (Opposition at p. 15, ll. 18 – 19).

15        This wrongful accusation is apparently meant to prevent this Court from

16   considering the only Ninth Circuit opinion that has addressed the appropriate standard

17   of proof for political speech in the context of a subpoena to unmask the identity of an

18   anonymous political speaker.  The Anonymous Online Speakers court was confined

19   to a rigid mandamus standard in issuing its opinion.  Nonetheless, the court very

20   specifically indicated that the Cahill court's summary judgment standard was

21   understandable, since highly protected political speech was at issue in Cahill.

22        It is difficult to argue with a direct quotation from the Anonymous Online

23   Speakers opinion, which states: "Because Cahill involved political speech, that

24   court's imposition of a heightened standard is understandable." Id. at 1177.  This

25   conclusion was echoed in the more recent case of SI03, Inc., supra, 441 F. App'x at

26   432 (9th Cir. 2011) ("We have recently explained that the rigorous Cahill standard is

27   'understandable" in a case 'involv[ing] political speech.'") (quoting Anonymous

28   online Speakers).

Doe 1's full analysis of the proper standard to apply is contained in the opening brief at pages 8 through 15.   The analysis is complicated, and Plaintiff is free to disagree with Doe 1's conclusion.   However, to accuse Doe 1 of blatantly mischaracterizing the law is out of line and hypocritical.   The Ninth Circuit said what it said, and Doe 1 made the context clear.

## VI.    THE MEET AND CONFER REQUIREMENTS HAVE BEEN MET

Doe 1 has previously provided this Court with the letters that constitute the meet and confer efforts prior to bringing this motion to quash. (Original Cigel Decl. at Exhs. "K" and "L".)   There is nothing equivocal about the position of Plaintiff's counsel on not withdrawing her subpoena, yet she now makes the absurd claim that there was never a meet and confer effort.

Exhibit "K" clearly informed Plaintiff's counsel that Doe 1 planned to file a motion to quash the subpoena that Plaintiff had improperly issued from the Northern District of California.   The letter also questioned the propriety of filing an Administrative Motion without notice or proof of service to anyone, and pointed out that the subpoena raised serious First Amendment and related concerns.

Plaintiff's counsel now implies that she responded with an open offer to discuss the subpoena with Doe 1's counsel.   On the contrary, Plaintiff's counsel suggested that she would be willing to discuss a resolution of the entire case with Doe 1's counsel, but indicated that counsel's concerns raised in the letter were "irrelevant to whether NDN must comply with the subpoena.   NDN has been properly served with a Court-approved subpoena and we expect and will insist upon compliance." (Original Cigel Decl, Exhibit "L").

In summary, Plaintiff refused to withdraw the subpoena or even meaningfully respond to the Constitutional issues raised in counsel's letter.   Further solidifying her position on the subpoena, Plaintiff served a new subpoena three days later that was identical to the first one, except that it now stated it was being issued from the Central District of California.

Although Plaintiff claims the new subpoena corrected a "typographical error" (footnote 5 of the Opposition), it actually corrected a serious jurisdictional flaw that was pointed out by the court in the Northern District of California case. Specifically, when Plaintiff sought to enforce the first subpoena against NDN, the Honorable Susan Illston quoted at length from the jurisdictional requirements of Fed. R. Civ. P. 45 and found that "the subpoena is invalid and cannot be enforced by this Court." Cigel Decl. at Exh. "E".

In summary, Plaintiff clearly insisted on compliance with her subpoena in a letter to counsel. When her efforts to enforce compliance with her subpoena failed due to fatal jurisdictional flaws, Plaintiff again insisted on compliance by reissuing the same subpoena from a different court. NDN contacted Plaintiff's counsel by email, asking whether counsel could correctly assume that the new subpoena from the Central District was meant to replace the former subpoena from the Northern District. Counsel simply replied, "Your understanding is correct." (Cigel Decl., Exh. "G").

VII.   CONCLUSION

For all the foregoing reasons, Doe 1 respectfully requests this Court to quash the July 22, 2013 subpoena.

Dated:  October 25, 2013          **THE CIGEL LAW GROUP, P.C.**


By:  _____/s/_____

Rick A. Cigel
Attorneys for Defendant
DOE 1

PROOF OF SERVICE

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

CASE NAME: **HARMEET K. DHILLON v. DOE 1**

   The undersigned declares: I am a resident of the United States and am employed in the City and County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite 400, Los Angeles, California 90024.

