1   MATTHEW ZIMMERMAN (SBN 212423)
    mattz@eff.org
2   CORYNNE MCSHERRY (SBN 221504)
    corynne@eff.org
3   ELECTRONIC FRONTIER FOUNDATION
    815 Eddy St.
4   San Francisco, CA 94109
    Telephone: (415) 436-9333
5   Facsimile: (415) 436-9993

6   Attorneys for *Amicus Curiae*
    ELECTRONIC FRONTIER FOUNDATION

7

8

9

10              **UNITED STATES DISTRICT COURT**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12                **SAN FRANCISCO DIVISION**

13   HARMEET K. DHILLON,                    )  Case No. 13-1465 SI
                                            )
14              Plaintiff,                  )
                                            )  **PROPOSED *AMICUS CURIAE* BRIEF OF**
15       vs.                                )  **THE ELECTRONIC FRONTIER**
                                            )  **FOUNDATION IN SUPPORT OF**
16   DOE 1, an unknown individual, and      )  **DEFENDANT DOE 1'S MOTION FOR**
     DOES 2-10,                             )  **JUDGMENT ON THE PLEADINGS**
17                                          )
                                            )
18              Defendants.                 )
                                            )
19                                          )
                                            )
20   _____       )

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

I.    INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

II.   BACKGROUND ..................................................................................................................... 2

III.  ARGUMENT ......................................................................................................................... 5

A.   Defendant's Motion for Judgment on the Pleadings is the Proper Procedural Vehicle to
     Evaluate Defendant's Dispositive Arguments. ............................................................ 7

B.   The First Amendment Interests of Both Defendant and the Public Should Inform the
     Court's Fair Use Analysis. .......................................................................................... 9

C.   Defendant's Use of Plaintiff's Photograph Is an Obviously Noninfringing Fair Use. ... 11

     1.   The Purpose and Character of the Use is Noncommercial, Transformative and in
          the Public Interest. ........................................................................................... 12

     2.   The Nature of the Copyrighted Work Weighs in Defendant's Favor. .................. 13

     3.   Defendant Used as Much of the Photograph as was Necessary for the Criticism. 14

     4.   Defendant Did Not and Will Not Cause Cognizable Market Harm...................... 15

D.   At the Resolution of the Litigation, In Order to Deter Similar Future Litigation, the
     Court Should Award Fees to Defendant. ................................................................... 16

IV.   CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

## FEDERAL CASES

*A&M Records, Inc. v. Napster, Inc.,*
   239 F.3d 1004 (9th Cir. 2001) .................................................................... 9, 13, 15

*Abend v. MCA, Inc.,*
   863 F.2d 1465 (9th Cir. 1988) ............................................................................. 7, 8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................ 12

*Bill Graham Archives v. Dorling Kindersley Ltd.,*
   448 F.3d 605 (2d Cir. 2006) .................................................................................. 15

*Board of Education v. Pico,*
   457 U.S. 853 (1982) ................................................................................................ 10

*Buckley v. Valeo,*
   424 U.S. 1 (1976) ...................................................................................................... 9

*Burnett v. Twentieth Century Fox Film Corp.,*
   491 F.Supp.2d 962 (C.D. Cal. 2007) ................................................................... 7, 8

*Campbell v. Acuff-Rose Music, Inc.,*
   510 U.S. 569 (1994) ....................................................................................... *passim*

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.,*
   150 F.3d 132 (2d Cir. 1998) .................................................................................. 13

*Citizens United v. Federal Elections Comm'n,*
   558 U.S. 310 (2010) ................................................................................................ 10

*Columbia Ins. Co. v. Seescandy.com,*
   185 F.R.D. 573 (N.D. Cal. 1999) .......................................................................... 11

*Eldred v. Ashcroft,*
   537 U.S. 186 (2003) .............................................................................................. 1, 9

*Employers Ins. of Wausau v. Price Aircaft Co., LLC,*
   283 F. Supp. 2d 1144 (D. Haw. 2003) .................................................................... 7

*Fisher v. Dees,*
   794 F.2d 432 (9th Cir. 1986) ............................................................................... 7, 8

*Fogerty v. Fantasy, Inc.,*
   510 U.S. 517 (1994) .................................................................................................. 1

*Harper & Row, Publishers, Inc. v. Nation Enterprises,*
   471 U.S. 539 (1985) .................................................................................. 7, 11, 13, 14

*Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.,*
   914 F.2d 74 (5th Cir. 1990) ..................................................................................... 7

*AMICUS CURIAE* BRIEF OF THE ELECTRONIC FRONTIER
FOUNDATION IN SUPPORT OF DEFENDANT

*Hustler Magazine Inc. v. Moral Majority Inc.*,
  796 F.2d 1148 (9th Cir. 1986) ................................................................ 16

*JPMorgan Chase Bank, N.A. v. Winget*,
  510 F.3d 577 (6th Cir. 2007) .................................................................. 12

*Kane v. Comedy Partners*,
  No. 00 Civ. 158 (GBD), 2003 WL 22383387 (S.D.N.Y. Oct. 16, 2003) .................... 15

*Kelly v. Arriba Soft Corp.*,
  336 F.3d 811 (9th Cir. 2003) ............................................................ 14, 15

*Kleindienst v. Mandel*,
  408 U.S. 753 (1972) .............................................................................. 10

*Lahiri v. Universal Music and Video Distribution Corp.*,
  606 F.3d 1216 (9th Cir. 2010) ................................................................. 8

*Lamont v. Postmaster General*,
  381 U.S. 301 (1965) .............................................................................. 10

