1  HAROLD P. SMITH, ESQ. (SBN: 126985)
   psmith@dhillonsmith.com
2  KRISTA L. SHOQUIST, ESQ. (SBN: 264600)
   kshoquist@dhillonsmith.com
3  DHILLON & SMITH LLP
   177 Post Street, Suite 700
4  San Francisco, California 94108
   Telephone: (415) 433-1700
5  Facsimile: (415) 520-6593

6
   Attorneys for Plaintiff
7  Harmeet K. Dhillon

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11 HARMEET K. DHILLON,                    Case No. 13-CV-01465 SI

12              Plaintiff,                **PLAINTIFF'S OPPOSITION TO
                                          DEFENDANT DOE 1's MOTION FOR
13              v.                        JUDGMENT ON THE PLEADINGS
                                          PURSUANT TO FRCP 12(c) OR FOR
14 DOE 1, *et al.*,                       SUMMARY JUDGMENT**

15              Defendants.               **Hearing Date:** February 28, 2014
16                                        **Hearing Time**: 9:00 a.m.
                                          **Courtroom 10, 19th Floor**
17                                        **Hon. Susan Illston**

18

19

20

21

22

23

24

25

26

---

Opposition to Doe 1's Motion for Judgment on the          **DHILLON & SMITH LLP**
Pleadings or for Summary Judgment

-i-

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ............................................ 2

III. THE FIRST AMENDMENT DOES NOT PROVIDE A LICENSE FOR COPYRIGHT INFRINGEMENT ......................................................................................................... 5

IV. MS. DHILLON HAS MADE A PRIMA FACIE CLAIM OF COPYRIGHT INFRINGEMENT ................................................................................................... 6

V. JUDGMENT ON THE PLEADINGS UNDER FRCP 12(c) AND SUMMARY JUDGMENT UNDER FRCP 56 ARE INAPPROPRIATE BECAUSE THE OPERATIVE FACTS PERTAINING TO DOE 1'S AFFIRMATIVE DEFENSE OF FAIR USE ARE DISPUTED ..... 7

    A.   Judgment on the Pleadings Under FRCP 12(c) is Unwarranted ....................... 7

    B.   Summary Judgment Under FRCP 56 is Unwarranted ...................................... 8

V. DOE 1 CANNOT SHOW, AS A MATTER OF LAW, THAT THE FAIR USE FACTORS WEIGH IN FAVOR OF GRANTING JUDGMENT ON THE PLEADINGS ........................ 10

    A.   Purpose and Character of the Use .................................................. 10

       1. Commercial Character of the Use ................................................. 10

       2. Transformative Character of the Use ............................................. 15

    B.   The Nature of the Copyrighted Work. ............................................. 18

    C.   The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole ............................................................................... 19

    D.   The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work. 20

VI. AWARDING ATTORNEYS' FEES OR COSTS TO DOE 1 WOULD BE WHOLLY UNWARRANTED ................................................................................................ 22

VII.  CONCLUSION ................................................................................................ 25

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

VIII. EVIDENTIARY OBJECTIONS TO THE DECLARATION OF RICK CIGEL………. 25

1
2

# TABLE OF AUTHORITIES

3

**Cases**

4   *AF Holdings LLC v. Navasca,* 2013 WL3815677 (N.D. Cal. 2013) ............................................ 24

5   *America Online, Inc. v. Anonymous Publicly Traded Co.,* 261 Va. 350 S.E.2d 377 (2001) .......... 5

6   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) .................................................... 9

7   *Anonymous Online Speakers,* 661 F.3d 1168 (9th Cir. 2011) .......................................... 5

8   *Bibbero Systems, Inc. v. Colwell Systems, Inc.,* 893 F.2d 1104 (9th Cir. 1990) ........................ 23

9   *British Airways Bd. v. Boeing Co.,* 585 F.2d 946 (9th Cir.1978) .......................................... 11

10   *Burnett v. Twentieth Century Fox Film Corp.,* 491 F.Supp.2d 962 (C.D.Cal.2007) ...................... 8

    *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994) ................................................ 6, 10, 16

11   *Columbia Ins.Co. v. Seescandy.com,* 185 F.R.D. 573 (N.D. Cal. 1999) .................................... 5

12   *Dash v. Mayweather,* 731 F.3d 303 (4th Cir. 2013) ...................................................... 20, 21

13   *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.,* 109 F.3d 1394 (9th Cir. 1997)........ 7, 21

14   *Fogerty v. Fantasy, Inc.* 510 U.S. 517 (1994) ............................................................ 23, 24

15   *Fox Broad. Co., Inc. v. Dish Network L.L.C.,* 723 F.3d 1067 (9th Cir. 2013) ............................ 7

16   *Harper & Row Publishers, Inc. v. Nation Enterprises,* 471 U.S. 539 (1985) .............. 6, 10, 18, 19

17   *Hustler Magazine Inc. v. Moral Majority Inc.* 796 F.2d 1148 (9th Cir. 1986).............................. 7

18   *Jartech, Inc. v. Clancy,* 666 F.2d 403 (9th Cir. 1982) .................................................... 23

19   *Kelly v. Arriba Soft Corp.,* 336 F.3d 811 (9th Cir. 2003) ................................................ 20

20   *Latimer v. Roaring Toyz, Inc.,* 601 F.3d 1224 (11th Cir. 2010) .......................................... 6

21   *Leadsinger, Inc. v. BMG Music Pub.* 512 F.3d 522 (9th Cir. 2008).................................... 7, 10

22   *Lefkoe v. Jos A. Bank Clothiers, Inc.,* 577 F.3d 240 (4th Cir. 2009) .................................... 5

    *Los Angeles News Serv. v. Tullo,* 973 F.2d 791 (9th Cir.1992)........................................ 18, 22

23   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).................................... 9

24   *Monge v. Maya Magazines, Inc.,* 688 F.3d 1164 (9th Cir. 2012) .............................. 7, 16, 17, 18

25   *Nissan Fire Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099 (9th Cir.2000) .................................... 8

26

*Nunez v. Caribbean Intern. News Corp.*, 235 F.3d 18 (1st Cir. 2000) .................................... 18, 19

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ............................................ 7

*Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70 (2d Cir.1997)........................................... 16

*Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542 (9th Cir.1989) ...................... 7

*Roth v. Pritikin* 787 F.2d 54 (2d Cir. 1986) ........................................................................ 23

*Savage v. Council On American-Islamic Relations, Inc.,* 2008 WL 2951281 (N.D. Cal. 2008).... 8

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman,* 2009 WL 2157573 (N.D. Cal. 2009) .............. 17

*Seltzer v. Green Day, Inc.,* 725 F.3d 1170 (9th Cir. 2013) ........................................ 16, 23, 24, 25

*Shepard v. Miler,* 2010 WL 5205108 (E.D. Cal. 2010)................................................................ 8

*Sofa Entm't, Inc. v. Dodger Prods.,* 709 F.3d 1273 (9th Cir. 2013)................................................ 23

*Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417 (1984) ............................... 10, 11

*Sony Music Entertainment Inc. v. Does 1-40,* 326 F.Supp.2d 556 (S.D.N.Y. 2004)................. 5, 6

*Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885 (9th Cir.2003) ................... 8, 12

*Subpoena Duces Tecum to America Online, Inc.,* WL 1210372 (Va.Cir.Ct. Jan. 31, 2000).......... 5

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626 (9th Cir.1987)............... 9

*Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216 (9th Cir. 1995) .............................................. 9

*U.S. v. Hinkson,* 585 F.3d 1247 (9th Cir. 2009). ......................................................................... 25

*Wall Data Inc. v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769 (9th Cir. 2006).................. 17

**Statutes**

17 U.S.C. §107...................................................................................... 6, 10, 18, 20

Fed. R. Civ. P. 56 ........................................................................................... 8, 9, 11

Fed. Rules Evid., Rule 602 ........................................................................... 25

Fed.R.Civ.P. 12(c) ........................................................................................ 7

## I.   INTRODUCTION

Plaintiff Harmeet K. Dhillon submits this Opposition to Defendant Doe 1's Motion for Judgment on the Pleadings pursuant to FRCP 12(c) or for Summary Judgment (the "Motion").

