Rick A. Cigel (SBN 105424)
Michael B. Kadish (SBN 164206)
THE CIGEL LAW GROUP, P.C.
10866 Wilshire Blvd., Suite 400
Los Angeles, California 90024
Tel:  (424) 901-8513
Fax: (424) 901-8514

Attorneys for Defendant
DOE 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HARMEET K. DHILLON, an individual,<br><br>                    Plaintiff,<br><br>    vs.<br><br>DOE 1, an unknown individual, and DOES 2 through 10,<br><br>                  Defendants. | Case No. 13-cv-01465 SI<br><br>DEFENDANT DOE 1'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(C) OR IN THE ALTERNATIVE SUMMARY JUDGMENT<br><br>Date: February 28, 2014<br>Time: 9:00 a.m.<br>Courtroom 10, 19th Floor<br>Hon. Susan Illston |

# TABLE OF CONTENTS

TABLE OF CONTENTS ..........................................................................................................ii

TABLE OF AUTHORITIES ................................................................................................... iii

I.  INTRODUCTION AND STATEMENT OF ISSUES ............................................... 1

II. DHILLON OFFERED CONCLUSORY SPECULATION IN AN INSUFFICIENT EFFORT TO RAISE GENUINE ISSUES OF MATERIAL FACT ........................................ 2

III. DOE 1 IS ENTITLED TO A FAVORABLE FINDING ON THE "PURPOSE AND CHARACTER OF USE" FACTOR ...................................................................... 4

    A.  Doe 1's Work Was Clearly Transformative. ................................................ 4

    B.  Dhillon Tries To Invent An Argument That The Munger Games Has Some Unknown And Unseen Commercial Benefit From The Site. ......................................... 5

IV. DHILLON READILY ADMITS THAT THE SUBJECT PHOTO WAS WIDELY DISSEMINATED IN 2008 IN CONNECTION WITH HER FAILED BID FOR THE CALIFORNIA STATE ASSEMBLY.  THE FACT THAT SHE HAD ALREADY USED THE PHOTO BOLSTERS DOE 1'S PROTECTION BY THE FIRST AMENDMENT AND THE FAIR USE DOCTRINE. ............................................................. 8

V.  DOE 1 IS ENTITLED TO HIS COSTS AND ATTORNEY'S FEES IN DEFENDING THIS PATENTLY FRIVOLOUS, POLITICALLY MOTIVATED SHAM ACTION. ....... 13

VI. CONCLUSION ................................................................................................ 14

VII. EVIDENTIARY OBJECTIONS ............................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

Barsamian v. City of Kingsburg, 597 F.Supp.2d 1054 (E.D. Cal. 2009) ........................................ 3, 6

Campbell v. Acuff–Rose Music, Inc., 510 U.S. 569 (1994) ...................................................... 4, 7, 10

Dash v. Mayweather, 731 F.3d 303 (4th Cir. 2013) ................................................................... 11, 12

Doe v. 2TheMart.com Inc., 140 F.Supp.2d 1088 (W.D. Wash. 2001) ............................................... 3

Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc., 109 F.3d 1394 (9th Cir. 1997) ............... 8

Sedgwick Claims Management Services, Inc. v. Delsman, 2009 WL 2157573 (N.D. Cal. 2009) ... 4

Harper & Row v. Nation Enterprises, 471 U.S. 539 (1985) ......................................................... 7, 9

Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148 (9th Cir. 1986) ................................ 7

Maljack Prods. Inc. v. GoodTimes Home Video Corp., 81 F.3d 881 (9th Cir. 1996) .................... 13

Mattel, Inc. v. MGA Entm't, Inc., 705 F.3d 1108 (9th Cir.2013) ..................................................... 12

Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792 (9th Cir. 2003) ............................. 7, 8

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007) ............................................... 4

Rodden v. Jefferson Pilot Financial Ins. Co., 591 F.Supp.2d 1113 (N.D. Cal. 2008) ...................... 3

Savage v. Council on Am.-Islamic Relations, Inc., 2008 WL 2951281 (N.D.Cal. July 25, 2008) ... 2

Schmidt v. Safeway, Inc., 894 F.Supp. 991 (D.Or. 1994) .................................................................. 3

Shepard v. Miler, 2010 WL 5205108 (E.D. Cal., Dec. 15, 2010) ..................................................... 8

Soremekun v. Thrifty Payless, Inc., 509 F.3d 978 (9th Cir. 2007) .................................................. 14

Stewart v. Abend, 495 U.S. 207 (1990) ........................................................................................... 12

Swatch Group Management Services Ltd. v. Bloomberg L.P.,
    2014 WL 274407 (2d Cir., Jan. 27, 2014) ......................................................................... 7, 9, 11

**Statutes**

17 U.S.C. § 107 .............................................................................................................................. 3, 9

Fed. R. Civ. Proc. 12 ..................................................................................................................... 2, 14

Fed. R. Civ. Proc. 56 ................................................................................................................... 14, 15

