Rick A. Cigel, Esq. (SBN 105424)
THE CIGEL LAW GROUP, P.C.
10866 Wilshire Blvd., Suite 400
Los Angeles, California 90024
Tel:  (424) 901-8513
Fax:  (424) 901-8514

Attorneys for Defendant
DOE 1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| HARMEET K. DHILLON, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>DOE 1, an unknown individual, and DOES 2 through 10,<br><br>Defendants. | Case No. 13-cv-01465 SI<br><br>DEFENDANT DOE 1's NOTICE OF MOTION AND MOTION FOR SANCTIONS PURSUANT TO FRCP 11; MEMORANDUM OF POINTS AND AUTHORITES<br><br>[filed concurrently with Declaration of Rick A. Cigel]<br><br>Date:    April 4, 2014<br>Time:    9:00 a.m.<br>Place:   Courtroom 10, 19th Floor<br>             The Honorable Susan Illston |

## NOTICE OF MOTION AND RELIEF SOUGHT

PLEASE TAKE NOTICE, that on April 4, 2014, at 9:00 a.m., or at such other time as the Court may direct, before the Honorable Susan Illston, Courtroom 10, 19th Floor, United States District Court, 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Doe 1 will, and hereby does, move for monetary sanctions against Plaintiff Harmeet K. Dhillon and her attorneys pursuant to Fed. R. Civ. P. 11.

This Motion is made on the grounds that Plaintiff's complaint was filed for an improper purpose (F.R.C.P. 11(b)(1)) and was not warranted by existing law or a good faith argument for the extension of existing law and is frivolous (F.R.C.P. 11(b)(2)).

This Motion is based on the Notice of Motion and Motion, the Memorandum of Points and Authorities below, the contemporaneously-filed Declaration of Rick A. Cigel, the Declaration of Rick A. Cigel filed in this case on January 14, 2014 as Dkt. 46, and such other and further papers, evidence and argument as may be submitted to the Court in connection with the hearing on this Motion.

Dated: February 24, 2014                    **THE CIGEL LAW GROUP, P.C.**


By:  /s/ _____
         Rick A. Cigel
         Attorneys for Defendant
         DOE 1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

I.   INTRODUCTION AND STATEMENT OF ISSUES ................................................1

II.  STATEMENT OF FACTS ........................................................................................4

III. DOE 1 IS ENTITLED TO SANCTIONS PURSUANT TO FRCP RULE 11 ............6

IV.  DOE 1'S ANONYMOUS POLITICAL SPEECH IS PROTECTED BY THE FIRST
     AMENDMENT. ........................................................................................................8

V.   AS A MATTER OF LAW, THE USE ON MUNGERGAMES.NET OF DHILLON'S
     PHOTOGRAPH WAS "FAIR USE" AND THUS NOT COPYRIGHT INFRINGEMENT. ....10

     A.  Purpose And Character Of The Use .................................................................11

     B.  Nature Of The Copyrighted Work ....................................................................15

     C.  Amount And Substantiality Of Portion Used ...................................................17

     D.  Effect Of The Use Upon The Potential Market For Or Value Of The Copyrighted Work .17

VI.  DHILLON'S COMPLAINT IS A VIOLATION OF RULE 11 ..................................19

VII. CONCLUSION ........................................................................................................20

# <u>**TABLE OF AUTHORITIES**</u>

**Cases**

<u>Art of Living Foundation v. Does 1 – 10</u>,  2011 WL 5444622 (N.D. Cal. 2011) ........................passim

<u>Ascend Healthcare Corp. v. Wells</u>, 2013 WL 1010589 (E.D.N.C. 2013) .........................................13

<u>Baraban v. Time Warner Inc.</u>, 54 USPQ2d 1759 (S.D.N.Y. 2000) ...................................................13

<u>Calkins v. Playboy Enterprises Intern., Inc.</u>, 561 F.Supp.2d 1136 (E.D. Cal. 2008) ........................14

<u>Campbell v. Acuff-Rose Music, Inc.</u>, 510 U.S. 569 (1994)........................................................11, 15

<u>Dash v. Mayweather</u>, 731 F.3d 303 (4th Cir. 2013)................................................................17, 18

<u>Doe v. 2TheMart.com Inc.</u>, 140 F. Supp. 2d 1088 (W.D. Wash. 2001) .........................................8, 9

<u>Doering v. Union County Bd. of Close Freeholders</u>, 857 F2d 191 (3rd Cir. 1988).............................7

<u>Dr. Seuss Enters., L.P v. Penguin Books USA, Inc.</u>, 109 F. 3d 1394 (9th Cir. 1997) ........................11

<u>Eastway Construction Corp. v. City of New York</u>, 762 F2d 243 (2nd Cir. 1985)...............................7

<u>Eldred v. Ashcroft</u>, 537 U.S. 186 (2003) ......................................................................................10

<u>Elvis Presley Enters. v. Passport Video</u>, 349 F.3d 622 (9th Cir.2003) ............................................10

<u>Haberman v. Hustler Magazine, Inc.</u>, 626 F. Supp. 201 (D. Mass. 1986) .......................................16

<u>Harper & Row Publishers, Inc. v. Nation Enters.</u>, 471 U.S. 539 (1985)....................................15, 17

<u>Highfields Capital Management, L.P v. Doe</u>, 385 F. Supp. 2d 969 (N.D. Cal. 2005)........................9

<u>Huettig & Schromm, Inc. v. Landscape Contractors Council of Northern Calif.</u>,
    790 F2d 1421 (9th Cir. 1986)..........................................................................................7, 19

<u>Hustler Magazine, Inc. v. Moral Majority, Inc.</u>,606 F.Supp. 1526 (C.D. Cal. 1985) .......................12

<u>In re Anonymous Online Speakers</u>, 661 F.3d. 1168 (9th Cir. 2011)...............................................9, 10

<u>Keep Thomson Governor Committee v. Citizens for Gallen Committee</u>, 457 F.Supp. 957 (D.N.H.
    1978)....................................................................................................................................12

<u>Kelly v. Arriba Soft Corp.</u>, 336 F.3d 811 (9th Cir. 2003)..........................................................passim

