IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARMEET DHILLON,<br><br>    Plaintiff,<br><br>   v.<br><br>DOES 1 -10,<br><br>    Defendants.<br>_____/ | No. C 13-01465 SI<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Now before the Court is defendant's motion for judgment on the pleadings, or in the alternative for summary judgment, and for an award of attorney's fees and costs. The motion is scheduled to be heard on February 28, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. For the reasons below, the Court hereby GRANTS defendant's motion for summary judgment, and DENIES defendant's motion for attorney's fees and costs.

**BACKGROUND**

The following facts are drawn from allegations in the complaint. Plaintiff Harmeet Dhillon is a civil attorney, practicing in San Francisco, California. Compl. ¶ 8. She is an active member of the California Republican Party, and currently serves as Vice Chairman of the statewide party, and Chairman of the San Francisco party. *Id.* ¶ 9. In March, 2008, plaintiff commissioned photographs of

1 herself in connection with her candidacy for Member of the State Assembly. *Id.* ¶ 11. Among these 2 photos was a headshot of the plaintiff, set against a gray background ("the headshot photo"). *Id.* ¶ 12. 3 The plaintiff used the headshot photo in connection with her campaign for State Assembly. *Id.* ¶ 14. 4 She subsequently used the headshot photo in connection with other political campaigns, political 5 activities, and professional marketing efforts. *Id.* The plaintiff owns the intellectual property rights in 6 the headshot photo. *Id.* ¶ 13.

7 On February 12, 2013, the website MungerGames.net published an article about the plaintiff 8 entitled "Meet Harmeet." *Id.* ¶ 15. At the top of the article, the website published the headshot photo. 9 *Id.* The website did not obtain authorization from the plaintiff before using the headshot photo. *Id.*

10 On February 21, 2013, the plaintiff registered the headshot photo with the U.S. Copyright Office. 11 *Id.* ¶ 17. On April 1, 2013, the plaintiff filed this suit, alleging copyright infringement. Because 12 MungerGames.net is run, and contributed to, by anonymous bloggers, the plaintiff sued only Doe 13 defendants. *See id.* ¶¶ 2-3. The plaintiff alleges that the Doe defendants infringed her copyright in the 14 headshot photo by publishing the photo on MungerGames.net, in connection with the anonymous article 15 "Meet Harmeet." *Id.* ¶¶ 19-21. She seeks $250 in damages, as well as injunctive relief and attorney's 16 fees and costs. *Id.* ¶¶ 22-24.

17 On December 2, 2013, defendant Doe 1 filed an answer to the complaint. On January 14, 2014, 18 defendant Doe 1 moved for judgment on the pleadings, or in the alternative, for summary judgment.

19
20 **LEGAL STANDARD**
21 "After the pleadings are closed but within such time as not to delay the trial, any party may move 22 for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is proper when the 23 moving party clearly establishes on the face of the pleadings that no material issue of fact remains to 24 be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard* 25 *Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). "For purposes of the motion, the allegations 26 of the non-moving party must be accepted as true, while the allegations of the moving party which have 27 been denied are assumed to be false." *Id.*

28

When considering a motion on the pleadings, the Court may consider exhibits submitted or referenced in the complaint and matters subject to judicial notice pursuant to Federal Rule of Evidence 201. *See, e.g.*, *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 966 (C.D. Cal. 2007). Indeed, "documents specifically referred to in a complaint, though not physically attached to the pleading, may be considered where authenticity is unquestioned." *Id.* (citing *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1121-22 (N.D. Cal. 2002) (considering television program referenced in, but not attached to, complaint)).

By contrast, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise

3

genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

The defendant now moves for judgment on the pleadings under Rule 12(c), or in the alternative, for summary judgment under Rule 56. The defendant argues that its unlicensed use of the headshot photo was not infringing because it constituted fair use. As a preliminary matter, the Court must determine whether this motion is more properly decided as a motion for judgment on the pleadings or as a motion for summary judgment. Judgment on the pleadings is only appropriate if it is clear from the face of the pleadings themselves that there remains no material issue of fact to be decided. *See Hal Roach Studios*, 896 F.2d at 1550. Looking at the face of the pleadings alone, the Court cannot determine whether the defendant's use of the headshot photo constituted fair use. Therefore, judgment on the pleadings is not appropriate here and the Court will instead apply the summary judgment standard.

**1.    Objections.**

Each party makes numerous objections to the evidence proffered in support of the other side's position. The Court will rule on these objections as it relies on the challenged evidence throughout its analysis. To the extent the Court does not rely on the challenged evidence, the objections are OVERRULED AS MOOT.