On October 22, 2013, I served the following documents:

1. **REPLY BRIEF IN SUPPORT OF MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**

2. **DECLARATION OF RICK A. CIGEL IN SUPPORT OF MOTION BY DEFENDANT DOE 1 TO QUASH SUBPOENA ISSUED IN CENTRAL DISTRICT OF CALIFORNIA TO NEW DREAM NETWORK, LLC**

By serving in the manner described below to the interested parties herein and addressed to:

| | |
|---|---|
| Harold P. Smith | Joel Voelzke |
| Krista L. Shoquist | Intellectual Property Law Office of Joel |
| Dhillon & Smith, LLP | Voelzke |
| 177 Post Street, Suite 700 | 24772 W. Saddle Peak Road |
| San Francisco, CA 94108 | Malibu, CA 90265-3042 |
| *Attorneys for Dhillon* | *Attorney for New Dream Network* |

[X] **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

[X] **(FEDERAL):** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 22, 2013 at Los Angeles, California.

            Wanda Taylor

1
**Proof of Service**

Exhibit "H"



Exhibit H - Page 1

Exhibit "I"

# Harmeet K. Dhillon

Office: 415.433.1700
**harmeet@dhillonsmith.com**

**Staff:**

**Attorneys**

**Law Clerks**

**Legal Staff**



**Harmeet Kaur Dhillon**, is an experienced business trial lawyer, trusted boardroom advisor, and passionate advocate for individual, corporate and institutional clients across numerous industries and walks of life. She has been awarded the prestigious designation of Northern California Super Lawyer in business litigation by Thomson/West Publishing, an accolade reserved for the top 5% of lawyers in the jurisdiction. From an early interest in constitutional litigation, to a stint at the Department of Justice, to a decade of practice at prestigious international law firms, to founding Dhillon & Smith in 2006, Harmeet's legal career has been marked by a passion for justice, a zeal for attacking legal challenges, and an intense sense of satisfaction in helping her clients realize creative and practical solutions to seemingly intractable problems.

Following a clerkship with the Hon. Paul V. Niemeyer of the United States Court of Appeals for the Fourth Circuit, Ms. Dhillon's practice in New York, London, and the San Francisco Bay Area has focused on federal and state commercial litigation and arbitration, with a particular emphasis on unfair competition/trade secret misappropriation, intellectual property (including trademark litigation and internet torts), complex contractual disputes, and First Amendment litigation (including defamation, trade libel, right of publicity, and anti-SLAPP motions). Harmeet's broad experience also encompasses securities, entertainment, employment discrimination and civil rights matters. Ms. Dhillon has developed a niche practice in representing clients across California in election and campaign law matters, ranging from general compliance and ethics representation for partisan and non-partisan contenders to ballot description contests and intellectual property matters pertaining to campaign communications. Dhillon & Smith is one of a handful of California law firms offering this expertise.

Harmeet has practiced before numerous state and federal courts and administrative tribunals across the United States, has successfully handled numerous trials (jury and bench), arbitrations, and mediations (including international arbitrations), and has resolved many business disputes prior to the initiation of litigation. Admitted to practice law in New York and California, she is also a Solicitor of the Supreme Court of England and Wales. Harmeet's clients at Dhillon & Smith have included e-Commerce leaders, private companies, entrepreneurs, celebrities, film and music artists, authors, advertising executives, franchisees, public utilities, educational institutions and nonprofits. She has won numerous awards and recognition for her *pro bono* legal work on behalf of domestic violence survivors, religious discrimination plaintiffs, and political refugees.

View Harmeet's **LinkedIn** Profile
View Harmeet's **Avvo** Profile

## Experience:

- Of Counsel, Orrick, Herrington & Sutcliffe LLP (San Francisco)
- Senior Associate, Cooley Godward LLC (Palo Alto)
- Associate, Shearman & Sterling LLP (New York, London)
- Law Clerk, Hon. Paul V. Niemeyer (United States Court of Appeals for the Fourth Circuit (Baltimore)
- Law Clerk, United States Department of Justice, Civil Division, Constitutional Torts Section (D.C.)