*Leadsinger, Inc. v. BMG Music Pub.*,
  512 F.3d 522 (9th Cir. 2008) .................................................................. 8

*Los Angeles News Serv. v. Reuters Television Intern., Ltd.*,
  149 F.3d 987 (9th Cir. 1998) ................................................................. 16

*Los Angeles News Serv. v. Tullo*,
  973 F.2d 791 (9th Cir. 1992) ................................................................. 14

*Madonna v. United States*,
  78 F.2d 62 (2d Cir. 1989) ...................................................................... 12

*Maljack Prods. Inc. v. GoodTimes Home Video Corp.*,
  81 F.3d 881 (9th Cir. 1996). .................................................................. 16

*Martin v. City of Struthers*,
  319 U.S. 141 (1943) .............................................................................. 10

*Mattel, Inc. v. Walking Mountain Productions*,
  No. CV99-8543RSWL (RZX), 2004 WL 1454100 (C.D. Cal. 2004) ................ 11, 14, 16

*McCready v. eBay, Inc.*,
  453 F.3d 882 (7th Cir. 2006) .................................................................. 7

*Mills v. State of Alabama*,
  384 U.S. 214 (1966) ............................................................................... 9

*Mixon v. Ohio*,
  193 F.3d 389 (6th Cir.1999) ................................................................... 12

*Monitor Patriot Co. v. Roy*,
  401 U.S. 265 (1971) ............................................................................... 9

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
  166 F.3d 65 (2d Cir. 1999) ..................................................................... 9

iii

*Perfect 10, Inc. v. Amazon.com, Inc.*,
   487 F.3d 701 (9th Cir. 2007) ........................................................................................... 11

*Randolph v. Dimension Films*,
   634 F.Supp.2d 779 (S.D. Tex. 2009) ................................................................................. 8

*Red Lion Broadcasting Co. v. F.C.C.*,
   395 U.S. 367 (1969) ........................................................................................................ 10

*Savage v. Council on Am.-Islamic Relations, Inc.*,
   No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008) ...................................... 7

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984) ............................................................................................. 12, 14, 15

*Spruill v. Gillis*,
   372 F.3d 218 (3d Cir. 2004) .............................................................................................. 7

*Stanley v. Georgia*,
   394 U.S. 557 (1969) ........................................................................................................ 10

*USA Technologies, Inc. v. Doe*,
   713 F. Supp. 2d 901 (N.D. Cal. 2010) ............................................................................ 11

*Wright v. Warner Books, Inc.*,
   953 F.2d 731 (2d Cir. 1991) ............................................................................................ 15

*Zamoyski v. Fifty-Six Hope Road Music Ltd., Inc.*,
   767 F.Supp.2d 218 (D. Mass. 2011) ................................................................................. 8

## STATUTES

17 U.S.C. § 504 .......................................................................................................................... 5

17 U.S.C. § 504(c) ...................................................................................................................... 5

17 U.S.C. § 512(c) ...................................................................................................................... 6

## OTHER AUTHORITIES

Declan McCullagh, *McCain Campaign Protests YouTube's DMCA Policy*, CNᴇᴛ (Oct. 14, 2008,
   5:20 PM) ............................................................................................................................ 6

Gideon Parchomovsky & Kevin A. Goldman, *Fair Use Harbors*, 93 Vᴀ. L. Rᴇᴠ. 1483 (2007) ...... 5

Jeffrey Edward Barnes, *Attorney's Fees Awards in Federal Copyright Litigation after Fogerty v.*
   *Fantasy: Defendants Are Winning Fees More Often, But The New Standard Still Favors*
   *Prevailing Plaintiffs*, 47 UCLA L. Rᴇᴠ. 1381, 1393 (2000) .......................................... 8

R. Polk Wagner, *The Perfect Storm: Intellectual Property and Public Values*, 74 Fᴏʀᴅʜᴀᴍ L. Rᴇᴠ.
   423 (2005) ......................................................................................................................... 5

Steve Mcclellan, *YouTube Pulls Obama Spot*, Aᴅᴡᴇᴇᴋ (Oct. 1, 2008, 12:00 AM) ....................... 6

William Patry, *Patry on Copyright* § 10:13 (2013) .......................................................... 13

iv

**INTEREST OF AMICUS**

The EFF is a non-profit, member-supported digital civil liberties organization. With more than 28,000 active dues-paying members, including over 6,000 active members in California, and more than 18,000 California subscribers to EFF's weekly e-mail newsletter, *EFFector*, EFF represents the interests of technology users in both court cases and in broader policy debates surrounding the application of law in the digital age, and publishes a comprehensive archive of digital civil liberties information at www.eff.org.  This case directly impacts the First Amendment interests of EFF members and those wishing to make fair uses of copyrighted materials online, especially in the context of political speech.   Moreover, this case also directly impacts the First Amendment interests of those who wish to engage in protected anonymous speech online.  EFF believes it has a perspective to share that is not represented by the parties to this appeal, neither of whom directly represents the interests of consumers or the public interest generally.

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

Some cases need to end quickly and decisively.  By any measure, this is one of them.