Doe 1 does not and cannot contest that he made unauthorized use of materials owned and copyrighted by Ms. Dhillon. Nor does Doe 1 claim that the First Amendment constitutes a license for copyright infringement (it does not). Instead, Doe 1 relies on vindictive rhetoric, a skewed mischaracterization of the facts, and omission of critical points in order to paint his property theft as "fair" and Ms. Dhillon's diligent efforts to enforce her intellectual property rights as somehow "sinister." As but one example, Doe 1 chooses to ignore the inconvenient fact that Ms. Dhillon's Complaint seeks not only monetary damages, but also the permanent injunctive relief to which she is entitled under the copyright laws and which is essential to ensure that Defendants cease from continuing their infringement of, or encouraging others to infringe upon, Ms. Dhillon's intellectual property. In reality, Doe 1's Motion is merely a smokescreen for his true purpose –to secure his ability continually to violate Plaintiff's copyrights while hiding behind an illusory shield of purported First Amendment rights.

As Doe 1 cannot deny that he (and possibly others affiliated with him) made unauthorized use of copyrighted work owned by Ms. Dhillon, Doe 1's legal argument exclusively relies on the concept of fair use, an affirmative defense to copyright infringement. However, despite having had *three distinct opportunities in two separate courts* to present the predicate facts to demonstrate fair use, Doe 1 utterly fails to meet his burden at the summary judgment stage, which requires him to eliminate any dispute about each material fact relevant to a fair use analysis. Doe 1's failure to set forth *any admissible evidence* regarding fair use, coupled with Ms. Dhillon's evidence proving that hotly contested material issues exist, preclude granting this Motion.

First, Doe 1 submits no evidence whatsoever establishing that his infringing conduct has not resulted in any commercial benefit to either himself, the blog at issue, or others involved

---

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

with the contested posting. This material omission is particularly telling in light of the number of chances Doe 1 has had to submit this evidence. Nor can Doe 1 dispute that he used the copyrighted work for the exact same purpose for which it was created – to identify Ms. Dhillon in connection with political endeavors.

Second, Ms. Dhillon submits evidence establishing the creative nature of the copyrighted work and refuting Doe 1's misrepresentation that Ms. Dhillon has somehow made the work available to the "general public" – an unfounded lie that is disproven by Ms. Dhillon's own testimony under oath regarding the selective authorization she has personally granted in the past.  Third, to the extent that Doe 1 copied only as much of the photo as was necessary – all of it – this factor is neutral and does not weigh towards a finding of fair use. Finally, as Doe 1 presents nothing more than unsupported, unqualified conclusions that his misconduct has had no likely effect on the market for or value of the copyrighted work, and in light of Ms. Dhillon's evidence to the contrary, the fourth factor weighs against a finding of fair use.

Ms. Dhillon has stated a prima facie case of copyright infringement, and the balance of factors weighs against a finding of fair use. Accordingly, the Motion must be denied, and granting attorneys' fees to Doe 1 would be erroneous.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

Notwithstanding the bluster and obfuscation permeating Doe 1's "factual" recital, the relevant facts are simple and straightforward. Plaintiff Harmeet K. Dhillon is a San Francisco-based attorney and active volunteer participant in California politics. Complaint, ¶¶ 8-9. The work at issue is a headshot photograph that Ms. Dhillon commissioned from a paid, professional campaign photographer in 2008, for the purpose of identifying herself in connection with her candidacy for Member of the State Assembly, District 13 (the "Headshot Photo"). *Id.*, ¶¶ 11-12; Declaration of Harmeet K. Dhillon In Support of Opposition to Motion ("Dhillon Decl."), ¶2. The Headshot Photograph and its copyright are solely owned by Ms. Dhillon, and have been since they came into existence. *Id.,* ¶3. The Headshot Photograph is registered with the U.S.

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

-2-

Copyright Office. Declaration of Harmeet K. Dhillon In Support of Opposition to Motion ("Dhillon Decl."), ¶3; Declaration of Krista L. Shoquist In Support of Opposition to Motion ("Shoquist Decl."), Ex. A.

Beginning in 2008, Ms. Dhillon used the Headshot Photograph for the purpose of identifying herself, including in connection with her political and business activities. Complaint, ¶4; Dhillon Decl., ¶4. Since 2008 and until Doe 1's infringement, individuals and entities have approached Ms. Dhillon, seeking her permission to use the Headshot Photograph, and Ms. Dhillon has granted permission to a select, restricted handful of people. Dhillon Decl., ¶¶4-5.

As Doe 1 concedes, on February 12, 2013, Doe 1 anonymously published on the website www.mungergames.net ("Munger Games") an article entitled "Meet Harmeet," which featured the Headshot Photograph at the top of the article. *See* Dkt. 45 (Doe 1 Answer), ¶15; *see also* Shoquist Decl., Ex. B. The caption below the Headshot Photograph stated "Harmeet Dhillon," and the photograph was not altered in any way. Dhillon Decl., ¶8; Shoquist Decl., Ex. B. The "Meet Harmeet" article identified Ms. Dhillon as the chair of the San Francisco Republican Party and then-candidate for CRP Vice Chairman, and discussed Charles Munger, Jr.'s support of Dhillon within the CRP. *See* Shoquist Decl., Ex. B. The Headshot Photograph was used by Doe 1 without Ms. Dhillon's authorization or a valid license, and Doe 1 does not contest otherwise. *See, e.g.,* Dhillon Decl., ¶9; Motion; Cigel Decl., ¶¶9-10.

On April 2, 2013, Plaintiff filed a complaint for statutory copyright infringement against anonymous Doe defendants in this Court, seeking not only monetary damages in connection with the uncontested copyright infringement, but also the preliminary and permanent injunctive relief to which she is entitled under the copyright laws and which is essential to ensure that Defendants cease from continuing their infringement of, or encouraging others to infringe upon, Ms. Dhillon's intellectual property rights. *See* Dkt. 1. Concurrently with filing her Complaint, Ms. Dhillon sought leave to conduct limited discovery on third party New Dream Network, LLC, prior to a Rule 26(f) Conference, to ascertain Defendants' identities and move her case

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

DHILLON & SMITH LLP

-3-

1   forward, and this Court granted her request. *See, e.g.,* Dkts. 2, 3, 8. Ms. Dhillon served a
2   subpoena on New Dream Network, LLC, which properly issued out of the Central District of
3   California. *See* Shoquist Decl., ¶2.