Fed. R. Evid. § 401 ..................................................................................................................... 14, 15

Fed. R. Evid. § 402 ................................................................................................................. 14, 15

Fed. R. Evid. § 602 ................................................................................................................. 14, 15

Fed. R. Evid. § 702 ................................................................................................................. 14, 15

Fed. R. Evid. § 703 ................................................................................................................. 14, 15

Fed. R. Evid. § 801 ....................................................................................................................... 14

Fed. R. Evid. § 901 ................................................................................................................. 14, 15

Fed. R. Evid. § 1002 ..................................................................................................................... 14

I.        INTRODUCTION AND STATEMENT OF ISSUES

Courtrooms and lawsuits exist as the means of resolving legitimate disputes between good faith litigants, and not as cudgels to beat down the voices of political critics and commentary. In this case, the opposition brief filed by plaintiff Harmeet Dhillon ("Dhillon") confirms defendant Doe 1's most grave concern: Dhillon and her billionaire benefactor, Charles Munger, Jr., are using her law firm's resources and his enormous wealth to crush legitimate political speech. Both of them are the subjects of highly critical articles published by The Munger Games. They want to silence that voice.

Until now, Dhillon and Munger had not found a strategy to mute The Munger Games. However, through the artifice of this lawsuit, they believe they can conduct intrusive discovery into The Munger Games' identity, status, communications and relationships. Dhillon's opposition brief confirmed that she is looking for a way to be as destructive to The Munger Games as possible. She now wants to exploit the fact that other media outlets, political blogs and websites, including the widely-read site "The Flash Report", have written articles about this lawsuit and The Munger Games' efforts to engage in political speech. Using the classic 1950's tactic of whipping up accusations about associations, Dhillon now accuses The Munger Games of being part of some under-the-table conspiracy with the other media outlets that have picked up this story.

Dhillon obviously is trying to set the stage to serve subpoenas and other harassing discovery regarding The Flash Report and any other political website that is critical of Dhillon and Munger, all under the guise of proving that The Munger Games derives some sort of financial compensation from its reporting and political commentary. That is dangerous, chilling conduct in harsh violation of the First Amendment. The Munger Games has the right to engage in political speech <u>especially</u> when public figures like Dhillon and Munger are abusing their positions for personal gain. Similarly, concerned citizens of California and elsewhere have the First Amendment right to <u>receive</u> the information printed by The Munger Games, The Flash Report, and every other media outlet that writes about this case.

Dhillon and Munger, in contrast, do not have the right to engage in a wildly-speculative witch-hunt over a $250 copyright infringement case. They have no right to utilize the discovery process to target and silence their critics. Using their logic of having the right to prove a "linkage" between The Munger Games and any media source that reports on this story, Dhillon and Munger would necessarily claim entitlement to investigate a link between The Munger Games and the San Francisco Chronicle, which ran a lengthy story about this case last December, or the Orange County Register, which republished the Chronicle story, or Thomson Reuters, which ran an article about this case on January 24, 2014.

The simple truth about this case is that Dhillon and Munger simply do not like what is being written about them, and they are searching for some way, anyway, to stop The Munger Games. Dhillon and Munger believe that pursing this federal copyright lawsuit for $250 in damages is their best strategy, because they believe they can bury The Munger Games in attorney's fees, learn private and potentially privileged or shielded information through discovery, scare away other journalists and critics, and then walk away with the smug satisfaction of having silenced the voices of their critics with the aid of this Court.

Despite all of Dhillon's rhetoric, this case comes down to a simple analysis for the Court: when The Munger Games published the "Meet Harmeet" article and its accompanying photograph, was the use of the photograph protected by the First Amendment and the fair use doctrine? The Court has all the information necessary to make that determination, in the same way that this Court resolved the Rule 12(c) motion in <u>Savage v. Council on Am.-Islamic Relations, Inc.</u>, 2008 WL 2951281 (N.D.Cal. July 25, 2008) and the United States Court of Appeals for the Second Circuit did a week ago when it granted summary judgment *sua sponte* in <u>Swatch Group Management Services Ltd. v. Bloomberg L.P.</u>, 2014 WL 274407 (January 27, 2014).

## II. DHILLON OFFERED CONCLUSORY SPECULATION IN AN INSUFFICIENT EFFORT TO RAISE GENUINE ISSUES OF MATERIAL FACT

Dhillon does not deny that it is appropriate for this Court to grant a Rule 12(c) or summary judgment motion in a copyright infringement case where the defendant establishes that the claim is

barred as a matter of law by the fair use doctrine. (Opp:7:6-8)[1]  Instead, she mistakenly contends there are triable issue of *material* fact regarding each of the four fair use factors (17 U.S.C. § 107) which prevent this Court from entering judgment. (Id.)

However, all she offered in support of her opposition is pure speculation.  The argument contained in her opposition brief simply is not evidence, and as set forth in the evidentiary objections section herein, the supporting declarations she filed are substantially objectionable.