<u>Kirschner v. Zoning Board of Appeals</u>, 159 FRD 391 (ED NY 1995)...............................................7

<u>Leibovitz v. Paramount Pictures Corp.</u>, 137 F.3d 109 (2d Cir.1998) ...............................................14

<u>Margo v. Weiss</u>, 213 F.3d 55 (2nd Cir. 2000) ..............................................................................7

<u>Mattel, Inc. v. Walking Mountain Productions</u>, 353 F.3d 792 (9th Cir. 2003)....................................14

<u>McIntyre v. Ohio Elections Comm'n</u>, 514 U.S. 334........................................................8, 9

<u>Meyer v. Grant</u>, 486 U.S. 414 (1988)........................................................................10

<u>New Era Publications Intern., ApS v. Carol Pub. Group</u>, 904 F.2d 152 (2d Cir.1990) ....................13

<u>Northland Family Planning Clinic, Inc. v. Center for Bio-Ethical Reform</u>,
     868 F.Supp.2d 962 (C.D. Cal. 2012)............................................................12

<u>Nunez v. Caribbean Intern. News Corp.</u>, 235 F.3d 18, 22 (1st Cir.2000)....................................14, 15

<u>Nunez v. Caribbean Int'l News Corp.</u>, 235 F.3d 18 (1st Cir.2000) ................................................14, 16

<u>Perfect 10, Inc. v. Amazon.com, Inc.</u>, 508 F.3d 1146 (9th Cir 2007)........................................13

<u>Perry v. Schwarzenegger</u>, 591 F.3d 1147 (9th Cir. 2010)..........................................................9

<u>Reno v. ACLU</u>, 521 U.S. 844 (1997)..........................................................................10

<u>Sedgwick Claims Management Services, Inc. v. Delsman</u>,
     2009 WL 2157573 (N.D. Cal. 2009)..............................................................13, 14

<u>Talley v. California</u>, 362 U.S. 60 (1960)..........................................................................8

<u>Townsend v. Holman Consulting Corp.</u>, 929 F.2d 1358 (9th Cir. 1990)............................................20

<u>USA Technologies, Inc. V. Doe</u>, 713 F.Supp.2d 901 (N.D.Cal 2010) ................................................3

<u>Zaldivar v. City of Los Angeles</u>, 780 F.2d 823 (9th Cir. 1986)..........................................................7

<u>Zito v. Steeplechase Films, Inc.</u> 267 F. Supp. 2d 1022 (N.D. Cal. 2003)........................................11

**Statutes**

17 U.S.C. § 107 ..........................................................................................3, 10, 11

**Rules**

Fed. R.Civ. P. 11 ..........................................................................................passim

Fed. R.Civ. P. 45 ..........................................................................................2

Fed. R.Civ. P. 26 ..........................................................................................2

N.D. CA Local Rule 7-11..........................................................................................5

**Other**

Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Calif. & 9th Cir. Editions, § 17:349............................20

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION AND STATEMENT OF ISSUES

Plaintiff Harmeet K. Dhillon ("Dhillon") is a senior litigation attorney and namesake of her San Francisco law firm, Dhillon & Smith LLP.  On her firm's website, she claims to have expertise in copyright and First Amendment issues.  She boasts having developed a "niche practice" regarding election and campaign law matters, and boasts that her firm "is one of a handful of California law firms" offering the "expertise" regarding intellectual property matters pertaining to campaign communications.  She stresses her experience as a law clerk for the United States Court of Appeals for the Fourth Circuit and for the Constitutional Torts Section of the United States Department of Justice, and says that her "areas of expertise" include "Intellectual Property (Trademark, Copyright and Trade Secrets)", "Civil Rights and Civil Liberties", and "First Amendment (Right of Publicity, Slander, Defamation, Trade Libel, and anti-SLAPP)".

With that accomplished stature, why would Dhillon file a federal lawsuit for a paltry $250 in damages against a political blog that used an out-of-date publicity photo of Dhillon to accompany an article critical of Dhillon?   The article was entitled "Meet Harmeet" and questioned whether Dhillon's personal values were consistent with her role as Vice Chairperson of the California Republican Party.  Declaration of Rick A. Cigel, filed January 14, 2014 as Dkt. 46, para. 9 ("Prior Cigel Decl.")

The answer is simple:  Dhillon thought it was clever tactics to sue Doe 1 for copyright infringement in order to use federal discovery tools, including subpoenas, to learn the identity of Doe 1.  It is a matter of record that Dhillon is allied with Charles Munger, Jr., the principal focus of the political blog, which is named "The Munger Games" and is found on the internet at www.mungergames.net.  The Munger Games is a non-commercial blog that posts articles critical of the political actions of Munger, Dhillon, and others.  Munger is also a significant financial benefactor of Dhillon, as he was the single largest contributor to Dhillon's political career[1].

---

[1]  In 2012, Munger donated $7,500 to Dhillon's failed election for a state senate seat.  Attached to the Prior Cigel Decl. as Exhibit "A" is a true and correct copy of a report from the website

Whether Dhillon wanted to unmask Doe 1 for her own sake, or for the sake and use of Munger, she quickly turned to discovery immediately after filing this suit. She moved aggressively and repeatedly to unmask Doe 1:

      1)  Dhillon served a subpoena on New Dream Network, LLC, the Southern California company that hosts the website for Mungergames.net.  The subpoena was issued on April 11, 2013 and commanded the production of all information identifying the Doe defendants.  A true and correct copy of the subpoena is attached to the Prior Cigel Decl. as Exhibit "E";

      2)  Dhillon then filed an unsuccessful administrative motion to compel compliance with the New Dream Network subpoena.  This Court denied the motion (Dkt. 19) because it had no jurisdiction under F.R.C.P. 45 to enforce a subpoena against a Southern California company;

      3)  On July 22, 2013, Dhillon had a subpoena issued out of the Central District of California against New Dream Network.  A true and correct copy of the subpoena is attached to the Prior Cigel Decl. as Exhibit "F";