**2.    Copyright Infringement.**

The plaintiff alleges that the defendant infringed her copyright because it[1] copied and distributed the headshot photo through MungerGames.net, without a valid license. Compl. ¶ 20. The plaintiff has successfully established a prima facie case of copyright infringement because the parties do not dispute that the plaintiff owned the intellectual property rights in the photo, and that the defendant used the photo without the plaintiff's permission. *See Hustler Magazine, Inc. v. Moral Majority Inc.*, 796 F.2d

---

[1] Defendant Doe 1 is currently anonymous, with no indication whether the defendant is an individual or an entity. Therefore, the Court will refer to the defendant as "it."

4

1148, 1151 (9th Cir. 1986). However, the defendant argues that the plaintiff's claim is barred as a matter of law by the doctrine of fair use, which "permits [and requires] courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (internal quotation marks omitted) (alteration in original). The fair use doctrine is codified at section 107 of the Copyright Act, which provides:

> [T]he fair use of a copyrighted work . . . for purposes such as criticism [and] comment . . . is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include -
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

Whether use of copyrighted material is permissible under the fair use doctrine presents a mixed question of law and fact. *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 560 (1985). However, "[i]f there are no genuine issues of material fact, or if, even after resolving all issues in favor of the opposing party, a reasonable trier of fact can reach only one conclusion, a court may conclude as a matter of law whether the challenged use qualifies as fair use of the copyrighted work." *Hustler Magazine*, 796 F.2d at 1151; *see also Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 530 (9th Cir. 2008) ("[I]t is well established that a court can resolve the issue of fair use on a motion for summary judgment when no material facts are in dispute.").

The Court must weigh the four fair use factors together, and consider the results in light of the purposes of the Copyright Act. *Campbell*, 510 U.S. at 578. For the following reasons, the Court finds that the defendant's use of the headshot photo satisfies the fair use standard.

5

### A. The Purpose and Character of the Use.

The first fair use factor examines "the purpose and character of the use," and weighs the "commercial or nonprofit purpose of the use." *See* 17 U.S.C. § 107(1). While the commercial use of copyrighted work is presumptively unfair, the Copyright Act "expressly permits fair use for the purposes of criticism and commentary." *Hustler Magazine*, 796 F.2d at 1152-53. Thus, even if a particular use is solely commercial in nature, "the presumption of unfairness can be rebutted by the characteristics of the use." *Id.* The central purpose of the inquiry under this factor is to determine "whether the new work merely supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative.'" *Campbell*, 510 U.S. at 579 (citations and internal quotation marks omitted) (alteration in original). The more transformative the allegedly infringing work is, the less important other concerns, including commercialism, become. *Id.*

The plaintiff argues that the first factor weighs against a finding of fair use for two reasons: (1) the defendant has not proven that MungerGames.net is noncommercial; and (2) the defendant's use of the headshot photo was not transformative. The Court will address each argument in turn.

There is no evidence that the defendant's use of the headshot photo was commercial in nature. Indeed, defense counsel submitted a declaration under penalty of perjury stating that the website "is a wholly noncommercial blog," featuring "absolutely no commercial elements." Declaration of Rick A. Cigel in Support of Defendant Doe 1's Motion for Judgment on the Pleadings Pursuant to FRCP 12(c) or for Summary Judgment ("Cigel Decl.") ¶¶ 3, 4. He further states that the website "does not sell anything. It does not charge anything to view any part of the site. The website does not request payment or contributions for anything, and has no functionality that permits payment of money." *Id.* ¶ 4. The plaintiff objects to defense counsel's statements, arguing lack of personal knowledge and lack of foundation. At the summary judgment stage, "a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Block v. City of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001). Defense counsel's sworn statement avers that he has personal knowledge of the matters set forth in his declaration and that, if called upon to testify to these matters, he could and would do so. Cigel Decl. ¶ 1. "Unfounded speculation as to an affiant's alleged lack of personal knowledge of the events in his

6

affidavit does not render it inadmissible." *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011). The Court therefore OVERRULES the plaintiff's objections to defense counsel's declaration in support of the defendant's motion.

The plaintiff argues that it is possible, notwithstanding defense counsel's sworn statement, that MungerGames.net or individuals otherwise involved with the authoring or publication of the "Meet Harmeet" article realized some financial gain through the use of the headshot photo. These conclusory, speculative assertions are insufficient to raise a genuine issue of material fact to defeat summary judgment. *See Thornhill Publ'g Co.*, 594 F.2d at 738. The Court finds that the plaintiff has not raised a triable issue of fact regarding the commercial nature of MungerGames.net.