## Education:

- Dartmouth College, A.B. Classical Studies
- University of Virginia, J.D. (Editorial Board, *Virginia Law Review*)

## Areas of Expertise:

- General and Complex Commercial Litigation
- Campaign and Election Law
- Intellectual Property (Trademark, Copyright and Trade Secrets)

Exhibit I - Page 1

- Securities Litigation
- Corporate Governance Issues
- Civil Rights and Civil Liberties
- First Amendment (Right of Publicity, Slander, Defamation, Trade Libel, and anti-SLAPP)
- Entertainment Transactions and Litigation

## Selected Publications:

| | | |
|---|---|---|
| The Emergence of Sikh Advocacy | Civil Rights in Wartime | 2009 |
| **The New Gold Rush? Wireless Opportunities for Colleges and Universities Through EBS Broadcast Spectrum Leases** | University Business | 2007 |
| **Brother Sister Legal Team Fights to Protect Bay Area Sikhs** | The Recorder | 2001 |
| Preliminary Injunctive Relief in the Federal Courts | ALI/ABA publication | 1996 |

## Representative Speaking Engagements:

| | | |
|---|---|---|
| "What Korean Airline Crashes Can Teach Us About Diversity" | National Pacific American Bar Association Western Regional Conference | July, 2010 |
| SLAPP Litigation – Free Speech in the Commercial and Political Context | Law.com CLE Presentation | June, 2010 |
| "Ashcroft v. Iqbal" – The Importance of the Supreme Court's Decision on Civil Rights Litigation | Bar Association of San Francisco CLE Presentation | June, 2010 |
| Trade Secret Litigation: The New Method to Protect Theft of Intellectual Property | Minority Corporate Counsel Association 9th Annual CLE Expo (Chicago) | March, 2010 |
| Reflections on Balancing a Career of Litigation, Pro Bono and Civic Involvement | SABA Sacramento Annual Gala | March, 2010 |
| So You Think You Want to Run for Public Office | 21st Annual NAPABA Convention (Boston) | November, 2009 |
| A Conversation with New South Asians in Politics | NASABA Convention (Vancouver) | June, 2009 |
| Panelist on Presidential Campaigns | Minority Bar Council Conference (Golden Gate Law School, San Francisco) | July, 2008 |
| Ethical Issues: What Do You Do When Your Friend Crosses the Line? | NAPABA Convention (Seattle) | November, 2008 |
| Running for Office as a South Asian Lawyer | NASABA Convention (Chicaco) | June, 2008 |

## Civic Leadership:

- Director, **South Asian Bar Association of Northern California** (2001-2004: Board Member at Large; 2007-2009: Chair, Civil Rights Committee)
- Director, **Support Network for Battered Women** (Santa Clara County) 2001-2003

- Trustee, <u>Sikh Foundation</u> (2001-2009)
- Director, <u>California Women's Leadership Association</u> (2004-2005; 2008-2009)
- Legal Counsel, Sikh Coalition (2007-present)
- Legal Counsel, <u>Sikh American Legal Defense and Education Fund</u> (1998-present)
- Legal Counsel, <u>Lohgarh Sikh Educational Foundation</u> (1993-present)

### Selected Awards:

- "SALDEF Public Service Award" – Sikh American Legal Defense and Education Fund (SALDEF), 2013
- "Woman Leader in Law" – The Recorder, 2012
- "Cornerstone Award" – North American South Asian Bar Association, 2012
- "Northern California Super Lawyer" – Super Lawyers Magazine, 2011-2012
- "Outstanding Attorney Award" – South Asian Bar Association of Northern California, 2010
- "Best Lawyers Under 40" – National Asian Pacific American Bar Association, 2007
- Centennial Foundation of Canada Distinguished Community Service Award, 2003
- Minority Bar Council Outstanding Community Service Award, 2002

 

| Home | Firm Overview | Practice Areas | Staff | News & Blog | Resources | Contact |
| --- | --- | --- | --- | --- | --- | --- |

Intellectual Property — Attorneys
Elections — Law Clerks
Defamation — Legal Staff
Corporate
Utilities
Education
Civil Rights
Water Rights
Real Estate/Land Use
Business Litigation
Mediation

© 2014 Dhillon & Smith LLP



**DHILLON & SMITH** LLP

Like 18    Tweet 0

Dhillon & Smith is a full service law firm providing sophisticated legal services to corporate and individual clients in areas ranging from business litigation, labor & employment, First Amendment law, technology, real estate transactions & litigation, and intellectual property protection services.

Home    Firm Overview    **Practice Areas**    Staff    News & Blog    Resources    Contact

### Intellectual Property Registration, Licensing and Litigation

We assist our business clients in protecting their valuable copyrights, trademarks and trade secrets. Our services range from copyright and trademark registration practice before the U.S. Patent and Trademark Office, to working with foreign law firms to register valuable intellectual property rights in major markets abroad, to crafting confidentiality and contractual agreements to protect valuable trade secrets from theft by competitors and employees. We also assist our clients with intellectual property licensing agreements, including international joint ventures involving software or other protected intellectual property. Where necessary, we work in conjunction with foreign law firms to ensure that our clients' valuable property is protected wherever they wish to do business, to the maximum extent possible. We are accustomed to working within our clients' budgets, and where several trademarks or copyrights are at issue we are equipped to perform the work cost-effectively in a manner that ensures predictable expenses and risk management for our clients.