The Copyright Act grants artists a limited monopoly over their creative works in order to "encourage the production of original literary, artistic, and musical expression for the good of the public."  *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994).  Because the exercise of such rights necessarily impacts speech, the Copyright Act contains necessary "built-in First Amendment accommodations" including the fair use doctrine.  *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003).  The fair use doctrine helps ensure that copyrighted works can be used by secondary authors for a variety of purposes, among them political criticism and commentary.   Notwithstanding the existence of these clear speech protections, Plaintiff Harmeet Dhillon, a repeat candidate and current officeholder within the California Republican Party, has filed a meritless copyright infringement lawsuit based on nothing more than an anonymous writer's use of a years-old campaign photograph as part of that writer's commentary on and criticism of Plaintiff's politics.  Moreover, Plaintiff has transparently used that dispute as a vehicle through which to unmask her online critic, even if that goal has been tabled while she pursues her minimal $250 damages claim.  Defendant—the anonymous author of that internet post—is clearly protected by both the First

1

Amendment and the fair use doctrine, and he or she is certainly correct in bringing the pending motion to dispose of the matter.

The specific facts and context of this unusual dispute reach far beyond the individual litigants, however, and the public at large has a distinct interest in seeing the right outcome achieved here, both substantively and procedurally.  First, as a threshold matter, the First Amendment protects not only the right to speak but also the right to receive information. Especially where litigants seek to use the judicial process as a means to stifle or discourage political discourse, the public has a distinct interest in ensuring that First Amendment protections are applied clearly and correctly so that the "marketplace of ideas" functions correctly.  Second, to that same end, the public has an interest in ensuring that frivolous claims that would chill political discourse are promptly dismissed.  Defendant has fashioned his or her dispositive motion as either a motion for judgment on the pleadings or in the alternative a motion for summary judgment. While disposition in favor of Defendant on either theory would be welcome, the more appropriate path would be to grant Defendant's motion on 12(c) grounds.  With no facts in dispute, and with the merits plain on the face of the pleadings, such a decision by this Court would help ensure that defendants making obvious fair use of copyrighted material in support of political criticism need not be discouraged from speaking due to the threat of unnecessary discovery and related litigation. And third, especially given the obvious need to deter future litigants from bringing such insubstantial and pretextual lawsuits, the public has an interest in the eventual award of attorney's fees to Defendant.

*Amicus* urges the Court to grant Defendant's Motion promptly, not only to end the immediate dispute but to help provide clear guidance for future litigants.

## II.    BACKGROUND

In 2008, Plaintiff—an "active member of the California Republican Party" who "has successfully campaigned for elected office within that party"—commissioned a series of photographs for use in conjunction with her 2008 political campaign for State Assembly ("the 2008

photographs"). Compl. ¶¶ 8, 9, 11.[1]  Accordingly to Plaintiff, she "frequently commissions photography in connection with her political participation, law practice, and campaign activities." Compl. ¶ 10. Following her 2008 campaign, she obtained sole ownership of the copyrights to the 2008 photographs. Compl. ¶ 13.

The underlying dispute in this lawsuit is a post critical of Plaintiff on a website called "The Munger Games" that is itself highly critical of Charles Munger, Jr. Munger, a Stanford physicist and chairman of the Santa Clara County Republican Party of Silicon Valley, donated over $14 million in political contributions from 2000 to 2011 according to the site (citing investigative reporting organization California Watch[2]) and over $42 million in such contributions since the beginning of 2012. *See Who Is Charles Munger, Jr.?*, THE MUNGER GAMES (Feb. 12, 2013), http://www.mungergames.net/?p=25. As described by the operators of the Munger Games site, their purpose—based on its conclusion that Munger's political contributions and related activities "have actually diminished the party"—is to document and discuss Munger's perceived failings and to cultivate a public discussion about his impact on California Republican politics:

> An important question on the mind of many California Republican activists is whether they agree with all or some of Munger's goals? For some, especially current and potential candidates, it's a more practical consideration than philosophy.
>
> We are in favor of an informed debate on the outsize role this single individual is playing in determining the destiny of the party. Those who cast their lot with him should do so knowing who they are allying with — and other party leaders and activists should have the same awareness of who those individuals are.

*Id.*

On or around February 12, 2013, an anonymous author—identified as Defendant Doe 1 in Plaintiff's Complaint—posted an article on the Munger Games website that was critical of Plaintiff and her relationship to Charles Munger, Jr. *See Meet Harmeet*, THE MUNGER GAMES (Feb. 12, 2013), http://www.mungergames.net/?p=41 (attached as Exhibit D to the Declaration of Rick A. Cigel, filed on January 14, 2014, in support of Defendant's Motion for Judgment on the Pleadings).

---

[1] For purposes of its brief (and indeed as Defendant must for purposes of its Motion), *Amicus* takes Plaintiff's factual allegations as true.

[2] *See The Rainmakers: California's Top Political Donors, 2001-2011*, CALIFORNIA WATCH, http://rainmaker.apps.cironline.org/donors/charles-t-munger-jr/ (last visited on January 24, 2014).

Among other things, the post raised concerns about Munger's attempt to "control and re-shape the California Republican Party, and the way he is going about it right now is by supporting Harmeet Dhillon for CRP Vice Chairman." *Id*. The post criticized Plaintiff and her then-current political campaign, specifically highlighting Plaintiff's prior affiliation with the American Civil Liberties Union, her stated position regarding removing "Under God" from the Pledge of Allegiance, her opposition to anti-pornography filters on public library her computers, her support for driver's licenses for illegal immigrants, and her support for other ACLU-backed positions. *Id*. The post ended by asking two questions:

> The question California Republican activists, leaders and elected officials need to ask themselves is whether these are the values of Republican Party? How much will we compromise ourselves by following the prescriptions of Dr. Munger in the vain hope of "broadening our appeal"?

*Id*.

The post, criticizing Plaintiff's most recent political campaign, featured one of Plaintiff's 2008 political campaign photographs and identified the subject of the photograph as Plaintiff. *Id*. Following the post, Plaintiff filed an application with the U.S. Copyright Office to register the copyright to the photograph in question, an application that Plaintiff indicates was complete on February 21, 2013. Compl. ¶ 17.