4          In September 2013, Defendant Doe 1 opened an action in the Central District of
5   California to quash the subpoena to New Dream Network, LLC. Shoquist Decl., ¶3. Prior to
6   filing the motion to quash, counsel for Doe 1 made no attempt to meet and confer with counsel
7   for Ms. Dhillon, as required by the Local Rules of the Central District. *Id.* As Ms. Dhillon
8   explained in her opposition to the motion to quash, that motion was procedurally barred, as a
9   threshold matter. *Id.* The motion to quash was fully briefed by the parties and was set for
10  hearing on November 26, 2013. *Id.*

11         Prior to the hearing on the motion to quash, on November 4, 2013, this Northern District
12  of California Court entered an Order denying Ms. Dhillon's then-pending administrative motion
13  for leave to take early discovery on third parties Google Inc. and Michael Schroder, in light of
14  Doe 1's representation, in sur-reply briefing on the administrative motion filed on October 25,
15  2013, that 1) counsel for Doe 1 would accept service of process on behalf of Doe 1, and 2) Doe
16  1 had "immediate plans" to file a motion to dismiss and/or a motion for summary judgment on
17  Ms. Dhillon's copyright infringement claim. *See* Dkt. 41; 42. The Order required Doe 1 to
18  accept service of process and "to promptly file" this Motion, which was filed two months later.

19         Following the November 4th Order, which counsel for the Parties construed as indicating
20  this Court's intent to rule upon all issues between the Parties, the Parties filed a stipulation in
21  the Central District court stating that Ms. Dhillon would withdraw her pending Central District-
22  issued subpoena without prejudice, and that Doe 1 would withdraw and dismiss his motion to
23  quash that subpoena without prejudice. Shoquist Decl., ¶4. The Central District court
24  subsequently closed the case. *Id.* As a result, all issues between Ms. Dhillon and Doe 1 are now
25  pending before this Court.

26

---

Opposition to Doe 1's Motion for Judgment on the        **DHILLON & SMITH LLP**
Pleadings or for Summary Judgment

-4-

### III.    THE FIRST AMENDMENT DOES NOT PROVIDE A LICENSE FOR COPYRIGHT INFRINGEMENT

While the First Amendment offers certain protections for anonymous speech, it is beyond dispute that these protections are not boundless. "Anonymous speech, like speech from identifiable sources, does not have absolute protection. "The First Amendment, for example, does not protect copyright infringement [and]…[p]arties may not use the First Amendment to encroach upon the intellectual property rights of others." *Sony Music Entertainment Inc. v. Does 1-40,* 326 F.Supp.2d 556, 562-63 (S.D.N.Y. 2004); *see also Arista Records, LLC v. Doe 3,* 604 F.3d 110, 118 (2nd Cir. 2010); *In re Anonymous Online Speakers,* 661 F.3d 1168, 1173 (9th Cir. 2011); *Columbia Ins.Co. v. Seescandy.com*, 185 F.R.D. 573, 577 (N.D. Cal. 1999); *In re Subpoena Duces Tecum to America Online, Inc.,* No. 40570, 2000 WL 1210372 (Va.Cir.Ct. Jan. 31, 2000) (reversed on other grounds, *America Online, Inc. v. Anonymous Publicly Traded Co.,* 261 Va. 350 (2001) ("[t]hose who suffer damages as a result of tortious or other actionable communications on the Internet should be able to seek appropriate redress by preventing the wrongdoers from hiding behind an illusory shield of purported First Amendment rights").

"The right to speak, whether anonymously or otherwise, is not unlimited… and the degree of scrutiny varies depending on the circumstances and the type of speech at issue." *Anonymous Online Speakers, supra,* 661 F.3d at 1173. For instance, "commercial speech enjoys only limited First Amendment protection." *Id.; see also Lefkoe v. Jos A. Bank Clothiers, Inc.,* 577 F.3d 240, 248-49 (4th Cir. 2009). In specific, the problem of the unknown defendant infringing copyrights has worsened with the growth of the Internet. *See, e.g., Columbia, supra,* 185 F.R.D. at 577 ( "[w]ith the rise of the Internet has come the ability to commit certain tortious acts, such as defamation, copyright infringement, and trademark infringement, entirely on-line. The tortfeasor can act pseudonymously or anonymously and may give fictitious or incomplete identifying information"). This case deals precisely with the issue of an unknown defendant (or defendants) infringing a valid copyright, and no amount of eloquence regarding First Amendment principles grants Doe 1 a constitutional right to infringe.

## IV.   MS. DHILLON HAS MADE A PRIMA FACIE CLAIM OF COPYRIGHT INFRINGEMENT

Ms. Dhillon has made a concrete showing – which Doe 1 *does not and cannot contest* – that 1) Plaintiff owns the copyright to the Headshot Photograph and 2) that Doe 1 has copied the Headshot Photograph without Plaintiff's authorization and has used it in the "Meet Harmeet" article. *See* Dkt. 45 (Doe 1 Answer), ¶15; Dhillon Decl. ¶3; Shoquist Decl., Ex. A.    This showing constitutes a prima facie claim of copyright infringement. *See Sony Music, supra,* 325 F.Supp. at 567 (claim of copyright infringement consists of two elements"(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original").

Doe 1 attempts to argue that a consideration of the fair use factors is required to make a prima facie copyright infringement claim. This argument has been considered and rejected in federal courts around the nation, including by the United States Supreme Court. It is well-established that the evaluation of the affirmative defense of fair use is highly fact-specific and must be evaluated on a case by case basis. *See, e.g., Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 561 (1985) ("[t]he drafters [of 17 U.S.C. §107, defining fair use] resisted pressures from special interest groups to create presumptive categories of fair use, but structured the provision as *an affirmative defense requiring a case-by-case analysis*") (emphasis added); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 581 (1994); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1239 (11th Cir. 2010) (holding that "binding Supreme Court authority requires us to treat fair us as an affirmative defense"). The Ninth Circuit has similarly confirmed that "fair use is an affirmative defense." *Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997); *see also Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007); *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 723 F.3d 1067, 1074 (9th Cir. 2013); *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1170 (9th Cir. 2012). There can be no dispute on this point.

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

## V.   JUDGMENT ON THE PLEADINGS UNDER FRCP 12(c) AND SUMMARY JUDGMENT UNDER FRCP 56 ARE INAPPROPRAITE BECAUSE THE OPERATIVE FACTS PERTAINING TO DOE 1'S[1] AFFIRMATIVE DEFENSE OF FAIR USE ARE DISPUTED

As Ms. Dhillon's prima facie claim of copyright infringement cannot be contested, the success of Doe 1's Motion hinges on his ability to demonstrate a lack of any triable issues of material fact concerning his affirmative defense of fair use.  "Fair use is a mixed question of law and fact," and a court can resolve the issue of fair use on a motion for summary judgment only when there are no genuine issues of material fact, or if, after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion. *Leadsinger, Inc. v. BMG Music Pub.* 512 F.3d 522, 530 (9th Cir. 2008); *see also Hustler Magazine Inc. v. Moral Majority Inc.* 796 F.2d 1148, 1151 (9th Cir. 1986). Based on the evidence submitted by Ms. Dhillon in support of this opposition, a reasonable trier of fact could reach two different conclusions about whether Doe 1's infringement was "fair use," and  thus the Court may not properly make a determination as a matter of law concerning whether the fair use doctrine applies, under either Rule 12(C) or Rule 56.

### A.  Judgment on the Pleadings Under FRCP 12(c) is Unwarranted

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir.1989). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.; see also Savage v. Council On American-Islamic Relations, Inc.,* 2008 WL 2951281 (N.D. Cal. 2008). "[D]ocuments specifically referred to in a complaint, though not physically attached to the pleading, may be considered where authenticity is unquestioned." *Id. Burnett v. Twentieth*

---

[1] Doe 1's Motion does not apply to other potential defendants, who are not before the Court.