It is well-settled that pure speculation and unsupported assertions will not suffice to create genuine issues of material fact for summary judgment purposes. Barsamian v. City of Kingsburg, 597 F.Supp.2d 1054, 1062 (E.D. Cal. 2009); Rodden v. Jefferson Pilot Financial Ins. Co., 591 F.Supp.2d 1113, 1123 (N.D. Cal. 2008) ("Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.")

As demonstrated herein and in Doe 1's original brief, there are no *material* facts at issue. Even if there were, when all inferences reasonably drawn from those facts are construed in Dhillon's favor, Doe 1 remains entitled to judgment as a matter of law. Neither the use of the photograph[2] nor the fact that the accompanying "Meet Harmeet" article is pure political speech, are disputed. The Court needs no other evidence. Contrary to Dhillon's suggestion otherwise, "judges are not required to leave their common sense at the door when they take the bench each morning." Schmidt v. Safeway, Inc., 894 F.Supp. 991, 1000 (D.Or. 1994).

This case is nothing but a power play by a billionaire political activist and his closely-allied attorney to squelch the First Amendment rights of someone who publically and repeatedly objects to their brand of money politics. See, Doe v. 2TheMart.com Inc., 140 F.Supp.2d 1088, 1092-93 (W.D. Wash. 2001) ("When speech touches on matters of public political life, such as debate over the qualifications of candidates, discussion of governmental or political affairs, discussion of

---

[1] All references to Dhillon's Opposition Brief shall be in the following format: Opp:Page:Line(s).

[2] While Doe 1 did not base either of his motions on Dhillon's flawed claim that she has always, or at least during all material times, owned the photograph and the copyright, Doe 1 disputes these representations.  Conspicuously, she never attached the supposed Copyright Assignment Agreement to her complaint or to any filing with this Court.  None of these issues must be raised or resolved regarding the establishment of the Fair Use Doctrine.  Should this case survive the current motions, Doe 1 will pursue the ownership and copyright issues.

political campaigns, and advocacy of controversial points of view, such speech has been described as the "core" or "essence" of the First Amendment.") Balancing the four statutory fair use factors in light of both the undisputed facts of this case and those inferences, if any, of *material* fact that must be drawn in Dhillon's favor, Doe 1 has clearly proven he is entitled to the protection embodied in the fair use doctrine, and judgment should be entered in his favor.

### III. DOE 1 IS ENTITLED TO A FAVORABLE FINDING ON THE "PURPOSE AND CHARACTER OF USE" FACTOR

#### A. Doe 1's Work Was Clearly Transformative.

Dhillon argues that there can be no fair use because Doe 1 did not alter the subject photograph and the photograph was supposedly used for the same *exact* purpose, i.e., that of identifying Dhillon. (Opp:17:4-12) Dhillon's arguments are misplaced.

The question of fair use does not turn simply on whether the photograph itself was unaltered. Rather, the salient inquiry is whether the use of the photo, *in the specific context used,* was transformative. Sedgwick Claims Management Services, Inc. v. Delsman, 2009 WL 2157573 (N.D. Cal. 2009) (emphasis added), aff'd, 422 Fed.Appx. 651 (9th Cir. 2011), *citing*, Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146. 1164 (9th Cir. 2007). "A work is transformative when the new work does not merely supersede the objects of the original creation but rather adds something new, with a further purpose or different character, altering the first with new expression, meaning, or **message**." (Emphasis added) Id. The more transformative the new work, the less the significance of other factors that weigh against fair use, such as use of a commercial nature. Campbell v. Acuff–Rose Music, Inc., 510 U.S. 569, 579 (1994).

In both her Complaint and in her own declaration, Dhillon states that she personally commissioned the photograph for the purpose of identifying herself as a candidate the California State Assembly, District 13 in 2008. (Complaint:¶14; Dhillon Dec:2:2-3) In his declaration, photographer Colin Hussey states that in creating the photograph, he was attempting to capture Dhillon in (1) an aesthetically pleasing manner; (2) that would allow her intended audience to

identify her; and (3) to convey the message that she was professional; intelligent and compassionate. (Hussey Dec:2:3-5 and 12-16).

In sharp contrast, Doe 1's use of the photograph was not to identify Dhillon as a candidate for public office or to assist her in being elected to the State Assembly. Quite differently, the "Meet Harmeet" article informed California citizens and voters that Dhillon, a Vice Chairman of the California Republican Party, was working for and being paid by billionaire activist Munger. The article emphasized Dhillon's boasts about her work with the ACLU, and her push for social issues that are directly opposed to issues advanced by the Republican Party, such as removing "Under God" from the Pledge of Allegiance and opposing anti-pornography filters on public library computers. These critical facts and Dhillon's necessary ethical dilemma are something that no other media outlets had previously reported. The Munger Games' commentary and dissemination of information lies at the heart of the First Amendment and the fair use doctrine.