      4)  On August 26, 2013, Dhillon filed an Administrative Motion For Leave To Take Limited Discovery On Google, Inc. Prior To A Rule 26(f) Conference.  She stated the urgent need to have this Court issue subpoenas against Google, Inc. and Michael J. Schroeder, an Orange County attorney who is the former chairman of the California Republican Party. The subpoenas sought not only the identity of the individuals at Mungergames.net, but also all account information for two email addresses that Dhillon believes are associated with Mungergames.net.   The proposed subpoenas commanded production of "the name, address and phone number of the owner(s) of these email addresses, and the IP address(es) from which the user(s) created the accounts and signed in and signed out, with dates and times."; and

---

www.votesmart.org.  It shows Munger as the top contributor to Dhillon's 2012 campaign finances at $7,500.00.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DOE 1's MOTION FOR RULE 11 SANCTIONS

5)  Dhillon not only wanted the identity of the persons associated with the IP addresses, she tried to force Mr. Schroeder to produce "any communication between Schroeder and any such individual concerning the "Meet Harmeet" post, from February 12, 2013 to present."  Under the guise of needing to learn the identity of Doe defendants to effect service, Dhillon tried to conduct sweeping discovery regarding <u>nine months</u> of substantive communications with Attorney Schroeder, with absolutely no regard for possible attorney-client privileges.

Dhillon's suit is frivolous and a clear violation of F.R.C.P. 11.  She certainly is well-aware of the countless cases across the country affording tremendous First Amendment protection to those who speak anonymously on the internet.   As an experienced litigator admitted in the Northern District of California, she must certainly know that the Northern District has a rich history of protecting anonymous speakers.   <u>USA Technologies, Inc. v. Doe</u>, 713 F.Supp.2d 901 (N.D.Cal 2010)(Hon. Susan Illston).

Dhillon also knows that the use of her publicity photograph to accompany a news article is <u>not</u> a violation of copyright laws.  The "fair use" of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research" is not an infringement of copyright.  17 U.S.C. § 107.

Dhillon's conduct is a serious threat to First Amendment rights.  She seeking to silence Doe 1 through the risk of litigation and the enormous expense she is causing for the defense of this lawsuit and the multitude of subpoenas.  It is easy for Dhillon, as she merely is using the resources of her own law firm.  But for Doe 1, attorneys had to be hired and significant expenses incurred to fight the subpoenas in San Francisco and Los Angeles.  Also, Dhillon is harming the First Amendment rights of the tens of thousands of readers of The Munger Games, as they have the right to read the blog's articles and participate in the precious political discourse.

This is exactly the type of scenario contemplated by Rule 11, which requires counsel to have a good faith belief in the merits of any pleading filed with the court.  Dhillon and her firm could not

1   have had a reasonable objective belief in the merit of her case, and the suit was filed for an

2   improper purposes.  Accordingly, this Court should award sanctions against Dhillon and her firm.

3   **II.    STATEMENT OF FACTS**

4        Dhillon is a public and political figure, as well as an attorney, in the San Francisco area.

5   (Complaint at ¶¶ 8 - 9) Doe 1 is involved in some capacity with the political internet blog called

6   "The Munger Games," at www.mungergames.net.  The Munger Games primarily criticizes a

7   prominent figure in the California Republican Party, multi-millionaire Charles Munger, Jr.

8        On February 12, 2013, The Munger Games posted an article entitled "Meet Harmeet", as

9   Dhillon was then campaigning for Vice-Chairman of the California Republican Party.  The article

10  criticized Dhillon's past political activities and questioned her political ideology.  The article also

11  contained a small "headshot" photograph of Dhillon, which was later removed from the blog post.

12  (Complaint at ¶ 15).

13       Dhillon's counsel attached a copy of the article to her own Declaration in support of a

14  previous motion to this Court, and represented that it is a true and correct copy of the article as

15  posted in February 2013.  (Shoquist Declaration at ¶ 2, Exh. A, Dkt. 40 and 40-1).  The appearance

16  and content of the article and the small publicity headshot therefore is undisputed.

17       Dhillon filed her lawsuit in this Court on April 2, 2013, with a single cause of action for

18  Copyright Infringement.  (Dkt. 1)  The Complaint alleged that mungergames.net/Doe defendants

19  used the photo without her authorization and thus violated her copyright in the photo.  Dhillon

20  sought only $250 in damages.  (Complaint at ¶ 22)

21       Dhillon did not list any named defendants in the complaint, and sued Doe 1 and Does 2 – 10

22  as the defendants.  On the same day she filed her Complaint, Dhillon filed an additional document

23  she called an "Ex Parte Application for Leave to Take Limited Discovery." (Dkt. 2)  She sought a

24  subpoena against New Dream Network, the web host for www.mungergames.net, in order to

25  discovery the identity of Doe 1.  Even at that early stage, Dhillon was plainly aware that the Fair

26  Use doctrine was highly relevant to this matter, and Dhillon addressed that complicated issue in

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DOE 1's MOTION FOR RULE 11 SANCTIONS

exactly two paragraphs, presumably in attempt to make it appear as a simple and easily defeated

argument.  (Dkt. 2, pp. 7 – 8)

The initial judge on this case granted the "Ex Parte" application a week later, merely signing

Dhillon's proposed order without any further discussion, amendment or ruling.  (Dkt.8)  Dhillon

issued the subpoena dated April 11, 2013 from the Northern District of California. (Prior Cigel

Dec., Exh. "E").

Dhillon then sought to enforce that subpoena by filing what she styled as an "Administrative

Motion" (Dkt. 16), although administrative motions are reserved for "miscellaneous administrative

matter, not otherwise governed by a federal statute, Federal or local rule or standing order of the

assigned judge" under Local Rule 7-11.  Before the hearing on Dhillon's first (of three)

Administrative Motions regarding discovery, this case was reassigned to the Honorable Susan

Ilston.

This Court rejected the motion, noting that Dhillon had served New Dream Network at an

address in Los Angeles, yet sought to compel compliance in San Francisco.  (Dkt. 19)  Because this

is a distance of greater than 100 miles, this Court denied enforcement under Fed. R. Civ. P.