However, even if the use of the headshot photo was commercial, the inquiry under this factor does not end there. Instead, the Court must examine to what extent the allegedly infringing use was transformative; that is, whether the use added some new purpose or meaning to the original. *See Campbell*, 510 U.S. at 579.

Whether a use is transformative depends upon whether the new use "supersede[s] the objects of the original creation," or instead, serves a new purpose. *See id.* Even making an exact copy of a protected work may be transformative, provided "the copy serves a different function than the original work." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007); *see also Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818-19 (9th Cir. 2002) (finding transformative use where the original purpose of the copied images was aesthetic, while the new purpose was to improve access to information).

The Court finds that the defendant's use of the headshot photo was transformative. The plaintiff initially commissioned the headshot photo in connection with her candidacy for the State Assembly. Compl. ¶ 11. She then used the headshot photo in connection with that campaign, as well as in connection with other political activities and professional marketing efforts. Compl. ¶ 14; Declaration of Harmeet K. Dhillon in Support of Opposition to Defendant Doe 1's Motion for Judgment on the Pleadings Pursuant to FRCP 12(c) or for Summary Judgment ("Dhillon Decl.") ¶ 4. In short, the

7

plaintiff used the headshot photo as a tool to positively market herself. *Cf.* Dhillon Decl. ¶ 7[2] (stating that, since the headshot photo was posted on MungerGames.net, the plaintiff has not used it as a marketing tool "out of concern that use of a photograph of [herself] that has been tainted with a prior negative association will harm [her] public image").

By contrast, the defendant used the headshot photo in connection with an article criticizing the plaintiff's political views. *See* Cigel Decl. Ex. D. Rather than using the headshot photo as a positive marketing tool, as the plaintiff did, the defendant used the headshot photo as part of its criticism of, and commentary on, the plaintiff's politics. *Id.* Such a use is precisely what the Copyright Act envisions as a paradigmatic fair use. *See Hustler Magazine*, 796 F.2d at 1152-53. The Court finds that the defendant's use of the headshot photo was transformative because it served the purpose of criticism, rather than identification.

Accordingly, the Court concludes that the first factor, the purpose and character of the use, weighs heavily in favor of the defendant.

### B. The Nature of the Copyrighted Work.

The second fair use factor considers whether the copyrighted work "is imaginative and original . . . ." *See Hustler Magazine*, 796 F.2d at 1154. Creative works are considered "closer to the core of intended copyright protection" than works that are merely "informational." *Campbell*, 510 U.S. at 586.

By plaintiff's own admission, the headshot photo was used for the purpose of identifying herself to the public. Dhillon Decl. ¶ 4. Thus, it seems that the headshot photo was intended to be more informational than creative. However, the photographer submitted a declaration setting forth the precise creative choices he made in shooting and developing the headshot photo. Declaration of Colin Hussey in Support of Plaintiff's Opposition ¶¶ 5-11.

---

[2] The defendant objects to this portion of the plaintiff's declaration on the grounds that the plaintiff lacks personal knowledge, and the testimony is speculative and improper argument. The plaintiff has personal knowledge that the headshot photo was used by the defendant, and she personally considers that use to be negative. The Court finds that the plaintiff has personal knowledge and her testimony is not speculative or improper, and therefore OVERRULES the objection.

8

At this stage of the litigation, the Court must view all evidence in the light most favorable to the plaintiff, and therefore concludes that the headshot photo is a creative work. Accordingly, the Court finds that the second factor, the nature of the copyrighted work, weighs in the plaintiff's favor.

### C. The Amount and Substantiality of the Portion Used.

The third fair use factor considers how much of the original work was copied by the alleged infringer. "If the secondary user only copies as much as is necessary for his or her intended use, then this factor will not weigh against him or her." *Kelly*, 336 F.3d at 820-21.

Here, the defendant posted the entire headshot photo on MungerGames.net. However, the plaintiff agrees that it would not have been feasible in these circumstances for the defendant to have copied less than the entire photo. Therefore, the Court finds that this factor is neutral and does not weigh either for or against a finding of fair use. *See id.*

### D. The Effect of the Use upon the Potential Market for or Value of the Work.

The fourth and final fair use factor considers "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). In evaluating this factor, courts consider "whether the infringing use: (1) tends to diminish or prejudice the potential sale of the work . . .; (2) tends to interfere with the marketability of the work; or (3) fulfills the demand for the original work." *Hustler Magazine*, 796 F.2d at 1155-56 (alteration, citations, and internal quotation marks omitted). "[A] use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 450 (1984). This final factor is considered "undoubtedly the single most important element of fair use." *Harper & Row*, 471 U.S. at 566.