Sometimes even the most responsible and far-sighted plans go awry, particularly where an unscrupulous competitor or former employee attempts to usurp our clients' property. In such situations, we act quickly and decisively to limit the damage, threatening legal action wherever a legitimate claim exists and following through, if necessary, with a complaint and, if appropriate, request for interim relief. We find that a strong initial showing often resolves the matter. However, as with other forms of litigation, we prepare for trial even while attempting to resolve a matter efficiently at its early stages. We have successfully resolved several trademark infringement matters for our clients, and obtained substantial damages in theft of trade secret matters. We also routinely counsel our clients on how to avoid these disputes in the first place, and thereby minimize their risk and expense of litigation.

### Practice Areas

**Business Litigation**

**Intellectual Property Registration, Licensing and Litigation**

**Election and Campaign Law**

**Defamation/Free Speech**

**Corporate Transactions and Governance**

**Public Utilities**

**Educational Institutions**

**Civil Rights**

**Water Rights**

**Land Use, Real Estate, and Construction Defect**

Intellectual Property    Attorneys
Elections    Law Clerks
Defamation    Legal Staff
Corporate
Utilities
Education
Civil Rights
Water Rights
Real Estate/Land Use
Business Litigation
Mediation

© 2014 Dhillon & Smith LLP

Powered by Readyportal

**Exhibit I - Page 4**

 **DHILLON & SMITH** LLP

Like 18     Tweet 0

Dhillon & Smith is a full service law firm providing sophisticated legal services to corporate and individual clients in areas ranging from business litigation, labor & employment, First Amendment law, technology, real estate transactions & litigation, and intellectual property protection services.

Home     Firm Overview     **Practice Areas**     Staff     News & Blog     Resources     Contact

## Defamation/Free Speech

Dhillon & Smith's attorneys have defended the Constitutional right to free speech for decades. We have represented clients – including volunteer organizations – besieged by meritless attempts by public and private individuals and entities to quell their speech. In 2010 our firm won a landmark anti-SLAPP ("strategic lawsuit against public participation") on behalf of the elected leadership of a 1 million member plus political party unit. We have also represented several individuals who are the targets of defamatory speech, including farm workers in Monterey defamed by their former employer, an executive of a large pharmaceutical company defamed by former colleagues, and several private citizens defamed by former friends or colleagues. We also represent our business clients in trade libel matters, protecting the goodwill that they have built up through years of effort against careless or deliberate smears by competitors or critics. Our clients include on-air journalists fired for the content of their speech, and a veteran attacked anonymously online. We are zealous free speech advocates, while protecting our clients from speech that strays beyond the contours of the law into character assassination or damaging trade libel. Our approach has successfully resolved numerous speech-related disputes for clients from all walks of life.

### Practice Areas

**Business Litigation**

**Intellectual Property Registration, Licensing and Litigation**

**Election and Campaign Law**

**Defamation/Free Speech**

**Corporate Transactions and Governance**

**Public Utilities**

**Educational Institutions**

**Civil Rights**

**Water Rights**

**Land Use, Real Estate, and Construction Defect**

---

Home    Firm Overview    Practice Areas    Staff    News & Blog    Resources    Contact      © 2014 Dhillon & Smith LLP

Intellectual Property    Attorneys
Elections    Law Clerks
Defamation    Legal Staff
Corporate
Utilities
Education
Civil Rights
Water Rights
Real Estate/Land Use
Business Litigation
Mediation

Powered by Readyportal

Exhibit I - Page 5

PROOF OF SERVICE

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

CASE NAME: **HARMEET K. DHILLON v. DOE 1**

The undersigned declares: I am a resident of the United States and am employed in the City and County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite 400, Los Angeles, California 90024.

On January 14, 2014, I served the following document:

**DECLARATION OF RICK A. CIGEL IN SUPPORT OF DEFENDANT DOE 1'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(C) OR FOR SUMMARY JUDGMENT**

By serving in the manner described below to the interested parties herein and addressed to:

Harold P. Smith, Esq.
Krista L. Shoquist, Esq.
Dhillon & Smith, LLP
177 Post Street, Suite 700
San Francisco, CA 94108

[x] **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

[x] **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on January 14, 2014 at Los Angeles, California.

**/s/**_____
Shelly Lokietz