Plaintiff filed her Complaint in this action on April 2, 2013. On the same day, Plaintiff also filed an *Ex Parte* Application for Leave to Take Limited Discovery Prior to a Rule 26(f) Conference in an attempt to obtain the identities of the operators of the Munger Games website, an Application that was subsequently granted. *See Ex Parte* App. Leave to Take Ltd. Disc., April 2, 2013, ECF No. 2; Order Granting *Ex Parte* App., April 3, 2013, ECF No. 6; Am. Order *Ex Parte* App., April 9, 2013, ECF No. 8. After subsequent litigation over Plaintiff's attempts to issue and enforce subpoenas in both the Northern and Central Districts, and following Defendant's counsel's offer to accept service on behalf of anonymous client and promptly file a dispositive motion, this Court denied Plaintiff's then-outstanding subsequent motion to obtain early discovery to identify the operators of the Munger Games website. Order Den. Admin. Mot. Leave to Take Early Disc.,

Nov. 4, 2013, ECF No. 42.  Defendant's Motion for Judgment on the Pleadings followed on January 14, 2014. Mot. for J. on the Pleadings, Jan. 14, 2014, ECF No. 46.

## III.    ARGUMENT

Plaintiff's reliance on flimsy copyright allegations in an attempt to counter uncomfortable political criticism is, while hardly a new tactic, inappropriate and contrary to law.  However, it is precisely because of the attractiveness of copyright law for such misguided purposes that such fair use limitations, as well as overall First Amendment protections, should be strictly applied.

Copyright infringement allegations offer litigants seeking to chill criticism several clear tactical advantages.   First, the potential availability of enormous statutory damages for infringement and the lack of statutory guidance as to how such damages award may be calculated increases both the uncertainty and risk for those making even lawful fair use of copyrighted materials (such as Defendant), encouraging rational actors to settle and discouraging future speakers. *See* 17 U.S.C. § 504(c) (providing for statutory damage awards between $750 to $30,000 for each work infringed—increasing up to $150,000 for "willful" infringement—and providing no guidance as to how a fact finder should set the amount).  While Plaintiff has not sought statutory damages as she only registered the work after Defendant's post (and was thus ineligible for a statutory damages award), the threat posed by such awards, combined with uncertainty and expense associated with litigating fair use claims, makes successful defenses challenging for unauthorized speakers.  *See, e.g.,* Gideon Parchomovsky & Kevin A. Goldman, *Fair Use Harbors*, 93 VA. L. REV. 1483, 1485 (2007) (noting that "fair use's ability to shield unauthorized users is greatly undermined by the uncertainty that has become the hallmark of the doctrine"); R. Polk Wagner, *The Perfect Storm: Intellectual Property and Public Values*, 74 FORDHAM L. REV. 423, 426–27 (2005) (commenting on the "'know it when you see it' nature" of a fair use analysis).  A successful or even protracted lawsuit here by Plaintiff, notwithstanding the plain fair use defenses, would make the threat of such damages all the more salient in future cases.

Second, those making non-commercial fair use of copyrighted materials for purposes of commentary and criticism are also faced with the prospect of potential attorney's fees on top of a statutory damages award upon a finding of infringement.  *See* 17 U.S.C. § 504 (making available

5

discretionary attorney's fees to prevailing parties).  Indeed, Plaintiff has sought attorney's fees here, an award—if her claim was successful—that would dwarf the $250 in actual damages sought. *See* Compl. ¶ 6.[3]

And third, extra-judicial processes such as takedown requests under section 512 of the Digital Millennium Copyright Act (DMCA) can target fair use of copyrighted materials, removing protected speech from online platforms even where fair use is clear and even when speakers strongly disagree with the allegations.  *See* 17 U.S.C. § 512(c) (requiring service providers to remove copyrighted materials upon allegations of infringement under threat of losing safe harbor protections).  These are not idle concerns.  In recent years, allegations of infringement have been used to take down fair uses of copyrighted materials in the context of political campaigns, which effectively removed (at least temporarily) highly-protected political speech from the public discourse, such as the removal of a McCain/Palin campaign advertisement that used excerpts from CBS News[4] and an Obama/Biden campaign advertisement that used excerpts from NBC News.[5]

The landscape for speakers who wish to use copyrighted material for purposes of commentary and criticism can, as a practical matter, be difficult for speakers to navigate, even when that use is plainly fair as it is in this case.  Where the use of copyrighted materials is protected by the First Amendment, especially regarding core First Amendment protections related to political speech, courts should endeavor to make that determination as promptly and as early in the litigation process as possible.  Here, *Amicus* urges to the Court to find that Defendant's use of the photograph in question was a fair use and to promptly dismiss the matter based on the allegations in Defendant's Complaint.

///

///

---

[3] *See also, infra*, at 8 (discussing relative rate of attorney fee awards to prevailing plaintiffs and defendants).

[4] Declan McCullagh, *McCain Campaign Protests YouTube's DMCA Policy*, CNET (Oct. 14, 2008, 5:20 PM), http://news.cnet.com/8301-13578_3-10066510-38.html.

[5] Steve Mcclellan, *YouTube Pulls Obama Spot*, ADWEEK (Oct. 1, 2008, 12:00 AM), http://www.adweek.com/news/advertising-branding/youtube-pulls-obama-spot-97103.

**A.    Defendant's Motion for Judgment on the Pleadings is the Proper Procedural Vehicle to Evaluate Defendant's Dispositive Arguments.**

Fair use is a "mixed question of law and fact."  *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 560 (1985).  However, the Court may make a fair use determination as a matter of law—and should not hesitate to do so in this case where the operative facts are presumed or admitted.  *See, e.g.*, *Fisher v. Dees*, 794 F.2d 432, 435–36 (9th Cir. 1986) (finding fair use where the material facts were not at issue or were admitted; judgments pertaining to fair use "are legal in nature" and are to be made by the court); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1468 (9th Cir. 1988) (stating that appellate court may decide fair use defense as a matter of law if the district court found sufficient facts to evaluate each of the statutory factors); *Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281 (N.D. Cal. July 25, 2008) (Judge Illston) (granting motion for judgment on the pleadings on fair use grounds where, after "[a]ssuming all of plaintiff's allegations are true, the Court finds that the majority of the four fair use factors, including the most important factors, weigh in favor of defendants."); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F.Supp.2d 962, 967 (C.D. Cal. 2007) (finding fair use for defendant at motion to dismiss stage where all allegations in the complaint were viewed in the light most favorable to the plaintiff).

While Plaintiff has obliquely suggested that some material facts may be in dispute and that Defendant's motion should fail, as discussed fully below, this is not the case.  A motion brought pursuant to Fed. R. Civ. P. 12(c) is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Hebert Abstract Co., Inc. v. Touchstone Properties, Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990).  In order to evaluate such a motion, it is not only proper but necessary to evaluate an assertion of fair use, as Defendant has raised here; no facts beyond those alleged in the complaint are necessary to make such a determination.  *See, e.g.*, *McCready v. eBay, Inc.*, 453 F.3d 882, 892 n.2 (7th Cir. 2006); *Spruill v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004); *Employers Ins. of Wausau v. Price Aircraft Co., LLC*, 283 F. Supp. 2d 1144, 1147 (D. Haw. 2003).  Where, as here, the operative facts are presumed or admitted, the Court may make a fair use

determination as a matter of law. *See, e.g., Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 530 (9th Cir. 2008); *Abend v. MCA, Inc.*, 863 F.2d 1465, 1468 (9th Cir. 1988); *Fisher v. Dees*, 794 F.2d 432, 435-36 (9th Cir. 1986); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 971-72 (C.D. Cal. 2007).

A prompt resolution to speech-related claims at the motion to dismiss or motion for judgment on the pleadings stage, wherever possible, would forestall the chilling effect of meritless litigation. Furthermore, the cost of defending a copyright claim is high. A 2000 study found that, between 1994 and 1999, the average attorney fee award to defendants was $107,000 who received a median award of $30,000. Defendants recovered fees at a rate 30% lower than the plaintiffs.[6] In 2013, the cost of defending a copyright lawsuit is even higher. Even when defendants are able to recover fees, they often only recover a portion of their out-of-pocket costs. *See Zamoyski v. Fifty-Six Hope Road Music Ltd., Inc.*, 767 F.Supp.2d 218, 224-225 (D. Mass. 2011) (reducing defendant's fee award by 45%); *Lahiri v. Universal Music and Video Distribution Corp.*, 606 F.3d 1216, 1222-1223 (9th Cir. 2010) (reducing defendant's fee award by $82,978); *Randolph v. Dimension Films*, 634 F.Supp.2d 779, 801 (S.D. Tex. 2009) (reducing defendant's fee award by 85%).

Faced with high litigation costs and no guarantee of cost recovery, many defendants will not press their valid fair use defenses, instead settling cases with copyright holders. Indeed, this case seems designed to produce such a result. The plaintiff requests a mere $250 in damages for the alleged infringement—0.2% of the average cost of copyright defense 15 years ago. Whether or not by design, Plaintiff's suit is structured such that only a speaker unusually committed to protecting his or her First Amendment rights—that is, a Defendant motivated less by avoiding the damages sought by the Plaintiff and more by the underlying principle at stake—will be willing to pursue a vigorous defense. While Defendant has thus far been willing to do so, other speakers may have fewer resources or may otherwise be discouraged more quickly. To prevent such speech from

---

[6] Jeffrey Edward Barnes, *Attorney's Fees Awards in Federal Copyright Litigation after Fogerty v. Fantasy: Defendants Are Winning Fees More Often, But The New Standard Still Favors Prevailing Plaintiffs*, 47 UCLA L. REV. 1381, 1393 (2000).

being chilled by the threat of copyright litigation, it is essential to keep litigation costs low by resolving cases as early as possible. In a case such as this, where the potential copyright harm is *de minimis* and the potential First Amendment harm is significant, the need the speech-protective prophylaxis of speedy resolution is at its greatest.

### B.   The First Amendment Interests of Both Defendant and the Public Should Inform the Court's Fair Use Analysis.

While Defendant's Motion should be granted on statutory fair use grounds, that fair use analysis should be informed by the broad speech interests in play in this case. First, while the core claim falls within copyright, Plaintiff is targeting a political critic and political speech. Accordingly, the "built-in First Amendment protections" fair use is intended to embody are clearly implicated. *See, e.g.*, *Eldred*, 537 U.S. at 219–20 (2003) ("copyright law contains built-in First Amendment accommodations," including the fair use defense); *see also A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1028 (9th Cir. 2001) ("First Amendment concerns in copyright are allayed by the presence of the fair use doctrine"); *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 74 (2d Cir. 1999) ("First Amendment concerns are protected by and coextensive with the fair use doctrine.").

Defendant used Plaintiff's photograph as part of speech critical of the political ambitions of both Charles Munger and Plaintiff. Mot. for the J. on the Pleadings 7, ECF No. 46. Such speech is unquestionably political in nature, deserving the highest level of constitutional protection. Because the First Amendment is, at its heart, a guarantee of unfettered access to the democratic political process, First Amendment protections are strongest when debating the merits of a candidate for political office. *See Buckley v. Valeo*, 424 U.S. 1, 14–15  (1976) ("the [First Amendment] constitutional guarantee has its fullest and most urgent application precisely to the conduct of campaigns for political office."); *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 272 (1971) ("it can hardly be doubted that the constitutional guarantee [of the First Amendment] has its fullest and most urgent application precisely to the conduct of campaigns for political office"); *Mills v. State of Alabama*, 384 U.S. 214, 218 (1966) ("a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs. This of course includes discussions of candidates.").

9

As a constitutionally-mandated First Amendment exception to the copyright monopoly, the Copyright Act's fair use license must extend to Defendant's use of Plaintiff photograph in the context of political criticism of the Plaintiff. *See Citizens United v. Federal Elections Comm'n*, 558 U.S. 310, 340 (2010) ("political speech must prevail against laws that would suppress it, whether by design or inadvertence.").

Second, the First Amendment interests at issue are not limited to those of Defendant alone; instead, the public's right to receive and engage with political speech of the type at issue in this case must be preserved. A long line of Supreme Court precedent establishes that the First Amendment not only "embraces the right to distribute literature," it also "necessarily protects the right to *receive* it." *Martin v. City of Struthers*, 319 U.S. 141, 143 (1943); *accord Board of Education v. Pico*, 457 U.S. 853, 867 (1982) ("the right to receive ideas is a necessary predicate to the *recipient's* meaningful exercise of his own rights of speech, press, and political freedom"); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (First Amendment encompasses "right to receive information and ideas"); *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390 (1969) ("It is the right of the public to receive suitable access to social, political, esthetic, moral, and other ideas and experiences which is crucial here. That right may not constitutionally be abridged."); *Stanley v. Georgia*, 394 U.S. 557, 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas"); *Lamont v. Postmaster General*, 381 U.S. 301, 308 (1965) ("The dissemination of ideas can accomplish nothing if otherwise willing addressees are not free to receive and consider them. It would be a barren marketplace of ideas that had only sellers and no buyers") (Brennan, J., concurring). In evaluating Defendant's fair use claims in the context of his or her political speech, *Amicus* asks that the Court evaluate the impact of any potential adverse or delayed ruling on the audience to which Defendant intended to speak. Clearly delineating protected First Amendment rights, and doing so at the first available procedural moment, ensures that all interested parties will remain whole.

Third, as indicated by Plaintiff's litigation tactics and as discussed by the Defendant in his or her own papers, a motivating factor behind Plaintiff's suit appears to be a desire to unmask her political critics: on the same day that she filed her Complaint, Plaintiff began a rigorous (and

10

expensive) effort to compel the service providers hosting the services behind The Munger Games to unmask the anonymous speakers.  Only after seven months of litigation in multiple judicial districts, after Defendant's counsel agreed to accept service, and after this Court withdrew its subpoena authorization, did that threat temporarily end.  The threat to Defendant's anonymity implicitly remains, however, by requiring Defendant to litigate this case to completion if he or she wants to preserve his or her privacy.  As this Court noted in 2010, "[p]eople who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity." *USA Technologies, Inc. v. Doe*, 713 F. Supp. 2d 901, 906 (N.D. Cal. 2010) (Judge Illston) (quoting *Columbia Ins. Co. v. Seescandy.com*, 185 F.R.D. 573, 578 (N.D. Cal. 1999)).  *Amicus* urges the court to consider the context of the use in question, the motivation behind the lawsuit given, and the core First Amendment values at risk, and to rule in Defendant's favor promptly.

### C.   Defendant's Use of Plaintiff's Photograph Is an Obviously Noninfringing Fair Use.

Defendant's use of Plaintiff's promotional photograph was a paradigmatic fair use sheltered by Section 107 of the Copyright Act.  Section 107 lays out four factors that must inform the fair use analysis: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount of the work used; and (4) the effect of the use on the market of the primary work. *Harper & Row Publishers, Inc.*, 471 U.S. at 560–61.  These factors are to be explored and weighed together, "in light of the purposes of copyright." *Campbell*, 510 U.S. at 578–79; *Harper & Row*, 471 U.S. at 560–61.  Here, each either favors fair use, or is neutral at best, and there is no question that Defendant's post furthered, rather than thwarted, the purposes of the copyright statute.[7]

---

[7] In evaluating the purpose and character of Defendant's use of Plaintiff's photograph, the Court is obligated to review the context of that use. *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 722 (9th Cir. 2007) (finding that Google's use of thumbnail versions of copyrighted images in its "Image Search" application was transformative as it placed the images "in a new context to serve a different purpose."); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 796-98, 800–06 (9th Cir. 2003) (concluding that photos parodying Barbie by depicting "nude Barbie dolls juxtaposed with vintage kitchen appliances" was a fair use).  While all factual allegations must be taken as true for purposes of a 12(c) motion for judgment on the pleadings, no *(footnote continued on following page)*

### 1. The Purpose and Character of the Use is Noncommercial, Transformative and in the Public Interest.

The Munger Games website in a not-for-profit enterprise. Mot. for J. on the Pleadings 22, Jan. 14, 2014, ECF No. 46. Its self-identified purpose is "to inform, education and entertain on the subject of the one-man maelstrom of money intent on re-making California Republicanism in his bow-tied image."[8] As the text of the post in question demonstrates, Defendant's use of Plaintiff's headshot was as an aid to current readers' comprehension of the *Meet Harmeet* article.[9] There is no indication that the use of Plaintiff's photograph had any commercial component. And even if Defendant's use was commercial in nature, it was not highly exploitative and weighs only slightly against a finding of fair use. The website itself contains no links to solicit donations to an alternate political candidate[10] and the post originally containing the infringed content also contains no solicitations for monetary donations.[11]

Plaintiff nonetheless suggests that the operators of the website *could* be receiving payment to post political critiques of Charles Munger Jr. and herself. Reply in Supp. of Pl's Admin. Mots. 19, Oct. 18, 2013, ECF No. 39. Such pure speculation cannot be enough to sustain an infringement suit. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[f]actual allegations must be enough to raise a right to relief above the speculative level."). Moreover, even if the Court gave credence to Plaintiff's speculation about the Defendant's alleged motives (which it should not), it makes little if any difference to the ultimate fair use determination. Plaintiff relies on *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 451 (1984) to suggest that a commercial use is

---

*(footnote continued from preceding page)*
factual allegations are in dispute here and the court must draw the legal conclusions from all of the material factual allegations, including the use of the clips within the context of Defendant's criticism. *See, e.g.*, *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (court "need not accept as true legal conclusions or unwarranted factual inferences" pursuant to ruling on a 12(c) motion (citing *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir.1999)); *Madonna v. United States*, 878 F.2d 62, 65 (2d Cir. 1989) (pleader's own legal conclusions and characterizations need not be accepted in considering Rule 12(c) motion for judgment on the pleadings).

[8] *Welcome to the Munger Games!* THE MUNGER GAMES (Jan. 30, 2013), http://www.mungergames.net/?m=201301.

[9] *See Meet Harmeet*, THE MUNGER GAMES (Feb. 12, 2013), http://www.mungergames.net/?p=41.

[10] *See* THE MUNGER GAMES, http://www.mungergames.net (last visited Jan. 24, 2014).

[11] *See Meet Harmeet*, THE MUNGER GAMES (Feb. 12, 2013), http://www.mungergames.net/?p=41.

---

12

presumptively unfair.  But the Supreme Court has long since rejected such a presumption.  *See, e.g.*, *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 584 (1994) (internal citations and quotations omitted) ("[T]he commercial or nonprofit educational character is not conclusive, but rather a fact to be weighed along with others in fair use decisions.").  In any event, neither the statute nor any applicable case law direct the court to analyze any underlying "motive" behind that criticism or commentary.  The first factor asks "*what* use was made," not "*who* is the user."  William Patry, *Patry on Copyright* § 10:13 (2013) (emphasis added).

Commercial or not, Defendant's use was clearly transformative.  A use is transformative where it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  *Campbell*, 510 U.S. at 579.  *See generally A&M Records, Inc.*, 239 F.3d. at 1015 (transformative works are those which do not "merely replace[]" the original work but rather add "a further purpose or different character").  A transformative work "is the very type of activity that the fair use doctrine intends to protect for the enrichment of society." *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 142 (2d Cir. 1998).  That is precisely what happened here.  Defendant used Plaintiff's headshot as part of its political criticism of her candidacy.  The photograph is embedded in a description of her involvement with the American Civil Liberties Union, activities that the blog post suggests will "compromise" the values of the Republican Party.  Such a use is plainly distinct from the original purpose of the photo and appropriate given Defendant's purpose of engaging in politically-oriented criticism.

### 2.     The Nature of the Copyrighted Work Weighs in Defendant's Favor.

The second fair use factor—the nature of the copyrighted work—also weighs in favor of Defendant and alternatively, at worst, is neutral.  In evaluating this factor, courts consider whether the work itself is primarily creative and whether or not the work has already been published. *Harper & Row*, 471 U.S. at 563–564.

Here, Plaintiff has conceded that the work in question is more informational than creative: it was commissioned so that she would be able to identify herself in marketing and political campaigns. *See* Reply 20–21, ECF No. 39. As Plaintiff noted, it is true that "the creative decisions involved in producing a photograph may render it sufficiently original to be copyrightable and have

13

carefully delineated selection of subject, posture, background, lighting, and perhaps even perspective alone as protectable elements of a photographer's work." *Los Angeles News Serv. v. Tullo*, 973 F.2d 791, 794 (9th Cir. 1992). In that same case, however, the court observed that videotapes of current events are by nature *primarily* informational and entitled to the *lowest* levels of copyright protection. *Id.* at 798. The photo at issue here is closer to that type of work than, for example, a fine art photograph. In any event, where (as discussed above) the use is transformative, the nature of the work is "not . . . terribly significant in the overall fair use balancing." *Mattel*, 353 F.3d at 803.

Protection for a work of this nature should also be thin because it has long since been published. A copyright holder has a significant interest in controlling where, when, and in what form a work will be published in the first interest. As a result, the unpublished status of copyrighted material weighs heavily against fair use. *Harper & Row*, 471 U.S. at 564. Here, however, the headshot has long-since been published and Plaintiff has reaped multiple benefits from that use. *See* Reply 20, ECF No. 39; *see, e.g.*, *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003). On balance, the factor should favor a determination that Defendant's use of the photograph was a fair use.

### 3. Defendant Used as Much of the Photograph as was Necessary for the Criticism.

The third factor in fair use analysis is an assessment of whether the proportion of the original used in the secondary work is reasonable in relation to its purpose. *Campbell*, 510 U.S. at 587. While in most circumstances a complete copy of the original will weigh against a finding of fair use, where the secondary user "only copies as much is as necessary" for the secondary use, this factor will have no weight. *Arriba*, 336 F.3d at 821. Indeed, as the Supreme Court held in *Sony*, where "a work which he had been invited to witness in its entirety free of charge, the fact that the entire work is reproduced . . . does not have its ordinary effect of militating against a finding of fair use." *Sony*, 464 U.S. at 449–50. Here, Defendant used a complete copy of Plaintiff's photograph in the *Meet Harmeet* post—a photograph commissioned by Plaintiff for the purpose of communicating her image to the public as part of a political campaign—to identify and criticize

Plaintiff's candidacy and her relationship with Charles Munger, Jr.   As a partial use of the photograph would not accomplish this goal, the amount of the use was permissible.   Plaintiff has (thus far) not argued that the amount of the use was unnecessary or that this factor favors her.   *See* Reply 22, ECF No. 39.

### 4.      Defendant Did Not and Will Not Cause Cognizable Market Harm.

The final factor in fair use analysis is whether the defendant's use of the copyrighted work is likely to cause harm to the market for the copyrighted work.   Because Defendant's use is both noncommercial and transformative in nature, it is Plaintiff's burden to demonstrate that there is a likelihood of market harm.   *See Sony*, 464 U.S. at 451.

Plaintiff cannot carry that burden.   She claims that the market for her headshot will be harmed because she will no longer be able to control which individuals and entities are entitled to use her copyrighted work.   Reply 23, ECF No. 39.   In other words, she asks the Court to define the market not by demand for the plaintiff's headshot, but by the plaintiff's desire to restrict access to her headshot.   That is not a cognizable market under copyright law.   Where a work is already published, Plaintiff must prove that the use in question will substitute for some actual or likely licensing market.   *See, e.g., Arriba*, 336 F.3d at 821-22 (determining that allowing a search engine to replicate thumbnails in image searches will not drive traffic away from the plaintiff's website); *A&M Records*, 293 F.3d at 1016 (analyzing use's effect on sales and entry to the digital market); *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 614 (2d Cir. 2006) (analyzing potentially infringing use's effect on licensing revenue).   In essence, Plaintiff complains that she will be unable to control fair use of her headshot—*see* Reply 23, ECF No. 39—but that is a circular argument that should carry little weight.   *See Wright v. Warner Books, Inc.*, 953 F.2d 731, 739 (2d Cir. 1991) (affirming district court's finding of no reasonable likelihood of injury to alleged market where, inter alia, alleged potential market was "highly improbable"); *Kane v. Comedy Partners*, No. 00 Civ. 158 (GBD), 2003 WL 22383387, at *7 (S.D.N.Y. Oct. 16, 2003) (to avoid danger of circularity, copyright owner not entitled to license fees for uses that otherwise qualify as fair uses); 4 NIMMER ON COPYRIGHT § 13.05[A][4] (2005) ("it is a given in every fair use case that plaintiff suffers a loss of a potential market if that potential is defined as the theoretical market for licensing

15

the very use at bar."). As courts have long recognized, there is no protectable market for criticism. *Campbell*, 510 U.S. at 591–92. Plaintiff makes not argument that she sells licenses to critics, nor does Defendant need to wait for such permission to be granted. *See e.g.*, *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1153-1155 (9th Cir. 1986).

### D.    At the Resolution of the Litigation, In Order to Deter Similar Future Litigation, the Court Should Award Fees to Defendant.

If granted, as it should be, Defendant's successful fair use defensive will bring a prompt end to Plaintiff's meritless litigation aimed at abusing copyright law to squelch an obvious fair use. Defendant, by exercising and then defending his or her fair use rights, is furthering a central purpose of the Copyright Act: protecting the balance between the First Amendment and copyright law that fair use embodies. *See, e.g.*, *Los Angeles News Serv. v. Reuters Television Intern., Ltd.*, 149 F.3d 987, 997 (9th Cir. 1998) (holding that a successful fair use defense "served the purposes of the Copyright Act" and warranted an award of fees under section 505); *Mattel, Inc. v. Walking Mountain Productions,* No. CV99-8543RSWL (RZX), 2004 WL 1454100, *1–2 (C.D. Cal. 2004) (holding that a successful defense of a parodic piece involving Barbie furthered the purposes of the Copyright Act when it "created the sort of social criticism and parodic speech . . . promoted by the Copyright Act.").

Where a losing party's legal or factual position is frivolous or objectively unreasonable, as here, a fee award is appropriate. *See, e.g., Maljack Prods. Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996).

("[W]e consider that an award of fees may deter baseless suits."). Such deterrence is clearly needed here to prevent Plaintiff from attempting to use the courts to shut down legitimate critical speech.

## IV.    CONCLUSION

For the forgoing reasons, the Court should grant Defendant's motion for judgment on the pleadings.

*AMICUS CURIAE* BRIEF OF THE ELECTRONIC FRONTIER
FOUNDATION IN SUPPORT OF DEFENDANT

DATED:  January 24, 2014            Respectfully submitted

                                  By:     /s/ Matthew Zimmerman
                                      Matthew Zimmerman (SBN 212423)
                                      Corynne McSherry (SBN 221504)
                                      ELECTRONIC FRONTIER
                                      FOUNDATION
                                      815 Eddy Street
                                      San Francisco, CA 94109
                                      Telephone: (415) 436-9333
                                      Facsimile: (415) 436-9993

                                      Attorneys *Amicus Curiae*
                                      Electronic Frontier Foundation

Case No. 13-1465 SI      *AMICUS CURIAE* BRIEF OF THE ELECTRONIC FRONTIER
FOUNDATION IN SUPPORT OF DEFENDANT