*Century Fox Film Corp.,* 491 F.Supp.2d 962, 966 (C.D.Cal.2007).[2]

As discussed at length below, both the commercial nature of Doe 1's conduct and the effect of that conduct on the value of Ms. Dhillon's copyright are disputed by Ms. Dhillon, whose allegations must be accepted as true at this stage. Given that these issues are material to Doe 1's fair use defense, the issue of whether Doe 1's conduct is protected by the fair use doctrine cannot be decided on the pleadings under Rule 12(c). *See, e.g., Shepard v. Miler,* 2010 WL 5205108 (E.D. Cal. 2010).

**B.  Summary Judgment Under FRCP 56 is Unwarranted**

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When a party with the ultimate burden of persuasion at trial as to a matter moves for summary judgment, it must demonstrate affirmatively by evidence each essential element of its claim or affirmative defense and must establish that there is no triable issue of fact as to each essential element such that a rational trier of fact could render a judgment in its favor. *Southern California Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).  The moving party must meet the initial burden of producing evidence or showing an absence of evidence as well as the ultimate burden of persuasion. *Nissan Fire Ltd. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir.2000).

If, and only if, the moving party has sustained its initial burden, the nonmoving party must demonstrate there is a dispute as to material facts on the elements that the moving party has contested, including in the form of affidavits. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574, 586 (1986); Fed.R.Civ.P. 56(e). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact

---

[2]  In connection with the Motion, counsel for Doe 1 submits nine exhibits, only one of which (the "Meet Harmeet" article) is specifically referred to in the Complaint. *See* Cigel Decl. Exhs. A through I. Should the Court decide to proceed under a Rule 12(c) analysis, none of the remaining exhibits submitted by Doe 1 should properly be considered. *See Burnett, supra.*

1   conclusively in its favor; rather, it is sufficient that "the claimed factual dispute be shown to

2   require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec.*

3   *Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

4        The opposing party's evidence is to be believed, and all reasonable inferences that may

5   be drawn from the facts before the court must be drawn in favor of the opposing party.

6   *Matsushita, supra,* 475 U.S. at 587; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

7   Inferences may be drawn from a nonmoving party's direct and circumstantial evidence to

8   establish a genuine issue of material fact so long as such evidence was of sufficient "quantum or

9   quality." *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1222 (9th Cir. 1995).

10       The direct and circumstantial evidence submitted by Ms. Dhillon, as well as the

11  inferences to be drawn from that evidence, clearly demonstrate that there are disputed material

12  facts pertaining to Doe 1's affirmative defense of fair use. The sole "evidence" submitted by

13  Doe 1 to demonstrate the absence of disputed material facts consists of legal argument and self-

14  serving statements set forth in a declaration by Doe 1's counsel, which statements lack

15  foundation and are entitled to no weight.[3] *See* Evidentiary Objections to Cigel Decl., *infra.*

16  Given Doe 1's failure to sustain its initial burden, the evidence set forth by Ms. Dhillon, and the

17  Court's obligation to view all inferences to be drawn from the underlying evidence in Ms.

18  Dhillon's favor, summary judgment is inappropriate.

19

20

21

22

---

23  [3] Doe 1 is precluded from presenting new evidence in support of his Motion on reply. *See, e.g.,*

24  *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a
    moving party to introduce new facts or different legal arguments in the reply brief than those

25  presented in the moving papers"); *State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir.1990)
    ("[Parties] cannot raise a new issue for the first time in their reply briefs" (citations omitted));

26  *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in the reply
    brief are waived").

---

Opposition to Doe 1's Motion for Judgment on the                    **DHILLON & SMITH LLP**
Pleadings or for Summary Judgment

## V.   DOE 1 CANNOT SHOW, AS A MATTER OF LAW, THAT THE FAIR USE FACTORS WEIGH IN FAVOR OF GRANTING JUDGMENT ON THE PLEADINGS

In determining whether the use made of a work constitutes fair use, the court considers: (1) The purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) The nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) The effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. §107. Doe 1 has failed to carry his affirmative burden of showing the absence of any triable issue of fact as to each essential element of his affirmative defense of fair use.

### A.  Purpose and Character of the Use

#### 1.   Commercial Character of the Use

The first fair use factor includes an inquiry into whether the use was for profit, and whether and to what extent the new work is transformative.  *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 579 (1994). If a defendant's use of the copyrighted item is commercial in nature, that fact weighs against a finding of fair use.  *Harper & Row, supra,* 471 U.S. at 562. "Fair use presupposes good faith and fair dealing, and one pertinent consideration is whether the user stands to profit from exploitation of the copyrighted material without paying the customary price." *Arista, supra,* 604 F.110 at 124; *citing Harper & Row, supra,* 471 U.S. at 560. The Supreme Court has recognized that "every commercial use of copyrighted material is presumptively an unfair exploitation of the monopoly privilege that belongs to the owner of the copyright."  *Sony Corp. of Am. v. Universal City Studios, Inc.,* 464 U.S. 417, 451 (1984) (internal citations omitted); *Leadsinger, Inc. v. BMG Music Pub.* (9th Cir. 2008) 512 F.3d 522, 530

Doe 1's analysis of the first factor of fair use conspicuously omits any discussion of the commercial nature of the use. *See* Motion, pp. 15-19. Rather, in a short paragraph buried at the end of his brief, Doe 1 states that "there is no allegation or evidence that mungergames.net generated any income from the posting of the headshot…the blog is entirely non-

commercial…[t]he site does not sell anything whatsoever and there is no option on the site to provide money." Motion, 22:6-11. This argument is fatally deficient on numerous grounds.

First, Doe 1 submits no admissible evidence in support of his self-serving statements that mungergames.net does not sell anything or solicit donations from viewers. While Doe 1's counsel submits a declaration with these assertions, he provides no foundation and demonstrates no personal knowledge of the facts asserted, and thus his testimony must be given no weight, and certainly does not overcome the presumption that a commercial use of a copyrighted material is an unfair exploitation of copyright. *See* Evidentiary Objections, *infra; see also* Fed.R.Civ.P. 56(e) (affidavits shall be based on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein); *Sony Corp., supra,* 464 U.S. at 451. Legal argument and rhetoric are not evidence, and do not create issues of fact. *See, e.g., British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978). Nor do baseless declarations by counsel without personal knowledge.

Second, simply claiming that *mungergames.net* does not charge a fee to viewers does not establish that *Doe 1*, as author and/or publisher of the Meet Harmeet article, did not derive a commercial benefit therefrom. Indeed, the California Fair Political Practices Commisison ("FPPC") has recognized that campaign committees frequently pay authors to post "favorable or unfavorable" political content on blogs, social media or online videos, and now requires reporting of such payments, as well as the name of the website where the content appears, on committee finance statements.. *See, e.g.,* Shoquist Decl., Ex. C (discussing proposal enacted in September 2013, which regulates online political communication).

Further, Doe 1's moving papers do not address the probability that *other individuals* were involved with authoring and/or publishing the Meet Harmeet article, and that those individuals may have profited in connection with this involvement. The Answer filed in this matter by Doe 1 admits that "an article entitled 'Meet Harmeet' was anonymously published on the website www.mungergames.net on February 12, 2013, and that Doe 1 *had some role* in publishing that

1    article" (Dkt. 45, ¶15, emphasis added), but does not explain the roles any other Doe defendants

2    shared in the publication and redistribution of the article. While purporting, without basis, to

3    speak on behalf of all those connected with mungergames.net, Doe 1 fails to state that he,

4    individually, or any other Doe defendant derived no commercial benefit from his or her

5    infringing use of the Headshot Photograph. Based on Doe 1's own pleadings, there may be not

6    only one, but rather several individuals commercially benefiting from the theft at issue, and Ms.

7    Dhillon should not be deprived of the opportunity to pursue her copyright claim against *all Doe*

8    *defendants* while they hide beyond a shield of anonymity.

9         Doe 1 submits no admissible evidence whatsoever showing that he (or others) is not

10   profiting from his unauthorized use of Ms. Dhillon's Headshot Photograph, despite having *three*

11   *separate opportunities* to do so, in two different district courts, and two of which opportunities

12   were initiated by him. Shoquist Decl., ¶8. It is Doe 1 – not Ms. Dhillon – who bears the burden

13   of demonstrating affirmatively by evidence each essential element of his affirmative defense of

14   fair use. *Southern Califronia Gas Co., supra,* 336 F.3d at 888. Doe 1's repeated failure to

15   provide evidence of a lack of commercial benefit is, by itself, compelling evidence that raises a

16   material factual dispute regarding whether Doe 1 – and/or other – have commercially benefitted

17   from the exploitation of Ms. Dhillon's intellectual property.[4]

18        Further evidence of the disputed commercial benefit is clear from the State of

19   California's recognition that political bloggers are often paid directly from outside sources rather

20   than the blogs on which they post content. This fact is confirmed by Ms. Dhillon's evidence,

21   which shows that bloggers who author successful "attack" articles criticizing political candidates

22   can and do command higher compensation, and that campaign committees and others pay

23   bloggers more highly to post stories if the blog on which the content is posted can show that it

---

[4] Even had Doe 1 submitted evidence regarding the commercial element of fair use – which he has not and which he is precluded from doing on reply – such evidence would "raise[] questions of credibility and plausibility that cannot be resolved while Doe 3 avoids suit by hiding behind a shield of anonymity." *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 124 (2d Cir. 2010).

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

1   has a strong following. Declaration of Aaron F. Park ("Park Decl."), ¶5. The use of a candidate's

2   or politician's photograph in conjunction with a blog or email significantly increases the

3   likelihood that the post or email will be read, which yields a higher "conversion" rate and

4   therefore more return on the investment of the posting party. Park Decl., ¶4. It is therefore likely

5   that Doe 1's admitted use of the Headshot Photograph increased traffic to mungergames.net and

6   caused either Doe 1, or mungergames.net, or both, to enjoy a direct commercial benefit from that

7   increase in traffic, as well as an increase in Doe 1's ability to demand higher compensation for

8   future attack articles. Park Decl., ¶6.

9        Third, evidence submitted by Ms. Dhillon (as well as the lack of admissible evidence

10   submitted by Doe 1) raises a triable question as to whether the mungergames.net blog itself is

11   commercial. Political blogs that are free to users or readers are often funded by and draw revenue

12   from sources outside of user subscriptions or donation solicitations. Park Decl., ¶7. For example,

13   websites such as consumerwatchdog.org, which characterizes itself as "a nonprofit organization

14   dedicated to providing an effective voice for taxpayers and consumers in an era when special

15   interests dominate public discourse, government and politics," (http://www.consumerwatchdog.

16   org/about), generate revenue from its website, including by selling access to its website to the

17   clients it consults. Park Decl., ¶7. Other blog websites that are free to users – such as

18   Wordpress.com, Blogger.com, or Flashreport.org – generate revenue in connection with the "pay

19   per click" advertisements that are placed on the free blogs. Park Decl., ¶7.

20        It is beyond dispute that the mungergames.net site has been used for a commercial

21   purpose on at least one occasion. For instance, last October, mungergames.net drove viewer

22   traffic to Flashreport.org, a political blog founded by Jon Fleishman, by posting two hyperlinks

23   to Flashreport.org in connection with an article reviewing a column written by Fleishman, which

24   attacked Ms. Dhillon for filing this lawsuit. *See* Shoquist Decl., ¶9, Exhs. E and F; Park Decl.,

25   ¶9. The mungergames.net article copied large excerpts from the Fleishman column and

26   concluded with the statement "You can read the rest of Fleishman's on-target column **here**

---

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

-13-

[hyperlink]**.**"[5] *See* Shoquist Decl., ¶9, Exhs. E and F. Flashreport.org is a clearly commercial site, rife with advertisements, including several stating "Your Ad Can Be Here!" *See* Shoquist Decl., ¶10, Ex. F. The increased traffic flow to Flashreport.org caused by mungergames.net's decision to drive its readers there increased the commercial value of the advertisements posted on Flashreport.org, and thus the profit enjoyed by Flashreport.org. Park Decl., ¶9. Doe 1 himself has previously admitted that the "combined viewership" of mungergames.net, Flashreport.org and a third source ranks in the "hundreds of thousands of Californians." *See* Dkt. 30 (Doe 1 and Michael J. Schroder's Opposition to Plaintiff's Administrative Motion for Leave to Take Limited Discovery), p.4.  Directing a substantial part of that readership to a commercial website has a commercial benefit, and Doe 1 has submitted no evidence putting to rest the issue of whether any part of this commercial benefit was shared with Doe 1, other does, and/or mungergames.net.

Anonymously-authored articles are one of the tools that political professionals use to drive traffic to their business, and many seemingly-political blogs are actually generating a profit from the amount of traffic they generate from posted content. Park Decl., ¶8. Information gathered in anonymously-authored blogs can be valuable to political professionals and candidates, and can and is often sold. Park Decl., ¶8. If a blog seeks to influence the contributing patterns of contributors, it is likely that its authors and/or publishers have a commercial interest in the results of those patterns. Park Decl., ¶8.

The mungergames.net blog explicitly operates in an attempt to influence campaign contributions to Republican candidates, including the main subject of the blog's criticism, Republican Charles Munger Jr. Park Decl., ¶9. The blog states that "We are very tough critics of Charles Munger Jr., but we freely acknowledge that *his wealth can be put to constructive use* on

---

[5] Flashreport.org has similarly included hyperlinks driving viewer traffic to mungergames.net. In fact, shortly after mungergames.net was first created, Fleishman wrote an article praising the "sharp witted authors of The Munger Games" (despite Fleishman's claim, in that same article, that he became aware of mungergames.net through an "anonymous e-mail"), and drove traffic directly to the mungergames.net website through a hyperlink posted on Flashreport.org. *See* Shoquist Decl., ¶10, Ex. G.

| Opposition to Doe 1's Motion for Judgment on the Pleadings or for Summary Judgment | **DHILLON & SMITH LLP** |
|---|---|

behalf of Republicans…as long as his focus is helping Republicans beat Democrats, and not other Republicans." Shoquist Decl., Ex. H (emphasis added). The blog addresses "…activists, regulars, volunteers, donors, party leaders, candidates and legislators sidling up to Munger's wallet…" Shoquist Decl., Ex. I (emphasis added). Moreover, Doe 1 has adduced no evidence showing that mungergames.net – while purporting to be a purely non-commercial and political blog – does not actually generate profit in connection with the amount of online traffic it generates from the anonymous articles it posts.

A review of mungergames.net's content and character indicates that mungergames.net is an attempt by a select group of Republican consultants in the Orange County region to eliminate competitive Republican versus Republican races in that area. Park Decl., ¶9; Shoquist Decl., Ex. H (January 10, 2014 posting on mungergames.net, stating "If we were to be so bold as to suggest a New Year's resolution for Munger, it would be this: Don't spend a dime on any Republican versus Republican contests in the November general election"). If achieved, this action would directly benefit these consultants due to a combination of victory bonuses and other monetary incentives. Park Decl., ¶9. The candidates in the Orange County races are advertisers on Flashreport.org. Park Decl., ¶9. Accordingly, it is likely that mungergames.net, Doe 1, and websites that link to mungergames.net, all derived commercial benefit from the use of Doe 1's use of the Headshot Photograph on the blog. Park Decl., ¶10.

The evidence available to the Court, and the fact that Doe 1 has so completely and repeatedly failed to carry his burden on the commercial element of fair use, clearly show that there is a disputed issue of material fact concerning whether either Doe 1, mungergames.net and/or other Doe defendants "stand[] to profit from exploitation of the copyrighted material without paying the customary price." *Arista, supra,* 604 F.110 at 124.  This weighs against a finding of the first fair use factor.

## 2.  Transformative Character of the Use

The second fair use factor is whether Doe 1's unauthorized use of the Headshot

---

1    Photograph was transformative. "Although transformation is a key factor in fair use, whether a

2    work is transformative is a often [sic] highly contentious topic." *Seltzer v. Green Day, Inc.*, 725

3    F.3d 1170, 1176 (9th Cir. 2013). The Ninth Circuit has warned against affording the

4    transformative use factor too much deference in the fair use determination, and has very recently

5    acknowledged that "[a] leading treatise on this topic has lamented the frequent misuse of the

6    transformation test, complaining that it has become a conclusory label which is 'all things to all

7    people.'" *Id.* at 1176 (citing Melville B. Nimmer & David Nimmer, 4 Nimmer on Copyright §

8    13.05 [A][1][b], 13–168–70 (2011) (internal quotation marks omitted).

9         "In the typical 'non-transformative' case, the use is one which makes no alteration to the

10   *expressive content or message* of the original work." *Selzer, supra,* 725 F.3d at 1177, 1181

11   (holding that "transformation was far from obvious given [defendant rock band's] only slight

12   alterations to the original [illustration]"); *see, e.g., Monge, supra,* 688 F.3d at 1176 (magazine

13   publication of photos of secret wedding of celebrity was not transformative because it did not

14   "alter[ ] the first [work] with new expression, meaning or message") (second alteration in

15   original); *Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70, 79 (2d Cir.1997) (use of a

16   poster as decoration on a TV show not transformative because it was used for "precisely a central

17   purpose for which it was created – to be decorative" and defendants had done nothing with the

18   poster to add anything new).

19        A secondary use of a copyrighted work is transformative when the new work "adds

20   something new, with a further purpose or different character, altering the first with new

21   expression, meaning, or message." *Campbell, supra,* 510 U.S. at 579.  The Ninth Circuit has

22   cautioned that "an infringer's separate purpose, by itself, does not necessarily create new

23   aesthetics or a new work that alters the first work with new expression, meaning or message,"

24   and has held that "wholesale copying sprinkled with written commentary…[is] at best minimally

25   transformative." *Monge, supra,* 688 F.3d at 1176 (internal citations omitted).  "A use is

26   considered transformative only where a defendant changes a plaintiff's copyrighted work or uses

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. Los Angeles County Sheriff's Dept.,* 447 F.3d 769, 778 (9th Cir. 2006).

As Ms. Dhillon has established, she created and uses the Headshot Photograph for the purpose of identifying herself as "Harmeet Dhillon," including in connection with political endeavors. Dhillon Decl., ¶4. This is the *exact same use* that Doe 1 and mungergames.net made of the Headshot Photograph. In attempting to quash the subpoena to New Dream Network in the Central District court, Doe 1 explicitly admitted that "the purpose of mungergames.net's use of the photograph was to allow readers of mungergames.net to identify Ms. Dhillon." Shoquist Decl., Ex. D (Motion to Quash, 21:12-14). Recognizing that this admission dooms his transformative use analysis, Doe 1 has been careful to ensure that he does not repeat the admission in the instant Motion, although the admission stands, and is conclusive.

Doe 1 concedes that he did not make a single alteration to the Headshot Photograph. This falls short of the clear requirement that Doe 1's use adds something new or alters the primary use with a new expression, meaning or message. This case is highly distinguishable from *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman,* 2009 WL 2157573, at *5 (N.D. Cal. 2009), where images originally used for promotional reasons were superimposed on postcards that mimicked "WANTED" posters, and were given captions in large fonts stating "WANTED FOR HUMAN RIGHTS VIOLATIONS," with accompanying text urging the public to report plaintiffs' misdeeds to public agencies.

Here, Doe 1's "expression, meaning or message" in placing the photograph alongside the "Meet Harmeet" article did not deviate in any way from Plaintiff's original use, and the fact that the text adjacent to Doe 1's wholesale copying of the Headshot Photograph contains some critique of Plaintiff does not alter this conclusion. *See, e.g., Monge, supra,* 688 F.3d at 1176. This is not a case where, for example, "photographs were originally intended to appear in modeling portfolios, not in the newspaper" (Motion, 18:20-24, *citing Nunez v. Caribbean Intern.*

1   *News Corp.*, 235 F.3d 18, 22 (1ˢᵗ Cir. 2000) – rather, Ms. Dhillon's motivation for creating the

2   Headshot Photograph was to use it to identify herself, and that is the same purpose that Doe 1

3   has used it for, without alteration. Dhillon Decl., ¶2.

4         As Doe 1 has utterly failed to a) meet (or even to try to meet) his burden of showing that

5   he derives no commercial benefit from the posting of the "Meet Harmeet" article, or b) meet his

6   burden of showing that use of the Headshot Photograph was transformative, the first factor

7   weighs strongly against a finding of fair use.

8                              **B.  The Nature of the Copyrighted Work.**

9         The second fair use factor is the nature of the copyrighted work. 17 U.S.C. §107(2).

10  Under this second factor, courts evaluate whether the work is (1) creative; and (2) unpublished.

11  *Harper & Row, supra*, 471 U.S. at 563-64. "Courts have recognized repeatedly that the creative

12  decisions involved in producing a photograph may render it sufficiently original to be

13  copyrightable and have carefully delineated selection of subject, posture, background, lighting,

14  and perhaps even perspective alone as protectable elements of a photographer's work." *Los*

15  *Angeles News Serv. v. Tullo,* 973 F.2d 791, 794 (9th Cir.1992).

16        The Headshot Photograph is a result of the type of creative decisions that courts have

17  found to weigh against a finding of fair use. The author of the work – professional photographer

18  Colin Hussey – used care and technique in selecting and employing creative elements that

19  would result in a Headshot Photograph that achieved the type of message Plaintiff was striving

20  for, including the proper venue and background; the time of day chosen to achieve the best

21  lighting; Plaintiff's body and head placement; and the framing of the shot. *See* Declaration of

22  Colin Hussey In Support of Opposition to Motion, ¶¶4-10. Mr. Hussey also creatively edited

23  and retouched the Headshot Photograph to achieve the desired result. *Id.*, ¶11. These creative

24  elements weigh heavily against a finding of fair use.

25        In attempt to refute Ms. Dhillon's valid argument that the Headshot Photograph is

26  "creative," Doe 1 cites the First Circuit case of *Nunez v. Caribbean Intern. News Corp.*, 235

---

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

-18-

F.3d 18, 22 (1ˢᵗ Cir. 2000), in which the court considered modeling photographs that had been used by a defendant in a newspaper article. The First Circuit agreed with the district court's finding that the "pictures could be categorized as either factual or creative," and held that "[g]iven the difficulty of characterizing the 'nature' of the photographs, we find that the impact of their creativity on the fair use finding is neutral." *Nunez, supra,* 235 F.3d at 23. Even if this court were to depart from established Ninth Circuit precedent (under which Ms. Dhillon demonstrates the "creative" nature of her work) in favor of First Circuit analysis and find that the photograph of Ms. Dhillon is not sufficiently creative, this aspect of the fair use analysis has nothing more than a neutral impact.

Doe 1 also misleads the Court with his allegation that Ms. Dhillon has "extensively published and released her publicity headshot photo to the general public over the course of the past several years." Motion, 19:16-17. In fact – and as Ms. Dhillon has stressed repeatedly in prior declarations – before Doe 1's infringement, all publication of the Headshot Photograph was made only with Ms. Dhillon's express authorization, and only to a highly select and restricted few individuals and entities, upon their specific request for her permission – not, as Doe 1 claims, to the "general public." Dhillon Decl., ¶4. Doe 1's intentional misconduct has deprived Ms. Dhillon of control over the publication of her copyrighted work, and this consideration should also weigh against a finding of fair use. *See, e.g., Harper & Row, supra,* 471 U.S. at 560 ("Fair use presupposes good faith and fair dealing").

## C. The Amount and Substantiality of the Portion Used in Relation to the Copyrighted Work as a Whole

The third fair use factor considers the amount and substantiality of the portion used by the defendant in relation to the copyrighted work as a whole.  17 U.S.C. §107(3). To the extent that Doe 1 copied "only as much of the photo as was necessary" (Motion, 21:4-5), this factor is neutral and does not weigh towards a finding of fair use. *See Kelly v. Arriba Soft Corp.,* (9th Cir. 2003) 336 F.3d 811, 820-21.

**D.  The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work.**

The fourth factor of fair use is the effect of the use upon the potential market for or value of the copyrighted work.  17 U.S.C. §107(4).  The Ninth Circuit has stated that the relevant question is "whether unrestricted and widespread conduct of the sort engaged in by the defendant would result in a substantially adverse impact on the potential market for the original."  *Arriba Soft, supra,* 336 F.3d at 820.

Doe 1 misstates *Dash v. Mayweather,* 731 F.3d 303 (4th Cir. 2013) when he asserts that "[i]n order to survive a summary judgment motion, Dhillon bears the burden of providing evidence of actual economic harm." Motion, 21:10-11. Doe 1 has the burden of first proving a lack of actual economic harm before any burden shifts to Ms. Dhillon. Doe 1 has failed to meet this burden. Moreover, *Dash* did not concern a fair use analysis, and the sole issue before the court was whether to uphold the district court's grant of summary judgment in favor of a defendant on the issue of plaintiff's entitlement to actual and profit damages. *See Dash, supra,* 731 F.3d at 313 (holding that "[i]n the summary judgment context, *once a defendant has properly supported his claim that there are no actual damages resulting from infringement*, the plaintiff must respond with nonspeculative evidence that such damages do, in fact, exist." (emphasis added)).

Doe 1 utterly fails to meet his burden. He cites no evidence in support of his assertion that "[t]here simply is no market for Dhillon's widely-used and now out-of-date publicity headshot photograph." Motion, 22:12-13. The Ninth Circuit has held that a defendant's failure to adduce evidence beyond merely "confining [himself] to uncontroverted submissions that there was no likely effect on the market for the original" disentitled the defendant from successfully asserting a fair use defense, as it should in this case. *Dr. Seuss, supra,* 109 F.3d at 1403.

Doe 1's reliance on *Dash* is misguided for an additional reason. In concluding that plaintiff was not entitled to any relief in the copyright action, the *Dash* court held that it did not need to address plaintiff's claim for injunctive relief because defendant had agreed not to

1    continue the infringing conduct. *Dash, supra,* 731 F.3d at n.3. By contrast, Ms. Dhillon seeks

2    injunctive relief in addition to monetary damages, on the grounds that if type of conduct

3    exhibited by Doe 1 is allowed to continue, the market for photographs of Ms. Dhillon will be

4    adversely affected because entities or individuals that wish to use copyrighted photographs of

5    Plaintiff will not feel restrained from doing so, even without Plaintiff's authorization.

6         Although she is not obligated to do so, Ms. Dhillon submits evidence that clearly raises a

7    disputed issue of material fact as to whether Doe 1's infringing conduct has negatively affected

8    the potential market for and/or value of the Headshot Photograph. Ms. Dhillon has established

9    that, since 2008 and until the infringing conduct by Doe 1, she consistently used the Headshot

10   Photograph to identify herself, including in connection with her political endeavors. Dhillon

11   Decl., ¶4.[6] Ms. Dhillon has further established that, prior to Doe 1's infringing conduct, she was

12   frequently approached by individuals and organizations for authorization to use the Headshot

13   Photograph. Dhillon Decl., ¶5.

14        Since the infringement, Ms. Dhillon has not received any interest in using the Headshot

15   Photograph, nor has she wanted to use or actually used the Headshot Photograph in her own

16   endeavors, due to its now-negative association. Dhillon Decl., ¶¶6-7. This is not surprising, as

17   the value of a headshot photograph decreases when it is used in a negative and/or unauthorized

18   way, and such use can taint the entire "brand" of the person depicted in the photograph.

19   Declaration of Tab Berg In Support of Opposition to Motion ("Berg Decl."), ¶3. For this reason,

20   professional political figures zealously guard and protect the images they release to the public.

21   Berg Decl. ¶4. In fact, companies exist whose entire purpose is to protect the value of a client's

22   images online, including by patrolling the Internet to determine where a client's image is used

23   negatively, and taking action to negate the harmful effects of that use. Berg Decl., ¶5.

24   _____

25   [6]  The fact that the photograph is from 2008 has no relevance to its value, and both private
     individuals and political figures routinely use "old" headshot photographs in marketing efforts.
26   Berg Decl., ¶8. In fact, it goes without saying that many prefer old headshots to current ones –
     the older the shot, the better.

Opposition to Doe 1's Motion for Judgment on the          **DHILLON & SMITH LLP**
Pleadings or for Summary Judgment

Accordingly, the unauthorized use by Doe 1 of Ms. Dhillon's Headshot Photograph in a negative context clearly devalues the value and usefulness of the photograph to Ms. Dhillon, as well as its value and usefulness to others who may otherwise have sought to license its use. Berg Decl., ¶¶ 6-7. At the very least, Ms. Dhillon will have to pay for a new headshot because of the misuse of the Headshot Photograph.

Even were Ms. Dhillon unable to submit the above evidence, which clearly raises a disputed issue of material fact as to whether Doe 1's infringing conduct has Doe 1 has affected the potential market and/or value for the Headshot Photograph, the fourth factor weighs against a finding of fair use. In *Los Angeles News Service v. Reuters Television Intern., Ltd.,* 149 F.3d 987, 994 (9th Cir. 1998), the Ninth Circuit held that even where a plaintiff opposing the fair use defense "could not prove loss of subsequent sales of the works, and hence actual adverse effect on the market for [the original work], defendants' actions should not go unpunished," as "[s]uch actions if permitted would result in a substantially adverse impact on the potential market for the original works." *Id.* at 994. Here, Ms. Dhillon has submitted evidence of damage, and Doe 1 has provided no evidence to refute Ms. Dhillon's showing – let alone evidence sufficient to quell any disputed factual issue – and is precluded from doing so on reply.

In summary, Doe 1 clearly fails to meet his burden of proof with regard to the first, second and fourth factors of the fair use defense, which weigh against a finding of fair use, and the third factor is neutral. As there are disputed material facts as to Doe 1's affirmative defense, judgment on the pleadings or summary judgment, in any form, is unwarranted and improper.

## VI.   AWARDING ATTORNEYS' FEES OR COSTS TO DOE 1 WOULD BE WHOLLY UNWARRANTED

As Doe 1 concedes, "[t]he most important factor in determining whether to award fees under the Copyright Act[] is whether an award will further the purposes of the Act – the primary objective of the Act being to encourage the production of original literary, artistic, and musical expression for the good of the public." Motion, 23:13-21, *citing Sofa Entm't, Inc. v.*

---

1  *Dodger Prods.,* 709 F.3d 1273, 1280 (9th Cir. 2013) (internal citations omitted). One way in

2  which this objective is achieved is by discouraging infringement through the prosecution of

3  colorable copyright claims. *See Fogerty v. Fantasy, Inc.* (1994) 510 U.S. 517, 526.

4        Attorney's fees are not automatically awarded to the prevailing party in a copyright

5  infringement dispute, but rather, the recovery of fees is left to the court's discretion. *Id.* at 534;

6  *Seltzer, supra,* 725 F.3d at 1180. "[A]ttorneys' fees to prevailing defendants [should] be

7  awarded circumspectly to avoid chilling a copyright holder's incentive to sue on colorable

8  claims," and "[p]revailing defendants are granted such fees only when the court finds plaintiff's

9  suit to have been baseless, frivolous, unreasonable, or brought in bad faith." *Roth v. Pritikin*

10  787 F.2d 54, 57 (2d Cir. 1986); *see also Bibbero Systems, Inc. v. Colwell Systems, Inc.*, 893

11  F.2d 1104, 1108 (9th Cir. 1990) ("In order to receive attorney's fees on a claim of copyright

12  infringement, a prevailing defendant must show that the action was frivolous or brought in bad

13  faith"); *Jartech, Inc. v. Clancy*, 666 F.2d 403, 407 (9th Cir. 1982)

14        The Ninth Circuit has specifically addressed the question of whether the successful

15  assertion of a fair use defense requires an award of attorneys' fees and has answered in the

16  negative. In *Seltzer v. Green Day, Inc.,* the court reversed the district court's finding that

17  Plaintiff's copyright infringement claim was objectively unreasonable – despite the fact that

18  plaintiff had lost his claim of infringement at summary judgment and had only won one of the

19  four fair use factors – and held that "the mere fact that [plaintiff] lost cannot establish his

20  objective unreasonability." *Seltzer, supra,* 725 F.3d at 1181; *see also Jartech, supra,* 666 F.2d

21  at 407 (merely proving a successful fair use defense is not sufficient to justify an award of

22  attorneys' fees where claim is non-frivolous).

23        Courts deciding whether to award attorneys fees can look to five non-exclusive factors:

24  (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective

25  unreasonableness of the losing party's factual and legal arguments; and (5) the need, in

26  particular circumstances, to advance considerations of compensation and deterrence. *Seltzer,*

---

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

-23-

1   *supra,* 725 F.3d 1170, 1181.  In the present case, all five factors concerning attorneys' fee

2   awards weigh in favor of Ms. Dhillon.

3          Regarding the first factor, there cannot be any dispute that Ms. Dhillon has obtained a

4   high degree of success by asserting a colorable copyright claim, and as discussed above, the

5   first, second and fourth factors of fair use weigh in favor of Ms. Dhillon, with the third factor

6   being neutral.  Similarily, regarding the fifth factor, there is no behavior for this Court to deter

7   because Ms. Dhillon has filed a meritorious, "colorable" claim against Doe defendants. *Fogerty,*

8   *supra,* 510 U.S. at 526.

9          Ms. Dhillon's attempts to enforce her registered intellectual property plainly cannot be

10  said to be frivolous, objectively unreasonable, or improperly motivated. This case is highly

11  distinguishable from *AF Holdings LLC v. Navasca,* 2013 WL3815677 (N.D. Cal. 2013) cited by

12  Doe 1, in which this Court found plaintiff's copyright infringement case to be frivolous and

13  objectively unreasonable where plaintiff "never presented any evidence (although it had the

14  opportunity to do so) to support its claim that it has standing to assert a claim for copyright

15  infringement." *Id.* at 1. Indeed, in that case, the Court found that plaintiff's standing argument

16  rested on a forged signature on an assignment agreement, and further found that plaintiff named

17  defendant as a party after an inadequate factual investigation. *Id.*

18         By contrast, Ms. Dhillon has not only set forth an irrefutable prima facie case of

19  copyright infringment, but she has explained under oath the damaging effects Doe 1's

20  unauthorized use has had on her intellectual property, as well as the need for Doe 1 to be

21  enjoined from repeating his (and his associates') misconduct in the future. Further, Ms. Dhillon

22  has gone to great lengths and has done ample due diligence in attempting to ascertain the correct

23  identity(ies) of the Doe defendants prior to involving them in this lawsuit, as Doe 1

24  acknowledges in his Motion. *See, e.g.,* Dhillon Decl., ¶¶10-12; Shoquist Decl., ¶2  Motion, pp.

25  4-5. Ms. Dhillon's motivation for this legitimate lawsuit is proper. By contrast, it is Doe 1's

26  baseless and biased musings over Ms. Dhillon's incentives that are frivolous, unfounded and

Opposition to Doe 1's Motion for Judgment on the
Pleadings or for Summary Judgment

**DHILLON & SMITH LLP**

improperly motivated. Awarding fees to Doe 1 under these circumstances would be illogical, implausible and without support, and would constitute an abuse of discretion subject to reversal on appeal. *See, e.g., Seltzer, supra,* 725 F.3d at 1180; *U.S. v. Hinkson,* 585 F.3d 1247, 1251 (9th Cir. 2009).

## VII.    CONCLUSION

For the foregoing reasons, Ms. Dhillon respectfully requests that this Court deny Doe 1's Motion for Judgment on the Pleadings Pursuant to FRCP 12(c) or for Summary Judgment under FRCP 56, and also deny Doe 1's request for costs and attorneys' fees.

## VIII.   EVIDENTIARY OBJECTIONS TO THE DECLARATION OF RICK CIGEL

| Material Objected To | Grounds for Objection |
|---|---|
| 1. "The Munger Games is a wholly noncommercial blog…" Declaration of Rick A. Cigel ("Cigel Decl."), ¶3. | Lack of personal knowledge, lack of foundation. Fed. Rules Evid., rule 602. Mr. Cigel has established that his only connection to the Munger Games website is as an attorney for one anonymous participant in the blog. Cigel Decl., ¶2. Accordingly, he could not personally know if, or how, the Munger Games receives compensation for the management, contribution or maintenance of the website. Mr. Cigel fails to establish any basis on which he is qualified to comment on the business operations of the Munger Games website. |
| 2. "The Munger Games website has absolutely no commercial elements." Cigel Decl., ¶4. | Lack of personal knowledge, lack of foundation. Fed. Rules Evid., rule 602. Mr. Cigel has established that his only connection to the Munger Games website is as an attorney for one anonymous participant in the blog. Cigel Decl., ¶2. Accordingly, he could not personally know whether the Munger Games has a commercial element. Mr. Cigel fails to establish any basis on which he is qualified to comment on the commercial elements, aspects or impact of the Munger Games website. |

Date: January 28, 2014                      DHILLON & SMITH LLP

                                By:

                                      /s/ Krista L. Shoquist
                                 HAROLD P. SMITH
                                 KRISTA L. DHILLON
                                 Attorneys for Plaintiff Harmeet K. Dhillon