**B.     Dhillon Tries To Invent An Argument That The Munger Games Has Some Unknown And Unseen Commercial Benefit From The Site.**

In another attempt to have this Court leave common sense at the door, Dhillon tries to wish away the obvious fact that The Munger Games is not a commercial website. As Doe 1 has said consistently, a simple view of the website shows that it is free and accessible to all, it does not charge any money for anything, it does not sell anything, and has no place to pay, provide or donate money. There are no advertisements, the site has no section for subscriber-only content, and there is not a single link for political fundraising. By all appearances, the site and its content, including the article and its accompanying photograph, are totally free to all consumers and no money is solicited or generated by its viewers.

Dhillon refuses to acknowledge that obvious truth. Instead, she simply asserts the use of the photograph was "commercial" and therefore by definition "unfair". (Opp:11:7-8) Her problem is that she has absolutely no factual or legal support for that invented claim.

Dhillon's pure speculation is not evidence. The "Meet Harmeet" article is before this Court with no objection from either party. Dhillon did not point to any part of the article or of the entire

The Munger Games website to establish that either is "commercial" or intended to generate revenue, much less a profit.

As noted above, pure speculation and unsupported assertions *will not suffice to create genuine issues of material fact for summary judgment purposes*. Barsamian, *supra*, 597 F.Supp.2d at 1062.  Here, Dhillon tries to create issues of material fact where none exist by **speculating**: (1) That other individuals were involved in the authoring and/or publishing of the article, and they "may have profited" from their involvement (Opp:11:22-24);  (2) The use of the photograph "likely" increased traffic to the Mungergames.net website and therefore "likely" increased Doe 1's ability to demand higher compensation for future articles (Opp:13:4-8); (3) The Mungergames.net website "may" generate revenue from selling access to the site or having pay-per-click advertising (Opp:13:16-19); (4) Third party websites that link to the article may themselves generate revenue by ads on *their* websites (Opp:14:3-7); and (5) The Mungergames.net website operates "in an attempt to influence campaign contributions." (Opp:14:19-20).

Taken to its logically extreme, the *content* of every website ever hosted or developed by third party vendors would have to be characterized as commercial, for these companies are typically paid for their services. Similarly, all content of any site would have to be deemed commercial if a third-party "linked" to the article and the third-party site has advertising or generates revenue.

Dhillon's arguments are frivolous.  The nature of political speech and commentary certainly do not change merely because it the speech is republished or "linked to" by a third-party commercial vendor.  In this case, the "Meet Harmeet" article and this resulting lawsuit have been picked up by such major news organizations as the San Francisco Chronicle, the Orange County Register and Reuters news service. Google has the "Meet Harmeet" article linked as its first result for the search of "Meet Harmeet", and the Flash Report refers to portions of the article and then links to the entire article on The Munger Games.   The fact that the San Francisco Chronicle is a commercial venture, or that the Flash Report supposedly has some commercial components to its website have absolutely no effect on The Munger Games and the Fair Use Doctrine analysis.

The Fair Use Doctrine analysis would not be substantially different even if The Munger Games were clearly and fully commercial. The Supreme Court noted in *Campbell* that even works involving comment and criticism "are generally conducted for profit in this country." *Id.* (quoting Harper & Row v. Nation Enterprises, 471 U.S. 539, 592, 105 S.Ct. 2218); Mattel, Inc. v. Walking Mountain Productions, 353 F.3d 792, 803 (9th Cir. 2003). In Swatch Group Management Services Ltd. v. Bloomberg L.P., 2014 WL 274407, *7 (2d Cir., Jan. 27, 2014, 12-2412-CV), the Second Circuit stated last week that:

> "almost all newspapers, books and magazines are published by commercial enterprises that seek a profit, and have discounted this consideration where "the link between the defendant's commercial gain and its copying is attenuated" such that it would be misleading to characterize the use as 'commercial exploitation.'" (Citations omitted)

Swatch at *7[3].

This Court recognized in Savage v. Council on American-Islamic Relations, Inc., 2008 WL 2951281, *5 (N.D. Cal., July 25, 2008, C 07-6076 SI) that the mere fact there is an exchange of money does not vitiate the Fair Use Doctrine:

> "Protection under the doctrine of fair use extends to those with a political purpose, even those engaged in fundraising activities. Thus plaintiff's allegation that defendants placed the link to the plaintiff's audio excerpt near a donate button on defendants' web page does not vitiate fair use, where defendants' use of the audio excerpt called attention to plaintiff's statements to raise funds from defendants' supporters, by providing criticism and comment."

*Citing*, Hustler Magazine Inc. v. Moral Majority Inc., 796 F.2d 1148, 1152-3 (9th Cir. 1986); Campbell, 510 U.S. at 571-72.

In sum, there is no actual "material factual dispute" regarding any commercial component of The Munger Games. The entire argument is nothing more than a wild speculative claim by Dhillon as she hopes to defeat the motion. Even resolving any <u>actual</u> material factual disputes in Dhillon's

---

[3] Swatch is a highly instructive and relevant case that was decided just last week by the Second Circuit. Because of space limitations, Doe 1 is not able to recite and analyze Swatch. Doe 1 urges the Court to review it carefully. For the Court's convenience, Doe 1 attaches a copy of the case to the concurrently-filed Declaration of Rick A. Cigel.

1 favor, it is clear that Doe 1's overriding purpose was not to supplant Dhillon's use of the
2 photograph, but rather to deliver news and political commentary on Dhillon and Munger, and on the
3 influence that Munger and his money bring to California politics. This kind of news reporting and
4 commentary lie at the heart of the First Amendment and the Fair Use Doctrine. The "purpose and
5 character of use factor" **overwhelmingly** weighs in favor of fair use, and this Court should so find
6 and dismiss the instant action.

7 IV.  **DHILLON READILY ADMITS THAT THE SUBJECT PHOTO WAS WIDELY DISSEMINATED IN 2008 IN CONNECTION WITH HER FAILED BID FOR THE CALIFORNIA STATE ASSEMBLY.  THE FACT THAT SHE HAD ALREADY USED THE PHOTO BOLSTERS DOE 1'S PROTECTION BY THE FIRST AMENDMENT AND THE FAIR USE DOCTRINE.**

12 The "nature of the copyrighted work" factor is typically *in*significant in the overall
13 balancing of the fair use factors. Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc. (9th Cir.
14 1997) 109 F.3d 1394, 1402. **This is particularly true when dealing with transformative uses,
15 and where the work has been previously published.** Shepard v. Miler (E.D. Cal., Dec. 15, 2010,
16 CIV 2101863WBSJFM) 2010 WL 5205108, *5, citing, Mattel, *supra,* 353 F.3d at 803.

17 Here, as a matter of law, Dhillon's copyright claim is "thin" because she widely used the
18 photograph previously.  Swatch, *supra* at *8.  The scope of fair use is greater with factual than non-
19 factual works. Id. at *13.

20 Dhillon freely admits that she used the headshot publicity photo as part of her 2008
21 candidacy for the California State Assembly.  She also used the photograph "in connection with her
22 subsequent campaigns, political activities, and various professional marketing efforts", and she
23 released the photo to other individuals and entities. (Complaint, ¶14; Dhillon Dec: 2:1-4 and 9-10;
24 Opp:19:13-15).  Her "subsequent campaigns" included her 2012 campaign for the position of
25 Member of the California State Senate, District 11.  (Complaint, ¶8)  Her "political activities"
26 include her successful campaigns for Vice Chairman of the California Republican Party for the
27 2013-15 term and Chairman of the San Francisco Republican Party.  (Complaint, ¶9)

28

- 8 -
Doe 1's Reply Brief In Support Of Motion For Judgment On The Pleadings
Or In The Alternative Summary Judgment

While the photographer now claims to have made some "artistic decisions" in the use of shadow and light, his overriding admitted mission was to get people to vote for Dhillon by portraying her as a professional, intelligent and compassionate candidate for the State Assembly. (Hussey Dec:2:3-5 and 12-16). As detailed above, this was not Doe 1's intent in utilizing the photo.

Additionally, and perhaps more importantly in this particular case, Dhillon first publicly disseminated the photo approximately five years before it appeared on The Munger Games website and did so in connection with a *public* campaign to win a California State Assembly seat. (Complaint:¶14; Dhillon Dec:2:2-3) It is clear that Dhillon was not deprived of the ability to control the work's first public appearance, including when, where, and in what form it first appeared.[4] *See*, Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, 564 (1985), *Accord*, Swatch at *11. While neither as strong nor as important as the first factor, the "nature of the copyrighted work" factor also weighs in Doe 1's favor, or at worst, is a neutral factor[5].

## V. IN A VERY CONSPICUOUS AND TACTICAL MOVE, DHILLON NEITHER ALLEGED NOR ARGUED THAT THERE IS A COMMERICAL MARKET FOR HER FIVE YEAR OLD HEADSHOT PHOTOGRAPH, AND SHE CERTAINLY FAILED TO ESTABLISH A TRIABLE ISSUE OF FACT REGARDING ANY IMPACT ON THAT NON-EXISTENT MARKET

The last factor to be considered in analyzing the fair use doctrine is "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. 107(4). This factor "requires courts to consider not only the extent of market harm caused by the particular actions of the alleged infringer, but also whether unrestricted and widespread conduct of the sort engaged in

---

[4] Also relevant to this factor is Dhillon's own statement in a previous brief to this Court that Doe 1 "cut-and-pasted the Headshot Photograph 'from a previous [Dhillon] political campaign' website". (Dkt. 39 at p. 3).

[5] Both parties agree that the third factor in the fair use analysis, "Amount And Substantiality Of Portion Used" is neutral and does not favor or disfavor a finding of fair use. (Motion:20:21 to 21:5; Opp:19:20-26) Consequently, the factor is not discussed here.

by the defendant would result in a substantially adverse impact on the potential market for the original." Campbell, 510 U.S. at 590 (quotation marks and alterations omitted).

While reviewing this factor, Doe 1 studied Dhillon's complaint and her arguments and declarations in this case. Dhillon certainly is familiar with this factor, as she professes her "expertise" in copyright law. As an "expert" in the law, she certainly knows the difference between having a market for commercial use of her photograph, and merely allowing people to "use" the picture. She hoped to conflate those two fundamentally different concepts in her carefully worded allegations and statements in this case.

In Paragraph 14 of her Complaint, she did not allege that she ever licensed the photo or had a market for it. She merely claimed that she "used" the photograph for the campaign and subsequent campaigns, and in political activities and professional marketing efforts. The subject photograph is just one of many she had taken over the years, as Dhillon alleged in Paragraph 10 that she "frequently" commissioned "photography in connection with her political participation, law practice, and campaign activities."

In her Declaration, Dhillon writes,

> 4.   I have used the Headshot Photograph for the purpose of identifying myself to the public, including in connection with my political activities and in professional marketing efforts relating to my law firm, beginning in or around June 2008. Since that time, and until the infringing conduct that is the subject of this lawsuit, I have given authorization to a select and restricted few individuals and entities to use the Headshot Photograph, upon their specific request for my permission. At all times, I have carefully restricted the individuals and entities to whom I have granted authorization to use the Headshot Photograph.
>
> 5.   Prior to Doe 1's use of the Headshot Photograph on the mungergames.net blog, I was frequently approached by individuals and entities for authorization to use the Headshot Photograph, and I selectively granted my authorization on a case-by-case basis.
>
> 6.   Since the unauthorized and negative use of my Headshot Photograph on mungergames.net in February 2013, I have not received any interest from third parties in using the Headshot Photograph.

(Dhillon Dec: ¶¶4-6)

Craftily, **Dhillon <u>never</u> says that anyone ever licensed the photo or that she was actually ever paid for the use of the photo**. Dhillon, a highly sophisticated lawyer and experienced politician, carefully phrased her above statements to avoid any statements about any market for her photo. The fact that someone asked to "use" the photograph comes nowhere close, and she knows it. There simply is no evidence before this Court to demonstrate or even put in issue that there was a market for this photograph or that The Munger Games' use of the photo with its "Meet Harmeet" article had any effect whatsoever on the licensing of the photo. The statement that no one has asked to use the photograph since the "Meet Harmeet" article is fanciful and irrelevant. If all of the prior requests were because of something that Dhillon initiated, such as her commencing a marketing campaign which led to the marketing company asking if it can use a photo as part of its work, then her statement is not relevant. Similarly, if she has a photo newer than the six-year old photograph involved in this case, and she is directing people to the new photograph, her statement is irrelevant.

Case law supports Doe 1 regarding this issue. As to the potential revenue to be generated by the licensing of the photograph in the future, the Second Circuit in *Swatch* properly warned,

> "While the loss of a potential yet untapped market can be cognizable under the fourth fair use factor, the potential market here is defined so narrowly that it begins to partake of circular reasoning. As Professor Nimmer has observed, "it is a given in every fair use case that plaintiff suffers a loss of a *potential* market if that potential is defined as the theoretical market for licensing the very use at bar." 4 Nimmer on Copyright § 13.05[A][4]. To guard against this "vice of circular reasoning," our case law limits our consideration to a use's "impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets." *Am. Geophysical Union,* 60 F.3d at 930–31." (Emphasis original.)

<u>Swatch</u>, *supra*, 2014 WL 274407, *14. In <u>Dash v. Mayweather</u>, 731 F.3d 303 (4th Cir. 2013), the court granted summary judgment in favor of Mayweather because the plaintiff musical composer failed to demonstrate the "existence of a causal connection between the alleged infringement and some loss of anticipated revenue." <u>Id</u>. at 313. In <u>Mayweather</u>, the boxer played plaintiff's copyrighted music during his entrance into the arena at a fighting event. However, the plaintiff never established that there was any market for the music or that he ever received compensation for the work. He admitted that he had never sought to commercially exploit the work and he never

produced documents such as tax returns to prove that he made any money whatsoever from licensing the work. In his opposition to Mayweather's summary judgment motions, the plaintiff provided a report from a retained expert, Dr. Michael Einhorn, discussing the likely loss of revenue. The court rejected that report as being too speculative. Among other things, it did not expressly conclude that there was a market for the work and it suggested to the court that the expert was incapable of concluding that plaintiff would ever have been paid a licensing fee. Id. at 11.

Here, Dhillon has placed no limits on the hypothesized market for her six year old campaign photo. Similar to the court's statement in Swatch regarding defendant Bloomberg's publication of a portion of Swatch's corporate earnings conference for stock analysts, "it would strain credulity" to suggest that placing Dhillon's photograph next to an article about her and her political relationship with Charles Munger, Jr. affected the phantom value of the photo. Id. at *7. It could be argued that by utilizing the photo, Doe 1 simply expanded the audience that is now familiar with Dhillon.

Regardless of the financial impact Dhillon claims in this $250 action, Doe 1's use of the photo had no effect whatsoever on Dhillon's ability to know and control precisely who saw the photo. First, the photo is instantly and easily available to anyone on the internet. Even if there is a cognizable interest in Dhillon's maintaining that control, it is far outweighed by the dissemination of important political news and commentary. Mattel, Inc. v. MGA Entm't, Inc., 705 F.3d 1108, 1111 (9th Cir.2013) (the ultimate goal of the Copyright Act is to stimulate creativity for the general public good.) See also, Stewart v. Abend, 495 U.S. 207, 236 (1990) (the fair use doctrine was codified by Congress to prevent overzealous monopolists from using their copyrights to stamp out the very creativity that the Act seeks to ignite.)

Balancing the four statutory factors together, and weighing all disputed material facts, if any, in favor of Dhillon, this Court should conclude that the copyright law's goal of promoting the progress of science and useful arts would be better served by allowing Doe 1's use of the photo than by preventing it.

## V. DOE 1 IS ENTITLED TO HIS COSTS AND ATTORNEY'S FEES IN DEFENDING THIS PATENTLY FRIVOLOUS, POLITICALLY MOTIVATED SHAM ACTION.

As previously established, Dhillon knew this action had no basis in copyright law when she filed it, yet she caused Doe 1 to incur significant expense in defending his Constitutional rights to free speech. Nothing in her opposition brief should dissuade this Court from these conclusions. Although Dhillon attempts to portray this lawsuit as an ordinary copyright infringement case, its existence and narrow agenda are well known and quite sinister. The suit has a single overriding purpose: to harass, bully and financially ruin political commentators who write critical articles on Charles Munger, Jr. and those hired by him to serve his will.

The judicial process should not be permitted to be used a as a tool of the wealthy and powerful to discourage political discourse or hinder the dissemination of news about our public figures. Dhillon, who says she is a highly experienced trial lawyer and skilled politician, violated this fundamental tenet of American jurisprudence. She intentionally disregarded the law, bringing the instant action knowing that it was nothing more than a pretext for the bidding of Charles Munger, Jr. and his desire to squelch all those that oppose his views.

Section 505 of the Copyright Act states that the court may allow recovery of full costs and a reasonable attorney's fee to the prevailing party as part of the costs. 17 U.S.C. § 505. Dhillon's position throughout these proceedings has been objectively unreasonable and patently frivolous. She seeks to chill free speech and squelch all political commentary and criticism of her and her client. This Court should therefore award Doe 1 his attorney's fees and costs in the amount of $128,665.00.[6] *See, e.g.,* <u>Maljack Prods. Inc. v. GoodTimes Home Video Corp.</u>, 81 F.3d 881, 890 (9th Cir. 1996) (a fee award is appropriate where the losing party's legal or factual position is frivolous or objectively unreasonable.)

---

[6] The fees and costs submitted are as of the filing of Doe 1's original moving papers. (Cigel Decl. at ¶ 16-19) Doe 1 should be permitted to update his request to reflect all fees and costs incurred through the granting of his motion and the entry of judgment thereon.

## VI. CONCLUSION

For all the foregoing reasons, Doe 1 respectfully requests this Court to grant its motion for a judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) or in the alternative summary judgment pursuant to Fed. R. Civ. P. 56 and grant its requests for attorney's fees and costs.

## VII. EVIDENTIARY OBJECTIONS

| Material Objected To | Legal Authority |
|---|---|
| **Dhillon Declaration:**<br><br>From ¶3 that portion that reads, "I am informed and believe that the Registration Number is VA0001859929." The declarant lacks personal knowledge. The offered testimony is speculative.<br><br>From ¶6 that portion that reads, "negative use". The declarant lacks personal knowledge. The offered testimony is speculative and improper argument.<br><br>From ¶7 that portion that reads, "negative use" and "that has been tainted with a prior negative association will harm my public image. The declarant lacks personal knowledge. The offered testimony is speculative and improper argument.<br><br>From ¶8 that portion that reads, "and the photograph was not altered in any way." The declarant lacks personal knowledge. The offered testimony is speculative and improper argument.<br><br>All of ¶ 10 <u>except</u> the first sentence. The declarant lacks personal knowledge. The offered testimony is speculative and improper argument.<br><br>The last sentence of ¶11. The offered testimony is hearsay. Best Evidence. | Lack of Foundation/Lack of Personal Knowledge (Fed. R. Evid. §602)<br><br>Speculation/Improper Argument (Fed. R. Civ. Proc. 56(c)(4) (affidavit or declaration must be made on personal knowledge); <u>Soremekun v. Thrifty Payless, Inc</u>., 509 F.3d 978, 984 (9th Cir. 2007) "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment."))<br><br>Best Evidence (Fed. R. Evid. § 1002)<br><br>Hearsay (Fed. R. Evid. § 801) |
| **Berg Declaration :**<br><br>All of ¶¶ 2 – 8, inclusive. Each of the cited paragraphs is irrelevant. Paragraphs 3, 4, 6, 7 & 8 contain improper speculation, argument or are not based upon the personal knowledge of the declarant. Additionally, ¶¶ 3, 4, 6, 7 & 8 contain improper expert testimony by a person not qualified as an expert. | Lack of Foundation/Lack of Personal Knowledge (Fed. R. Evid. §602)<br><br>Speculation/Improper Argument (Fed. R. Civ. Proc. 56(c)(4); <u>Soremekun</u>, *supra.*, 509 F.3d at 984.)<br><br>Relevancy (Fed. R. Evid. §§ 401 & 402)<br><br>Improper Expert Opinion (Fed. R. Evid. |

| | |
|---|---|
| | §§ 702 & 703) |
| **Hussey Declaration:**<br><br>From ¶3 that portion that reads, "I am informed and believe was published on the website www.mungergames.net in February 2013." The declarant lacks personal knowledge. The offered testimony is speculative. | Lack of Foundation/Lack of Personal Knowledge (Fed. R. Evid. § 602)<br><br>Speculation/Improper Argument (Fed. R. Civ. Proc. 56(c)(4)) |
| **Park Declaration:**<br><br>All of ¶¶ 2 – 10, inclusive. Each of the cited paragraphs is irrelevant. Paragraphs 3-10, inclusive, contain improper speculation, argument or are not based upon the personal knowledge of the declarant. Additionally, these paragraphs contain improper expert testimony by a person not qualified as an expert. | Lack of Foundation/Lack of Personal Knowledge (Fed. R. Evid. §602)<br><br>Speculation/Improper Argument (Fed. R. Civ. Proc. 56(c)(4); <u>Soremekun</u>, *supra*., 509 F.3d at 984.)<br><br>Relevancy (Fed. R. Evid. §§ 401 & 402)<br><br>Improper Expert Opinion (Fed. R. Evid. §§ 702 & 703) |
| **Shoquist Declaration:**<br><br>Except for the first sentence of ¶2 and all of ¶6, all of ¶¶ 2-11, inclusive. Paragraphs 2, 3, 4 & 8 are irrelevant, contain speculation and offer impermissible argument. Paragraphs 5, 6, 7, 9, 10 & 11 are irrelevant and contain hearsay.<br><br>Exhibits A, C, D, E, F, G, H & I: All of the referenced exhibits are irrelevant and contain hearsay. No proper foundation has been laid and the authenticity of each has not been established. | Relevancy (Fed. R. Evid. §§ 401 & 402)<br><br>Speculation/Improper Argument (Fed. R. Civ. Proc. 56(c)(4); <u>Soremekun</u>, *supra*., 509 F.3d at 984.)<br><br>Lack of Foundation/Lack of Personal Knowledge (Fed. R. Evid. §602)<br><br>Authenticity (Fed. R. Evid. § 901; <u>Beyene v. Coleman Sec. Servs., Inc.</u>, 854 F.2d 1179, 1182 (9th Cir.1988) (documents which have not had a proper foundation laid to authenticate them cannot support or defend against a motion for summary judgment. "A writing is not authenticated simply by attaching it to an affidavit...."))<br><br>Hearsay (Fed. R. Evid. § 801) |

Date: February 4, 2014                                      **THE CIGEL LAW GROUP, P.C.**


                                                           By:   /s/
                                                                Rick A. Cigel, Esq.
                                                           Attorneys for Defendant
                                                           DOE 1

- 15 -
Doe 1's Reply Brief In Support Of Motion For Judgment On The Pleadings
Or In The Alternative Summary Judgment

PROOF OF SERVICE

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

CASE NAME: **HARMEET K. DHILLON v. DOE 1**

The undersigned declares: I am a resident of the United States and am employed in the City and County of Los Angeles, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 10866 Wilshire Boulevard, Suite 400, Los Angeles, California 90024.

On February 4, 2014, I served the following document:

**DEFENDANT DOE 1'S REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FRCP 12(C) OR IN THE ALTERNATIVE SUMMARY JUDGMENT**

By serving in the manner described below to the interested parties herein and addressed to:

Harold P. Smith, Esq.
Krista L. Shoquist, Esq.
Dhillon & Smith, LLP
177 Post Street, Suite 700
San Francisco, CA 94108

[x] **MAIL:** I caused such envelope(s) to be deposited in the mail at my business address, with postage thereon fully prepaid, addressed to the addressee(s) designated. I am readily familiar with the business practice of collecting and processing correspondence to be deposited with the United States Postal Service on that same day in the ordinary course of business.

[x] **FEDERAL:** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on February 4, 2014 at Los Angeles, California.

/s/ _____
Shelly Lokietz