45(a)(2).  This Court further ordered Dhillon to seek a subpoena from the Central District of

California that directs production of documents in Los Angeles.  (Dkt. 19 at p. 2)

Dhillon issued the subpoena out of the Central District on July 22, 2013, again commanding

New Dream Network to produce documents sufficient to disclose the identity of the Doe

defendants/owners of mungergames.net.  (Prior Cigel Dec., Exh. "F").  When Doe 1 learned of that

subpoena, Doe 1 filed a motion in the Central District of California to quash the subpoena.  (Prior

Cigel Dec., Exh. 13)  The subpoena was ultimately withdrawn by Dhillon in response to this

Court's November 4, 2013 order.  (Prior Cigel Dec., ¶ 13)

In the meantime, expending even more funds on her $250 copyright claim, Dhillon filed

another "Administrative Motion" in this Court, which was later amended, seeking leave to issue

subpoenas on Google, Inc. and Orange County attorney Michael J. Schroeder.  (Dkt. 20 and 24)

These subpoenas were for the same stated purpose of discovering Doe 1's identity, even though

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DOE 1's MOTION FOR RULE 11 SANCTIONS

Dhillon sought not only to compel disclosure of identifying information, but also six months of personal emails from Mr. Schroeder.  These "Administrative Motions" were correctly calendared as "Ex Parte" applications, reflecting the fact that Dhillon had not served notice on anyone, and attorney Schroeder only learned he was the subject of a subpoena when Doe 1's counsel happened upon it while researching the motion to quash in the Central District.

After extensive briefing by Dhillon and Doe 1, this Court denied the "Administrative Motions" based on the papers alone.  (Dkt. 42)  Although the motions had been set for hearing on November 7, 2013, this Court vacated the hearing.  In light of the standing offer that Doe 1's counsel made to accept service of process for Doe 1, this Court instructed Doe 1's counsel to accept service of the Complaint.  Doe 1's counsel quickly did so. (Prior Cigel Decl., ¶ 13)

## III.   **DOE 1 IS ENTITLED TO SANCTIONS PURSUANT TO FRCP RULE 11**

Federal Rule of Civil Procedure ("FRCP") 11 makes every signature on a pleading, written motion or other paper a certification as to certain essential matters regarding that document.  Rule 11 provides:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> **(1)** it is <u>not being presented for any improper purpose</u>, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> **(2)** the claims, defenses, and other <u>legal contentions are warranted by existing law</u> or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information. (emphasis added)

Regarding the legal merits of the pleading, Rule 11 is violated where the claim is not warranted by existing law or a "nonfrivolous" argument for change of that law. FRCP 11(b)(2).

Such violation is shown where it is "patently clear that a claim has *absolutely no chance of success* under the existing precedents, and ... *no reasonable argument* can be advanced to extend, modify or reverse the law as it stands ... " Eastway Construction Corp. v. City of New York, 762 F2d 243, 254 (2nd Cir. 1985) (emphasis added).

Or, stated differently, the standard is violated if *no* "plausible, good faith argument can be made by a competent attorney to the contrary." Rule 11(b)(2) establishes an objective standard that is designed to eliminate any "empty-head pure-heart" justification for patently frivolous arguments. Zaldivar v. City of Los Angeles, 780 F.2d 823, 829, 833 (9th Cir. 1986); Margo v. Weiss, 213 F.3d 55, 64 (2nd Cir. 2000).

Rule 11 also states that signing a pleading is a certification that it is not being filed for an improper purpose.  As with the certification of factual and legal merits, the signer's "purpose" is to be tested by objective standards. Zaldivar v. City of Los Angeles, supra, 780 F. 2d at 831, n. 9. Where experienced lawyers assert meritless claims, "a strong inference arises that their bringing of an action ... was for an improper purpose." Huettig & Schromm, Inc. v. Landscape Contractors Council of Northern Calif., 790 F2d 1421, 1427 (9th Cir. 1986) (experienced labor law practitioners "must have known" the claim asserted was invalid, justifying inference they acted solely for tactical and strategic expediency).

If a court determines that Rule 11 has been violated, the court may impose appropriate sanctions on any attorney, law firm or party that is responsible for the violation, including an award of attorney's fees and other expenses incurred as a result of the Rule 11 violation.  FRCP 11(c)(4). The primary goal of Rule 11 sanctions is to deter future undesirable behavior.  FRCP 11(c)(4); Doering v. Union County Bd. of Close Freeholders, 857 F2d 191, 194 (3rd Cir. 1988) (emphasis added).

One of the factors for a court to consider in awarding sanctions is whether the improper conduct was willful, whether it was part of a pattern, whether it infected the entire pleading, or whether the party has engaged in similar conduct in other litigation.  Kirschner v. Zoning Board of Appeals, 159 FRD 391, 395 (ED NY 1995).

As discussed below, Dhillon's complaint is patently frivolous.  The application of the Fair Use doctrine, and analysis of the Fair Use factors under binding precedent, make it clear that there is no good faith argument that Doe 1 infringed Dhillon's alleged copyright.   Dhillon and her law firm hold themselves out to be experts in copyright and intellectual property, again weighing in favor of finding that this copyright action was filed for the improper purposes of chilling free speech, and not based on a colorable claim that there is actually any infringement.  For all these reasons, this Court should award Rule 11 sanctions in favor of Defendant Doe 1, including attorney's fees and expenses of $204,922.50, plus all additional time spent to attend the hearings of pending motions.  (Declaration of Rick A. Cigel filed concurrently herewith, at ¶ 4)

## IV.   DOE 1'S ANONYMOUS POLITICAL SPEECH IS PROTECTED BY THE FIRST AMENDMENT.

The Munger Games' website exclusively contains anonymous political speech.  The fact that it is anonymous is self-evident.  There is no identification whatsoever about the identity of anyone connected with the site.   Also, it cannot be disputed that the content of the website is political speech.  A simple review of any of the articles contained on the site shows that they address candidates, issues and individuals involved in California political matters.

It is well established that the First Amendment protects the right to anonymous speech.  McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 342 (1995) ("An author's decision to remain anonymous, like other decisions concerning omissions or additions to the content of a publication, is an aspect of the freedom of speech protected by the First Amendment.").   The U.S. Supreme Court stressed that "Anonymous pamphlets, leaflets, brochures and even books have played an important role in the progress of mankind. Persecuted groups and sects from time to time throughout history have been able to criticize oppressive practices and laws either anonymously or not at all." Talley v. California, 362 U.S. 60, 64 (1960).  "Anonymous speech is a great tradition that is woven into the fabric of this nation's history."  Doe v. 2TheMart.com Inc., 140 F. Supp. 2d 1088, 1092 (W.D. Wash. 2001) (referring to the Federalist Papers).

"Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent. Anonymity is a shield from the tyranny of the majority. It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society." McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995) (citations omitted).

The mere disclosure of an anonymous political speaker constitutes irreparable harm. As stated in Art of Living Foundation v. Does 1 – 10, 2011 WL 5444622 at *9 (N.D. Cal. 2011):

> First, to the extent that [the speaker's] anonymity facilitates free speech, the disclosure of his identity is itself an irreparable harm. See, Perry v. Schwarzenegger, 591 F.3d 1147, 1158 (9th Cir. 2010)("One injury to Proponents' First Amendment rights is the disclosure itself. Regardless of whether they prevail at trial, this injury will not be remediable on appeal."). As the Supreme Court has explained, "an advocate may believe her ideas will be more persuasive if her readers are unaware of her identity. Anonymity thereby provides a way for a writer who may be personally unpopular to ensure that readers will not prejudice her message simply because they do not like its proponent." McIntyre, supra, 514 U.S. at 342. The Highfields court put it more succinctly: "Anonymity liberates." Highfields Capital Management, L.P v. Doe, 385 F. Supp. 2d 969 (N.D. Cal. 2005). Insofar as [the speaker] may garner a larger audience by employing a pseudonym, unveiling his true identity diminishes the free exchange of ideas guaranteed by the Constitution.

This First Amendment protection extends to anonymous speech on the internet. "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation ... [or] concern about social ostracism.' " Anonymous Online Speakers, supra, 661 F.3d. at 1173 (citing McIntyre, supra, 514 U.S. at 341–42).

With regard to political speech, the Supreme Court has recognized that First Amendment protection is especially critical. "When speech touches on matters of public political life, such as debate over the qualifications of candidates, discussion of governmental or political affairs, discussion of political campaigns, and advocacy of controversial points of view, such speech has been described as the "core" or "essence" of the First Amendment." Doe v. 2TheMart.com Inc., supra, 140 F. Supp. at 1092-93 (emphasis added), citing, McIntyre, supra, 514 U.S. at 346–47.

The Ninth Circuit agrees that it is crucial to protect political speech.  "Given the importance of political speech in the history of this country, it is not surprising that courts afford political speech the highest level of protection."  In re Anonymous Online Speakers, 661 F.3d 1168, 1173 (9th Cir. 2011), citing,  Meyer v. Grant, 486 U.S. 414, 422, 425 (1988).  The Court stressed that the First Amendment protection of "core political speech" is "at its zenith".

This fundamental right enjoys the same protections whether the context for speech is a political leaflet or an Internet blog.  Reno v. ACLU, 521 U.S. 844, 870 (1997) (there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to" the Internet).

In this case, there is no question that the content of The Munger Games is political speech.  The blog discusses qualifications of political candidates, political activity and campaigns, and addresses controversial issues of public interest.  As such, it is the very essence of the First Amendment, and subject to its most rigorous protections.  In turn, the identity of the author of any posts on mungergames.net is protected by the First Amendment.

## V.   AS A MATTER OF LAW, THE USE ON MUNGERGAMES.NET OF DHILLON'S PHOTOGRAPH WAS "FAIR USE" AND THUS NOT COPYRIGHT INFRINGEMENT.

Due to the importance of protecting the First Amendment right to free speech, the copyright law has built into it certain accommodations, such as the Fair Use doctrine.  If an alleged claim of copyright violation is "Fair Use", it is not infringement as a matter of law.  As stated in Art of Living:

> [E]vidence of copyright infringement does not *automatically* remove the speech at issue from the scope of the First Amendment. While "the First Amendment does not shield copyright infringement," (citation omitted) "copyright law contains built-in First Amendment accommodations." Eldred v. Ashcroft, 537 U.S. 186, 219–20 (2003).  Perhaps the most important is the doctrine of fair use . . . . 17 U.S.C. § 107; see also, Elvis Presley Enters. v. Passport Video, 349 F.3d 622, 626 (9th Cir.2003) ("First Amendment concerns in copyright cases are subsumed within the fair use inquiry.").

Art of Living, supra, 2011 WL 5444622 at *6.

The "fair use" of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research" is not an infringement of copyright.  17 U.S.C. § 107.

The statute goes on to state that in determining whether the use made of a work in any particular case is a fair use, the factors to be considered shall include--

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work. The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.  Id.

The Fair Use exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster."  Kelly v. Arriba Soft Corp., 336 F. 3d 811, 817 (9th Cir. 2003), quoting, Dr. Seuss Enters., L.P v. Penguin Books USA, Inc., 109 F. 3d 1394, 1399 (9th Cir. 1997).  The Arriba Soft court also stated, "We must balance these factors in light of the objectives of copyright law, rather than view them as definitive or determinative tests."  Arriba Soft, supra, 109 F.3d at 1399.

Each of these four elements will now be discussed:

A.      Purpose And Character Of The Use

The question regarding this factor is "whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose of different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is transformative."  Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 579 (1994).  The more transformative the new work, the less important the other factors, including commercialism, become."  Id.  "Typically, a work created for commercial use is

1  less likely to bear fair use protection; however, the commercial/non-commercial distinction is less

2  significant the more transformative the work is." Northland Family Planning Clinic, Inc. v. Center

3  for Bio-Ethical Reform, 868 F.Supp.2d 962, 970 (C.D. Cal. 2012).

4        Cases have consistently held that reproducing a photographic image for purposes of

5  criticism or commentary is transformative, and thus cannot constitute copyright infringement.  In

6  the Ninth Circuit Arriba Soft case, defendant was an internet search engine that displayed search

7  results in the form of thumbnail photographic images.  Plaintiff was a photographer whose photos

8  of the American West appeared in defendant's search engine results.

9        The court focused on the fact that the search engine's images served an entirely different

10 function that the original photographic images, and found no infringement. While the

11 photographer's "images are used to portray scenes . . . in an aesthetic manner, . . . Arriba's search

12 engine functions as a tool to help index and improve access to images . . . ." Arriba Soft, supra, 336

13 F.3d at 818.

14       In Hustler Magazine, Inc. v. Moral Majority, Inc.,606 F.Supp. 1526, 1536 (C.D. Cal. 1985),

15 aff'd, 796 F.2d 1148 (9th Cir. 1986), Hustler magazine brought an infringement action against a

16 fundamentalist minister for reproducing the magazine's parody ads that prominently featured the

17 minister.  The court found that the minister had reproduced the ad as part of a "broader, continuing

18 debate over pornography and other social issues" between the magazine and the minister.  The court

19 found no infringement and granted summary judgment in favor of the minister.

20       The court stated, "[W]hen an act of copying occurs in the course of a political, social or

21 moral debate, the public interest in free expression is one factor favoring a finding of fair use." Id.

22 See also, Keep Thomson Governor Committee v. Citizens for Gallen Committee, 457 F.Supp. 957,

23 959–60 (D.N.H. 1978) (political committee's use of a portion of rival candidate's musical

24 composition amounted to fair use in light of public interest in full debate over election and absence

25 of injury to plaintiff).

26       The recent Art of Living case also discussed the fair use doctrine in the context of

27 reproducing an entire pamphlet for purposes of criticizing its author as a sham and a fraud.

28

Although the Art of Living court stated it did not need to decide whether the copying was fair use, "the circumstances here create a substantial question as to whether the doctrine applies."  Art of Living, supra, 2011 WL 5444622 at *5.  See also, New Era Publications Intern., ApS v. Carol Pub. Group, 904 F.2d 152 (2d Cir.1990) (the use of copyrighted quotations in a biography of Church of Scientology founder L. Ron. Hubbard was protected where the intended purpose of the work was to show that "Hubbard was a charlatan and the Church a dangerous cult").

Several other recent district court opinions have found that using a photo for purposes of criticizing the subject of the photo is fair use.  See Sedgwick Claims Mgmt. Servs., Inc. v. Delsman, 2009 WL 2157573, at *5 (N.D. Cal. 2009) (finding that defendant's use of photographs of two of plaintiff's executives as a vehicle for criticizing plaintiff's alleged business practices was "fundamentally different" than the original promotional reason), aff'd, 422 F. App'x 651 (9th Cir. 2011); Ascend Healthcare Corp. v. Wells, Slip Copy, 2013 WL 1010589 (E.D.N.C. 2013) (finding use of two entire photographs fair use, on a blog criticizing the mental hospital shown in the photographs); Baraban v. Time Warner Inc., 54 USPQ2d 1759 (S.D.N.Y. 2000) (granting summary judgment for accused infringer, which had taken an entire photograph of a nuclear plant and used it in a chapter of a book criticizing the nuclear industry's and the government's portrayal of nuclear power as safe).

Despite this wealth of authority, Dhillon argued in her Administrative Motion that the use of her headshot is not "transformative" because Doe 1 did not alter the photo, and therefore did not add any new expression, meaning or message.  That argument was soundly put to rest in Sedgwick:

> The question of fair use does not turn simply on whether the photographs themselves were unaltered. Rather, as the relevant jurisprudence makes clear, the salient inquiry is whether the use of the photos, *in the specific context used,* was transformative. See Perfect 10, Inc., 508 F.3d at 1164 ("a search engine puts images *'in a different context'* so that they are 'transformed into a new creation.' ") (emphasis added). In that regard, the Ninth Circuit has consistently held that "making an exact copy of a work may be transformative so long as the copy serves a different function than the original work[.]" Id. (image originally used for entertainment or aesthetic purposes was transformed where defendant used the same image to facilitate use of an internet browser to locate information on the web); Kelly v. Arriba Soft Corp., 336 F.3d 811, 816 (9th Cir.2003) ( "exact replication" of protected images was fair use where used in a different context from the original); Mattel, 353 F.3d

at 802 (photographs of Barbie dolls "in various absurd and often sexualized positions" parodied "Barbie's influence on gender roles and the position of women in society" and hence was transformative); see also Nunez v. Caribbean Intern. News Corp., 235 F.3d 18, 22 (1st Cir.2000) (holding that use of unaltered pictures in conjunction with editorial commentary gave them "new meaning" sufficient to transform the works into a "newsworthy" use); Leibovitz v. Paramount Pictures Corp., 137 F.3d 109, 115 n. 3 (2d Cir.1998) (application of the fair use doctrine is particularly apropos where the use of the work disparages the original).

Sedgwick Claims Management Services, Inc. v. Delsman,  2009 WL 2157573 (N.D. Cal. 2009)

(emphasis added), aff'd, 422 Fed.Appx. 651 (9th Cir. 2011).

Cases consistently hold that criticizing, debating or commenting on the subject of an unaltered photograph is transformative.  It is difficult to argue with that premise.  In Calkins v. Playboy Enterprises Intern., Inc., 561 F.Supp.2d 1136, 1141 (E.D. Cal. 2008), the court addressed whether republication of a centerfold model's photograph was transformative when used in an article about the model.  The court stated:

In this regard, the Court finds PEI's use of the Photograph to be transformative because although PEI made a replica of the Photograph, the reproduced image was much smaller and served an entirely different function than the original image. Mother Lode originally created the Photograph for the limited purpose of being used as a gift by Shannon's family and friends [ ] while PEI used the Photograph, in conjunction with other photographs of Shannon and a handwritten biography, for the purpose of personalizing Shannon by providing insight into her life, including how she grew up and what her interests are. [ ] Thus, because PEI used the Photograph in a new context to serve a different function (inform and entertain Playboy readers) than the original function (gifts for family and friends), PEI's use did not supersede the function of the original Photograph, and therefore PEI's use is transformative. See Kelly, 336 F.3d at 818-19; see also, Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 22-23 (1st Cir.2000) (republication of photographs taken for a modeling portfolio in a newspaper was transformative because the photos served to inform, as well as entertain). (emphasis added)

In the Nunez case, plaintiff photographer had taken photos of "Joyce Giraud (Miss Puerto Rico Universe 1997) for use in Giraud's modeling portfolio. Núñez then distributed the photographs to various members of the Puerto Rico modeling community in accordance with normal practice." Id., 235 F.3d at 21.  A local television station reproduced the photographs for purposes of debate and commentary on whether the photos "were appropriate for a Miss Puerto Rico Universe, based on the fact that Giraud was naked or nearly naked in at least one of the photos." Id.  A magazine then republished the photos in articles about the controversy.

Nunez sued for copyright infringement, and the court found Fair Use and dismissed the complaint with prejudice.  The court stated, "[W]hat is important here is that <u>plaintiffs' photographs were originally intended to appear in modeling portfolios, not in the newspaper</u>; the former use, not the latter, motivated the creation of the work. Thus, by using the photographs in conjunction with editorial commentary, El Vocero did not merely "supersede[ ] the objects of the original creation[s]," but instead used the works for "a further purpose," giving them a new "meaning, or message." <u>Id.</u> at 23, *citing*, <u>Campbell v. Acuff-Rose Music, Inc.,</u> 510 U.S. 569, 579 (1994).

In summary, Dhillon's publicity headshot was plainly put in a different context and was used for a different purpose than originally intended.  Dhillon's stated original purpose of the photo was for publicity for a political campaign, whereas The Munger Games used the photo for purposes of criticizing Ms. Dhillon's political activities.  These two purposes could not be more different, and weigh heavily in favor of a finding of Fair Use.

**B.      Nature Of The Copyrighted Work**

The Ninth Circuit has described this second factor well in the <u>Arriba Soft</u> case, stating:

> Works that are creative in nature are closer to the core of intended copyright protection than are more fact-based works."  Photographs that are meant to be viewed by the public for informative and aesthetic purposes . . . are generally creative in nature. The fact that a work is published or unpublished also is a critical element of its nature. Published works are more likely to qualify as fair use because the first appearance of the artist's expression has already occurred.

<u>Arriba Soft</u>, <u>supra</u>, 336 F.3d at 820, <u>quoting</u>, <u>Harper & Row Publishers, Inc. v. Nation Enters.,</u> 471 U.S. 539, 564 (1985) (noting that the scope of fair use is narrower with respect to unpublished works because the author's right to control the first public appearance of his work weighs against the use of his work before its release).

In this case, Dhillon has, by her own allegations, extensively published and released her publicity headshot photo to the general public over the course of the past several years.  (Complaint at ¶ 14, Doc. 1). In addition, a simple internet search reveals hundreds of images of Dhillon readily available on the web, including the very publicity photo at issue in this case.  (Prior Cigel Dec. at ¶ 14).

Therefore, the single isolated use of Dhillon's widely published headshot publicity is more likely to be fair use than not, especially because she is a political public figure.  (Complaint at ¶ 9).  In addition, although a photographer's use of lighting or angle or setting sometimes may be deemed "creative", Dhillon's purpose in commissioning the photo (which seems to have been taken outside with her standing in sunlight next to a building) was for campaign publicity.  (Complaint at ¶ 11, Doc. 1).  The subject photo was obviously for the purpose of identification and face recognition rather than creative aesthetics.

In prior briefing before this Court, Dhillon argued that her headshot photo is "creative" because the photographer made certain creative choices such as urging her to smile and posing her so that she was not squinting into the sun.  However, as in the <u>Nunez</u> case, where pictures were taken for a modeling portfolio, this does not warrant a finding of "creative".  The <u>Nunez</u> court stated:

> The district court suggested, and we agree, that Núñez's pictures could be categorized as either factual or creative: certainly, photography is an art form that requires a significant amount of skill; <u>however, the photographs were not artistic representations designed primarily to express Núñez's ideas, emotions, or feelings, but instead a publicity attempt to highlight Giraud's abilities as a potential model</u>. *Cf.* <u>Haberman v. Hustler Magazine, Inc.</u>, 626 F. Supp. 201, 211 (D. Mass. 1986) (reproduction of surrealistic art in magazine, where creativity counted against fair use finding).

<u>Nunez</u>, <u>supra</u>, 235 F.3d at 23 (emphasis added).

Likewise, in the present case, Dhillon's publicity headshot was not meant to express her photographer's ideas, emotions or feelings, but instead as publicity for Dhillon as a political candidate. (Complaint at ¶ 11).  There is nothing in Dhillon's Complaint or any declaration that states that the photographer took Dhillon's photo for purposes of creating an original artistic work.  Thus, this factor also weighs in favor of finding Fair Use.

Also relevant to this factor is Dhillon's own statement in a previous brief to this Court that Doe 1 "cut-and-pasted the Headshot Photograph 'from a previous [Dhillon] political campaign' website".  (Dkt. 39 at p. 3).  Thus, Dhillon admitted that she previously published that very headshot, which is a fact that also weighs in favor of a finding of Fair Use.  <u>Harper & Row</u>, <u>supra</u>,

471 U.S. at 555.

**C.      Amount And Substantiality Of Portion Used**

As stated in Arriba Soft, "the extent of permissible copying varies with the purpose and character of the use. (citation omitted) If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." Arriba Soft, supra, 336 F.3d at 820 – 821.  The Arriba Soft court continued, "It was necessary for Arriba to copy the entire image to allow users to recognize the image and decide whether to pursue more information. . . . If Arriba only copied part of the image, it would be more difficult to identify it, thereby reducing the usefulness of the visual search engine."  Id. at 821.

In the present case, the headshot publicity photograph of Dhillon was already tightly-cropped.  It would have been impossible to use only a portion of that photograph without deleting a portion of her face.  It is plainly obvious that The Munger Games copied only as much of the photo as was necessary.

**D.      Effect Of The Use Upon The Potential Market For Or Value Of The Copyrighted Work**

In discussing this factor, the Arriba Soft court stated that courts should consider whether the alleged copying harmed the copyright owner's market, or would have a substantial adverse impact on the potential market for the original.  Id. at 821.  In order to survive a summary judgment motion, Dhillon bears the burden of providing evidence of actual economic harm.  Dash v. Mayweather, 731 F.3d 303, 313 (4th Cir. 2013).

In this case, Dhillon has not produced *any* evidence of an actual market for her out-of-date campaign publicity headshot, much less the kind of competent evidence that is required.   She certainly cannot prove that her ability to license this six year old photo has actually been harmed by The Munger Games.   She conspicuously made no allegations whatsoever in her complaint that she ever attempted to license the photograph or that she had actually licensed it for money.

In the Mayweather case, a professional boxer used a musical track to be played when he entered the boxing ring at a World Wrestling Entertainment ("WWE") event.  The composer of the

musical track sued for copyright infringement.  The composer presented an expert witness affidavit setting forth the various revenue streams for the WWE and sample licensing fees for other composers for WWE events.  He then stated his expert opinion regarding the supposed actual damages and loss of profits.  Id. at *2 – 3.  The court held that the expert's opinion was merely speculative, in that there was no proof that anyone had ever paid the composer for any license fee, or that the composer had ever generated any income from his composition.  Thus, the composer failed to present evidence of any fair market value.  Id.

Likewise, in the present case, Dhillon has not made a single allegation that she has ever sold or licensed her campaign publicity headshot, or that anyone has even offered to pay her to purchase or license that photograph.  Instead, Dhillon set an arbitrary and conclusory value of $250 for a "reasonable license fee", based on nothing more than fanciful speculation.  (Complaint at ¶ 22).  In addition, Dhillon's headshot photo is badly out-of-date, as it was taken in 2008.  (Complaint at ¶¶ 11- 12).

Furthermore, there is no allegation or evidence that mungergames.net generated any income from the posting of the headshot.  There cannot be any such evidence, because the blog is entirely non-commercial.  Anyone can go to the mungergames.net website and view its content for free. There is no login information required, no subscription required, and no fee requested.  (Cigel Decl., ¶ 4).  The site does not sell anything whatsoever and there is no option anywhere on the site to provide money.

There simply is no market for Dhillon's widely-used and now out-of-date publicity headshot photograph.  She cannot identify any market and has never alleged that she sells her publicity headshot for profit.  On the contrary, as already stated, she widely used the photo in political campaigns and in marketing efforts.  (Complaint at ¶ 14).

In summary, each of the four "Fair Use" factors weighs heavily in finding that there was no copyright infringement:

1) The photo was used for First Amendment political commentary, a purpose very different from the original purpose of campaign publicity, and therefore "transformative."

2)  The nature of the photo was for purposes of identifying Dhillon in her political campaigns in 2008, rather than as an artistic original expression of the photographer.

3)  The photo had been widely distributed and published prior to its appearance on mungergames.net, which copied only as much of the photo as was necessary.

4)  There was no impact on the non-existent market for a photo that was used solely for publicity and never had commercial value.

Thus, because The Munger Games' posting of Dhillon's publicity headshot was "Fair Use", there is no copyright infringement as a matter of law.  It is not even a close call pursuant to well-established authority directly on point.

## VI.  <u>DHILLON'S COMPLAINT IS A VIOLATION OF RULE 11</u>

The above analysis demonstrates the inescapable conclusion that Dhillon's complaint is frivolous.  Case after case consistently hold that using a photograph for purposes of commentary or criticism of the photograph's subject is Fair Use, especially in the context of political free speech. There is no good faith argument that the Fair Use doctrine doesn't apply, or that it should somehow be extended so as to squelch Doe 1's First Amendment rights.

Further, Dhillon cannot claim that she is ignorant of copyright law or the application of the Fair Use doctrine.  On the contrary, as discussed above, Dhillon and her firm represent themselves as being experts in copyright law and the First Amendment.  (Prior Cigel Decl., ¶ 15)   This expertise is a factor weighing in favor of awarding Rule 11 sanctions.  <u>Huettig & Schromm</u>, <u>supra</u>, 790 F. 2d at 1427 (where experienced lawyers assert meritless claims, "a strong inference arises that their bringing of an action ... was for an improper purpose").

Dhillon acknowledged the Fair Use doctrine in her original Ex Parte application for leave to issue a subpoena on New Dream Network to discover Doe 1's identity, which was filed the very same day as her frivolous copyright complaint.  (Dkt. 2)  Dhillon was fully aware of the Fair Use doctrine, yet chose to ignore its obvious application to this case and instead moved brazenly ahead with her scheme to uncover the identity of her critics.

Lastly, Dhillon's pattern and history demonstrate that this complaint was filed for an improper motive, and not to vindicate a valid copyright claim. Dhillon's efforts to unmask Doe 1 are obvious and undeniable, and her failure to immediately accept the offer of Doe 1's attorney to accept service of the summons and complaint demonstrates that Dhillon was not truly conducting the discovery to facilitate service. Dhillon filed this suit solely so that she and/or Munger could retaliate against Doe 1 and The Munger Games, once they unmasked the identities of the people involved.

Dhillon will no doubt dispute that she had a sinister motive, or that Munger is the driving force behind this purported copyright lawsuit. However, in light of the overwhelming legal authority in favor of a finding of Fair Use in this case, this Court is entitled to draw all proper inferences. As one court has stated, "Although the 'improper purpose' and 'frivolousness' inquiries are separate and distinct, they will often overlap since evidence bearing on frivolousness or non-frivolousness will often be highly probative of purpose." Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1361 – 62 (9th Cir. 1990).

See also, The Rutter Group, Cal. Prac. Guide Fed. Civ. Pro. Before Trial, Calif. & 9th Cir. Editions, Ch. 17, Sanctions, § 17:349 (Westlaw 2013) ("It is usually difficult to prove a party's or attorney's intent to harass or delay. The less factual and legal merit to a pleading or motion, the more likely the court will *infer* it was filed for an improper purpose").

For all the reasons discussed above, Dhillon's complaint completely lacks merit, and this Court should infer that it was filed for an improper purpose in violation of FRCP 11.

## VII.    CONCLUSION

For all the foregoing reasons, Doe 1 respectfully requests this Court to award attorney's fees and expenses against Dhillon and her attorneys pursuant to FRCP 11 in the amount of at least

$204,922.50, plus all fees and costs incurred to attend any subsequent court hearings, and for any other non-monetary sanctions the Court deems just and proper.

Dated:  February 24, 2014                 THE CIGEL LAW GROUP, P.C.


                                          By:_____/s/_____
                                               Rick A. Cigel
                                          Attorneys for Defendant
                                          DOE 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DOE 1's MOTION FOR RULE 11 SANCTIONS