The Court finds that the defendant's use of the protected work had no negative impact upon the potential market for, or value of, the headshot photo. In her complaint, the plaintiff alleges that $250 is the reasonable licensing fee for the headshot photo. However, she fails to allege, either in her complaint or in her opposition to this motion, that she ever sought or received a licensing fee from anyone at any time in connection with the use of the headshot photo. Indeed, her declaration belies such

9

a contention. *See* Dhillon Decl. ¶¶ 4-5 (stating that the plaintiff has granted authorization to individuals and entities to use the headshot photo in the past, but failing to state that she ever received any fee in return). The plaintiff fails to allege that she ever attempted to sell the headshot photo at any time in the past, or that she had any plans to attempt to do so in the future. In short, the plaintiff has failed to allege that any market ever existed for the sale or licensing of the headshot photo, or that such a market might have developed at any future time. Therefore, the Court finds that the defendant's use of the headshot photo had no impact upon any actual or potential market for the work.

The plaintiff argues that, since the headshot photo was posted on MungerGames.net, she has received no interest from anyone in using the headshot photo for any purpose. Dhillon Decl. ¶ 6. She further alleges that, because she fears the photo has been tainted with negative connotations, she has also stopped using the photo herself. *Id.* ¶ 7. The plaintiff's argument that the defendant's use of the headshot photo in connection with the article commenting on and criticizing her political views has altered the meaning or message of the original work is, in effect, a concession that the defendant's use was transformative under the first factor of the fair use analysis. The plaintiff's argument does not, however, establish that the defendant's use had any impact upon the economic market for the headshot photo, as required under the fourth factor of the fair use analysis.

Accordingly, because the evidence supports the conclusion that the defendant's use had no impact upon any actual or potential market for the headshot photo, the Court finds that the fourth factor weighs heavily in the defendant's favor.

### E. Weighing the Factors.

Viewing the evidence in the light most favorable to the plaintiff, the Court finds that the majority of the fair use factors, including the most important factor, weigh in favor of the defendant. Accordingly, the Court finds that the fair use defense applies as a matter of law, and GRANTS the defendant's motion for summary judgment.

//
//
//

### 3. Attorney's Fees and Costs.

Finally, defendant asks the Court to award it recovery of attorney's fees and costs associated with defending this case.

Attorney's fees are not awarded in copyright cases as a matter of course. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 532 (1994). Instead, "[p]revailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion." *Id.* at 534. The most important factor for the Court to consider in deciding whether a fee award is appropriate "is whether an award will further the purposes of the [Copyright] Act." *SOFA Entm't, Inc. v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). The primary purpose of the Copyright Act is to "encourage the production of original literary, artistic, and musical expression for the good of the public." *Id.* (quoting *Fogerty*, 510 U.S. at 524); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991) ("The primary objective of copyright is not to reward the labor of authors, but '[t]o promote the Progress of Science and useful Arts.'" (alteration in original)); *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975) ("But the ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good."). The Court's discretion in this matter can be guided by "five non-exclusive factors: (1) the degree of success obtained; (2) frivolousness; (3) motivation; (4) the objective unreasonableness of the losing party's factual and legal arguments; and (5) the need, in particular circumstances, to advance considerations of compensation and deterrence." *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180-81 (9th Cir. 2013).

The Court cannot say that awarding attorney's fees and costs in this case furthers the purposes of the Copyright Act. Although the Court has found that the fair use defense applies and therefore the defendant has prevailed, "the mere fact that [the plaintiff] lost cannot establish [her] objective unreasonability." *Id.* at 1181. Indeed, the Court found that the defendant prevailed on only two of the four fair use factors, indicating that the plaintiff's position was not completely unreasonable. Under these circumstances, awarding attorney's fees would not "encourage the production of original literary, artistic, and musical expression for the good of the public." *See SOFA Entm't*, 709 F.3d at 1280.

Accordingly, the Court finds that this is not an appropriate case in which to award attorney's fees, and therefore DENIES the defendant's motion for attorney's fees and costs.

11

**CONCLUSION**

For the foregoing reasons and for good cause shown, and on the basis of the record before it, the Court hereby GRANTS the defendant's motion for summary judgment, and DENIES the defendant's motion for an award of attorney's fees and costs. This Order resolves Docket No. 46.

**IT IS SO ORDERED.**

Dated: February 25, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE